## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HALEY SPEARS, | : | |
| PLAINTIFF, | : | |
| | : | CIVIL ACTION NO. 3:11cv1807(VLB) |
| | : | |
| v. | : | |
| | : | |
| LIBERY LIFE ASSURANCE | : | AUGUST 3, 2012 |
| COMPANY OF BOSTON; UNITED | : | |
| TECHNOLOGIES CORPORATION; | : | |
| AND THE GROUP LIFE INSURANCE | : | |
| AND DISABILITY PLAN OF UNITED | : | |
| TECHNOLOGIES CORPORATION a/k/a | : | |
| THE UTC CHOICE INTEGRATED | : | |
| DISABILITY BENEFIT PROGRAM | : | |
| DEFENDANTS. | : | |

## MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [DKT. #13]

Plaintiff, Haley Spears, ("Spears") brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(3) contesting the denial of disability benefits under her employer's long term disability benefits plan.  Defendants Liberty Life Assurance Company of Boston ("Liberty"), United Technologies Corporation ("UTC"), and The Group Life Insurance And Disability Plan of United Technologies Corporation a/k/a The UTC Choice Integrated Disability Benefit Program (the "Plan" or the "UTC Plan") (collectively referred to as the "Defendants") have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count Two of Plaintiff's Complaint asserted under Section 502(a)(3) as duplicative of her Count One claims under Section 502(a)(1)(B).  The Defendants also move to dismiss the Defendants UTC and the Plan as Defendants in the action because they do not control

administration of the long term provisions of the Plan. They also seek an order striking Plaintiff's claim for extra-contractual damages, on the basis that such damages are not available under E.R.I.S.A. The Plaintiff objects to the Motion to Dismiss asserting that simultaneous claims may be maintained under Section 502(a)(1)(B) and Section 502(a)(3) and asserting that she has a right to the extra-contractual equitable remedies, such as reformation, under Section 502(a)(3) because one or more of the Defendants misled her, causing her harm which may not be remedied by her Section 502(a)(1)(B) claim.  The Plaintiff counters the Defendant's motion to dismiss Defendants UTC and the Plan, asserting that they did control the administration of the short term provisions of the Plan. The Plaintiff also seeks injunctive relief, enjoining the conduct complained of in the Complaint.  For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

### Factual Allegations

The following facts are taken from Plaintiff's complaint.  The Plaintiff, Haley Spears, is a former employee of UTC.  [Dkt #1, Complaint ¶ 4].  She was employed as an Executive Administrative Assistant immediately prior to being disabled and was allegedly covered by UTC's employee benefits plan.  *Id.*  The UTC Plan included both short-term and long-term disability ("STD" and "LTD" respectively) sections.  *Id.* at ¶ 7. The LTD plan is fully insured by Liberty. *Id.* At ¶ 5.  Plaintiff alleges that Liberty is the administrator of the Plan.

UTC self-insures the STD plan but Liberty "is the Plan Administrator for STD benefits" and makes claim determinations under that plan. *Id.* at ¶ 8.  The

2

LTD policy,[1] however, is both administered and insured by Liberty. *Id.* at ¶ 5. Premiums are paid to Liberty, Liberty insures the policy, Liberty pays covered claims, Liberty makes LTD claim determinations, and Liberty is the LTD plan administrator. *Id.*

In her capacity as an Executive Administrative Assistant at UTC, Plaintiff alleges that the material duties of her job were as follows:

> [S]end and edit letters, order supplies for two departments, do internet research, organize executive desks and papers, keep a reference guide book updated, change computer settings and fix office equipment on a basic level. She was responsible for communication with the maintenance department. She communicated verbally and by e-mail. Accuracy was essential. She processed expense reports by entering data into the computer, filed documents, and made travel arrangements. She processed invoices and followed through to ensure that they were paid. She generated briefing material for senior level meetings. She completed internal and external training to better understand United Technologies Corporation business practices and company objectives.

*Id.* ¶ 10. Plaintiff also alleges that her position was a desk job, although it did require her to be on her feet, walking around the department, and occasionally lifting packages, printer paper, files, or supplies. *Id.* at ¶ 11. Reportedly, "[t]he job was fast paced. She needed to be alert. There was no room for error." *Id.*

Plaintiff allegedly began feeling sick around 2008 and began taking sick days. [Dkt #1, Complaint ¶ 12]. Her symptoms allegedly included fevers, night sweats, respiratory problems, and coughing. *Id.* Her boss told her to see a doctor. *Id.* She was treated first for "asthma symptoms" and then later for migraines at the St. Francis Hospital emergency room. *Id.*

---

[1] The LTD policy number is GF3-810-258966-016. [Dkt #1, Complaint ¶ 5].

Her symptoms "became debilitating in the summer of 2008." *Id.* At that point, Ms. Spears alleges that she "could not do her job." *Id.* at ¶ 13. She reports migraines, blurry vision, an inability to focus or think straight, memory problems, difficulties understanding what her boss wanted, and a general daze. *Id.* Plaintiff allegedly stopped working and applied for STD benefits in September 2008. *Id.* Those benefits were granted on September 27, 2008. *Id.*

Plaintiff acknowledges that the definition of disabled is different under the STD than it is under the LTD. She alleges that the policy defined being disabled, for purposes of STD coverage, as when "[y]ou are unable to perform the material and substantial duties of your current or a similar job for more than 5 consecutive scheduled workdays" and a physician provides medical evidence supporting his assessment of your condition. *Id.* On the other hand, the policy defined disabled under the LTD if you are unable to perform your "own occupation" for the first 24 months, after which you are only disabled for purposes of the plan if you are unable to perform the duties of "Any Occupation" as defined by the plan. *Id.* at ¶ 27-28.

Plaintiff was allegedly told by "a representative of the defendants" that if she tried to return to work part time but could not sustain that work she could still collect STD benefits. *Id.* at ¶ 14. She returned to work part time in January 2009 for a "few months", but claims she "could not perform her job during that time" despite being given simplified duties. *Id.*

Plaintiff has reportedly received an extremely large number of varying diagnoses from various doctors. [Dkt #1, Complaint ¶ 16]. Ms. Spears allegedly

4

tested positive for Borrelia burdorferi IgM antibodies on February 2, 2009.
Spears's STD benefits were approved through February 8, 2009. *Id.* at ¶ 15. On
February 9, 2009, Plaintiff's treating physician Dr. Barbara Kage placed
restrictions on the work she should perform. *Id.*  She continued working part time
and with restrictions through March 23, 2009 when she stopped entirely due to
her health and has not returned to work. *Id.*

Plaintiff claims that several doctors – Dr.'s Bernard Raxlen, Sam Donta,
Barbara Kage, and Dario Zagar – all noted symptoms associated with her
Borreliosis (Lyme disease) from June to October 2009 and stated that she "was
unable to work because of her symptoms." *Id.* at ¶¶ 18-22.

Plaintiff alleges that the Defendants first denied her LTD benefits on
January 30, 2009.  On that date Defendants cited two reasons for the denial.  The
first reason was that the LTD elimination period was not met.  *Id.* at ¶ 17.  Plaintiff
acknowledges that LTD benefits were also denied "on the ground that 'the
available records do not support any restrictions and limitations or impairment
precluding you from performing the duties of your job . . . during the period of
February 9, 2009 through the present date." *Id.* at ¶ 17. The Defendant cited the
second reason despite the fact that the Plaintiff was approved for and received
STD benefits through March

Defendants denied her appeal in January 2010 again saying there was no
evidence of impairment, restrictions, or limitations from February 8, 2009
onwards. *Id.* at ¶ 22.  Defendants reiterated the denial in May 2010. *Id.*  In June
2010, Defendants allegedly requested and Plaintiff provided additional evidence

from her on her condition. *Id.*  Plaintiff claims that the defendants granted her appeal and reinstated her STD benefits through March 27, 2009. *Id.*

However, a November 2010 letter from Liberty states that their "Appeal Review Unit" upheld the decision to *deny* STD benefits in this time period, and that STD benefits were only paid from February 9 to March 27, 2009 due to "employer override." [Dkt #20, Pl.'s Mem of Law in Opp. To Def.'s Mot. To Dismiss and Mot. To Strike, Exhibit B] [hereinafter Pl.'s Opp. To Def.'s Mot. To Dismiss]. March 27, 2009 was "the maximum duration for STD benefits" and STD "[b]enefits were terminated after that date." [Dkt #1, Complaint ¶ 22].

Liberty also repeated their denial of Plaintiff's LTD benefits in that November 2010 letter. *Id.* at ¶ 23; [Dkt #20, Pl.'s Opp. To Def.'s Mot. To Dismiss, Exhibit B].  Liberty stated that medical documentation did not support Plaintiff's alleged impairment past February 8, 2009, and that that date failed to satisfy the "elimination period" so Plaintiff was not due LTD benefits. *Id.* Plaintiff also notes that th, e letter referred to a "September 27, 2010 peer review report" of  which she was allegedly not furnished a copy. *Id.*

Plaintiff alleges that the Social Security Administration ("SSA") granted her request for disability benefits two years later, on February 25, 2011, citing an August 31, 2008 as the "onset date". [Dkt #1, Complaint ¶ 24]. Ms. Spears does not provide any authority as to the definition of an "onset date" under the disability provisions of the Social Security Act.   She further notes that the Administrative Law Judge characterized her brief part-time return to work was

"an unsuccessful work attempt" and her conditions "severe impairments" in finding that she was unable to work as of the date of the decision. *Id.*

Following that, Plaintiff appealed the termination of her benefits more than two years later, in May 2011, submitting the Social Security Administration decision, medical journal articles, and "numerous medical records and reports" in support of her appeal. *Id.* at ¶ 25.  She also requested a copy of the September 27, 2010 peer review report described in Liberty's November 2010 letter. *Id.* Liberty sent her a copy of the report but denied her appeal in June 2011, once again stating that she "has not provided medical evidence to support Disability throughout the Elimination Period." *Id.* at ¶ 26.

Ms. Spears alleges that one of the stated goals of the UTC Plan as provided in the Summary Plan Description ("SPD") is, among other things, to "facilitate a seamless transition between Sick Pay, STD, and LTD payments." *Id.* at ¶ 7; [Dkt #21, Reply Br. In Supp. Of Defs.' Mot. To Dismiss, Exhibit A p. Liberty002198]. She claims "[t]hese statements are false and misleading as applied to [Plaintiff]". [Dkt #1, Complaint ¶ 7].  The SPD provides in relevant part: "these benefits are designed to work together to provide income and relieve some of the worry about how you will support yourself or your family if you are unable to work because of illness, injury, surgery or pregnancy.  The UTC Integrated Disability Benefit Program goals are: To provide income replacement when the presence of a health condition supported by medical documentation limits your functional ability to the essential duties of your own job.  To integrated the process of how Sick Pay and STD benefits are paid and managed.  To facilitate a seamless

transition between Sick Pay, STD and LTD payments."  [Dkt. #21, Attach 1, Ex. B] at p.1].

Plaintiff filed her Complaint with this Court on November 21, 2011. [Dkt #1, Complaint].  In it, she alleges that she qualified as disabled under both the STD and LTD policy definitions throughout the relevant time period. *Id.* at ¶ 29. Plaintiff alleges that she exhausted her administrative remedies provided by the UTC Plan and here claims that her benefits were arbitrarily, capriciously, and erroneously denied by Liberty's alleged failure to consider the evidence of disability which she submitted. *Id.* at ¶ 30. The Complaint names UTC, the UTC Plan, and Liberty as defendants, seeking relief under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count One); ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (Count Two); and attorney's fees and costs (Count Three).  *Id.* at ¶s 33-45.  In addition to seeking the full amount of benefits she is entitled to under the terms of the LTD Plan, Plaintiff also seeks equitable relief under Section 502(a)(3) to "make restitution to Spears in the amount of any losses sustained by her in consequence of the wrongful conduct alleged herein," "[r]eform the plan to remedy false or misleading," "[e]stop defendants' from denying benefits," and "award such other relief as the Court deems just, reasonable or equitable."  *Id.* at p. 12.

**Legal Standard**

In deciding a motion to dismiss pursuant to Rule 12 (b)(6) the Court accepts as true all of the complaint's factual allegations and draws inferences from these allegations in the light most favorable to the plaintiff.  However, "[a]

pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  (internal quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010).  "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949-50).  "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'"  *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted).

"In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a

document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Tessler v. Paterson*, 451 Fed. Appx. 30, 32 (2d Cir. 2011) (internal quotation marks and citations omitted).  Therefore, "where a plaintiff does not attach to the complaint or incorporate by reference a document on which it relies and which is integral to the complaint, a defendant may introduce that document as part of a motion attacking the pleadings." *Colon v. Town of West Hartford,* No.3:00cv168(AHN), 2001 WL 45464, at *1 n.1 (D. Conn. Jan. 5, 2001) (citing *Cortect Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).[2]

### Analysis

#### i.     *Count Two Claim under Section 502(a)(3)*

Defendants argue that Plaintiff's Count Two claim asserted under Section 502(a)(3) for equitable relief should be dismissed as duplicative of her Count One claim under Section 502(a)(1)(B).  Section 502(a)(3) provides in relevant part that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violated any provision of this subchapter or the

---

[2] **Plaintiff argues in her memorandum in opposition to the Defendants' motion to dismiss that the Court should treat Defendants' motion as one for summary judgment because Defendants have referenced and relied on the Disability Plans as well as the Summary Plan Description ("SPD") which constitutes evidence outside the pleadings.  [Dkt. #20, Pl. Mem. at p. 5-6].  However, Defendants' reliance and reference to the terms of the plans and the SPD is entirely appropriate on a motion to dismiss because Plaintiff has relied on the terms of those plans as well as the SPD in her complaint and therefore these documents are integral to the complaint.   Accordingly, it was entirely appropriate for the Defendants to introduce these documents as part of its motion to dismiss.**

terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce the provisions of this subchapter or the terms of the plan." §502(a)(3), 29 U.S.C. §1132(a)(3). Whereas Section 502(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

"Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under § 502(a)(1)(B).... The provision authorizes solely *equitable* relief, and under the Supreme Court's decision in *Great–West* [*Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002)], this means that money awards are available in suits brought under § 502(a)(3) only in very limited circumstances." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578-79 (2d Cir. 2006).

Although not clearly alleged in her complaint, Plaintiff argues in her memorandum in opposition to Defendants' motion to dismiss that her Section 502(a)(3) claim is not duplicative as it is predicated on a statement in the SPD that the Plan's goal is "to facilitate a seamless transition between Sick pay, STD and LTD payments" which she claims was a false and misleading representation. [Dkt. #20 Pl. Obj. at p.5]. Plaintiff argues that she did not receive a "seamless transition between STD and LTD benefits" because Defendants granted her STD claim for the maximum duration of STD benefits until March 27, 2009 but at the same time Liberty wrote to her informing her that her impairment precluding work

was not supported by medical documentation beyond February 8, 2009 and that she did not satisfy the elimination period.   Plaintiff argues that this "inconsistency is hardly a 'seamless transition between STD and LTD payments.'"  *Id.*   Plaintiff contends that "this Court may wish to utilize equitable remedies.  It may wish to reform the plan so that Spears gets the benefit of the plan's promise, to facilitate a seamless transition between Sick Pay, STD and LTD payments."  *Id.* at 11.

Plaintiff further argues that the Supreme Court's recent decision in *Cigna Corp. v. Amara*, ---U.S.---, 131 S.Ct. 1866 (2011) "opened to the door to broad equitable remedies for plan participants" such as reformation and that under *Amara* "Plan members with a misleading SPD will now have a remedy."  [Dkt. # 20 Pl. Obj. at p.11].  The Supreme Court in *Amara* indeed held that a district court has the authority under Section 502(a)(3) to reform the terms of an ERISA plan in order to remedy "false or misleading" information.  *Amara*, 131 S.Ct. at 1879.  The Supreme Court explained that a district court has the authority under §502(a)(3) to enter equitable relief where appropriate such as reformation, estoppel and surcharge because the term "appropriate equitable relief" in §502(a)(3) refers to "those categories of relief that traditionally speaking (i.e., prior to the merger of law and equity were *typically* available in equity."  *Id.* at 1878 (internal quotation marks and citations omitted).  In addition, Plaintiff points out that Second Circuit precedent permits a plaintiff from seeking relief simultaneously under §§ 502(a)(1)(B) and 502(a)(3).  See *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001) (holding that the Supreme Court's decision in *Varity*

*Corp. v. Howe*, 516 U.S. 489, 515 (1996) did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty.").

However, this Court agrees with Defendants that the language in the SPD that the goal of the Plan is to "facilitate a seamless transition between Sick Pay, STD and LTD payments" is not false or misleading as Plaintiff contends.   Here the "seamless transition" language does not guarantee beneficiaries under the Plan a seamless transition between STD and LTD payments but is rather an aspirational statement that provides no assurance, promise or otherwise enforceable agreement that a seamless transition will actually occur.   *See Olivieri v. McDonald's Corp.*, 678 F.Supp. 996, 1000 (E.D.N.Y. 1988) (concluding that a prospectus's representations concerning a training program were not false or misleading because the representations indicate that the training program is a "fluid program" and there "is no promise that an applicant will participate in any particular course").   To hold otherwise, would credit Plaintiff's rather idiosyncratic interpretation of the language at issue.   Since the Court finds that the "seamless transition" language is not false or misleading, Plaintiff has failed to allege sufficient factual content that plausibly gives rise to an entitlement to equitable relief such as reformation under *Amara*.   The Court therefore dismisses Plaintiff's count II claim for equitable relief under §502(a)(3).

Additionally, the Complaint cannot be read fairly to assert a claim of estoppel, detrimental reliance or any other equitable claim upon which reformation would lie.   To the extent that the Plaintiff seeks to allege that she was

misled, by the UTC override of Liberty's denial of her STD benefit claim, into believing that she qualified for STD benefits and therefore met the criteria for qualification for LTD benefits for the first 24 months of the LTD benefit period and was thereby deprived of the opportunity to prove she was qualified, such a claim is both unsupported and refuted by the facts alleged in the Complaint.   The Complaint avers that the Plaintiff was told she did not qualify for STD multiple times, including in October of 2010 when Liberty's denial of STD benefits was upheld on appeal. It also establishes that the Plaintiff attempted repeatedly to overturn that decision and was given an opportunity to present additional information which proved unavailing. Further when UTC overrode Liberty's denial, the Plaintiff was informed by letter dated November 16, 2010 that STD benefits would be restored only to March 27, 2009 and only on the basis of UTC's override, notwithstanding her failure to prove she was disabled.   Thus, Plaintiff has failed to plead facts sufficient to support a discernable equitable claim upon which reformation would lie.

### *Claims against UTC*

Defendants argue that UTC is not a proper party to Plaintiff's claim under either §§ 502(a)(1)(B) or 502(a)(3) because Liberty had the sole authority under the LTD Plan to make claim determinations.   Plaintiff argues that UTC is a proper party to her suit to recover LTD benefits because UTC was a fiduciary along with Liberty of the LTD Plan.  [Dkt. #. 20, p.17-20].

"Under ERISA, a person or corporation is a plan fiduciary 'to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or responsibility in the administration of such plan.'" *Flanigan v. General Elec. Co.*, 242 F.3d 78, 87 (2d Cir. 2001) (citing 29 U.S.C. § 1002(21)(A)). Courts evaluate whether someone is a fiduciary under ERISA based upon the "function performed, rather than on the title held." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987). That is to say, "ERISA's definition is functional." *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (internal citation omitted). This functional definition "allocates liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." *Mertens v. Hewitt Associates*, 508 U.S. 248, 262 (1993). "Under this definition, a person . . . has [fiduciary] status only to the extent that he has or exercises the described authority or responsibility." *Flanigan*, 242 F.3d at 87.

Here, the LTD Plan expressly provides and Plaintiff even alleges in her complaint that the "LTD plan is fully insured by Liberty. . . All premiums are paid to Liberty, who in turn agrees to pay covered claims[.] Claim determinations are made by Liberty. Liberty is the Plan Administrator for LTD benefits."  [Dkt. #20, p.18-19]; *see also* [Dkt #14, Def's Mot. To Dismiss, Exhibit A p. DEF000034] ("Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.").

Clearly under the terms of the LTD plan, UTC did not have the power to control or prevent the misdeeds in denying Plaintiff's long term disability benefits that is the subject of Plaintiff's complaint and therefore was not a fiduciary under the LTD Plan.  *See, e.g., Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998)(dismissing employer from §502(a)(1)(B) suit based on conclusion that employer was not proper party "[b]ecause it is clear from the Plan documents that [the employer] was neither the designated Plan administrator nor a Plan trustee…it cannot be held liable for benefits due to" the plaintiff); *Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 574 (W.D.N.Y. 1999) (holding that employer was not a proper party  because only the plan and the administrators and trustees of the plan in their capacity as such may be held liable under §502(a)(1)(B)); *Brannon v. Tarlov*, 986 F.Supp. 146, 162 (E.D.N.Y. 1997) (holding that employer was not a proper defendant to former employee's claim to recover disability benefits because only the plan or its administrators or trustees of the plan are proper defendants).

Plaintiff's argument that UTC should be considered a fiduciary under the LTD plan is somewhat misplaced.  Plaintiff suggests that since UTC is a fiduciary of the STD plan which it self-insured it should also be considered a fiduciary of the LTD plan because "the STD plan is an issue in this case."  [Dkt #20, p. 19-20]. Plaintiff contends that the STD plan is also an issue in this case because "Liberty denied LTD benefits on the ground that Spears was not disabled throughout the STD period of 180 days, while at the same time UTC found that she was disabled."  *Id.*  Here, since Plaintiff is not suing to recover benefits due under the

STD plan, her suit seeks to recover LTD benefits, it is patent from the terms of the LTD Plan and the Plaintiff admits that Liberty had sole discretion to make LTD claim determinations; UTC cannot afford the relief sought and is not a proper party to this claim.

The Complaint may be construed to assert a claim that the STD plan is only an issue in this case to the extent that Liberty's denial of Plaintiff's long term disability benefits might be arbitrary and capricious in light of the fact that UTC found that Plaintiff was disabled under the STD plan.  Consequently, UTC's determinations under the STD plan may constitute evidence that Liberty's denial of LTD benefits under the LTD plan was arbitrary and capricious.  However, the fact that UTC's STD claim determinations may be relevant to Plaintiff's claim does not make UTC a fiduciary of the LTD Plan.  The Plaintiff has failed to plead sufficient facts plausibly stating that UTC was a fiduciary of the LTD Plan and such claim is hereby DISMISSED.

### iii.     Claims against UTC Plan

Defendants also move to dismiss the UTC Plan as a Defendant because Liberty had the sole authority under the LTD Plan to make claim determinations. Although under the terms of the LTD Plan, Liberty did have the sole authority to render claim determinations, the Second Circuit in *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506 (2d Cir. 2002) unequivocally held that a plan like the UTC Plan is a also proper party to a suit under § 502(a)(1)(B).  In *Chapman*, a mentally disabled woman was denied disability benefits under her employer's plan and sued the plan itself.  First UNUM Life Insurance Company

who both fully insured the plan at issue and made claim determinations argued that the plan was not the proper party.  *Id.* at 508-09.  The Second Circuit held that the provisions of §§ 502(a)(1)(B) and 502(d)(1) &(2) "make plain that a plan can be held liable in its own name for a money judgment."  *Id.* at 509.  The Second Circuit concluded that "[w]e see no reason why such a liability should not arise upon a beneficiary's claim of entitlement to receive benefits from the plan. The Plan's argument to the effect that it may not be sued because it has contracted with First UNUM to make payments to Plan beneficiaries is wholly unsupported by the language of the statute" and noted that "[s]everal times in prior opinions we have indicated that a plan is a proper defendant in an action to recover benefits under" § 502(a)(1)(B).  *Id.* (citing *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2d Cir. 1989); *Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998)).

Defendants try to argue that *Chapman* is not controlling here citing to several other circuit and district court rulings that suggest "[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." [Dkt #14, p. 12] (quoting *Sanderson v. Continental Casualty Corp.*, 279 F. Supp. 2d 466 (D. Del. 2003)).  Defendants argue that since the UTC Plan did not control or administer the plan it is not a proper party.

However, it is axiomatic that a district court "is bound to follow controlling Second Circuit precedent unless that precedent is overruled or reversed." *Unicorn Bulk Traders Ltd. v. Fortune Mar. Enters., Inc.*, No.08Civ.9710(PGG), 2009 WL 125751, at *2 (S.D.N.Y. Jan. 20, 2009); *United States v. Emmenegger*, 329 F.Supp.3d 416, 436 (S.D.N.Y. 2004) (district court is "obliged to follow…[binding

circuit case law] until it is overruled by a higher court or until the Supreme Court renders it untenable"); *Bass v. Coughlin*, 800 F.Supp. 1066, 1071 (N.D.N.Y. 1991) ("When the Court of Appeals announces a principle of law for this circuit, it remains the law until the case is overruled or reversed.").  Here, Defendants have failed to demonstrate that the principle of law articulated in *Chapman* has been overruled or reversed.   Defendants' citation to other circuit and district court precedent is therefore unavailing.   The Court notes that this decision does not prejudice the UTC Plan as the Plaintiff cannot recover twice, both from the Plan and from Liberty for the same injury.

Defendants also try to narrow *Chapman*'s holding suggesting that a reading of the text of §502(a)(1)(B) only provides that a beneficiary can sue an employee benefit plan, but does not require that result where an insurer is also named as a defendant without citation to any authority.   [Dkt. #14, p. 14]. However, the Second Circuit in *Chapman* explained that it had previously held that "'[i]n a recovery of benefits claims, *only the plan and the administrators and trustees of the plan* in their capacity as such may be held liable'" *Chapman*, 288 F.3d at 509 (quoting *Leonelli*, 887 F.2d at 1199) (emphasis added).  Contrary to Defendants' contention, this language merely states the well-established legal principle stated above that a party may only recover once for an injury. Therefore, while the Second Circuit did hold that source of the recovery was limited to the Plan and its administrator, it nonetheless held that a suit may be brought against both the plan and insurance company administering the plan.  *See, e.g., Schnur v. CTC Comm'ns. Corp. Group Disability Plan*, 621 F.Supp.2d 96, 103 (S.D.N.Y. 2008)

(rejecting defendants' argument that that the plan's insurer was the only proper party and holding that the Plaintiff had properly named the plan as a party to the action along with the insurer); *Steger v. Delta Airlines, Inc.*, 382 F.Supp.3d 382, 387 (E.D.N.Y. 2005) (holding that the Administrative Committee, as the designated administrator of the Plan, and the Plan are the only viable defendants in the action).

Bound to follow *Chapman*'s edict that a plan is a proper party defendant along with the plan administrator in a suit to recover benefits under § 502(a)(1)(B), the Court DENIES Defendants' motion to dismiss the UTC Plan as a Defendant in this action.

### iv.    Motion to strike Plaintiff's request for extra contractual damages

Defendants have moved to strike Plaintiffs' request for extra-contractual damages on the ground that such damages are unavailable under ERISA.  The Federal Rules of Civil Procedure provide that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

In her complaint, Plaintiff seeks "restitution . . . in the amount of any losses sustained by [Plaintiff] in consequence of the wrongful conduct alleged herein" and for "such other relief as the Court deems just, reasonable, or equitable." [Dkt #1, Complaint pp. 12-13].  Plaintiff argues that this relief requested is permissible equitable relief under the Supreme Court's decision in *Amara*.   However since the Court has dismissed Plaintiff's claim for equitable relief under §502(a)(3),

Plaintiff's request for restitution and other equitable relief has been rendered immaterial.  The Court therefore grants Defendants' motion to strike Plaintiff's request for equitable remedies from the complaint.

<u>Conclusion</u>

Defendants' Motion to Dismiss [Dkt. #13] is GRANTED IN PART and DENIED IN PART.  Defendants' motion to strike Plaintiff's request for extra-contractual or equitable remedies from the complaint is also GRANTED.  The Clerk is directed to terminate UTC as a Defendant in this action.

IT IS SO ORDERED.


_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut August 3, 2012