# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT

_____
:
**HALEY SPEARS**                                :
    **Plaintiff,**                              :
                                 :  **Civil No. 3:11-cv-01807 (VLB)**
**v.**                                           :
                                 :
**LIBERTY LIFE ASSURANCE**                       :
**COMPANY OF BOSTON**                            :
**AND THE GROUP LIFE INSURANCE**                 :
**AND DISABILITY PLAN OF UNITED**                :
**TECHNOLOGIES CORPORATION a/k/a**
**THE UTC CHOICE INTEGRATED**                    :
**DISABILITY BENEFIT PROGRAM**                   :  **March 21, 2016**
    **Defendants.**                             :
_____ :

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO REINSTATE SUMMARY JUDGMENT MOTION TO DOCKET

Pursuant to D. Conn. L. Civ. R. 7(a), Defendants Liberty Life Assurance Company Of Boston ("Liberty") and The Group Life Insurance and Disability Plan Of United Technologies Corporation A/K/A The UTC Choice Integrated Disability Benefit Program ("the Plan") (collectively, "Defendants"), by and through their undersigned counsel, hereby respectfully submit this Memorandum Of Law In Opposition To Plaintiff's Motion To Reinstate Summary Judgment Motion To Docket ("Motion"). Plaintiff Haley Spears ("Plaintiff") alleges that Liberty wrongfully denied her claim for long-term disability ("LTD") benefits under the Plan in violation of § 1132(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, <u>et</u> <u>seq</u>. On March 31, 2015, this Court issued an 82-page ruling on the parties' cross-motions for summary judgment, finding Liberty's decision to be arbitrary and capricious and remanding the

matter back to Liberty for further review (the "Ruling"). (Docket No. 103.) The crux of Plaintiff's motion is that Liberty has failed to render a timely decision on remand and, in fact, has acted in "bad faith." (Pl.'s Mot. at 3.) Plaintiff's motion is both premature and disingenuous. In fact, Liberty has been diligently and appropriately reviewing this matter on remand, determining whether to pursue an immediate or interlocutory appeal, engaging with Plaintiff's counsel about possible settlement, regularly communicating with Plaintiff's counsel about the status of the remand review and the information it needs to complete that review, and is close to rendering a decision. Plaintiff, on the other hand, has failed to cooperate in the remand review and, indeed, bears substantial responsibility for any delay in Liberty's ability to render a final determination.

On remand, Liberty has requested medical records from the <u>twenty-seven</u> medical providers identified by Plaintiff, obtained a peer review of Plaintiff's <u>4,500-page</u> disability claim file provided by a team of four independent physicians with appropriate board specialties, and scheduled – and re-scheduled – Plaintiff for an IME as required by this Court's Ruling. Liberty has remained in regular contact with Plaintiff's counsel throughout this long and arduous process, keeping her apprised of the developments in its review and encouraging her to provide the medical records and other information it needed to provide a full and fair review. Plaintiff, on the other hand, has demanded – long after the review process began – that Liberty foreshorten its review of her claims even though she has failed to produce medical records from three physicians she identified on remand, despite repeated requests from Liberty, and resisted Liberty's attempts

to schedule the independent medical examination ("IME") strongly recommended by the Court. Further, Plaintiff belatedly attempted to add conditions for the IME and, last month, two days after she filed the instant motion, simply failed to attend the IME that had been scheduled for the previous three weeks. At Plaintiff's counsel's request, that IME was rescheduled – and finally conducted – on March 14, 2016.

Now that Liberty has almost completed its complicated remand review, Plaintiff seeks to stop the review process and asks this Court to make a decision on a supplemental administrative record under the *de novo* standard of review, thereby depriving Liberty of its express discretionary authority to make the remand determination. We describe below the events that have occurred through the date of the instant motion to provide the Court with a full sense of the context of Liberty's progress in the review on remand and the premature and disingenuous nature of Plaintiff's Motion.

I.   <u>FACTS</u>

The Court entered judgment on March 31, 2015 (Doc. No. 104). Counsel for Liberty thereafter began analysis of the Ruling, as well as Second Circuit case law, to evaluate whether Liberty should consider filing a motion for reconsideration or an appeal. (Affidavit of Sarah Baskin Dated March 21, 2016 (hereafter, "Baskin Affidavit"), attached hereto as Exhibit 2, ¶ 2.) After considerable analysis and evaluation, Liberty ultimately determined not to pursue and immediate or interlocutory appeal.

Liberty's appeal deadline expired Thursday, April 30, 2015. Thereafter, through the end of July 2015, counsel engaged in communications about possible settlement. (Baskin Affidavit ¶ 2.)[1] On July 24, 2015, Liberty advised Plaintiff's counsel that Liberty would be initiating the review on remand, and requested Plaintiff to provide all additional information she wished to be reviewed, as well as more detailed information regarding Plaintiff's return to employment. This letter also requested Plaintiff to complete several standard LTD forms[2] and return them by August 24, 2015. Counsel also advised that Liberty would provide additional time for Plaintiff's response, if necessary. (Liberty004575-Liberty004576[3].)

With respect to the deadlines for the remand review, Liberty's July 24, 2015 letter stated as follows:

> Although ERISA does not prescribe Liberty Life's deadline for review of the evidence in support of Plaintiff's claims, it will strive to follow the appeal review deadlines set forth in the Regulations. Once Liberty Life receives this evidence, it will strive to review Plaintiff's claim for benefits within a reasonable period of time, but not later than 45 days after receipt of that evidence. If Liberty determines that special circumstances exist and an extension is needed, it may take up to an additional 45 days to decide the appeal. However, before taking the extension, it will notify you in writing during the first 45-

---

[1] All information provided herein relating to settlement discussions is submitted pursuant to Fed. R. Evid. 408(b) (providing, as an exception to the general prohibition of receipt of evidence relating to statements or conduct in the course of attempts to reach a compromise of claims, that such evidence may be considered, among other reasons, for purposes of "negating a contention of undue delay").

[2] The forms consisted of an Activities Questionnaire, a Claimant Information Form, a Family Information Questionnaire, a Claimant Supplementary Statement and a Medical Records Release form.

[3] Citations to Bates numbered documents in this memorandum designated Liberty00# are citations to portions of the administrative record on remand, attached hereto as Exhibit 4.

day period explaining the special circumstances, and the date by which it expects to make the decision.

(Liberty004576.)

On July 29, 2015, Plaintiff's counsel advised Liberty's counsel that the forms referenced in the letter of July 24, 2015 had not been enclosed. Liberty's counsel responded via email on the same date, as follows: "I'm sorry. I have been out of state dealing with family issues.[4] I will obtain copies of the referenced forms and try to reach out to you on Thursday or Friday." (Baskin Affidavit ¶ 2.) Liberty's counsel provided the missing forms via email on July 30, 2015, requesting that Plaintiff return the completed forms, "along with all additional evidence you wish to be considered by Liberty on remand, at the address shown above on or before August 31, 2015." Counsel again assured Plaintiff's counsel that this deadline could be extended if Plaintiff needed more time. (Id.)

Two days after her deadline for providing Liberty with documents relevant to the remand review, on August 26, 2015, Plaintiff's counsel provided the wage information Liberty requested, but asked Liberty to justify why it was asking Plaintiff to complete "new forms and a blank authorization which does not identify names of specific medical providers." (Liberty004556-Liberty004558.) On September 1, 2015, Plaintiff's counsel sent a letter to Defendant's counsel, stating as follows:

> I am in receipt of your letter of September 1, 2015. In it you state that "Ms. Spears has failed to submit any documentation in support of her claim for disability benefits for the past four years." As you

_____

[4] During the period between June to July 2015, Liberty's lead counsel was out of the office periodically due to the unexpected death of her father and her mother's subsequent six-week hospitalization out of state.

5

**know, Ms. Spears has not submitted such documentation because we have been in Federal Court litigation after Liberty improperly disclaimed coverage. After it denied coverage, Liberty made it quite clear that its focus was on its belief that Ms. Spears did not meet the elimination period and therefore was not entitled to LTD benefits. After several years of litigation, the court has now determined that Liberty's denial of benefits was improper. Clearly, Liberty has not been waiting for four years for these forms, as your letter implies. Liberty has only recently requested another authorization and more forms, and has given Ms. Spears an arbitrary deadline in which to provide those documents.**

**That being said, we will need an extension of time past the September 15, 2015 date in which to provide these forms. You may provide a copy of this letter to the Liberty "remand decisionmaker."**

(Liberty004553.)

Also on September 1, 2015, Liberty responded to Plaintiff's counsel's August 26, 2015 letter by explaining, consistent with the Court's remand instructions[5], (Ruling, Docket No. 103, at 79), that Liberty must complete a full and fair review of Plaintiff's disability claim on remand, which required her cooperation in providing all information that might be relevant to that analysis. (Liberty004554-Liberty004555.) Liberty further explained its request as follows:

**… The last medical records Ms. Spears submitted were dated April 2011. Ms. Spears now claims that she was Disabled through July 2014 and Partially Disabled from August 2014 through April 2015. Nevertheless, Ms. Spears has failed to submit any documentation in support of her claim for disability benefits for the past four years. …**

(Liberty004554.) Liberty agreed to extend Ms. Spears's deadline for completing the requested forms and submitting additional evidence she wished to be considered on remand by three weeks, to September 15, 2015, and again offered

---

[5] The Court's Ruling expressly required Liberty to "permit[] Spears 'to submit written comments, documents, records, and other information relating to the claim for benefits'" in order to conduct a full and fair review. (Ruling, Docket No. 103, at 79.)

to give her additional time to provide this information if she needed it. (Liberty004555.) Finally, Liberty stated, "If Ms. Spears declines to provide the requested information, Liberty will make its determinations based solely on the information contained in its claim file." (Id.)

By letter dated September 10, 2015, Plaintiff's counsel provided Liberty with Ms. Spears' completed LTD Forms. (Liberty004542-Liberty004552.) On the Claimant Information Form, Ms. Spears identified <u>more than twenty</u> medical providers. (Liberty004550-Liberty004552.) On September 16, 2015, Plaintiff's counsel identified <u>three more</u> medical providers seen by Ms. Spears. (Liberty004539.)

By letters dated October 20 and 21, 2015, Liberty's appeal review consultant, Nancy Winterer, requested medical records through March 31, 2015 from the <u>twenty-seven</u> medical providers Ms. Spears had identified on remand to date. (E.g., Liberty003184, Liberty004307.) On October 21, 2015, Ms. Winterer sent an update to Plaintiff's counsel, notifying her that Liberty had requested medical records from the twenty-seven medical providers identified by Ms. Spears, with responses due by November 9, 2015. Liberty included copies of the medical records requests, and asked Plaintiff's counsel to follow up with Ms. Spears' medical providers to be certain they responded to Liberty's requests. (Liberty004309-Liberty004310.) The October 21, 2015 letter also stated as follows:

> This letter is regarding the status of the appeal for Haley Spears' Long Term Disability benefits, as remanded by the US District Court. The claim documentation for this appeal review was received in this office on October 14, 2015. Thus, day 45 of this appeal review is November 26, 2015.

> **Based on the Claimant Information Form completed by Ms. Spears on September 8, 2015, the period of seven years from Ms. Spears' date of disability through her full time return to work, and our initial review of this claim, it is determined additional medical information is needed for this appeal review**. Therefore, on October 20, 2015 and October 21, 2015, requests were sent to 27 medical providers for copies of their treatment records. Copies of the requests are enclosed.
>
> Liberty Life sent these requests for treatment records as a courtesy, and <u>we require you to follow up with Ms. Spears' providers to be certain they respond to Liberty Life's request</u>. All records are requested by November 9, 2015.
>
> Under the Employee Retirement Income Security Act (ERISA), an appeal determination should be rendered within 45 days of receipt of appeal, unless there are special circumstances beyond Liberty's control which require a delay in making a determination. If additional time is needed, ERISA allows for a 45 day extension to evaluate and render an appeal decision. <u>The days allowed for receipt of the additional medical documentation are days tolled and are not counted in the 90 day appeal review period. Therefore, the days from October 20, 2015 through the date all the necessary documentation is received, are days tolled and not counted in the 90 day Appeal timeframe.</u>

(Liberty004309.) Plaintiff's counsel never objected to Liberty's calculation of the appeal period or the tolling of that appeal period pending receipt of all the necessary documentation. Nor did she object to the scope of the medical record requests. Indeed, by correspondence dated October 22, 2015, Plaintiff's counsel wrote to Liberty's counsel, via email, as follows: "I received a letter today from Liberty requesting my assistance in following up with Haley's medical providers so that they respond to Liberty's request. I will be glad to do so, but can you provide me with the names of those providers who have not yet responded?" (Baskin Affidavit ¶ 2.)

Ms. Winterer provided Plaintiff's counsel with an update regarding the

medical records it had received from Ms. Spears' medical providers on October 22, 2015. (Liberty004306.) Thereafter, on November 19, 2015, Plaintiff's counsel contacted Ms. Winterer to determine whether Liberty had received all of the requested medical records. Ms. Winterer advised that Liberty had not received a response from Dr. Raxlen and that she would send Plaintiff's counsel a list of other providers from whom medical records had not yet been received. Plaintiff's counsel said she would follow up with Ms. Spears' medical providers to obtain the medical records. (Liberty002281 (Phone Note 10).) As promised, Ms. Winterer provided Plaintiff's counsel with an update, via correspondence dated November 24, 2015, regarding the medical providers from whom she had not received records. (Liberty002600-Liberty002601.) Those providers included Dr. Raxlen, who treated Ms. Spears from April 21, 2009 through at least July 8, 2010; Dr. Donaldson, whom Plaintiff had seen at least once in January 2009; Dr. Lori Fitts, Dr. Gaurab Basu, and Taliarini Chiropractic. (Liberty002600.) Again, Liberty reminded Plaintiff's counsel that its deadline for providing a remand decision had been tolled since October 20, 2015, pending receipt of the requested medical records. (Id.) Again, Plaintiff's counsel never objected to the tolling of the appeal period pending receipt of all the necessary documentation.

By letter dated December 1, 2015, Ms. Winterer sent a letter to Plaintiff's counsel, enclosing a Training-Education-Experience Form ("TEE Form") that was inadvertently omitted from the initial set of LTD Forms Liberty sent to Plaintiff's counsel in July 2015. (Liberty002479.) Ms. Winterer apologized for any inconvenience this may have caused. (Id.) Plaintiff's counsel returned the TEE

Form to Liberty on December 7, 2015. (Liberty002475-Liberty002477.)

A month and a half after Plaintiff's counsel received Liberty's October 21, 2015 letter and requests for medical records through March 31, 2015, Plaintiff's counsel asked Liberty to extend the scope of its review to consider Ms. Spears' eligibility for benefits from her date of disability, as follows:

> I am in receipt of your letter dated November 24, 2015. The letter states that you did not receive a response from Dr. Raxlen. We have already provided these records to you. We will follow up with your request to the additional medical providers. ***Please be advised that Ms. Spears is no longer working. She last worked in August 2015.[6] She is seeking additional medical treatment. The October 21, 2015 letter implies that Liberty is only looking at a claim for the period of seven years. Based on Spears' recent decline in health, Liberty should not limit its consideration of this claim to a seven year period.*** If Spears had not been improperly terminated from disability benefits, she could have taken advantage of Liberty's work incentive/rehabilitation benefit program. That program is designed to return employees to active employment while they continue their disability benefits. That program could have assisted Spears in a gradual return to work through a modified work schedule, job adaptation or new skills training. Unfortunately, she did not have the advantage of this program when she attempted to return to work.

(Liberty002475 (emphasis added).)

By letter dated December 10, 2015, Ms. Winterer asked Plaintiff's counsel to provide earnings information for the period June 1, 2015 through Plaintiff's last day of work, because the last information Plaintiff had provided regarding her return to employment extended only through May 2015. (Liberty002474.) She also notified Plaintiff's counsel that she had received the TEE Form, as well as medical

---

[6] During settlement negotiations in June 2015, Plaintiff's counsel confirmed Plaintiff had returned to work at least on a part-time basis in August 2014 and, by April 2015, she was making more money than she had made when she worked at United Technologies Corporation ("UTC"). (AR70; Baskin Aff. ¶ 3 & Ex. A.) When she was at UTC, Plaintiff's monthly salary was $4,421.92. (AR70.) By April 2015, Plaintiff was making $4,658. (Baskin Aff. ¶ 3 & Ex. A.)

records from Dr. Raxlen. (Id.) Finally, she notified Plaintiff's counsel that she had not yet received medical records from the following medical providers listed in Ms. Spears' Claimant Information Form dated September 8, 2015, including Dr. Donaldson, Dr. Fitts, Dr. Basu and Taliarini Chiropractic. (Id.) She reminded Plaintiff's counsel that she had requested this documentation by December 16, 2015, but offered to give Plaintiff's counsel additional time to submit this information if necessary. (Id.)

On December 17, 2015, the day after Plaintiff's counsel's deadline for submitting additional medical records, Ms. Winterer contacted Plaintiff's counsel to discuss status of the additional medical records she intended to submit for appeal review. (Liberty002280 (Phone Note 11).) Plaintiff's counsel stated her office was still waiting on medical records from three or four additional physicians. (Id.) She also asked Liberty to consider medical records from yet another new physician with whom Ms. Spears had scheduled an upcoming appointment. Ms. Winterer proactively asked Plaintiff's counsel if she would agree to a specific date for all medical records to be submitted to Liberty, but Plaintiff's counsel could not give Ms. Winterer a definitive response, because she wanted to speak to Ms. Spears first. (Id.)

On December 31, 2015, Ms. Winterer called Plaintiff's counsel again to determine when Ms. Spears' appointment with the new physician was and to discuss the deadline by which Plaintiff's counsel would submit the remaining medical records and to establish a date for the appeal to move forward. (Liberty002280 (Phone Note 12).) Plaintiff's counsel did not return Ms. Winterer's

call for almost two weeks, until January 11, 2016, when Ms. Winterer was out of the office. (Liberty002279-Liberty002280 (Phone Note 13).) Also on January 11, 2016, Plaintiff's counsel faxed an office visit note from Plaintiff's new endocrinologist regarding a doctor's appointment she had in December 2015. (Liberty002316.)

Ms. Winterer called Plaintiff's counsel back on January 12, 2016. (Liberty002279-Liberty002280 (Phone Note 13).) During that call, which took place a day after Plaintiff's counsel submitted additional medical records to Liberty, Plaintiff's counsel again changed her request about the scope of the remand review and stated, contrary to the position she took during the preceding three weeks and contrary to the position she took in her motion for summary judgment, she did not want current medical records to be considered in Liberty's appeal review, because Ms. Spears was seeing new physicians and having new tests. (Cf. id. with Liberty002279-Liberty002280 (Phone Note 13); Liberty002316.) Plaintiff's counsel requested that the appeal for the 2009 LTD denial be decided based on the medical records in the file through 2015. (Liberty002279-Liberty002280 (Phone Note 13).) When Ms. Winterer asked Plaintiff's counsel about the missing records from the three or four providers from Ms. Spears' Claimant Information Form completed in September 2015, Plaintiff's counsel kept stating she did not want current medical records to be included in the appeal review. Ms. Winterer attempted to point out that those records might be from the 2009 time period. Again, Plaintiff's counsel reiterated her desire that the review not consider current medical records, but instead focus on the medical records in

the file as of the end of December 2015. (Id.) Plaintiff's counsel stated she would fax a statement to make her position clear. (Id.)

By letter dated January 12, 2016, Ms. Winterer sent Plaintiff's counsel yet another update, stating that she had not yet received medical records from the following medical providers listed in Ms. Spears' Claimant Information Form dated September 8, 2015: Dr. Donaldson, Dr. Fitts and Dr. Basu. (Liberty002326.) By letter dated that same date, Plaintiff's counsel requested that Liberty "make a decision regarding Ms. Spears' disability claim" based on the records in its files, but reserved the right to add additional documents to the record if Liberty reinstated Ms. Spears' benefits. (Liberty002324.) Consequently, January 12, 2016 was the first date on which Liberty knew that Plaintiff's counsel was unwilling to submit any additional medical records in support of Ms. Spears' claim, even records that clearly fell within the scope of the remand review. It was also at this point that Liberty first knew that it probably would not be receiving additional records and that, consequently, it had a "complete" claim file, at least from Plaintiff's perspective, that it could send to independent peer reviewers and an IME physician for their review in accordance with the Court's order.

By letter dated January 25, 2016, Ms. Winterer asked Plaintiff's counsel whether Ms. Spears would agree to attend an IME in light of Plaintiff's counsel's stated position regarding the irrelevance of current medical records to the remand review, as follows:

> My recollection from this conversation is that you advised you are not going to submit any further medical documentation in support of Ms. Spears' appeal. I also recall that you stated that you did not want current medical documentation considered in this appeal review,

> only documentation submitted through December 31, 2015.
>
> Taking into account the Court's recommendation that Liberty "would be well advised, upon reconsideration, rather than simply conducting a paper review of [Spears'] claim, to have an independent medical examination performed on [Spears]...", Liberty is planning to have Ms. Spears attend an Independent Medical Examination (IME).
>
> In light of your comments however, prior to scheduling the IME, we want to confirm that Ms. Spears agrees to attend an IME. In the interest of time, please advise me by Wednesday February 3, 2016, as to whether Ms. Spears is willing to attend an IME.

(Liberty002315.)

On January 29, 2016, Liberty sent Ms. Spears' entire claim file, including approximately 4,500 pages of documents, to an independent third-party vendor, requesting independent peer reviews from physicians board certified in appropriate board specialties. (Libert002279 (Claim Note 48).)

Plaintiff's counsel resisted Liberty's attempts to obtain an IME, even though the Court had strongly indicated an IME should be conducted. (Ruling, Docket No. 103, at 78-79.). On February 1, 2016, two days before the deadline for responding to Liberty's letter regarding the IME, Plaintiff's counsel contacted Ms. Winterer and questioned whether the IME would be used to assess Ms. Spears' disability as of 2008/2009 or the present. Ms. Winterer replied that she would request the IME physician to review all medical records, as required by the Court's order, as well as to examine Ms. Spears. Ms. Winterer and Plaintiff's counsel discussed and agreed on the specialty of the IME physician, Physical Medicine and Rehabilitation, and that it would be scheduled through an independent vendor. Plaintiff's counsel agreed to call Ms. Spears to discuss the IME and get back to Ms. Winterer. Ms. Winterer reiterated the February 3, 2016

deadline for providing a response about Ms. Spears' attendance at an IME. Plaintiff's counsel said she would do what she could to get back to Ms. Winterer by February 3, 2016. (Liberty002279 (Phone Note 14).)

By letter dated February 2, 2016, Ms. Winterer again contacted Plaintiff's counsel regarding its requested IME. (Liberty002309.) In that letter, Ms. Winterer stated as follows:

> You called regarding Liberty Life's plan to have Ms. Spears attend an Independent Medical Examination (IME). We discussed the purpose of the IME is due to the Court's recommendation, and to have Ms. Spears' medical condition as of 2008 and 2009 as well as her current condition, assessed by way of the examiner's review of all the medical records and physical examination.
>
> Liberty Life is requesting that you advise us in writing, whether Ms. Spears agrees to attend an IME. Time is of the essence in this matter and the IME needs to be arranged as soon as possible.

(Id.) Ms. Winterer extended Plaintiff's counsel's response deadline to February 5, 2016. (Id.)

By letter dated February 4, 2016, a day after the initial deadline, Plaintiff's counsel notified Liberty that Ms. Spears would attend an IME but asked whether Ms. Spears could bring another person with her to the exam. (Liberty002306.) By letter dated February 9, 2016, Ms. Winterer responded that "Ms. Spears may be accompanied to the IME, however, that person would need to stay in [sic] waiting room and not be present during the actual examination." (Liberty002305.) Also on February 9, 2016, Ms. Winterer requested the scheduling of an IME through an independent third-party vendor with a physician specializing in Physical Medicine and Rehabilitation. (Libert002279.) The IME was scheduled for February 29, 2016. (Liberty002295.)

Plaintiff's counsel waited until February 27, 2016, eighteen days after Liberty's letter regarding a third party's attendance at the IME and two days before Ms. Spears was scheduled to attend the IME, to object to Liberty's decision not to allow another person to be present in the examination room during the IME. (Liberty002292.) For the first time, she insisted that the IME be videotaped:

> There is no provision in the LTD plan which bars Ms. Spears from having another person present in the exam room or videotaping the exam. Your letter does not cite to such a provision. Liberty Life cannot impose conditions on this exam if the plan does not authorize it to do so.

> Please advise which records Liberty provided to the IME doctor. If complete records were not provided, we will provide them to the doctor.

(Liberty002292.)

On the same date, Plaintiff's counsel filed the instant motion, asking this Court to stop Liberty's remand review entirely, seeking to bypass both the independent peer reviews and the IME she had agreed to, and to issue a decision de novo regarding the question of whether Ms. Spears was entitled to LTD benefits. (Docket No. 105.) Perhaps unsurprisingly, Ms. Spears did not attend the IME scheduled two days later, on February 29, 2016. (Liberty002278 (Claim Note 53).) Instead, almost four hours after the IME was scheduled to take place, Plaintiff's counsel faxed a letter to Liberty, stating that Ms. Spears was unable to attend the scheduled IME "due to a family emergency" and asking that the IME be rescheduled for mid- to late-March 2016, thereby delaying resolution of the remand review by weeks, if not an entire month. (Liberty002291.)

By letter dated March 1, 2016, Ms. Winterer responded to Plaintiff's counsel's correspondence dated February 27 and 29, 2016, as follows:

> Ms. Spears [sic] disability claim file currently contains over 4700 pages of medical documentation. A complete copy of the medical documentation on file was sent for the IME physician's review.
>
> Ms. Spears is covered under a group disability income policy sponsored by her employer, and which is governed by the Employee Retirement Income Security Act (ERISA). We respectfully disagree with your position that we must allow Ms. Spears to videotape the IME. The United Technologies Corporation Group Disability Income Policy contains the following provision related to Examinations:
>
> > Examination
> >
> > Liberty, at its own expense, may have the right and opportunity to have a Covered Person, whose Injury or Sickness is the basis of a claim, examined or evaluated at reasonable intervals deemed necessary by Liberty. This right may be used as often as reasonably required.
>
> We are unable to agree to your request to have third parties or videographers present during the IME. It will interfere with the independent nature of the examination to have third parties present during the examination. If Ms. Spears agrees to attend the IME we will agree to provide her with transportation and if she wishes to have you or a third party accompany her to the IME, we would request that you or the third party remain in the waiting room while the IME is conducted and Ms. Spears could consult with you or the third party in the waiting room, if necessary.
>
> At this time, we are proceeding to reschedule the IME. MCN will contact you directly regarding that appointment.

(Liberty002289-Liberty002290.) Plaintiff's IME was rescheduled for, and occurred on, March 14, 2016. (Liberty002278 (Claim Note 54).) The results of the IME usually take one to two weeks and are therefore not expected before the end of March.

## II.   ARGUMENT

### A.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION AS A PROCEDURAL MATTER, BECAUSE PLAINTIFF CANNOT MEET THE STANDARD FOR RE-OPENING THIS CASE UNDER RULE 60(B).

Although the plaintiff has styled this motion as a motion to reinstate summary judgment motion to the docket, the court has already entered judgment in this case, (Docket No. 104). Consequently, Plaintiff's request is most reasonably construed as a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e) or for relief from judgment pursuant to Fed. R. Civ. P. 60(b). A motion under Fed. R. Civ. P. 59(e) must be filed no later than 28 days after the entry of judgment. Plaintiff has failed to meet this deadline. Consequently, Plaintiff must meet the more stringent standard under Fed. R. Civ. P. 60(b). Since relief from a judgment under Rule 60(b) is "extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). "A motion for relief from judgment is generally not favored." United States v. International Brotherhood of Teamsters, 247 F.3d 370, 391 (2d Cir.2001). For the reasons discussed below, Plaintiff has failed to allege facts demonstrating extraordinary circumstances warranting relief.

### B.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION, BECAUSE IT IS BOTH PREMATURE AND DISINGENUOUS.

In her Motion, Plaintiff asks this Court to stop the remand review process and make a decision on a supplemental administrative record under the *de novo* standard of review, thereby depriving Liberty of its express discretionary authority to make the remand determination. (Pl.'s Mot. at 2-3.) Plaintiff's Motion is both premature and disingenuous.

The above lengthy detail of Liberty's activities during the remand review conclusively demonstrates that Liberty has not "acted in a dilatory and bad faith manner" as Plaintiff alleges, (Pl.'s Mot. at 3). The Appeal Review Consultant has requested medical records from the twenty-seven medical providers Plaintiff identified on remand, obtained an independent peer review report from four appropriately credentialed specialists, and scheduled an IME as strongly recommended by the Court's Ruling. Moreover, it is plain that Liberty kept in contact with Plaintiff's counsel, accommodated Plaintiff's counsel's requested extensions, and conscientiously ensured that Plaintiff's counsel had provided all documents she wanted to be considered and that she did not need additional time to provide additional medical records. Yet Plaintiff demands not only that this Court re-open the litigation, which the Ruling authorizes, but also that it (1) make a decision on a supplemental administrative record under the *de novo* standard of review, (2) award prejudgment interest, which is not authorized by the Ruling, and (3) grant her penalties under ERISA Section 502(c), because Liberty provided a peer review report to her counsel at most six days late and declined to provide its internal guidelines during the pendency of her original administrative claim.[7] Notably, Plaintiff fails to cite to any controlling precedent for this demand. Under all the circumstances, Plaintiff simply has failed to demonstrate that she is entitled to such draconian relief.

---

[7] These guidelines were produced subject to protective order in this action in December 2012.

C.   **LIBERTY IS IN SUBSTANTIAL COMPLIANCE WITH ANY DEADLINES THAT MIGHT APPLY TO THIS MATTER.**

As a preliminary matter, we note the Court did not itself set any deadlines for the review on remand. Moreover, the ERISA regulations (29 C.F.R. 2560-503-1) do not explicitly apply to remands such as this one. Regardless, Liberty is in substantial compliance with the regulations under all the circumstances of this case.

1.   **Under the Revised ERISA Regulations, Liberty's Deadline to Resolve an Appeal Was Tolled By Plaintiff's Failure To Provide Requested Documents And Her Delay In Participating in the IME.**

Plaintiff's efforts to sidestep the remand review process, which is based on old and wholly inapplicable ERISA regulations, and case law that relies on those outdated regulations, (Pl.'s Mot. at 2-3), must fail. In 2000, the Department of Labor amended ERISA's regulations to expressly toll a plan administrator's deadline for making a benefit termination "due to a claimant's failure to submit information necessary to decide a claim" "until the date on which the claimant responds to the request for additional information." 29 C.F.R. § 2560.503-1(f)(4); see also Nichols v. Prudential Ins. Co., 406 F.3d 98, 108, 101 n.1 (2d Cir. 2005). By letter dated October 21, 2015, Liberty notified Plaintiff that it was seeking medical records from the twenty-seven medical providers Plaintiff identified on remand. (Liberty004309.) At the same time, consistent with ERISA's current regulations, Liberty notified Plaintiff that "[t]he days allowed for receipt of the additional medical documentation are days tolled and are not counted in the 90 day appeal review period. Therefore, the days from October 20, 2015 through the date all the

necessary documentation is received, are days tolled and not counted in the 90 day Appeal timeframe." (Id.) Liberty then worked proactively with Plaintiff's counsel to obtain medical records from those twenty-seven medical providers. See discussion supra part I. At no time did Plaintiff's counsel suggest that Liberty's calculation of its deadline for rendering a determination was incorrect or that this deadline was not tolled by ERISA's regulations. She cannot now, for the first time, when Liberty is nearing the completion of its painstaking and arduous remand review of Plaintiff's 4,500-page claim file, simply say that Liberty's determination is untimely. Indeed, one of the tests the Second Circuit has applied in ruling on a Rule 60(b) motion for relief from judgment is whether the moving party has shown good cause for failing to act sooner. E.g., Kotlicky v. United States Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987). Plaintiff has not even claimed that she had good cause for failing to act sooner, let alone shown good cause for doing so.

      2.    **Even If Liberty Has Failed To Comply With Any Express Or Implied Deadlines For Its Remand Review, It Is In Substantial Compliance With The Regulations, The Terms Of The Policy, And This Court's Remand Order.**

It is clear that Liberty, at the very least, has been in substantial compliance with the regulations, the terms of the Policy, and this Court's remand order. See Pava v. Hartford Life & Accident Ins. Co., 2005 U.S. Dist. LEXIS 41753 at *30-31 (E.D.N.Y. Aug. 23, 2005)[8] (finding administrator to be in substantial compliance with the regulations where it identified appeals that might warrant additional scrutiny and began in good faith to investigate and consider claim within a period

_____

[8] Copies of all unpublished opinions cited herein are provided at Exhibit 5.

manifesting substantial compliance with the regulatory limits and notified the claimant it was doing so); Baackes v. Kaiser Found. Health Plan Inc., 990 F. Supp. 2d 228, 239-40 (N.D.N.Y 2014) (same) (citing Pava).

Indeed, it is plain that Liberty has recognized that this case "warrant[s] additional scrutiny," Pava, at *30, given the vast number of medical records' and medical providers involved, and has striven in good faith to ensure the claim file contains all relevant medical records, that those records are reviewed by peer reviewers with appropriate board specialties and that Plaintiff undergo an IME as strongly recommended by the Court. See discussion supra part I. Under all the circumstances, Plaintiff's demand is both premature and disingenuous. Accordingly, Defendant respectfully requests that the Court deny the instant motion.

     **D.**    **ANY ALLEGED FAILURE TO COMPLY WITH THE DEADLINES SET FORTH IN ERISA'S REGULATIONS DOES NOT WARRANT *DE NOVO* REVIEW.**

        **1.**    **The Arbitrary And Capricious Standard Applies to a Plan Administrator's Determination, Even If The Plan Administrator Fails To Follow Its Claims Procedures.**

The Second Circuit has not reached a decision as to whether the court should review ERISA claims *de novo* in light of a plan administrator's alleged violations of the current ERISA regulations. See Halo v. Yale Health Plan, 546 Fed. Appx. 2, 2013 U.S. App. LEXIS 19232 (2d Cir. Sept. 18, 2013) (declining to reach question of whether alleged violations of ERISA regulations entitled plaintiff to *de novo* review). This Court and the majority of other district courts within the Second Circuit that have addressed this issue, however, have held that the

arbitrary and capricious standard applies, even if the plan administrator fails to follow its claims procedures. E.g., Halo v. Yale Health Plan, 49 F. Supp. 3d 240, 257 (D. Conn. 2014) (applying arbitrary and capricious standard); Rao v. Life Ins. Co. of N. Am., 100 F. Supp. 3d 210, 223-24 (N.D.N.Y. 2015) (same); Wedge v. Shawmut Design & Constr. Grp. Long Term Disability Ins. Plan, 2013 U.S. Dist. LEXIS 129119 at *18 (S.D.N.Y. Sept. 10, 2013) (current ERISA regulations seem to "take no position on whether a claim is approved or denied upon the expiration of the regulatory time period and, therefore, do not terminate an administrator's authority to exercise its discretion").

In support of the opposite proposition, Plaintiff relies on the Second Circuit's decision in Nichols v. Prudential Ins. Co., 406 F.3d 98 (2d Cir. 2005). (Pl.'s Mot. at 2-3.) What she fails to note, however, is that the Nichols decision expressly relied on ERISA's old regulations under which a plaintiff's benefit claim was "deemed denied" if a plan administrator failed to decide the claim within the applicable time limits. Nichols, 406 F.3d at 105. "[T]he Nichols court 'reasoned that when a plaintiff's benefit claim was 'deemed denied' because the plan had not decided her claim within the applicable time limits there was no 'exercise of discretion' to which to give 'deferential review.'"" Halo v. Yale Health Plan, 49 F. Supp. 3d 240, 256 (D. Conn. 2014) (citation omitted). The regulations upon which Nichols relied, however, were significantly amended in 2000 to read as follows:

> In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that

would yield a decision on the merits of the claim.

29 CFR 2560.503-1(l). This provision says nothing about the standard of review. Furthermore, "the U.S. Supreme Court has recently cast doubt on the continued vitality of <u>Nichols</u>, rejecting the Second Circuit's decision to apply *de novo* review in an unrelated case where the plan administrator had previously construed the terms of the plan in a manner that violated ERISA." <u>Rao v. Life Ins. Co.</u>, 100 F. Supp. 3d 210, 223 (N.D.N.Y. 2015) (citing <u>Conkright v. Frommert</u>, 559 U.S. 506, 513, 130 S. Ct. 1640, 176 L. Ed. 2d 469 (2010) (rejecting a "one-strike-and-you're-out" approach to review of a plan administrator's denial of benefits)).

Even if <u>Nichols</u> were somehow relevant to the question at hand, it would not support the proposition Plaintiff cites it for, that "'the deadlines play a crucial role' and that they 'empower the claimant to call a halt to the evidence-gathering process and insist on an up or down decision on the record as it stands.'" (Pl.'s Mot. at 2.) <u>Nichols</u>, however, quoted this language from the Tenth Circuit's decision in <u>Gilbertson v. Allied Signal, Inc</u>., 328 F.3d 625, 636 (10th Cir. May 6, 2003). The <u>Gilbertson</u> Court, in turn, noted a substantial compliance exception to this proposition. Specifically, the Court stated, "It follows, then, that an administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive evidence-gathering process in which the claimant is kept reasonably well-informed as to the status of the claim and the kinds of information that will satisfy the administrator." <u>Gilbertson</u>, 328 F.3d at 636. Consistent with <u>Gilbertson</u>, this very Court has recognized the substantial compliance exception to *de novo*

review. <u>Halo v. Yale Health Plan</u>, 49 F. Supp. 3d 240, 269 n.23 (D. Conn. 2014). Liberty is clearly in compliance with substantial compliance exception to *de novo* review. For all of the foregoing reasons, any alleged failure to comply with the ERISA regulation's deadlines does not warrant *de novo* review. Instead, the Court should allow Liberty to complete its remand review and reach a determination, and apply deferential review to that determination.

### E. <u>PLAINTIFF IS NOT ENTITLED TO CIVIL PENALTIES UNDER ERISA, 29 U.S.C. § 1132(c).</u>

Plaintiff seeks statutory penalties against Liberty, the claim administrator of the Plan, for providing a peer review report at most six days late and for declining to provide its internal guidelines during the pendency of her original administrative claim. (Pl's Mot. at 5; Docket No. 82-1, at 57-58.) The text of the statute, however, makes it clear that penalties under § 1132(c) may be imposed only against a *<u>plan</u>* administrator (as defined by ERISA) and only for refusal to supply information required by the relevant subchapter of ERISA. <u>Curran v. Aetna Life Ins. Co.</u>, 2013 U.S. Dist. LEXIS 163162 (S.D.N.Y. Nov. 15, 2013). Furthermore, this Court should deny Plaintiff's request for penalties, because she has failed to argue, let alone show, that she suffered prejudice as a result of Liberty's alleged nondisclosure or to show that Liberty acted in bad faith.

### 1. <u>Plaintiff Is Not Entitled To Penalties In This Action, Because She Failed To Address The Issues Expressly Required By This Court.</u>

Plaintiff's motion for penalties must be denied, because she entirely fails to comply with this Court's express order in its Ruling on the parties' cross-motions for summary judgment. In that Ruling, this Court stated as follows:

> Finally, at this time, the Court declines to award civil penalties pursuant to 29 U.S.C. § 1132(c) based on "violations of ERISA regulations." Plaintiff has not presently briefed this issue sufficiently for the Court to determine whether such penalties are appropriate.
>
> Given the Court's decision to remand this matter, "the possibility remains open" that Spears may be awarded attorney's fees or civil penalties "following the conclusion of the administrative proceedings and any judicial review of the administrative decision." <u>The Court is also mindful of the fact that part of the delay in this case was occasioned by Liberty's willingness to reexamine, albeit in a flawed manner, Spear's applications for benefits. Its willingness to provide more consideration than that which it was contractually required to provide does not appear to be an appropriate basis for the Court to impose a penalty. This logic is especially compelling where, as here, Spears requested the extra-contractual reviews and was not precluded by Liberty from pursuing judicial review. Should Spears seek an award of civil penalties in the future, she should address these issues in her memorandum of law in support of her motion.</u>

(Rulng, Docket No. 103, at 82 (emphasis added)). Plaintiff's failure to address the issues expressly required by this Court dooms her claim to failure.

### 2.   Plaintiff Is Not Entitled To Penalties For Violations Of ERISA's Regulations.

Section 104(b)(4) of ERISA provides, in pertinent part, as follows:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, <u>or other instruments under which the plan is established or operated</u>. …

29 U.S.C. § 1024(b)(4) (emphasis added). Section 1132(c)(1), in turn, imposes a penalty for failure to comply with those provisions, as follows:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is <u>required by this subchapter to furnish</u> to a participant or beneficiary … within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day

**from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. . . .**

29 U.S.C. § 1132(c)(1) (emphasis added). Section 104(b)(4) does not "extend to all documents, records, and reports." Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein, 107 F.3d 139, 146 (2d Cir. 1997). Section "104(b)(4) is not sufficiently broad to require disclosure of any and all 'documents that would assist participants and beneficiaries in determining their rights under a plan and in determining whether a plan is being properly administered.'" Board of Trustees of the CWA/ITU Negotiated Pension Plan, 107 F.3d at 145 (citation omitted). "Congress's use of the limited term 'instruments' in § 104(b)(4) for the disclosures that administrators must make when requested by plan participants, rather than broader terms such as 'documents,' 'records,' or 'reports,' as used elsewhere in ERISA to require disclosures to others, that Congress did not mean the duty imposed in § 104(b)(4) to extend to all documents, records, and reports." Board of Trustees of the CWA/ITU Negotiated Pension Plan, 107 F.3d 139 at 146. Instead, "'[t]he clear and unambiguous meaning of this statutory language encompasses only formal or legal documents under which a plan is set up or managed.'" 107 F.3d 139 at 145 (citation omitted).

The majority of circuit courts have held that a plan administrator may not be penalized under § 1132(c) for a violation of the regulations to § 1133. Butler v. United Healthcare of Tenn., Inc., 764 F.3d 563, 570-71 (6th Cir. 2014);; Brown v. J.B. Hunt Transp. Servs., 586 F.3d 1079, 1089 (8th Cir. 2009) (citing Wilczynski v. Lumbermens Mut. Cas. Co., 93 F.3d 397, 405-07 (7th Cir. 1996); Stuhlreyer v. Armco, Inc., 12 F.3d 75, 79 (6th Cir. 1993); VanderKlok v. Provident Life &

Accident Ins. Co., 956 F.2d 610, 618 (6th Cir. 1992); Groves v. Modified Ret. Plan for Hourly Paid Employees of Johns Manville Corp. & Subsidiaries, 803 F.2d 109, 116-18 (3d Cir. 1986)); Curran, 2013 U.S. Dist. LEXIS 163162, at *17. But see Halo v. Yale Health Plan, 49 F. Supp. 3d 240, 276 (D. Conn. 2014).[9]

> a.   **Plaintiff is not entitled to penalties against Liberty, because Liberty is not the plan administrator.**

Only the plan administrator (as defined by ERISA) is subject to statutory penalties under ERISA §502(c). Tetreault v. Reliance Std. Life Ins. Co., 769 F.3d 49, 58-60 (1st Cir. 2014); Butler, 764 F.3d at 569-70; Curran, 2013 U.S. Dist. LEXIS 163162 at *8-9 (citing Krauss v. Oxford Health Plans, Inc., 517 F.3d 614, 631 (2d Cir. 2008). Under ERISA, the plan administrator is defined as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. §1002(16)(A). Here, the Plan designates UTC as the Plan Administrator. (AR2235[10].) Therefore, statutory penalties may not be imposed upon non-plan administrators like Liberty, as a matter of law. See Curran, 2013 U.S. Dist. LEXIS 163162 at *9-10; Gregory v. Metro. Life Ins. Co., 648 F. Supp. 2d 591, 608 (D. Vt. 2009).

In arguing that Liberty, the claim administrator, should be liable for penalties because it provided a peer review report at most six days late and

---

[9] Notably, the decision in Halo directly contradicts a previous holding by the same court. See Halo v. Yale Health Plan, 2012 U.S. Dist. LEXIS 31447, at *35-36 (D. Conn. Mar. 8, 2012) (holding that plaintiff "would not be entitled to the imposition of any civil penalties under Section 502(c) for YHP's alleged violations of 29 C.F.R. §2560.503-1").

[10] Citations to Bates numbered documents in this memorandum designated AR# are citations to the Administrative Record for Plaintiff's claim and appeals filed under seal on March 1, 2013 (Docket No. 42) pursuant to the Court's February 22, 2013 Order granting Defendants' Motion to Seal the Administrative Record.

declined to provide its internal guidelines during the pendency of her claim, (Pl.'s Mot. at 4-5; Docket No. 93, at 9), Plaintiff ignores Second Circuit precedent on point. In <u>Krauss</u>, the Second Circuit held that the claim administrator was not liable for penalties under § 1132(c), because it was not the plan "administrator" within the meaning of § 1132(c)(1). <u>Krauss</u>, 517 F.3d at 631; <u>see also</u> <u>Lee v. Burkhart</u>, 991 F.2d 1004, 1010 n.5 (2d Cir. 1993) (finding that a party not designated as an administrator under terms of plan cannot be liable for failing to furnish SPD). In an effort to avoid this binding precedent, Plaintiff cites to <u>Law v. Ernst & Young</u>, 956 F.2d 364 (1st Cir. 1992), a First Circuit decision in which the Court held that Ernst & Young could be liable for penalties under § 1132(c), even though the plan documents placed responsibility for providing information upon one of its predecessor's internal committees, because its predecessor actually carried out the plan administrator functions in practice and there were no clear lines between the predecessor and the relevant committee. In reaching this conclusion, however, the First Circuit specifically distinguished the situation present here, in which Plaintiff is trying to impose penalties upon an insurance company that simply served as claim administrator. The First Circuit reasoned that the insurance company was "clearly distinct from the plan administrator and … [was] not shown to have exercised actual control over the administrator's functions. Such a situation is different from that here, where the employer against whom recovery was sought had set up an internal committee with little, if any, separate identity, and in fact took control of the function allegedly delegated to

that committee."[11] Id. at 374 (citing Moran v. Aetna Life Ins. Co., 872 F.2d 296 (9th Cir. 1989) (refusing to hold insurance company liable under § 1132(c) because it was not plan administrator, even though its employee had represented to plan participant that it was); Davis v. Liberty Mutual Insurance Co., 871 F.2d 1134, 1139 n.5 (D.C.Cir.1989) (refusing to hold insurance company liable under § 1132(c) because it was not plan administrator)).

This Court should deny Plaintiff's claim for statutory penalties under § 1132(c), because Liberty is not the plan administrator under the Plan and because Plaintiff fails to cite to any case law for the proposition that Liberty should nevertheless be liable for penalties simply because UTC, the plan administrator, has been dismissed from this case, (Pl.'s Mot. at 4-5).

### b. Statutory penalties are not available for failure to provide internal guidelines during the administrative review process.

Plaintiff complains Liberty failed to provide her with its guidelines during the administrative review process, and thus she is entitled to statutory penalties under § 1132(c). (Pl.'s Mot. at 5.) "Nothing in the relevant subchapter, 29 U.S.C. §§ 1001-1191c, [however,] requires plan administrators to disclose claims manuals to plan participants." Brown., 586 F.3d at 1089. ERISA requires the plan administrator to furnish a copy of the latest updated SPD "or other instruments under which the plan is established or operated" upon written request by a participant. 29 U.S.C. § 1024(b)(4). "[O]ther instruments" as used in 29 U.S.C. § 1024 includes only "formal documents that govern the plan, not to all documents

---

[11] Furthermore, the plan documents requested in Law, unlike the peer review report requested by Plaintiff, fit squarely within the parameters of § 1132(c).

by means of which the plan conducts operations." Board of Trustees of CWA/ITU Negotiated Pension Plan, 107 F.3d 139 at 143. Guidelines and protocols that might have been considered in determining a claim for benefits "are simply not the types of documents that any administrator can be sanctioned for failing to produce." Viti v. Guardian Life Ins. Co., 817 F. Supp. 2d 214, 234 (S.D.N.Y. Aug. 31, 2011); see also Brown, 586 F.3d at 1089 ("claims manuals are not the 'other instruments' mentioned in § 1024(b)(4)"); Black v. Pitney Bowes Inc., 2008 U.S. Dist. LEXIS 65338 at *36 (S.D.N.Y. Aug. 26, 2008) ("An internal policies and procedures manual is not such a legal document.").

### c.  Penalties are not available under ERISA for failure to provide reports.

Plaintiff also complains that Liberty failed to provide her with a copy of a peer review report. (Pl.'s Mot. at 5.) The Record reflects that Plaintiff's counsel requested a copy of a September 27, 2010 report for the first time in Plaintiff's fourth appeal letter dated May 9, 2011.[12] (AR198.) It was reasonable for Liberty to deny Plaintiff's request for a *fifth* appeal, where Plaintiff requested the document almost six months after Liberty had identified that report as a basis for its decision and days before the end of the appeal period and where the document reached the same result as the previous independent peer review. (Docket No. 89, at 27-29.) Furthermore, no such report is required by any statutory provision within ERISA. Consequently, Plaintiff is not entitled to statutory penalties. See Board of Trustees of the CWA/ITU Negotiated Pension Plan, 107 F.3d at 145

---

[12] Plaintiff's counsel's request for the complete claim file by letter dated May 21, 2010 could not possibly have encompassed the September 27, 2010 peer review report, since it had not yet been written. (Compare AR263-64 with AR224-42.)

(holding that claimant was not entitled to penalties for failure to provide actuarial valuation reports).

> **d.  Plaintiff is not entitled to penalties where, as here, Liberty was in substantial compliance with ERISA's regulations.**

The district court decision cited by Plaintiff, <u>Halo</u>, does not support an award of penalties in this matter. Although the <u>Halo</u> Court held that "that civil penalties pursuant to § 1132(c)(1) should be available where a plan administrator fails to substantially comply with claims procedures contained in 29 C.F.R. § 2560.503-1," it did not award penalties, because the plan administrator substantially complied with the claims procedures and comported itself in a good faith and non-dilatory manner. <u>Halo v. Yale Health Plan</u>, 49 F. Supp. 3d 240, 276, 269 n.23 (D. Conn. 2014). Here, as in <u>Halo</u>, Liberty was in substantial compliance with the claims procedures and comported itself in a good faith and non-dilatory manner. <u>See</u> <u>supra</u> part II.C. Taking into consideration all of the circumstances of this case, Plaintiff is not entitled to penalties in this matter. <u>See</u> <u>id.</u> at 269 n.23.

> **e.  Plaintiff is not entitled to penalties where, as here, she was not prejudiced by Liberty's alleged nondisclosure and Liberty did not act in bad faith.**

This Court should deny Plaintiff's request for penalties, because she has failed to argue, let alone show, that she suffered prejudice as a result of Liberty's alleged nondisclosure. "[A] violation of § 1132(c) does not automatically give rise to a claim for damages; the granting of relief under § 1132(c) is within the discretion of the court." <u>Shapiro v. Joint Indus. Bd. of the Elec. Indus.</u>, 858 F.

Supp. 356 (E.D.N.Y 1994); see also 29 U.S.C. § 1132(c)(1). Awards of penalties and their amounts depend on the following:

> (1) the administrator's bad faith or intentional conduct; (2) the length of the delay; (3) the number of requests made; (4) the extent and importance of the documents withheld; and (5) the existence of any prejudice to the participant or beneficiary.

Austin v. Ford, 1998 U.S. Dist. LEXIS 2157 (S.D.N.Y. Mar. 2, 1998); see also Byars v. Coca-Cola Co., 517 F.3d 1256, 1271 (11th Cir. 2008). Plaintiff has failed even to claim, much less prove, that she suffered any injuries or prejudice from her receipt of Liberty's guidelines during the present litigation or from a potentially six-day delay in her receipt of the peer review report. (Docket No. 89, at 25-29).

Nor cannot Plaintiff show that Liberty engaged in bad faith. As a preliminary matter, Liberty's decision not to provide its internal guidelines was consistent with the case law. (Docket No. 89, at 25-26.) Furthermore, the purpose of the disclosure penalty would not be advanced if a penalty was awarded here. The penalty is designed to punish the violator of the disclosure provisions. Here, Plaintiff has failed to show that Liberty engaged in bad faith. Indeed, Liberty produced virtually all of the documents Plaintiff requested during her administrative review, including a copy of her 2,200-page claim file. (AR265, 336.) Moreover, Liberty effectively gave Plaintiff four opportunities to appeal the question of whether she was Disabled under the terms of the Plan. (See Docket No. 89, at 3-7.) An award of penalties under these circumstances would simply not further the purpose of the statutory provision, to punish an administrator's noncompliance with its disclosure obligations. Consequently, Plaintiff is not entitled to penalties under ERISA. See, e.g., Demery v. Extebank Deferred

<u>Compensation Plan</u>, 216 F.3d 283, 290 (2d Cir. 2000) (affirming denial of penalties for failing to file a timely registration where plaintiffs did not allege any harm); <u>Byars</u>, at 1271 (affirming denial of motion for penalties).

### 3.   Plaintiff Is Not Entitled To Penalties Against The Plan Simply Because This Court Found Liberty's Underlying Determination To Be Arbitrary And Capricious.

In her Motion, Plaintiff asks this Court to grant penalties against the Plan, because the Court previously found Liberty's determination to be arbitrary and capricious. (Pl.'s Mot at 6.) As a preliminary matter, Plaintiff fails to cite any case law for the proposition that a claimant can recover penalties against a plan for the actions of its claims administrator. Even if it were appropriate to assess penalties against a plan under these circumstances, Plaintiff fails to provide any basis whatsoever for her claim for penalties. Instead, she simply incorporates her entire Memorandum in Support of her Motion for Summary Judgment and states that she is entitled to penalties because the Court found Liberty's determination to be arbitrary and capricious. (<u>Id.</u>) Her argument is sorely deficient. (<u>See</u> Ruling, Docket No. 103, at 82 (declining to award penalties in this very case, because "Plaintiff has not presently briefed this issue sufficiently for the Court to determine whether such penalties are appropriate")); <u>Kwon v. Yun</u>, 606 F. Supp. 2d 344, 360 n. 19 (S.D.N.Y. 2009) (deferring resolution of damages question where the parties had not "sufficiently briefed the issue").

### F.   PLAINTIFF IS NOT ENTITLED TO PREJUDGMENT INTEREST.

This Court should deny Plaintiff's claim for prejudgment interest. "In a suit to enforce a right under ERISA, the question of whether or not to award

prejudgment interest is ordinarily left to the discretion of the district court." <u>Jones v. UNUM Life Ins. Co. of Am</u>., 223 F.3d 130, 139 (2d Cir. 2000). "In exercising such discretion, the court is to take into consideration "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." <u>Id</u>. (citation omitted). "Since prejudgment interest is 'an element of [the plaintiff's] complete compensation,' the same considerations that inform the court's decision whether or not to award interest at all should inform the court's choice of interest rate. <u>Id</u>. (citation omitted).

       1.    <u>Plaintiff's Request For Prejudgment Interest Is Premature, Because She Has Not Shown She Is Entitled To Benefits Under The Policy.</u>

      Plaintiff's claim for prejudgment interest is premature, because she has failed to exhaust her administrative remedies on remand. The Second Circuit addressed this very question in <u>Jones</u> and affirmed a district court decision denying the plaintiff post-judgment interest on her claim for LTD benefits not yet addressed by the plan administrator, absent a "clear and positive showing" that seeking review by the plan administrator would be futile. 223 F.3d at 140. In <u>Jones</u>, like here, the plaintiff alleged that the plan administrator denied her application for LTD benefits after discrediting her medical evidence of disability and concluding that she did not become disabled under the policy. The district court issued a decision remanding the plaintiff's claim to the plan administrator on the question of whether she remained "currently" disabled beyond the first 24

months of her claim and entered final judgment in accordance with its opinion. Id. at 134-35. Plaintiff then filed a motion for relief from judgment under Fed. R. Civ. P. 60(b)(6), seeking reconsideration of the district court's decision not to award post-judgment interest. Id. at 135. The district court denied her motion and the plaintiff appealed, arguing the district court should have ordered that any additional payments she received from the plan administrator be accompanied by an appropriate payment of interest. Id. at 140-41. In affirming the district court's order declining to deal in advance with the plan administrator's potential determination of the plaintiff's disability claim for additional periods, the Second Circuit reasoned as follows:

> ERISA requires that when an application for benefits has been denied, there be an opportunity for review by the plan administrator. See 29 U.S.C. § 1133. As the district court noted in its Opinion, there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." Thus, absent a "clear and positive showing" that seeking review by the carrier would be futile, that remedy must be exhausted prior to the institution of litigation.

Jones, 223 F.3d at 140. As in Jones, Plaintiff's motion for prejudgment interest on her claim for benefits is premature, because the Court remanded Plaintiff's claim to Liberty for further review and Liberty has not yet made a determination.

### 2.    Even If Plaintiff Were Entitled To Benefits, She Would Not Be Entitled To Prejudgment Interest.

"[I]t is not axiomatic that [prejudgment] interest should be awarded simply because … the prevailing party has demonstrated entitlement to the funds." Mendez v. Teachers Ins. & Annuity Ass'n & College Retirement Equities Fund, 982 F.2d 783, 790 (2d Cir. 1992). Instead, the Court must consider whether prejudgment interest is needed to fully compensate Plaintiff for the actual

damages she suffered, whether considerations of fairness and the relative equities of the award weigh in her favor, and whether an award of prejudgment interest would serve the remedial purpose of ERISA. <u>Jones</u>, 223 F.3d at 139 (listing factors relevant to prejudgment interest analysis). Rather than addressing the factors relevant to an award of prejudgment interest, Plaintiff simply speculates that she "<u>*may*</u> have incurred debt to cover living expenses, upon which she would owe interest," claims that she would have earned interest on the LTD benefits had they been paid previously, and makes the conclusory statement that "the need to fully compensate Spears, a consideration of the equities, and the remedial purpose of ERISA, which is to vindicate employee benefits rights, all favor awarding prejudgment interest." (Pl.'s Mot. at 7-8) (emphasis added). She has therefore failed to make the necessary showing in support of her claim for prejudgment interest.

### 3.  Even If Plaintiff Were Entitled To Prejudgment Interest, She Would Not Be Entitled To 10% Interest.

Plaintiff is not entitled to prejudgment interest at the Connecticut post-judgment[13] interest rate of ten percent per year. Awarding prejudgment interest at that rate would over-compensate Plaintiff. "There is no federal statute that purports to control the rate of prejudgment interest." <u>Jones</u>, 223 F.3d at 139. Although the Court has discretion to award prejudgment interest, the Court must take care to ensure that "[a]wards of prejudgment interest . . . not result in over-compensation of the plaintiff." <u>Wickham Contracting Co. v. Local Union No. 3</u>

---

[13] **Plaintiff mistakenly refers to this statute as the "prejudgment interest statute." (Pl.'s Mot. at 8.)**

IBEW, 955 F.2d 831, 834 (2d Cir. 1992). "Interest rates have been at historic lows for the past [six] years, and applying a [10] percent rate would provide a windfall to Plaintiff and would serve to punish Defendant, in contravention of the compensatory goal of ERISA." Barrett v. Hartford Life & Accident Ins. Co., 2012 U.S. Dist. LEXIS 176362 at *7 (S.D.N.Y. Nov. 9, 2012). Instead, the prime rate is the more appropriate rate. Id. at *6-7; Rasile v. Liberty Life Assurance Co. of Boston, 2004 U.S. Dist. LEXIS 11754 at *2 (S.D.N.Y. June 28, 2004).

Awarding Plaintiff prejudgment interest at Connecticut's 10% statutory rate would also penalize Liberty in contravention of the remedial purpose of ERISA. "'[P]rejudgment interest awards under ERISA serve as compensation to a plaintiff for the lost use of money wrongly withheld; such awards may not penalize the defendant.'" Fairbaugh v. Life Ins. Co. of N. Am., 737 F. Supp. 2d 68, 89-90 (D. Conn. 2010). Furthermore, "federal courts need not incorporate state law as the federal common law rule for the applicable prejudgment interest rate." Fairbaugh, 737 F. Supp. 2d at 90.

The case cited by Plaintiff, Fairbaugh v. Life Ins. Co. of N. Am., 872 F. Supp. 2d 174 (D. Conn. 2012), does not hold to the contrary. In Fairbaugh, the Court did not state, as Plaintiff suggests, that the Connecticut prejudgment interest rate applies to ERISA judgments for the denial of benefits. Instead, the parties stipulated to a much lower number, about 3%. (Oct. 15, 2010 Stipulation, Fairbaugh v. Life Ins. Co. of N. Am., No. 3:09-cv-01434 (CSH), attached hereto as Exhibit 3.) The court later ordered the defendant to pay 10% interest, compounded annually, as a sanction after holding the defendant in contempt for

failing to comply with its order to pay plaintiff benefits. <u>Fairbaugh</u>, 872 F. Supp. 2d at 182. Plaintiff has not argued that any such sanction would be appropriate here. Given Liberty's efforts to complete a full and fair review on remand described above, such a sanction would clearly be inappropriate.

III.   <u>CONCLUSION</u>

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiff's Motion To Reinstate Summary Judgment Motion To Docket.

DEFENDANTS, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON AND THE GROUP LIFE INSURANCE AND DISABILITY PLAN OF UNITED TECHNOLOGIES CORPORATION a/k/a THE UTC CHOICE INTEGRATED DISABILITY BENEFIT PROGRAM

By:    /s/ Sarah C. Baskin
        Beverly W. Garofalo (ct11439)
        Sarah C. Baskin (ct 13570)
        Jackson Lewis P.C.
        90 State House Square, 8th Floor
        Hartford, CT 06103
        Tel. (860) 522-0404
        Fax (860) 247-1330
        Email: garofalob@jacksonlewis.com
        Email: baskins@jacksonlewis.com

## CERTIFICATION OF SERVICE

I hereby certify that on March 21, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Sarah C. Baskin
Sarah C. Baskin