# UNITED STATES DISTRICT COURT
## for the
## DISTRICT OF CONNECTICUT

_____
                      :

**HALEY SPEARS**           :
     **Plaintiff,**         :
                     :     **Civil No. 3:11-cv-01807 (VLB)**

**v.**                       :
                     :

**LIBERTY LIFE ASSURANCE** :
**COMPANY OF BOSTON, UNITED** :
**TECHNOLOGIES CORPORATION,** :
**AND THE GROUP LIFE INSURANCE** :
**AND DISABILITY PLAN OF UNITED** :
**TECHNOLOGIES CORPORATION** :
***a/k/a* THE UTC CHOICE INTEGRATED** :
**DISABILITY BENEFIT PROGRAM**   :     **SEPTEMBER 13, 2017**
     **Defendants.**       :
_____ :

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FILED AUGUST 30, 2017

Defendants Liberty Life Assurance Company of Boston ("Liberty"), United Technologies Corporation ("UTC"), and The Group Life Insurance And Disability Plan Of United Technologies Corporation *a/k/a* The UTC Choice Integrated Disability Benefit Program ("the Plan") move to dismiss Plaintiff's Amended Complaint to the extent that it alleges a claim for breach of fiduciary duty and to the extent that it alleges claims against Defendant UTC. This Court's August 3, 2012 Decision dismissing Plaintiff's claims against Defendant UTC and dismissing her original breach of fiduciary duty claim is the law of the case, barring all claims Plaintiff asserted in her Amended Complaint against UTC and all breach of fiduciary duty claims arising out of the denial of her claim for long-term disability benefits. Plaintiff's Amended Complaint contains a lot of

purportedly new allegations that Plaintiff failed to allege in her original complaint back in 2011. The vast majority of these "new" allegations, however, deal with conduct that allegedly occurred before Plaintiff filed her original complaint in 2011. Plaintiff should not be given a second bite at the apple to litigate the same issues against the same parties based on facts that were readily available to her at that time. The law of the case doctrine is meant to prevent just this type of needless litigation, ensuring finality and avoiding reconsideration of matters once decided during the course of a single lawsuit.  Allowing Plaintiff to pursue the same claims against the same parties that were dismissed five years ago would be a waste of judicial and party resources. Plaintiff's claims also fail to state a claim upon which relief can be granted.

Liberty issued a group disability income policy ("Policy") to Plaintiff's employer, Defendant UTC, under the Plan. Liberty also administered self-insured short-term disability ("STD") benefits under the Plan on behalf of UTC. Under the terms of the Plan and Policy, Liberty has the sole discretion to construe the terms of the Plan and to determine benefit eligibility thereunder. Liberty terminated Plaintiff's disability benefits effective February 8, 2009, when it determined that she no longer met the definition of disability under the terms of the Plan. Liberty gave Plaintiff more opportunities to present additional information in support of her appeals than she was entitled to under the Plan, but her efforts proved unavailing. Eventually, however, UTC stepped in on Plaintiff's behalf and asked Liberty to pay her STD benefits. Liberty paid Plaintiff benefits through March 27, 2009, the end of the STD period, only on the basis of UTC's

override and notwithstanding her failure to prove she was disabled. No good deed goes unpunished. Plaintiff, who returned to work full time in August 2014, and is no longer disabled under anyone's definition of the word, has repeatedly relied on UTC's generous efforts to assert that UTC is liable for Liberty's failure to reinstate her LTD benefits. She has also claimed that Liberty breached its fiduciary duties to her by not fully investigating her claims.

On August 3, 2012, more than five years ago, this Court dismissed Plaintiff's claims against Defendant UTC, finally releasing the company—which had no discretion whatsoever to decide Plaintiff's LTD claim—from her lawsuit. At that time, this Court also dismissed Plaintiff's breach of fiduciary duty claims under Section 502(a)(3), rejecting her assertion that aspirational language in the Plan's summary plan description about the "seamless transition between Sick Pay, STD and LTD payments" might plausibly give rise to an entitlement to equitable relief or be read fairly to assert a claim of estoppel, detrimental reliance or any other equitable claim upon which reformation would lie. Plaintiff did not file a timely request for reconsideration of the Court's August 3, 2012 Decision or seek to amend her complaint to address the deficiencies in her complaint. Instead, she let those claims lie fallow while the parties continued to litigate Plaintiff's claim for benefits for another three years. On March 31, 2015, this Court issued a ruling remanding Plaintiff's LTD claim back to Liberty for further review and entered final judgment with respect to Plaintiff's Original Complaint. (Docket Nos. 103, 104.)

Approximately one year later, on April 11, 2016, Plaintiff filed a second lawsuit, alleging both an ERISA claim for benefits and a claim for breach of fiduciary duty. (Civil No. 3:16-cv-00572 (VLB).) In a transparent attempt to avoid dismissal of her breach of fiduciary duty claim, which this Court had dismissed in 2012, however, Plaintiff re-alleged the same allegations that supported her initial breach of fiduciary duty claim, but omitted reference to the specific provision of Section 502 under which she asserted that claim. Instead of alleging a standalone breach of fiduciary duty claim, Plaintiff opted simply to seek a declaration in her claims for relief that Defendants breached their fiduciary duty to her. (Id., Am. Compl., Docket No. 8, Exhibit 2 hereto, p. 12.) She also elected to omit any reference to her claims for restitution, reformation, estoppel and injunction that were specifically alleged in her original complaint in this action. (Compare id. with Civil Action No. 3:11-cv-01807 (VLB), Docket No. 1, Count Two & pp. 12-13.) As she did with her breach of fiduciary duty claim, Plaintiff also attempted to re-allege her claims against Defendant UTC.

Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint on October 28, 2016 on the grounds that this Court's August 3, 2012 Decision dismissing Plaintiff's 502(a)(3) claim in Spears I, a prior action between the same parties alleging the same operative facts, is res judicata with respect to Plaintiff's breach of fiduciary duty claim and with respect to her claims against UTC. (Civil Action No. 3:16-cv-00572 (VLB), Docket No. 24.) Defendants also moved to dismiss these claims for failure to state a claim. (Id.) On December 16, 2016, Plaintiff filed a Second Amended Complaint, primarily alleging conduct that

occurred before her original November 18, 2011 Spears I Complaint and trying to tie UTC to Liberty's benefit determinations. (Id., Second Am. Compl., Docket No. 33, Exhibit 16 hereto, ¶¶ 10-31.) Plaintiff identified no reason whatsoever for her inordinate delay in seeking to amend her complaint in an effort to revive claims that were dismissed by this Court in her first lawsuit in 2012 or to explain her tactical behavior in initially omitting, and then seeking to reinstate, (a) citations from her original complaint in this lawsuit to the specific ERISA provisions under which she asserted her claims in her second lawsuit and (b) claims for relief from this lawsuit that might support a breach of fiduciary duty claim in her second lawsuit. Her dilatory and questionable effort must be rejected, because

- The vast majority of Plaintiff's "new" allegations deal with conduct that allegedly occurred during Liberty's initial review of Plaintiff's administrative claim and appeals, all of which was alleged or could have been alleged more than five years ago in her original complaint in this lawsuit and

- Her claims against UTC and her breach of fiduciary duty claims fail to state a claim upon which relief can be granted.

I.      **BACKGROUND**[1]

A.      **Plaintiff's Claim For Benefits**

Liberty administered self-insured STD benefits under the Plan on behalf of Plaintiff's employer, UTC. (Am. Compl. ¶¶ 4, 8.) The Plan's LTD benefits were also fully insured by Liberty. (Id. ¶ 5.) Under the terms of the Plan and Policy, Liberty has the sole discretion to construe the terms of the Plan and to determine benefit eligibility thereunder. (SPD, attached hereto in Exhibit 4 at 2, 39 (Liberty002199, Liberty002236); Policy, Exhibit 3 hereto, at 34 (Liberty000034)[2].)

Plaintiff filed a claim for STD benefits in September 2008. (Am. Compl., Docket No. 110, ¶ 13.) Liberty initially approved Plaintiff's claim for disability benefits, but terminated those benefits effective February 8, 2009, when it determined that she no longer met the definition of disability under the terms of the Plan. (Id. ¶¶ 13, 17.) Liberty gave Plaintiff four opportunities to present additional information in support of her appeals, but her efforts proved unavailing. (Id. ¶¶ 22-24, 26-27.)

In October 2010, UTC asked Liberty to override its STD decision and pay Plaintiff's STD benefits. (Id. ¶ 23.) Liberty paid Plaintiff benefits through March 27, 2009, the end of the STD period, only on the basis of UTC's override and notwithstanding her failure to prove she was disabled. (Id.; November 16,

---

[1] The facts stated herein are taken from affirmative allegations in the Amended Complaint, which are assumed to be true for the purposes of this motion only, from the Group Disability Income Policy ("Policy") that controls Plaintiff's claim for benefits in this matter, from the Plan's summary plan description ("SPD"), and from various claim and appeal letters discussed in the complaint.

[2] Relevant portions of the Policy and SPD are attached hereto as Exhibits 3 and 4, respectively. The Amended Complaint specifically references the Policy in paragraph 5 and quotes language from the SPD in paragraph 6.

2010 letter[3], attached hereto as Exhibit 10, at 2.) It also notified Plaintiff that "[t]his employer override for payment of short term disability benefits did not alter the Appeal Review Unit's determination to uphold denial of benefits beyond February 8, 2009." (Id.)

### B. Plaintiff's Return To Work

Plaintiff returned to work in August 2014. (Am. Compl. ¶ 15; June 16, 2016 denial letter[4], attached hereto as Exhibit 14, at 14, 15.) Consequently, she is not seeking disability benefits beyond August 2014 under the terms of the Plan or Policy. (See id. at 15-16.)

### C. Plaintiff's First Lawsuit

On November 18, 2011, Plaintiff filed this lawsuit asserting that Defendants improperly terminated her disability benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and in breach of their fiduciary duties under Section 502(a)(3), 29 U.S.C. § 1132(a)(3) ("Spears I"). (Compl., Docket No. 1[5] (hereinafter "Plaintiff's Original Complaint").) On August 3, 2012, this Court dismissed Plaintiff's breach of fiduciary duty claim under Section 502(a)(3) and Plaintiff's claims against Defendant UTC (hereinafter "August 3, 2012 Decision"). (Docket No. 22.) Plaintiff did not request reconsideration of the Court's August 3,

---

[3] Plaintiff's Amended Complaint refers to the November 16, 2010 letter in paragraph 24.

[4] Plaintiff's Amended Complaint refers to the June 16, 2016 denial letter in paragraph 32.

[5] "In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case sub judice." Ferrari v. Suffolk, 790 F. Supp. 2d 34, 38 n.4 (E.D.N.Y. 2011) (italics omitted).

2012 Decision or seek to amend her complaint to address the deficiencies in her complaint.

    D.    <u>Review On Remand</u>

        On remand, Liberty requested medical records from the twenty-seven medical providers identified by Plaintiff, obtained a peer review of Plaintiff's 4,500-page disability claim file provided by a team of four independent physicians with appropriate board specialties, and scheduled Plaintiff for an independent medical examination ("IME") strongly recommended by this Court's March 31, 2015 Ruling. (June 16, 2016 denial letter, attached hereto as Exhibit 14, at 15.) Plaintiff, on the other hand, demanded – long after the review process began – that Liberty foreshorten its review of her claims, even though she had not yet produced medical records from three physicians she identified on remand and even though she had not yet undergone an IME. (January 12, 2016 determination request,[6] attached hereto as Exhibit 13; June 16, 2016 denial letter, attached hereto as Exhibit 14, at 15, 18.) After Plaintiff's IME, which eventually occurred on March 14, 2016, and receipt of opinion letters dated April 6 and 13, 2016 from Plaintiff's treating physicians responding to the peer review report, Liberty issued a 27-page determination denying Plaintiff's claim on remand. (June 16, 2016 denial letter, attached hereto as Exhibit 14.) Although Liberty was not required by this Court's March 31, 2015 Ruling or by law to grant Plaintiff an additional appeal of its remand determination, Liberty offered Plaintiff an opportunity to submit a second, optional request for review within 45 days.

---

[6] Plaintiff's Amended Complaint refers to the January 12, 2016 determination request in paragraph 32.

Plaintiff sent Liberty a letter dated July 13, 2016, within that 45-day deadline, but did not provide any substantive information in support of her appeal. (July 13, 2016 letter, attached hereto as Exhibit 15[7].)

E.    **Procedural History Post-Remand**

Plaintiff did not seek reconsideration of the Court's March 31, 2015 Ruling in Spears I, an entry of judgment pursuant to Fed. R. Civ. P. 59(e) or for relief from judgment pursuant to Fed. R. Civ. P. 60(b). Instead, she filed a Motion to Reinstate Summary Judgment Motion on February 27, 2016, almost a year after the entry of judgment, asking this Court to stop the remand review process and make a decision on a supplemental administrative record under the de novo standard of review, thereby depriving Liberty of its express discretionary authority to make the remand determination. (Docket No. 105-1, at 2-3.) This Court denied Plaintiff's Motion to Reinstate Summary Judgment Motion on April 1, 2016, on the grounds that it was procedurally improper, as final judgment was entered in the case and the matter was closed over a year before. (Docket No. 108.) In addition, Plaintiff sought relief in connection with post-judgment conduct as to which this Court did not retain jurisdiction. (Id.) Plaintiff did not seek reconsideration of this decision.

Instead, ten days after this Court denied Plaintiff's procedurally improper motion, on April 11, 2016, Plaintiff filed a separate lawsuit ("Spears II"), alleging both an ERISA claim for benefits and a claim for breach of fiduciary duty. (Civil Action No. 3:16-cv-00572 (VLB).) The case has been procedurally complex

---

[7] **Plaintiff referenced her July 13, 2016 appeal letter in paragraph 33 of the Amended Complaint.**

since then. For instance, Plaintiff filed a slightly revised Amended Complaint in Spears II on April 14, 2016. (Id., Docket No. 8.) In a transparent attempt to avoid dismissal of her breach of fiduciary duty claim, which this Court dismissed in 2012, however, Plaintiff re-alleged the same allegations that supported her initial breach of fiduciary duty claim in Spears I, but omitted reference to the specific provision of Section 502 under which she asserted that claim in Spears II. Instead of alleging a standalone breach of fiduciary duty claim, Plaintiff opted simply to seek a declaration in her claims for relief that Defendants breached their fiduciary duty to her. (Id., Docket No. 8, p. 12.) She also elected to omit any reference to her claims for restitution, reformation, estoppel and injunction that were specifically alleged in her Original Complaint in Spears I. (Compare id. with Civil No. 3:11-cv-01807 (VLB), Docket No. 1, Count Two & pp. 12-13.)

As she did with her breach of fiduciary duty claim, Plaintiff also attempted to re-allege her claims against Defendant UTC in her Amended Complaint. Nothing had changed about Defendant UTC's involvement in this action, however, since Plaintiff filed her Original Complaint. The LTD portion of the Plan is still fully insured by Liberty, and Liberty still possesses the sole discretion to make eligibility determinations under the Plan. (SPD, attached hereto in Exhibit 4 at 2, 39 (Liberty002199, Liberty002236); Policy, Exhibit 3 hereto, at 34 (Liberty000034).) Consequently, under the terms of the LTD plan, UTC did not have the power to control or prevent any alleged misdeeds in Liberty's decision terminating Plaintiff's LTD benefits and therefore was not a fiduciary under the LTD Plan. (Docket No. 22, at 16.)

Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss") in Spears II on October 28, 2016 on the grounds that this Court's August 3, 2012 Ruling dismissing Plaintiff's 502(a)(3) claim in Spears I, a prior action between the same parties alleging the same operative facts, is res judicata with respect to Plaintiff's breach of fiduciary duty claim and with respect to her claims against UTC in Spears II. (Docket No. 24.) Defendants also moved to dismiss these claims for failure to state a claim. (Id.)

On December 16, 2016, Plaintiff filed a Second Amended Complaint in Spears II, primarily alleging conduct that occurred before her Original November 18, 2011 Spears I Complaint and trying to tie UTC to Liberty's benefit determinations. (Civil No. 3:16-cv-00572 (VLB), Second Am. Compl., Docket No. 33, ¶¶ 10-31.) Specifically, in Paragraph 5, Plaintiff amended her allegation that "Claim determinations are made by Liberty" to read "Claim determinations are made by Liberty and United Technologies." (Id. ¶ 5.) In Paragraph 17, Plaintiff added the allegation that "Liberty denied LTD benefits before Spears requested LTD benefits. LTD benefits were denied by Liberty before STD benefits were denied by Liberty." (Id. ¶ 17.) Plaintiff deleted the following language from Paragraph 22: "In October 2010, defendants granted the appeal and reinstated STD benefits through March 27, 2009, the maximum duration for STD benefits. Benefits were terminated after that date." (Compare id. ¶ 22 with Civil No. 3:11-cv-01807 (VLB), Docket No. 8, ¶ 22.) In Paragraph 23, Plaintiff added the allegation that "United Technologies was involved in the disability determination decision. In October, 2010, United Technologies requested that Liberty override its short

term disability decision and issue Spears additional short term disability benefits, through the remainder of the STD eligibility period. Liberty did so. United Technologies also requested that Liberty reopen Spears' LTD claim, make an LTD determination, and notify United Technologies of its decision. Liberty did so. Defendants then denied LTD benefits." (Civil No. 3:16-cv-00572 (VLB), Second Am. Compl., Docket No. 33, ¶ 23.) In Paragraph 24, Plaintiff revised the word "it" to "they" in the following sentence: "Defendants made this statement even though it~~they~~ had already granted STD benefits through March 27, 2009." (Id. ¶ 24.) In Paragraph 35, Plaintiff added the allegation "United Technologies was involved in the decision to pay Spears' benefits in 2009 when it overrode Liberty's denial." (Id. ¶ 35.) She revised Paragraphs 29 through 31 to assert that Defendants' pre-2011 conduct constituted a breach of fiduciary duty. (Id. ¶¶ 29-31.) She also alleged that "United Technologies is liable for the actions of its co-fiduciary, Liberty. United Technologies was required by ERISA to establish a formal review of Liberty's actions at reasonable intervals. United Technologies breached its duty as to Spears under 29 USC §1105." (Id. ¶ 35.) In Paragraph 37, Plaintiff added the phrase "and has suffered a cognizable loss" to her allegation that "[a]s a direct and proximate result of this unlawful denial of Plan benefits, Spears has been harmed." (Id. ¶ 37.) She then added back into her complaint citation to the specific ERISA provisions upon which she relies for her claims, as well as the identical claims for relief for restitution, reformation and injunction that she had removed from her Original Complaint in Spears I and new claims for disgorgement of profits and surcharge. (Compare Id., Second Am. Compl., Docket

No. 33, Claims for Relief ¶¶ 1-2 <u>with</u> Civil Action No. 3:11-cv-01807 (VLB), Compl., Docket No. 1, Count Two, ¶¶ 39-40 <u>and</u> Claims for Relief ¶¶ 1, 3-5.)

The only new factual allegations Plaintiff asserted against Defendant Liberty in her Second Amended Complaint that she could not have alleged in Spears I were that the company did not make (1) a remand decision within 45 days of Plaintiff's arbitrary request for a decision or (2) an appeal determination within 45 days of her preliminary request for review of the denial. (Civil No. 3:16-cv-00572 (VLB), Second Am. Compl., Docket No. 33, ¶¶ 32, 33.) As to Defendant UTC, Plaintiff simply alleged that UTC failed to ensure that Liberty made a timely decision on remand. (<u>Id.</u>, ¶ 32.)

On April 26, 2017, Defendants filed a Motion to Dismiss Plaintiff's Second Amended Complaint on the grounds that this Court's August 3, 2012 Decision dismissing Plaintiff's 502(a)(3) claim in Spears I, a prior action between the same parties alleging the same operative facts, is res judicata with respect to Plaintiff's breach of fiduciary duty claim and with respect to her claims against UTC in Spears II. (<u>Id.</u>, Docket No. 63.) Defendants also moved to dismiss these claims for failure to state a claim. (<u>Id.</u>) On August 21, 2017, this Court issued an order (1) dismissing Spears II, (2) denying Defendants' Motion to Dismiss the Second Amended Complaint in Spears II as moot, and (3) amending her prior order in Spears I to allow Plaintiff (a) to file a new motion for summary judgment in Spears I stating why as a matter of law she is entitled to the benefits she seeks notwithstanding the Defendants' decision on remand and (b) to file a motion to amend under Fed. R. Civ. P. 15 to the extent she seeks to amend her original

complaint in Spears I. (Civil Action No. 3:11-cv-01807 (VLB), Docket No. 109, Civil No. 3:16-cv-00572 (VLB), Docket Nos. 75, 76.) Plaintiff subsequently filed her Amended Complaint in this action on consent, but without prejudice to Defendants filing a motion to dismiss under Rule 12. (Civil Action No. 3:11-cv-01807 (VLB), Docket No. 110.)

## II.   ARGUMENT

### A.   LEGAL STANDARD.

In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all of the complaint's factual allegations and draws inferences from these allegations in the light most favorable to the plaintiff. However, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (internal citations omitted).

In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.'" Id. (quoting Iqbal, 129 S. Ct. at 1949-50). "At the second step, a court should determine whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (internal quotation marks omitted).

"In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." Tessler v. Paterson, 451 Fed. Appx. 30, 32 (2d Cir. 2011) (internal quotation marks and citations omitted). Therefore, "where a plaintiff does not attach to the complaint or incorporate by reference a document on which it relies and which is integral to the complaint, a defendant may introduce that document as part of a motion attacking the pleadings." Colon v. Town of West Hartford, No.3:00cv168 (AHN), 2001 U.S. Dist. LEXIS 484, at *5 n.1 (D. Conn. Jan. 5, 2001) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991))[8].

---

[8] Unreported case law is attached as Exhibit 17.

- 15 -

**B.   PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS AND HER CLAIMS AGAINST DEFENDANT UTC ARE BARRED BY THE LAW OF THE CASE DOCTRINE.**

Plaintiff's breach of fiduciary duty claims and all claims she has asserted against Defendant UTC are barred by the law of the case doctrine. Under the law of the case doctrine, a determination by the Court at one stage of a proceeding becomes the "law of the case" to be followed in successive stages of the same litigation, thus ensuring "the orderly progress of court proceedings." Maryland Casualty Co. v. W.R. Grace & Co., 1994 U.S. Dist. LEXIS 15322, at *21 (S.D.N.Y. Oct. 26, 1994). This doctrine has its conceptual underpinnings in "the jurisprudential desire to maintain consistency and avoid reconsideration of matters once decided during the course of a single lawsuit." Scottish Air. Intern. v. British Caledonian Group, 152 F.R.D. 18, 24 (S.D.N.Y. 1993) (citations omitted); see also Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131, 135 (2d Cir. 1956) ("[T]here is no imperative duty to follow the earlier ruling - only the desirability that suitors shall, so far as possible, have reliable guidance how to conduct their affairs."). The law of the case doctrine is discretionary and a court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009) (citation omitted). The Supreme Court has cautioned, however, that "as a rule courts should be loathe to [revisit prior decisions in the case] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest

injustice." <u>Christianson v. Colt Indus. Operating Corp</u>., 486 U.S. 800, 816, 108 S. Ct. 2166 (1988) (citation omitted).

A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995); <u>see also</u> <u>Lego A/S v. Best-Lock Const. Toys, Inc.</u>, 2013 U.S. Dist. LEXIS 56371, at *6-7 (D. Conn. Apr. 15, 2013) ("A motion for reconsideration is not simply a second bite at the apple for a party dissatisfied with a court's ruling." (citation omitted)). "Furthermore, unless the movant makes a showing of manifest injustice, courts generally refuse to consider new arguments made on reconsideration that could have been made in the prior proceedings." <u>Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd.</u>, 2016 U.S. Dist. LEXIS 100352, *15-16 (E.D.N.Y. July 30, 2016) (citing <u>StreetEasy, Inc. v. Chertok</u>, 651 Fed. Appx. 37, 2016 U.S. App. LEXIS 10235 (2d Cir. June 7, 2016) (Summary Order) ("No manifest injustice would result from declining to consider Chertok's new argument or depart from the law of the case . . . . Under these circumstances, we will not exercise our discretion to consider this waived argument or depart from the law of the case."); <u>Hom v. Brennan</u>, 840 F. Supp. 2d 576, 581 (E.D.N.Y. 2011) ("[A] motion for reconsideration 'is not to be used as a means to reargue matters already argued and disposed of by prior rulings or to put forward additional arguments which it could have made but neglected to make before judgment.'").

The question at issue here is a simple one, whether this Court's August, 3, 2012 Decision dismissing Plaintiff's claims against Defendant UTC and

dismissing her original breach of fiduciary duty claim under ERISA Section 502(a)(3) is the law of the case, barring all claims Plaintiff asserted in her Amended Complaint against UTC and all breach of fiduciary duty claims arising out of the denial of her claim for LTD benefits. The answer to this question is "Yes."

> 1. **The Law Of The Case Doctrine Bars Plaintiff's Breach Of Fiduciary Duty Claims.**

Plaintiff's breach of fiduciary duty claim is barred by the law of the case doctrine, because it has already been resolved by this Court's August 3, 2012 Decision and there are no cogent or compelling reasons that would justify reconsideration.

>> a. There has been no intervening change in the law since the Court's August 3, 2012 Decision that would justify reconsideration of that decision.

The Second Circuit's decision in <u>New York State Psychiatric Ass'n v. United Health Group</u>, 798 F.3d 125 (2d Cir. 2015), <u>cert. den. sub. nom.</u> <u>United Health Grp. v. Denbo</u>, 136 S. Ct. 506 (2015), does not require reversal of this Court's August 3, 2012 Decision. Although <u>New York State</u> reversed a district court's dismissal of a 503(a) breach of fiduciary duty claim in an ERISA claim for benefits action, that decision does not dictate a reversal in this action. As a preliminary matter, this Court's August 3, 2012 Decision on Plaintiff's breach of fiduciary duty claim is distinguishable from the district court's decision in <u>New York State</u>. Unlike in <u>New York State</u>, this Court did not hold that relief under § 502(a)(3) would not be "appropriate" because Plaintiff's alleged injuries could be remedied under § 502(a)(1)(B). Indeed, this Court acknowledged, consistent with

- 18 -

the Second Circuit's decision in <u>New York State</u>, "that Second Circuit precedent permits a plaintiff from [sic] seeking relief simultaneously under §§ 502(a)(1)(B) and 502(a)(3)." (Docket No. 22, at 12-13 (citing <u>Devlin v. Empire Blue Cross & Blue Shield</u>, 274 F.3d 76, 89 (2d Cir. 2001) (holding that the Supreme Court's decision in <u>Varity Corp. v. Howe</u>, 516 U.S. 489, 515 (1996), did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty")).

Instead, this Court's August, 3, 2012 Decision focused on the nature of Plaintiff's allegations and the relief she sought. In her Original Complaint in Spears I, Plaintiff alleged that the Plan's statements regarding the "seamless transition between Sick Pay, STD and LTD payments" are "false and misleading as applied to Spears" and that "Defendants should be enjoined from acts which violate ERISA." (Docket No. 1, ¶¶ 7, 40.) She sought a declaration and decree that Plaintiff was "entitled to ongoing Plan benefits as calculated under the terms of the Plan," restitution "in the amount of any losses sustained by [Plaintiff] in consequence of the [Defendants'] wrongful conduct," reformation of "the Plan to remedy false or misleading information," and an order estopping "defendants' from denying benefits." (<u>Id.</u>, pp.12-13.). In this Court's August 3, 2012 Decision, the Court "agree[d] with Defendants that the language in the SPD that the goal of the Plan is to 'facilitate a seamless transition between Sick Pay, STD and LTD payments' is not false or misleading as Plaintiff contend[ed]" and held that "Plaintiff has failed to allege sufficient factual content that plausibly gives rise to an entitlement to equitable relief such as reformation under <u>Amara</u>." (Docket No.

22, at 13.) The Court also held that "the Complaint cannot be read fairly to assert a claim of estoppel, detrimental reliance or any other equitable claim upon which reformation would lie." (Id. at 13-14.)

Moreover, this Court's August, 3, 2012 Decision dismissing Plaintiff's 502(a)(3) breach of fiduciary duty claim is consistent with the Second Circuit's decision in Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005), which remains sound precedent after New York State. Indeed, the New York State Court specifically distinguished its decision in Nechis from its decision in New York State. In doing so, it stated that the relief sought in New York State "is to be distinguished from the relief sought in Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005), where we affirmed a dismissal of the plaintiff's § 502(a)(3) claims because it was clear that 'any harm to [the plaintiff could] be compensated by money damages' entirely and she '[could not] satisfy the conditions required for injunctive relief.'"[9] New York State Psychiatric Ass'n, 798 F.3d at 135 (citing

_____

[9] The Second Circuit then went on to discuss the remedies requested in the plaintiffs' complaint in New York State, as follows:

Based on our review of the amended complaint, Denbo appears to request monetary compensation for any losses resulting from United's violations of the Parity Act and ERISA, and declaratory and injunctive relief prohibiting United from violating the Parity Act and ERISA in the future. These forms of relief "closely resemble[]" the traditional equitable remedies of injunctive relief and surcharge. But the amended complaint is not altogether clear about the source of Denbo's monetary losses. If Denbo seeks true equitable relief-- such as losses flowing from United's breach of fiduciary duty--the relief sought would "resemble[]" the remedy of surcharge, and would therefore be available to him under § 502(a)(3), ERISA's provision for equitable remedies. If, on the other hand, the relief Denbo seeks is merely monetary compensation resembling legal damages--such as compensation that would neither redress a loss flowing from

Nechis, 421 F.3d at 103). For the reasons stated in this Court's August 3, 2012 Decision, Plaintiff's Original Complaint in this action similarly failed to state a claim for equitable relief. (Docket No. 22, at 13-14.)

>    b.    This Court's August 3, 2012 Decision was not clearly erroneous or manifestly unjust.

This Court's August 3, 2012 Decision dismissing Plaintiff's breach of fiduciary claims was not clearly erroneous or manifestly unjust. To be "clearly erroneous," a "prior decision must be 'more than just maybe or probably wrong[.]'" Oneida Indian Nation v. County of Oneida, 214 F.R.D. 83, 98 (N.D.N.Y. Mar. 24, 2003) (quoting Hopwood v. State of Texas, 236 F.3d 256, 273 (5th Cir. 2000)). "Rather a prior decision will not be deemed clearly erroneous unless the court has ''a clear conviction of error' with respect to a point of law on which [the] previous decision was predicated[.]'" Id. (quoting Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp., 1992 U.S. Dist. LEXIS 7721, at *63 (N.D.N.Y. May 23, 1992)). "Succinctly put, the prior decision must be 'dead wrong.'" Id. (quoting Niagara Mohawk Power Corp., 1992 U.S. Dist. LEXIS 7721, at *64).

For the reasons stated in this Court's August 3, 2012 Decision, it correctly determined that Plaintiff's complaint failed to state a claim for equitable relief. Even if that were not the case, however, in light of the nuances involved in

---

United's breach of fiduciary duty nor prevent United's unjust enrichment--the relief sought would be unavailable as an equitable remedy under § 502(a)(3). Of course, the availability of injunctive relief and surcharge does not mean they are necessarily appropriate, and we leave the fashioning of appropriate remedies, if any, to the District Court.

New York State Psychiatric Ass'n, 798 F.3d at 135 (citations omitted).

the Second Circuit's decisions in <u>Nechis</u> and <u>New York State</u>, this Court's August 3, 2012 Decision was clearly not "dead wrong." Consequently, Plaintiff cannot show that the decision was "clearly erroneous" or manifestly unjust. This is particularly true where, as here, Plaintiff failed to seek reconsideration of the Court's August 3, 2012 Decision and failed to reassert her breach of fiduciary duty claims until four years after they were dismissed and almost a year after the Second Circuit issued its <u>New York State</u> decision. The Plaintiff has not articulated any justifiable basis that would excuse this substantial delay. Consequently, it would not be manifestly unjust for this Court to stand by its prior decision.

### 2.   The Law Of The Case Doctrine Bars Plaintiff's Claims Against Defendant UTC.

This Court's August 3, 2012 Decision dismissing Plaintiff's claims against Defendant UTC is the law of the case, barring all claims Plaintiff brought against Defendant UTC in her Amended Complaint. Defendants moved to dismiss UTC from Plaintiff's Original Complaint on the ground that UTC was not a proper party to Plaintiff's claim under either ERISA Section 502(a)(1)(B) or Section 502(a)(3), because it does not control administration of the LTD benefits under the Plan. Instead, Liberty has the sole authority to make claim determinations under the LTD Plan. (Policy, attached hereto as Exhibit 3, at 34 (Liberty000034); SPD, attached hereto as Exhibit 4, at 38 (Liberty002235).) In her twenty-five page opposition brief, Plaintiff argued that UTC was a proper party to her suit to recover LTD benefits because UTC was a fiduciary of the LTD Plan along with Liberty. (Docket No. 20, at 17-20.) This Court rejected Plaintiff's argument on the

grounds that "it is patent from the terms of the LTD Plan and the Plaintiff admits that Liberty had sole discretion to make LTD claim determinations; UTC cannot afford the relief sought and is not a proper party to this claim." (Docket No. 22, at 17.) Plaintiff never sought reconsideration of this Court's dismissal of Defendant UTC, which was supported by Supreme Court and Second Circuit case law, or attempted to amend her complaint to address the deficiencies in her complaint.

> a. No new allegations require reconsideration of this Court's prior decision.

Plaintiff's "new" allegation in her Amended Complaint that UTC "is the Plan Administrator," (Am. Compl. ¶ 6), does not save her claim from dismissal. Although the Second Circuit has not addressed precisely when new evidence will support reconsideration of a decision that is the law of the case, district courts in this Circuit use the following standard:

> [T]he proponent must demonstrate that the newly discovered evidence was neither in his possession nor available upon the exercise of reasonable diligence at the time the interlocutory decision was rendered. The party moving for reconsideration based on the newly discovered evidence must show that (1) the proffered evidence was unavailable despite the exercise of due diligence by the movant in procuring evidentiary support, and (2) manifest injustice will result if the court opts not to reconsider its earlier decision.

Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc., 2016 U.S. Dist. LEXIS 136686, at *53 (E.D.N.Y. Sept. 30, 2016) (citations omitted). "The party moving for reconsideration of a decision that is the law of the case bears the burden of establishing that the new evidence was not previously available." Id. at *53-54. UTC's role with respect to the Plan has not changed since Plaintiff filed her

Original Complaint in this action. UTC is the plan administrator under the express terms of the Summary Plan Description, which has been in effect since October 1, 2006, well before she filed her Original Complaint in Spears I. (SPD, Exhibit 4 hereto, at 1, 38.) Plaintiff simply failed to plead that fact or argue that UTC's role as plan administrator made it a proper party to the action. The law of the case doctrine precludes Plaintiff from making this argument now. She had the opportunity to raise this argument in opposition to Defendants' original motion to dismiss, she failed to do so, and the Court's August 3, 2012 Decision remains binding. E.g., Ill. Union Ins. Co., 2016 U.S. Dist. LEXIS 136686, at *54-56 (E.D.N.Y. Sept. 30, 2016) (denying reconsideration based on new evidence where the evidence existed at the time of the prior decision and plaintiff failed to show that the evidence could not have been discovered through the exercise of reasonable diligence); Prestige Jewelry Int'l v. BK Jewellery HK, No. 11-CV-2930 (LAP), 2015 U.S. Dist. LEXIS 165245, at *5-6 (S.D.N.Y. Oct. 14, 2015) (denying reconsideration based on new evidence where the evidence existed as of the time of the prior decision and "there [was] nothing extraordinary about the methods [p]laintiff used eventually to track down the" new evidence); Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 340 (S.D.N.Y. 2012) (noting that "if the movant had the opportunity to present the evidence or litigate the issue earlier but did not do so, either because of inadvertence or as a strategic maneuver, the Rule 54(b) motion should be denied"). Her new allegation simply comes too late.[10]

---

[10] Although Plaintiff has lost her right of action against Defendant UTC in this

      **b.**    **Plaintiff cannot show that failure to reconsider this Court's prior decision would be manifestly unjust.**

"Manifest injustice sufficient to reconsider a decision that is the law of the case cannot be shown by a party's failure to raise an argument that could have been raised prior to the initial decision." Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc., 2016 U.S. Dist. LEXIS 136686, *56-57 (E.D.N.Y. Sept. 30, 2016) (citing Official Comm'n of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 168 (2d Cir. 2003) (finding that the district court's denial of the plaintiff's motion for reconsideration was not "manifestly unjust" because the basis for reconsideration was an argument that the plaintiff could have raised prior to the district court's summary judgment decision and because the plaintiff was not entitled to "yet another bite at the apple" after it lost the prior summary judgment motion); StreetEasy, Inc. v. Chertok, 651 Fed. Appx. 37, 40, 2016 U.S. App. LEXIS 10235 (2d Cir. 2016) (finding that "[n]o manifest injustice would result from declining to consider [the defendant's] new argument or depart from the law of the case" where the defendant could have raised the argument before the original order)). Plaintiff's only argument for reconsidering this Court's August 3, 2012 Decision dismissing UTC from this action is that UTC is the plan administrator under the terms of the Plan. As this argument was

---

matter, she retains a right of action against both Liberty and the Plan and therefore retains a viable claim. To the extent that Plaintiff feels she would somehow be prejudiced by the dismissal of Defendant UTC from this action, her action lies against her counsel, not UTC. If a plaintiff is harmed by her counsel's lack of diligence, the Supreme Court has long held that clients in civil litigation "must be held accountable for the acts and omissions of their attorneys." Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 396 (1993); see also In re Enron Corp., 419 F.3d 115, 122 (2d Cir. 2005) (recognizing that the Second Circuit has "'taken a hard line' in applying the Pioneer test.").

available to Plaintiff at the time she opposed Defendants' original motion to dismiss in this action, she cannot establish that denying reconsideration of the August 3, 2012 Decision would result in manifest injustice. Id. It would not be "manifestly unjust" to let the Court's August 3, 2012 Decision stand, because Defendant UTC "should not be required to respond to new arguments now." Analytical Surveys, Inc. v. Tonga Partners, L.P., 2009 U.S. Dist. LEXIS 45402, at *11-12 (S.D.N.Y. May 28, 2009), aff'd, 684 F.3d 36 (2d Cir. 2012), cert. denied, 133 S. Ct. 1805 (2013). Indeed, allowing reconsideration now "would unduly undermine [Defendant UTC's] compelling interest in finality" and UTC, rather than Plaintiff, "would suffer a manifest injustice." Id. at 12; see also Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52-53 (2d Cir. 2012) (finding that the trial court had not abused its discretion in denying plaintiff's motion for reconsideration given that the appellant had not called its present legal argument to the court's attention before it granted summary judgment). "Just as a court cannot be said to have overlooked controlling facts or law that were not raised to it before the motion for reconsideration, rarely if ever will a ruling be manifestly unjust or constitute clear error if the basis for reconsideration was not manifest to the court and the other side until the losing party raised it after the ruling." In re Coudert Bros. LLP, 2013 Bankr. LEXIS 3360, at *38 (Bankr. S.D.N.Y. Aug. 19, 2013), aff'd, 2014 U.S. Dist. LEXIS 185145 (S.D.N.Y, Sept. 19, 2014).

**C.    PLAINTIFF'S BREACH OF FIDUCIARY DUTY CLAIMS AND HER CLAIMS AGAINST DEFENDANT UTC FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

**1.    Plaintiff's Breach Of Fiduciary Duty Claims Fail To State A Claim Upon Which Relief Can Be Granted.**

Plaintiff's Amended Complaint fails to state a claim under Section 502(a)(3) of ERISA because all of the relief Plaintiff seeks is legal in nature. In her Amended Complaint, Plaintiff asks the Court to "[d]eclare, adjudge, and decree that Spears is entitled to Plan benefits," award her "the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law," costs and reasonable attorney's fees, grant her "equitable remedies, including, but not limited to, restitution, disgorgement of profits made by withholding benefits, surcharge, reformation and injunction," and "[a]ward such other relief as the Court deems just, reasonable or equitable." (Am. Compl., Docket No. 110, p. 16.) It is clear from the allegations in her Amended Complaint that what Plaintiff seeks is nothing more than legal remedies.

It is clear from the allegations in Plaintiff's Amended Complaint that Plaintiff is "seek[ing], in essence, to impose personal liability on [defendants] for a contractual obligation to pay money—relief that was not typically available in equity[,]" Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002)—and, thus, that any harm to Plaintiff can be entirely compensated by monetary damages. "Under [the Supreme Court's] precedents, whether the remedy a plaintiff seeks is legal or equitable depends on (1) the basis for the plaintiff's claim and (2) the nature of the underlying remedies

sought." **Montanile v. Bd. of Trustees of Nat'l Elevator Indus. Health Benefit Plan**, 136 S. Ct. 651, 657 (2016) (quotations, alterations and citation omitted). "Almost invariably[,] suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." **Great-West**, 534 U.S. at 210, 122 S. Ct. 708 (quotations, alterations and citation omitted). "And money damages are, of course, the classic form of legal relief." **Id.** (quotations, brackets, emphasis and citation omitted).

Plaintiff's claim for unpaid benefits, prejudgment interest, costs and attorney's fees are all legal remedies provided by ERISA Section 502(g). 29 U.S.C. § 1132(g)(1). Although Plaintiff does not specify what form of injunction might be appropriate in this case, it is clear from the allegations in the complaint and the documents cited therein that the only possible injunction Plaintiff seeks is an injunction to pay past due benefits in accordance with the terms of the Plan. Indeed, Plaintiff returned to work in August 2014. (Am. Compl. ¶ 15; June 16, 2016 denial letter, attached hereto as Exhibit 14, at 14, 15.) Consequently, she cannot possibly be seeking to enjoin future conduct. "[A]n injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity[,]" **Great-West**, 534 U.S. at 210-211, 122 S. Ct. 708, and, thus, does not constitute appropriate equitable relief under Section 502(a)(3) of ERISA. See **Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.**, 771 F.3d 150, 153-

55 (2d Cir. 2014), <u>cert. denied</u>, 135 S. Ct. 1847, 191 L. Ed. 2d 725 (2015).

Although reformation could be an equitable remedy under appropriate circumstances, Plaintiff has failed to identify how the Plan in this instance could be reformed to remedy any harm to Plaintiff. In her Original Complaint in Spears I, Plaintiff sought reformation of "the Plan to remedy false or misleading information." (Docket No. 1, at 12.) As she did in her original complaint in Spears I, Plaintiff now alleges in her Amended Complaint that the Plan's statements regarding the "seamless transition between Sick Pay, STD and LTD payments" are "false and misleading as applied to Spears." (Am. Compl. ¶ 7.) This language, however, is not false or misleading. The "seamless transition" language does not guarantee beneficiaries under the Plan a seamless transition between STD and LTD payments but is rather an aspirational statement that provides no assurance, promise or otherwise enforceable agreement that a seamless transition will actually occur. Indeed, even Plaintiff does not dispute that someone who is not disabled under the terms of the Plan is not entitled to continuous STD and LTD payments. (<u>Id.</u> ¶¶ 28-29 (discussing the Plan's definition of disability and asserting that Plaintiff met that definition).) Since the "seamless transition" language is not false or misleading, Plaintiff has failed to allege sufficient factual content that plausibly gives rise to an entitlement to equitable relief such as reformation. <u>See</u> <u>Nechis v. Oxford Health Plans, Inc</u>., 421 F.3d 96, 103 (2d Cir. 2005) (holding that plaintiff's claim for reformation was insufficient to support a claim for equitable relief under Section 502(a)(3) where plaintiff failed to "specify the context of the requested reformation" or "allege a basis for

reformation such as fraud, mutual mistake or terms violative of ERISA").

Plaintiff's claims for restitution, disgorgement of profits, and surcharge are legal remedies not subject to relief under 502(a)(3). Construing Great-West Life & Annuity, the Second Circuit recently adopted a bright-line rule to distinguish equitable and legal monetary claims. In Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co., the court noted that "the key factor" in determining whether a claim was legal or equitable is "whether a claimant was seeking restitution from a defendant's general funds, in which case the claim was legal, or whether a claimant was seeking to recover money that could be traced to a particular fund held by a defendant, in which case the claim was equitable." 771 F.3d 150, 155 (2d Cir. 2014). The Central States Court held that the relief sought by the plaintiffs in that case "is not equitable because it does not assert title or right to possession of particular property, but simply asserts a claim against [the defendant's] general assets." Cent. States, 771 F.3d at 155. Consequently, the Central States plaintiffs could not recover on that theory. Id. In this case, Plaintiff likewise asserts a claim for equitable monetary relief against the Plan's or Liberty's general assets; there is no indication that she seeks money that could be traced to specific property. Thus, Plaintiff's claim for money under an equitable theory is legal in nature and unavailable under Section 502(a)(3), regardless of the label she places on it.

Finally, Plaintiff's claim for "such other relief as the Court deems just, reasonable or equitable," (Am. Compl., Docket No. 110, p. 16), is "insufficient to assert a proper equitable claim under § 502(a)(3)." Hall v. Kodak Ret. Income

<u>Plan</u>, 363 F. App'x 103, 107 (2d Cir. Feb. 1, 2010) (summary order) (holding that "a claim for 'unspecified' relief, where the gravamen of the complaint is a claim for damages and other monetary relief owing under a contractual obligation, is insufficient to assert a proper equitable claim under § 502(a)(3)" (quotations and citation omitted)).

"Since both the basis for [Plaintiff's] claim and the particular remedy sought [are] not equitable, . . . [Plaintiff] [can]not sue under § 502(a)(3)."[11] <u>Montanile</u>, 136 S. Ct. at 657; <u>see also</u> <u>Nechis</u>, 421 F.3d at 102-04 (affirming dismissal of 502(a)(3) claim where plaintiff failed to show that the relief she sought was equitable in nature). Accordingly, Plaintiff's Section 502(a)(3) ERISA claim fails to state a claim upon which relief can be granted and must be dismissed.

---

[11] This case is distinguishable from <u>New York State</u>, 798 F.3d at 134-35, where the court stated that when "a plan participant brings suit against a 'plan fiduciary (whom ERISA typically treats as a trustee)' for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with 'surcharge'—'monetary 'compensation' for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment'—constitutes equitable relief under § 502(a)(3)." In <u>New York State</u>, the plaintiff sought to enjoin the defendant from treating medical claims more favorably than psychiatric claims in violation of the Mental Health Parity and Addiction Equity Act of 2008 and plan language. The Court held that, "to the extent [the plaintiff] seeks redress for [defendant's] past breaches of fiduciary duty or seeks to enjoin [defendant] from committing future breaches, the relief sought would count as 'equitable relief' under § 502(a)(3)." <u>Id.</u> at 135. <u>New York State</u>, unlike here, involved a plan interpretation issue as to which the court could enjoin future conduct. No such equitable remedy is possible here.

2.     **Plaintiff Fails To State A Claim For Breach Of Fiduciary Duty Against UTC.**

Plaintiff fails to state a claim for breach of fiduciary duty against Defendant UTC. In her Amended Complaint, Plaintiff alleges that "Defendants," collectively, breached their fiduciary duties by:

(1)     Failing to do the following:

    a.     Perform a physical examination of Spears;

    b.     Perform a functional capacity examinations or vocational tests on Spears;

    c.     Be persuaded by the findings of the Social Security Administration;

    d.     Consider the arguments Spears made in her appeals;

    e.     Consider all of the evidence in the claim file;

    f.     Properly seek out and investigate her claims;

    g.     Provide a timely peer review report or allow Spears a reasonable time to respond to that report;

    h.     Provide a timely decision on the claim on remand; or

    i.     Pay Spears' claim for benefits and

(2)     Conducting a selective review of the evidence.

(Am. Compl. ¶¶ 29-34.) Plaintiff fails to allege that UTC actually engaged in any of this activity or even had the power to do so under the terms of the Plan or Policy. To the contrary, the specific factual allegations of the Amended Complaint, and the documents incorporated therein by reference, establish concretely that UTC

had no discretionary authority with respect to Plaintiff's claim and appeal for benefits and that UTC was not involved in Plaintiff's LTD claim and appeal determinations. Consequently, UTC was not acting as a fiduciary of the Plan as a matter of law.

"Under ERISA, a person or corporation is a plan fiduciary 'to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or . . . he has any discretionary authority or responsibility in the administration of such plan.'" Flanigan v. General Elec. Co., 242 F.3d 78, 87 (2d Cir. 2001) (citing 29 U.S.C. § 1002(21)(A)); see also 29 C.F.R. § 2509.75-8 ("persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures . . . perform[] purely ministerial functions" and are not fiduciaries); Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989) (holding that individual defendants were not fiduciaries because they lacked discretion). Courts evaluate whether someone is a fiduciary under ERISA based upon the "function performed, rather than on the title held." Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir. 1987). That is to say, "ERISA's definition is functional." LoPresti v. Terwilliger, 126 F.3d 34, 40 (2d Cir. 1997) (internal citation omitted). This functional definition "allocates liability for plan-related misdeeds in reasonable proportion to respective actors' power to control and prevent the misdeeds." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993). "Under this definition, a

person . . . has [fiduciary] status only to the extent that he has or exercises the described authority or responsibility." <u>Flanigan</u>, 242 F.3d at 87.

As alleged in Plaintiff's Amended Complaint, "[t]he LTD plan is fully insured by Liberty" and Liberty "agrees to pay covered claims for qualifying disabilities in accordance with Plan provisions." (Am. Compl. ¶ 5.) According to the explicit terms of the Policy, Liberty "possess[es] the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of th[e] policy and benefit eligibility shall be conclusive and binding." (Policy, attached hereto as Exhibit 3, at 34 (Liberty000034).) The Plan, in turn, specifically "delegate[s] responsibility to Liberty for determination of eligibility for Sick Pay, STD and LTD benefits, including discretionary authority to interpret and construe the terms and provisions of the plan and to direct disbursement." (SPD, attached hereto as Exhibit 4, at 38 (Liberty002235.) As UTC has no discretion or authority with respect to Plaintiff's claim for LTD benefits, it was not acting as a fiduciary under ERISA with respect to that claim.

Consistent with the Plan's terms, Liberty administered Plaintiff's claim and appeal for benefits, not UTC. Liberty initially denied Plaintiff's claim for LTD benefits in early 2009. (Am. Compl. ¶ 17.) By letter dated October 1, 2009, Plaintiff appealed Liberty's benefit determination to Liberty. (<u>Id.</u> ¶ 22; October 1, 2009 appeal letter[12], Exhibit 5 hereto.) Liberty denied Plaintiff's appeal by letter

---

[12] Plaintiff's Amended Complaint refers to the October 1, 2009 letter in paragraph 22.

dated January 29, 2010. (Am. Compl. ¶ 22; January 29, 2010 denial letter[13], Exhibit 6 hereto.) Liberty denied Plaintiff's second appeal by letter dated May 13, 2010. (Am. Compl. ¶ 22; May 13, 2010 appeal denial letter[14], Exhibit 7 hereto.) By letter dated June 18, 2010, Liberty granted Plaintiff's counsel an additional extension to August 31, 2010 to provide any and all additional evidence in support of Plaintiff's appeal. (Am. Compl. ¶ 22; June 18, 2010 letter[15], Exhibit 8 hereto.) Plaintiff provided that information to Liberty by letter dated August 21, 2010. (Am. Compl. ¶ 22; August 21, 2010 appeal letter[16], Exhibit 9 hereto.) By letter dated November 16, 2010, Liberty denied Plaintiff's third appeal of her LTD benefits claim. (Am. Compl. ¶ 24; November 16, 2010 appeal denial letter[17], Exhibit 10 hereto.) By letter dated May 9, 2011, Plaintiff submitted a fourth appeal to Liberty with respect to the denial of her claim for LTD benefits. (Am. Compl. ¶ 24; May 9, 2011 appeal letter[18], Exhibit 11 hereto.) Liberty denied that appeal by letter dated June 15, 2011. (Am. Compl. ¶ 24; June 15, 2011 appeal denial letter[19], Exhibit 12 hereto.)

Although Plaintiff makes the generalized assertion that UTC "was involved in the disability determination decision," (Am. Compl. ¶ 23), that allegation is not supported by any facts in the Amended Complaint. Instead,

---

[13] Plaintiff's Amended Complaint refers to the January 29, 2010 letter in paragraph 22.

[14] Plaintiff's Amended Complaint refers to the May 13, 2010 letter in paragraph 22.

[15] Plaintiff's Amended Complaint refers to the June 18, 2010 letter in paragraph 22.

[16] Plaintiff's Amended Complaint refers to the August 21, 2010 letter in paragraph 22.

[17] Plaintiff's Amended Complaint refers to the November 16, 2010 letter in paragraph 24.

[18] Plaintiff's Amended Complaint refers to the May 9, 2011 letter in paragraph 26.

[19] Plaintiff's Amended Complaint refers to the June 15, 2011 letter in paragraph 27.

Plaintiff simply alleges that UTC asked Liberty to override its STD decision, issue STD benefits through the end of the STD period, and make an LTD determination and that Liberty did so. (Id.) UTC's request that Liberty pay out the remainder of Plaintiff's STD benefits under its self-funded STD plan provides no support for Plaintiff's bald assertion that UTC was involved in the LTD disability determination under a fully insured disability policy as to which Liberty retained sole and complete discretion. Indeed, it is clear from the allegations in the Amended Complaint that UTC did not make the LTD determination. Instead, UTC simply asked Liberty to make that determination. (Id.)

All Plaintiff is left with is her allegation that UTC breached its fiduciary duty to her by failing to properly oversee Liberty's handling of her claim and additional voluntary review on remand and ensure a timely decision. (Am. Compl. ¶¶ 32, 35.) In support of this allegation, Plaintiff relies on 29 U.S.C. § 1105 and 29 C.F.R. § 2509.75-8. (Id.) Nothing in either 29 U.S.C. § 1105 or 29 C.F.R. § 2509.75-8, however, requires a plan administrator to insert itself into individual claim determinations made by a third-party claim administrator. Indeed, it would not make sense for a plan administrator to do so. "A plan administrator hires a claims administrator to streamline benefits review and add expertise to a process that can impose burdensome requirements. Requiring a plan administrator to duplicate the claim administrator's efforts [by reviewing each individual claim] would negate many of the benefits of hiring a third-party expert." Waldoch v. Medtronic, Inc., 757 F.3d 822, 832 (8th Cir. 2014).

Furthermore, it is clear from the language of 29 U.S.C. § 1105 that, if a plan expressly provides for the allocation of fiduciary responsibilities, the named fiduciary "shall not be liable for an act or omission of such person in carrying out such responsibility," unless the fiduciary breached its fiduciary duties in establishing or implementing that designation. 29 U.S.C. § 1105(c). The Plan clearly delegates to Liberty the sole discretion to make determinations of benefit eligibility, and Plaintiff does not allege any breach of fiduciary duty in that delegation. (SPD, attached hereto in Exhibit 4 at 2, 39 (Liberty002199, Liberty002236); Policy, Exhibit 3 hereto, at 34 (Liberty000034).)   Consequently, UTC is exempted from fiduciary liability under 29 U.S.C. § 1105(c), unless it participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach, or it has knowledge of a breach by such other fiduciary. 29 U.S.C. § 1105(a),(c).

Similarly, 29 C.F.R. § 2509.75-8 provides that a plan fiduciary may rely on "information, data, statistics or analyses provided by other persons," as long "he has exercised prudence in the selection and retention of such persons." "The plan fiduciary will be deemed to have acted prudently in such selection and retention if, in the exercise of ordinary care in such situation, he has no reason to doubt the competence, integrity or responsibility of such persons." Id. Plaintiff has failed to allege that UTC failed to act prudently in selecting Liberty as the Plan's claim administrator. Thus, there are no allegations from which this Court could conclude that UTC breached its fiduciary duty by relying upon Liberty, a professional claims administrator, as provided for in the LTD Plan.

Finally, even if UTC could be liable as a co-fiduciary, Plaintiff has failed to allege that UTC had any knowledge of Liberty's purported failure to make a timely decision. Indeed, it appears that neither Plaintiff's January 12, 2016 request for a determination, nor Liberty's June 16, 2016 denial letter, nor Plaintiff's July 13, 2016 appeal[20] was ever sent to UTC. <u>See</u> Exhibits 13-15 hereto. Consequently, Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against Defendant UTC, and this Court should dismiss Plaintiff's claims against Defendant UTC.

## III.   <u>CONCLUSION</u>

For the foregoing reasons and authorities, Defendants respectfully request that the Court dismiss with prejudice Plaintiff's Amended Complaint to the extent that it alleges a claim for breach of fiduciary duty and to dismiss Defendant UTC from the Amended Complaint.

---

[20] Plaintiff's January 12, 2016 request for a determination, Liberty's June 16, 2016 denial letter, and Plaintiff's July 13, 2016 appeal are referenced in paragraphs 32-33 of the Amended Complaint.

**DEFENDANTS, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, UNITED TECHNOLOGIES CORPORATION AND THE GROUP LIFE INSURANCE AND DISABILITY PLAN OF UNITED TECHNOLOGIES CORPORATION a/k/a THE UTC CHOICE INTEGRATED DISABILITY BENEFIT PROGRAM**

**By:**      **/s/ Sarah C. Baskin**
    **Beverly W. Garofalo (ct11439)**
    **Sarah C. Baskin (ct 13570)**
    **Jackson Lewis PC**
    **90 State House Square, 8th Floor**
    **Hartford, CT  06103**
    **Tel. (860) 522-0404**
    **Fax (860) 247-1330**
    **Email: garofalob@jacksonlewis.com**
    **Email: baskins@jacksonlewis.com**

## CERTIFICATION OF SERVICE

I hereby certify that on September 13, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

/s/ Sarah C. Baskin_____
Sarah C. Baskin