# EXHIBIT 1

UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

_____
                                 :

**HALEY SPEARS**               :
      **Plaintiff,**         :
                           :      **Civil No. 3:16-cv-00572 (VLB)**
**v.**                      :
                           :
**LIBERTY LIFE ASSURANCE**  :
**COMPANY OF BOSTON, UNITED**  :
**TECHNOLOGIES CORPORATION,**  :
**AND THE GROUP LIFE INSURANCE**  :
**AND DISABILITY PLAN OF UNITED**  :
**TECHNOLOGIES CORPORATION**  :
**a/k/a THE UTC CHOICE INTEGRATED** :
**DISABILITY BENEFIT PROGRAM**  :
      **Defendants.**        :      **September 13, 2017**
_____:

## TABLE OF CONTENTS

**Exhibit 1:**    **Table of Contents**

**Exhibit 2:**    **Complaint, Civil Action No. 3:11-cv-01807 (VLB), Docket No. 1**

**Exhibit 3:**    **Policy**

**Exhibit 4:**    **Summary Plan Description dated October 1, 2006**

**Exhibit 5:**    **October 1, 2009 appeal letter**

**Exhibit 6:**    **January 29, 2010 denial letter**

**Exhibit 7:**    **May 13, 2010 appeal denial letter**

**Exhibit 8:**    **June 18, 2010 letter**

**Exhibit 9:**    **August 21, 2010 appeal letter**

**Exhibit 10:**   **November 16, 2010 appeal denial letter**

**Exhibit 11:**   May 9, 2011 appeal letter

**Exhibit 12:**   June 15, 2011 appeal denial letter

**Exhibit 13:**   January 12, 2016 determination request

**Exhibit 14:**   June 16, 2016 remand denial letter

**Exhibit 15:**   July 13, 2016 letter

**Exhibit 16:**   Second Amended Complaint, Civil Action No. 3:11-cv-00572 (VLB), Docket No. 33

**Exhibit 17:**   Unreported cases:

a.   Analytical Surveys, Inc. v. Tonga Partners, L.P., No. 06 Civ. 2692 (KMW)(RLE), 2009 U.S. Dist. LEXIS 45402 (S.D.N.Y. May 28, 2009)

b.   Colon v. Town of West Hartford., No. 3:00-CV-00168 (AHN), 2001 U.S. Dist. LEXIS 484 (D. Conn. Jan. 5, 2001)

c.   Hatteras Enters. v. Forsythe Cosmetic Grp., Ltd., No. 15-CV-5887 (ADS)(ARL), 2016 U.S. Dist. LEXIS 100352 (E.D.N.Y. July 30, 2016)

d.   Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc., No. 13-CV-2466 (MKB), 2016 U.S. Dist. LEXIS 136686 (E.D.N.Y. Sept. 30, 2016)

e.   In re Coudert Bros. LLP, Chapter 11, Case No. 06-12226 (RDD), 2013 Bankr. LEXIS 3360 (Bankr. S.D.N.Y. Aug. 19, 2013).

f.   Lego A/S v. Best-Lock Constr. Toys, Inc., No. 3:11-CV-1586 (CSH), 2013 U.S. Dist. LEXIS 56371, (D. Conn. April 15, 2013)

g.   Maryland Cas. Co. v. W.R. Grace & Co., No. 88 Civ. 2613 (SWK), 1994 U.S. Dist. LEXIS 15322 (S.D.N.Y. Oct. 26, 1994)

h.   Niagara Mohawk Power Corp. v. Stone & Webster Eng'g Corp., No. 88-CV-819, 1992 U.S. Dist. LEXIS 7721 (N.D.N.Y. May 23, 1992)

i.   Prestige Jewelry Int'l v. BK Jewellery HK, No. 11-CV-2930 (LAP), 2015 U.S. Dist. LEXIS 165245 (S.D.N.Y. Oct. 14, 2015)

j.    <u>StreetEasy, Inc. v. Chertok</u>, No. 15-2003, 651 Fed. Appx. 37, 2016 U.S.
      App. LEXIS 10235 (2d Cir. June 7, 2016)


                              **DEFENDANTS, LIBERTY LIFE ASSURANCE
                              COMPANY OF BOSTON, UNITED TECHNOLOGIES
                              CORPORATION AND THE GROUP LIFE
                              INSURANCE AND DISABILITY PLAN OF UNITED
                              TECHNOLOGIES CORPORATION a/k/a THE UTC
                              CHOICE INTEGRATED DISABILITY BENEFIT
                              PROGRAM**

                        **By:    /s/ Sarah C. Baskin**
                              **Beverly W. Garofalo (ct11439)**
                              **Sarah C. Baskin (ct 13570)**
                              **Jackson Lewis PC**
                              **90 State House Square, 8th Floor**
                              **Hartford, CT 06103**
                              **Tel. (860) 522-0404**
                              **Fax (860) 247-1330**
                              **Email: garofalob@jacksonlewis.com**
                              **Email: baskins@jacksonlewis.com**

# EXHIBIT 2

//cv1807comp
"/22

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
2011 NOV 21  P 1: 33

US DISTRICT COURT

Haley Spears

Plaintiff

v.

3·11cv1807 (VLB)

Cam

Liberty Life Assurance Company of Boston;
United Technologies Corporation; The
Group Life Insurance and Disability Plan
Of United Technologies Corporation
aka The UTC Choice Integrated Disability Benefit
Program;                                                                November 18,  2011

Defendants

## COMPLAINT

### Preliminary Statement

Plaintiff, Haley Spears, brings this action against defendants Liberty Life Assurance

Company of Boston ("Liberty"); United Technologies Corporation; The Group Life Insurance

and Disability Plan Of United Technologies Corporation aka The UTC Integrated Disability

Program ("Plan"); (collectively "defendants") for violation of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. §§1001, et seq. ("ERISA"). Haley Spears

("Spears") is a participant in the Plan, an ERISA welfare benefit plan that is underwritten and

insured by United Technologies and Liberty.

This Complaint alleges the following violations of ERISA: 1) Defendants' unlawful

termination of Spears' Plan benefits without presenting any medical evidence supporting its

decision; 2) Defendants' unjustified disregard of the opinions of Spears' treating physicians,

1

vocational consultant, the determination of Liberty and the determination of the Social Security

Administration in an attempt to deprive her of the Plan benefits she is due; and 3) Defendants'

failure to provide a reasonable claims procedure that would yield a decision on the merits of

Spears' claim.

Spears is filing this action to recover benefits under the Plan, to enforce the present rights

existing therein, to clarify rights under the terms of the Plan, and to recover costs and attorney's

fees as provided by ERISA.

**Jurisdiction And Venue**

1.      This action is brought pursuant to ERISA, 29 U.S.C. §1001, et seq.

2.      The jurisdiction of the Court arises under ERISA, §502(e)(2) and (f), 29 U.S.C.

§1132 (e)(2) and (f) without regard to jurisdictional amount or diversity of citizenship, in that the

Plan is administered in this district.

3.      Venue lies in the District under the provisions of 28 U.S.C. §1391(b) and (c) and

29 U.S.C. §1132.

**The Parties**

4.      The plaintiff, Haley Spears, is a resident of West Hartford, Connecticut. She is a

Covered Person under the Plan. She is a former employee of United Technologies Corporation.

She was employed as an Executive Administrative Assistant immediately prior to becoming

disabled.

5.      Liberty Life Assurance Company of Boston is a for-profit corporation with its

principal place of business in Boston, Massachusetts. It transacts business in Connecticut. The

LTD plan is fully insured by Liberty. The policy number is GF3-810-258966-016. All premiums

are paid to Liberty, who in turn agrees to pay covered claims for qualifying disabilities in

2

accordance with Plan provisions. Claim determinations are made by Liberty. Liberty is the Plan
Administrator for LTD benefits.

6.     The defendant, United Technologies Corporation is a for –profit corporation with
its principal place of business in Hartford, Connecticut. It transacts business in Connecticut.

7.     The defendant,  The Group Life Insurance and Disability Plan Of United
Technologies Corporation aka The UTC Choice Integrated Disability Program ("Plan") transacts
business in Connecticut. It agreed with defendant United Technologies Corporation to pay
covered claims for qualifying disabilities in accordance with contract provisions. It is established
and maintained by United Technologies Corporation. The Plan is designed to pay STD and LTD
benefits. Its goals include: to provide income replacement when the presence of a health
condition supported by medical documentation limits the functional ability of a Plan participant
to do the essential duties of his or her own job; integrate the process of how Sick Pay and STD
benefits are paid and managed; and to facilitate a seamless transition between Sick Pay, STD and
LTD payments. These statements are false and misleading as applied to Spears.

8.     The STD plan is self-insured by United Technologies Corporation. United
Technologies Corporation contracts with Liberty to process claims and pays for these claims and
services out of a designated trust. Claim determinations are made by Liberty. Liberty is the Plan
Administrator for STD benefits.

9.     At all times relevant to the claims asserted in this Complaint, United
Technologies and Liberty  purported to act as ERISA claims fiduciaries with respect to
participants in the Plan, and specifically, with respect to Spears, within the meaning of ERISA.

**Factual Allegations**

    10.    The material duties of Spears' position included: send and edit letters, order supplies for two departments, do internet research, organize executive desks and papers, keep a reference guide book updated, change computer settings and fix office equipment on a basic level. She was responsible for communication with the maintenance department. She communicated verbally and by e- mail. Accuracy was essential. She processed expense reports by entering data into the computer, filed documents, and made travel arrangements. She processed invoices and followed through to ensure that they were paid. She generated briefing material for senior level meetings. She completed internal and external training to better understand United Technologies Corporation business practices and company objectives.

    11.    Spears sat at a desk for most of the day, but was often on her feet. Some days, she would need to walk to another part of the building. She was back and forth during the day. Her department was spread out on three floors, and on occasion she was up and down. At times she picked up packages, which weighed up to 25 lbs. She lifted files and boxes of printer paper. She was required to bend down to get files or supplies. Sometimes she had to squat. She was required to reach over her head. It was an active and busy job. She was required to be able to concentrate and focus on her job all the time. The job was fast paced. She needed to be alert. There was no room for error. When her boss gave her assignments, she needed to pay attention, grasp the assignment immediately, and complete it in a timely manner. She provided support for over twenty people. There was no sit stand option. She was required to sit when typing.

    12.    Spears started to feel sick about 2008. She started taking sick days. She was in and out of work with different symptoms. She had fevers. She had night sweats. She developed respiratory problems. She was coughing at work. Her co-workers noticed this. Her boss

encouraged her to go back to the doctor. She had asthma symptoms. She was put on prednisone and other medications. She started having migraines. These symptoms became debilitating in the summer of 2008. This led to more time out of work. She went to the St. Francis Hospital emergency room for migraines. She had a CT scan. The doctors told her that she needed an MRI. She had an MRI.

13.     By the summer of 2008, Spears could not do her job. She had migraines, blurry vision, inability to focus. She could not think straight. She had memory problems. She had a hard time comprehending what her boss wanted her to do. She would sit and stare. She was in a daze. She could not understand what was wrong. This was out of character for her. Her employer put her on short term disability. Spears stopped working in September 2008 and applied for STD from the Plan. Defendants granted benefits effective September 27, 2008. The definition of disability for the purpose of STD is:

> You have a covered disability under the Integrated Sick Pay/STD plan if, due to a medical condition related to an illness, injury or surgery you meet the following conditions:
>
> You are unable to perform the material and substantial duties of your current or a similar job for more than 5 consecutive scheduled workdays:
>
> Your physician provides medical evidence to support his or her assessment of your medical condition.

14.  Spears discussed her condition with a representative of defendants. The representative assured Spears that, if she tried to go back to work part time, and could not sustain work, that her claim would still be open, and she could still collect STD if she contacted defendants with updated information. Spears tried to go back to work part time in January 2009. That lasted a few months. She could not perform her job during that time. She could not focus, even with lessened responsibilities. The temp who was there in Spears' absence did Spears' job

5

after Spears returned. Spears was given simpler responsibilities, but she could not do these
effectively and timely. She was in and out of work because of doctor appointments. She had a
spinal tap which had complications of a spinal leak. It was challenging for her to try to transfer a
phone call. She felt nauseous during work. She had blurred and disturbed vision.

15.     A February 2, 2009 test was positive for antibodies for Borrelia burdorferi IgM,
WB. In 2009 the pain was constant. Spears tried to mask her symptoms. She covered up the IV
in her arm by wearing long sleeves. One of Spears' bosses said he was concerned about her
health. Spears was too sick to work. Defendants approved her STD claim through February 8,
2009. On February 9, 2009, treating physician Barbara Kage, M.D., restricted her to four hours
of work a day, mornings only. Her employer's medical department cleared her to return to work
four hours a day, light duty, no bending, twisting, or lifting. Spears worked part time, with
restrictions, through March 23, 2009. She then stopped work due to her health condition, and
has not returned to work.

16.     From the time Spears left work to the present, she has seen many doctors and has
received numerous diagnoses which include: daily tension headaches, frequent migraines with
aura, history of blackouts, encephalopathy, asthma, colitis, peptic ulcer disease, insomnia,
abdominal pain, diarrhea, gastritis, gastroduodenitis, regional enteritis of the large intestine,
nausea, elevated serum LDH level/abnormal LFT, Crohn's disease, lymphocytic colitis, rectal
hemorrhage, lumbago, systemic lupus erythematosus, Raynaud's Syndrome, nonspecific skin
eruptions, immune mechanism DIS NOS, joint effusion-hand, reflux esophagitis, sicca
syndrome, fatty liver, thyroid cyst, plantar fasciitis, consider demyelinating disorders,
multinodular goiter, Hashimoto's thyroiditis, low attenuation changes in the white matter of the
right temporal lobe of the brain which may represent gliosis or edema, lobulated lesion in the

6

white matter of the right temporal lobe of the brain which may represent inactive demyelinating plaque, cervicalgia, straightening of the normal cervical lordosis, fatigue, rare independent polymorphic delta slowing in both temporal regions, single borderline right frontotemporal sharp wave on EEG that raises a question of potential epileptogenicity, Borrelia bugdorferi IgG and Lyme Disease. She cannot do her past job, or any other job now. She is not reliable. She cannot work a consistent work week. Her illness is very unpredictable.

17.     LTD benefits were first denied on January 30, 2009, as defendants wrote that the LTD elimination period was not met. In May 2009 defendants denied STD beyond February 8, 2009 on the ground that "the available records do not support any restrictions and limitations or impairment precluding you from performing the duties of your job as administrative support during the period of February 9, 2009 through the present date."

18.     In June 2009, treating physician Bernard Raxlen, M.D. wrote that Spears was diagnosed with Borreliosis (Lyme disease) and multiple co-infections. He wrote that, because of her condition, she was not able to work full time or part time, and that disability leave was medically necessary.

19.     In July 2009 infectious disease specialist Sam Donta, M.D., reported that Spears continued to have a PICC line in place, and that symptoms included fatigue, pains, swelling, numbness, headaches, diarrhea, concentration problems, memory problems, balance problems and palpitations. His impression was a chronic multi-symptom illness consistent with a chronic fatigue and fibromyalgia syndrome of longstanding duration that may be due to Lyme Disease in whole or in part.

20.     In August 2009, treating rheumatologist Barbara Kage, M.D., FACR, wrote that she treated Spears for joint and bone pain, neck, shoulder and back pain, muscle weakness and

7

pain, extreme fatigue, neurocognitive deficits, anxiety and sleep disturbances. Dr. Kage wrote

that Spears tested positive for Central Nervous System Lyme Disease with multiple co-

infections. She wrote that, because of her condition, Spears was not able to work full time or

part time, and that disability leave was medically necessary.

21.     In October 2009 treating neurologist Dario Zagar, M.D., wrote that Spears had

minimal improvement in her symptoms, and she continued to have fatigue and cognitive issues

which limit her daily functioning, and she remained unable to work, even on a part-time basis.

22.     In October 2009 Spears appealed the denial and provided additional

documentation including reports from Dr. Zagar, Dr. Raxlen, Dr. Gouin, and Dr. Kage. All

reports stated that Spears was unable to work because of her symptoms. Defendants denied the

appeal in January 2010 on the ground that there was no evidence of impairment, restrictions or

limitations from February 8, 2009 to the present. In May 2010 defendants reiterated their denial.

In June 2010 defendants requested additional evidence from Spears, to include current medical

records and records as of the date benefits ceased, February 8, 2009. Spears provided additional

information, including a vocational expert report, denial by Liberty of life insurance for Spears

on the basis of her poor health, four affidavits, a neuropsychological evaluation, residual

functional capacity reports, Department of Social Services finding that Spears was

unemployable, and numerous medical records. In October 2010, defendants granted the appeal

and reinstated STD benefits through March 27, 2009, the maximum duration for STD benefits.

Benefits were terminated after that date.

23.     In November 2010 defendants denied LTD benefits and referred to its February

2, 2009 denial of LTD benefits. Defendants wrote that impairment precluding Spears from

working was not supported by the medical documentation beyond February 8, 2009. Defendants

8

made this statement even though it had already granted STD benefits through March 27, 2009.
Defendants also wrote that the February 8, 2009 date was prior to the begin date of LTD and
that, therefore, Spears did not satisfy the elimination period. Defendants also referred to a
September 27, 2010 peer review report that it relied upon for its denial. Defendants did not
supply this document to Spears.

24.     The Social Security Administration granted Spears' request for disability benefits
on February 25, 2011 with an onset date of August 31, 2008. The Administrative Law Judge
found that the part-time work after that date was an unsuccessful work attempt. He found that
chronic neurologic Lyme disease with co-infections of chronic Babesiosis and Bartonella were
severe impairments. The Judge found that Spears was disabled and could not work because she
required frequent unscheduled breaks and absences of an unpredictable duration.

25.     In May 2011 Spears appealed the termination of Plan benefits, submitting her
Fully Favorable Social Security disability decision, medical journal articles, and numerous
medical records and reports. Spears requested that the September 27, 2010 peer review report be
provided to her, and that the record be held open so that she could respond to the report.

26.     In June 2011 defendants denied the appeal for additional Plan benefits on the
ground that she "has not provided medical evidence to support Disability throughout the
Elimination Period." Defendants provided a copy of the September 27, 2010 peer review report
with its June 2011 denial, but did not allow Spears any additional time to respond to the report.

27.     The Plan defines "Covered Disability" for LTD benefits as follows:

You are considered disabled under the LTD Plan if, solely because of Injury or Sickness,
you are unable to perform all of the material and substantial duties of your Own
Occupation.

9

After LTD Disability Benefits have been payable for 24 months, you are considered disabled if, solely due to injury or illness, you are unable to perform all of the material and substantial duties of Any Occupation.

28.     "Any occupation" is defined by the Plan as

any occupation for which you are reasonably fitted based on your training, education, experience, age, physical and mental capacity and the salary of which is at least 80% of your covered earnings.

29.     At all relevant times, Spears was disabled under both the STD and LTD definitions of disability. At no time have defendants or any entity acting under its direction or on its behalf performed any physical examinations, functional capacity examinations or vocational tests on Spears in an attempt to obtain evidence which would support its argument that she is able to perform her job. Defendants should be persuaded by the findings of the Social Security Administration, because the definition of "disability" in Social Security cases is much more stringent than defendants' definition of "disability."

30.     Termination of Spears' benefits by defendants was arbitrary, capricious and erroneous. There is an arbitrary and capricious discrepancy between defendants' basis for denial and the evidence submitted to defendants. Defendants failed to consider the arguments Spears made in her appeals, failed to consider all of the evidence in the claim file, conducted a selective review of the evidence and did not fulfill its fiduciary obligation to properly seek out and investigate her claims. Spears has exhausted all administrative remedies provided in the Plan for its denial of benefits.

31.     Defendants have an inherent conflict of interest in that the Plan Administrator both evaluates claims for LTD benefits and pays LTD benefits claims. Defendants showed bias in administering the Plan as they failed to provide fair process to Spears, in that they failed to

10

timely provide the peer review report on which it relied, and refused to allow Spears a reasonable time to respond to the report.

32.  Defendants' arbitrary and capricious failure to grant Spears' benefit appeal while failing to conduct a full and fair review of all of the submitted records, in having a conflict of interest, in failing to timely provide the peer review report on which it relied in violation of 29 U.S.C. §1133 and 29 C.F.R. §2560.503-1, and in refusing to allow Spears a reasonable time to respond to the report, entitles Spears to de novo review of defendants' benefit determination.

## Count one: Enforcement of Plan Terms

33.  Spears re-alleges each of the paragraphs above as if fully set forth herein.

34.  The Plan is a contract.

35.  Spears has performed all of her obligations under the contract.

36.  Spears is entitled to de novo review. In the alternative, defendants' actions constitute an unlawful and/or arbitrary and capricious/ and or unreasonable and erroneous denial of benefits due under ERISA, as provided in ERISA §502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B).

37.  Defendants' actions are in breach of the terms of the Plan and ERISA, §503, 29 U.S.C. §1133 by failing to provide adequate notice in writing setting forth the specific reasons for such denial and by failing to afford a reasonable opportunity to Spears for a full and fair review by the appropriate named fiduciary of the decision denying her claim for benefits.

38.  As a direct and proximate result of this breach, Spears was damaged by the Plan's denial of benefits.

## Count Two: Equitable Remedies

39.  Spears re-alleges each of the paragraphs above as if fully set forth herein.

11

40.     Spears is entitled to equitable remedies under ERISA § 502(a)(3), 29 U.S.C.

§1132(a)(3). Defendants should be enjoined from acts which violate ERISA.

## Count Three: Attorney's Fees and Costs

41.     Spears re-alleges each of the paragraphs above as if fully set forth herein.

42.     Under the standards applicable to ERISA, Spears deserves to recover a

"reasonable attorney's fee and costs of the action" herein, pursuant to ERISA, §502(g)(1), 29

U.S.C. §1132(g).

43.     Defendants have the ability to satisfy the award.

44.     Spears' conduct of this action is in the interest of all participants who subscribe to

the Plan, and the relief granted hereunder will benefit all participants. Defendants have acted in

bad faith in denying Spears' benefits under the Plan.

45.     The award of attorney's fees against defendants will deter others acting under

similar circumstances.


WHEREFORE the plaintiff prays for judgment against the defendants as follows:

1.     Declare, adjudge, and decree that Spears is entitled to ongoing Plan benefits as

calculated under the terms of the Plan;

2.     Award Spears the full amount of unpaid benefits under the Plan to which she is

entitled, together with such pre-judgment interest as may be allowed by law;

3.     Order that defendants make restitution to Spears in the amount of any losses

sustained by her in consequence of the wrongful conduct alleged herein, together with pre-

judgment interest;

4.     Reform the Plan to remedy false or misleading information;

12

5.      Estop defendants' from denying benefits;

6.      Award costs and reasonable attorney's fees;

7.      Award such other relief as the Court deems just, reasonable or equitable.

The Plaintiff

By:   /s/     Winona W. Zimberlin
Winona W. Zimberlin
2 Congress St.
Hartford, CT. 06114
Ct 05501
(860) 249-5291

# EXHIBIT 3

# SECTION 7 - GENERAL PROVISIONS
(Continued)

**Furnishing of Information - Access to Records**

1. The Sponsor will furnish at regular intervals to Liberty:

   a. information relative to Employees:

      i.   who qualify to become insured;
      ii.  whose amounts of insurance change; and/or
      iii. whose insurance terminates.

   b. any other information about this policy that may be reasonably required.

   The Sponsor's records which, in the opinion of Liberty, have a bearing on the insurance will be opened for inspection at any reasonable time.

2. Clerical error or omission will not:

   a. deprive an Employee of insurance;
   b. affect an Employee's Amount of Insurance; or
   c. effect or continue an Employee's insurance which otherwise would not be in force.

**Interpretation of the Policy**

Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

**Incontestability**

The validity of this policy shall not be contested, except for non-payment of premiums, after it has been in force for two years from the date of issue. The validity of this policy shall not be contested on the basis of a statement made relating to insurability by any person covered under this policy after such insurance has been in force for two years during such person's lifetime, and shall not be contested unless the statement is contained in a written instrument signed by the person making such statement.

**Legal Proceedings**

A claimant or the claimant's authorized representative cannot start any legal action:

   1. until 60 days after Proof of claim has been given; or

   2. more than one year after the time Proof of claim is required.

DEF000034

2

STD costs are paid by the employer. The UTC Short Term Disability (STD) plan is self-insured by the company. This means that benefits are not insured under an insurance company contract. UTC contracts with Liberty Mutual to process claims and pays for these claims and services out of a designated trust.

The UTC Long Term Disability (LTD) plan is fully insured by Liberty Life Assurance Company of Boston ("Liberty"). The policy number is GF3-810-258966. All premiums are paid to the insurer, who in turn agrees to pay covered claims for qualifying disabilities in accordance with plan provisions. Claim determinations are made by Liberty.

Statutory disability benefits for employees in New York, New Jersey and Hawaii are paid through an insurance contract with Liberty. Statutory disability benefits for employees in California and Rhode Island are paid through self-insured arrangements.

The integrated disability benefits described in this SPD reflect the main plan provisions as of October 1, 2006. This SPD replaces any other booklet or certificate previously issued to you describing your disability benefits.

We urge you to read this booklet carefully and share it with your family.

---

### How Do I Qualify for Disability Benefits?

Call Liberty via AccessDirect at **1-800-243-8135** and be prepared to provide the following general information:

> your name and Social Security Number

> your complete address and phone number

> the name of your supervisor and the division where you work

> your physician's name and phone number

> the medical condition that is causing you to lose time from work

> your last day worked and your first day absent from work due to your illness, injury, surgery or pregnancy.

#### When To Call 1-800-243-8135

> On or before the 6th day of disability if absent due to a sickness/disability that lasts for more than 5 consecutive workdays (Liberty must approve continued payment of Sick Pay)
> *or*

> If Sick Pay has been exhausted, or if no sick days are available, and you are unable to perform the essential functions of your regular job for 24 hours or more, please call on the

- 1st day of disability due to injury, *or*

- 1st day of disability due to an inpatient hospital stay, *or*

- 1st day of outpatient surgery; *or*

- 6th consecutive work day of disability due to illness, injury, surgery or pregnancy.

*Liberty has the right to verify your condition before and while Sick Pay, STD and LTD benefits are paid. A medical examination may be required. If you refuse, or otherwise fail to respond to requests, any payments will stop.*

*You may also submit your claim via the internet at www.mylibertyclaim.com. You will need the following information:*
*Claimant Service ID: UTC Choice*
*PIN: Your SSN (no spaces or punctuation)*

Liberty002199

38

## Plan Administration

The UTC Choice Integrated Disability Benefit Program is subject to requirements of the Employee Retirement Income Security Act of 1974 (commonly called ERISA). You should refer to the sections contained in this Summary Plan Description for a description of when you become eligible under the plan, the amount and types of benefits available to you, and the circumstances under which benefits are not available to you or may end. The UTC Choice Disability Plan is established and maintained by United Technologies Corporation. This section provides information about the administration of the UTC Choice Disability Plan and explains certain rights that you have under the plan.

## Plan Name and Number

The official plan name is The Group Life Insurance and Disability Plan of United Technologies Corporation.

The plan number is 502.

## Employer Identification Number

UTC's employer identification number (EIN) is 06-0570975.

## Plan Year

The UTC Choice Disability Plan is administered on a calendar year basis, beginning January 1 and ending December 31 of each year.

## Plan Sponsor

United Technologies Corporation (UTC)
United Technologies Building
Hartford, CT 06101
860-728-7000

## Plan Insurer

The Sick Pay benefits and short term disability benefits are self-insured by UTC. This means that benefits are not insured under an insurance company contract.

STD costs are paid by the employer. The UTC Short Term Disability (STD) plan is self-insured by the company. UTC contracts with Liberty to process claims and pays for these claims and services out of a designated trust.

Long term disability benefits are provided by a group insurance policy underwritten by Liberty Life Assurance Company of Boston. The policy number is GF3-810-258966.

## Plan Administrator

Sick Pay benefits are administered by United Technologies Corporation, United Technologies Building, Hartford, CT 06101.

The Plan Administrator has the full discretionary authority and power to control and manage all aspects of the UTC Choice Integrated Disability Benefit Program, to determine eligibility for plan benefits, to interpret and construe the terms and provisions of the plan, to determine questions of fact and law, to direct disbursements, and to adopt rules for the administration of the plan as it may deem appropriate, in accordance with the terms of the plan and all applicable laws. The Plan Administrator may allocate or delegate its responsibilities for the administration of the plan to others to carry out or render advice with respect to its responsibilities under the plan, including discretionary authority to interpret and construe the terms and provisions of the plan, to direct disbursements, and to determine eligibility for plan benefits.

UTC has delegated responsibility to Liberty for determination of eligibility for Sick Pay, STD and LTD benefits, including discretionary authority to interpret and construe the terms and provisions of the plan and to direct reimbursement.

Benefits under this plan will be paid only if the Liberty decides in its discretion that the applicant is entitled to them.

Liberty002235

Short and long term disability benefits are administered by:

Liberty Life Assurance Company of Boston
United Technologies Service Center
P.O. Box 5031
Wallingford, CT  06492
1-800-985-3810

### Collective Bargaining Agreements

Complete copies of any collective bargaining agreements relevant to your benefit plans and lists of signatories are available for examination or can be obtained from the UTC Labor Relations Department.

### Plan Funding

Sick Pay is paid from the employer's general assets. STD costs are paid by the employer. The UTC Short Term Disability (STD) plan is self-insured by the company. This means that benefits are not insured under an insurance company contract. UTC contracts with Liberty to process claims and pays for these claims and services out of a designated trust.

UTC and eligible participants who elect the 66²/₃% LTD option contribute to long term disability benefits on a pre-tax basis. The long term disability plan is fully insured by Liberty Life Assurance Company of Boston.

### Plan Trustee

The short term disability plan trustee is:

J.P. Morgan Chase Investor Service
3 Metrotech Center, 6th Floor
Brooklyn, NY 11245

### Legal Process

If you are dissatisfied with the way in which a claim has been handled, you may not bring legal action against the company, Liberty or the plan until you have fully exhausted the claims appeal process and benefits have been denied. (See *Appealing a Decision (Final and Binding Review)*.)

Any legal process for Sick Pay/STD should be directed to:

United Technologies Corporation
Director, Employee Benefits and
  Human Resources Systems
United Technologies Building
Hartford, CT 06101
860-728-7000

Any legal process for LTD should be directed to:

Liberty Life Assurance of Boston
175 Berkeley Street
Boston, MA  02117

### Your Rights as a Plan Participant

As a participant in the UTC Choice Integrated Disability Benefit Program, you have certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

This summary plan description (SPD) describes the UTC integrated Sick Pay, STD and LTD disability benefits. The information contained in this booklet constitutes the official plan document for the Sick Pay and STD disability plans. This booklet describes the disability benefits available as well as the procedures for presenting claims for benefits and for the redress of claims denied under the disability plans. Copies of this Summary Plan Description are available without cost to any plan participant upon request and will be provided to participants who participate in the UTC Choice Integrated Disability Benefit Program.

This summary plan description is intended to provide an easy-to-read summary explanation of your benefits. Every effort has been made to assure that this explanation is accurate.

The LTD contract is the official plan document for LTD benefits. In case of a conflict between this SPD and the LTD contract, the LTD contract will govern.

Liberty002236

# EXHIBIT 4

2

STD costs are paid by the employer. The UTC Short Term Disability (STD) plan is self-insured by the company. This means that benefits are not insured under an insurance company contract. UTC contracts with Liberty Mutual to process claims and pays for these claims and services out of a designated trust.

The UTC Long Term Disability (LTD) plan is fully insured by Liberty Life Assurance Company of Boston ("Liberty"). The policy number is GF3-810-258966. All premiums are paid to the insurer, who in turn agrees to pay covered claims for qualifying disabilities in accordance with plan provisions. Claim determinations are made by Liberty.

Statutory disability benefits for employees in New York, New Jersey and Hawaii are paid through an insurance contract with Liberty. Statutory disability benefits for employees in California and Rhode Island are paid through self-insured arrangements.

The integrated disability benefits described in this SPD reflect the main plan provisions as of October 1, 2006. This SPD replaces any other booklet or certificate previously issued to you describing your disability benefits.

We urge you to read this booklet carefully and share it with your family.

---

**How Do I Qualify for Disability Benefits?**

Call Liberty via AccessDirect at **1-800-243-8135** and be prepared to provide the following general information:

> your name and Social Security Number

> your complete address and phone number

> the name of your supervisor and the division where you work

> your physician's name and phone number

> the medical condition that is causing you to lose time from work

> your last day worked and your first day absent from work due to your illness, injury, surgery or pregnancy.

**When To Call 1-800-243-8135**

> On or before the 6th day of disability if absent due to a sickness/disability that lasts for more than 5 consecutive workdays (Liberty must approve continued payment of Sick Pay)
>   *or*
> If Sick Pay has been exhausted, or if no sick days are available, and you are unable to perform the essential functions of your regular job for 24 hours or more, please call on the
> - 1st day of disability due to injury, *or*
> - 1st day of disability due to an inpatient hospital stay, *or*
> - 1st day of outpatient surgery; *or*
> - 6th consecutive work day of disability due to illness, injury, surgery or pregnancy.

*Liberty has the right to verify your condition before and while Sick Pay, STD and LTD benefits are paid. A medical examination may be required. If you refuse, or otherwise fail to respond to requests, any payments will stop.*

*You may also submit your claim via the internet at **www.mylibertyclaim.com**. You will need the following information:*
        *Claimant Service ID: UTC Choice*
        *PIN: Your SSN (no spaces or punctuation)*

Liberty002199

38

## Plan Administration

The UTC Choice Integrated Disability Benefit Program is
subject to requirements of the Employee Retirement
Income Security Act of 1974 (commonly called ERISA).
You should refer to the sections contained in this
Summary Plan Description for a description of when you
become eligible under the plan, the amount and types of
benefits available to you, and the circumstances under
which benefits are not available to you or may end. The
UTC Choice Disability Plan is established and maintained
by United Technologies Corporation. This section pro-
vides information about the administration of the UTC
Choice Disability Plan and explains certain rights that
you have under the plan.

### Plan Name and Number

The official plan name is The Group Life Insurance and
Disability Plan of United Technologies Corporation.

The plan number is 502.

### Employer Identification Number

UTC's employer identification number (EIN) is
06-0570975.

### Plan Year

The UTC Choice Disability Plan is administered on a
calendar year basis, beginning January 1 and ending
December 31 of each year.

### Plan Sponsor

United Technologies Corporation (UTC)
United Technologies Building
Hartford, CT 06101
860-728-7000

### Plan Insurer

The Sick Pay benefits and short term disability benefits
are self-insured by UTC. This means that benefits are not
insured under an insurance company contract.

STD costs are paid by the employer. The UTC Short
Term Disability (STD) plan is self-insured by the company.
UTC contracts with Liberty to process claims and pays
for these claims and services out of a designated trust.

Long term disability benefits are provided by a group
insurance policy underwritten by Liberty Life Assurance
Company of Boston. The policy number is GF3-810-258966.

### Plan Administrator

Sick Pay benefits are administered by United Technologies
Corporation, United Technologies Building, Hartford,
CT 06101.

The Plan Administrator has the full discretionary authority
and power to control and manage all aspects of the UTC
Choice Integrated Disability Benefit Program, to deter-
mine eligibility for plan benefits, to interpret and con-
strue the terms and provisions of the plan, to determine
questions of fact and law, to direct disbursements, and to
adopt rules for the administration of the plan as it may
deem appropriate, in accordance with the terms of the
plan and all applicable laws. The Plan Administrator may
allocate or delegate its responsibilities for the adminis-
tration of the plan to others to carry out or render advice
with respect to its responsibilities under the plan, includ-
ing discretionary authority to interpret and construe the
terms and provisions of the plan, to direct disbursements,
and to determine eligibility for plan benefits.

UTC has delegated responsibility to Liberty for deter-
mination of eligibility for Sick Pay, STD and LTD
benefits, including discretionary authority to interpret
and construe the terms and provisions of the plan and
to direct reimbursement.

Benefits under this plan will be paid only if the Liberty
decides in its discretion that the applicant is entitled
to them.

Liberty002235

Short and long term disability benefits are administered by:

Liberty Life Assurance Company of Boston
United Technologies Service Center
P.O. Box 5031
Wallingford, CT  06492
1-800-985-3810

### Collective Bargaining Agreements

Complete copies of any collective bargaining agreements relevant to your benefit plans and lists of signatories are available for examination or can be obtained from the UTC Labor Relations Department.

### Plan Funding

Sick Pay is paid from the employer's general assets. STD costs are paid by the employer. The UTC Short Term Disability (STD) plan is self-insured by the company. This means that benefits are not insured under an insurance company contract. UTC contracts with Liberty to process claims and pays for these claims and services out of a designated trust.

UTC and eligible participants who elect the 66⅔% LTD option contribute to long term disability benefits on a pre-tax basis. The long term disability plan is fully insured by Liberty Life Assurance Company of Boston.

### Plan Trustee

The short term disability plan trustee is:

J.P. Morgan Chase Investor Service
3 Metrotech Center, 6th Floor
Brooklyn, NY 11245

### Legal Process

If you are dissatisfied with the way in which a claim has been handled, you may not bring legal action against the company, Liberty or the plan until you have fully exhausted the claims appeal process and benefits have been denied. (See *Appealing a Decision (Final and Binding Review)*.)

Any legal process for Sick Pay/STD should be directed to:

United Technologies Corporation
Director, Employee Benefits and
    Human Resources Systems
United Technologies Building
Hartford, CT 06101
860-728-7000

Any legal process for LTD should be directed to:

Liberty Life Assurance of Boston
175 Berkeley Street
Boston, MA 02117

### Your Rights as a Plan Participant

As a participant in the UTC Choice Integrated Disability Benefit Program, you have certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA).

This summary plan description (SPD) describes the UTC integrated Sick Pay, STD and LTD disability benefits. The information contained in this booklet constitutes the official plan document for the Sick Pay and STD disability plans. This booklet describes the disability benefits available as well as the procedures for presenting claims for benefits and for the redress of claims denied under the disability plans. Copies of this Summary Plan Description are available without cost to any plan participant upon request and will be provided to participants who participate in the UTC Choice Integrated Disability Benefit Program.

This summary plan description is intended to provide an easy-to-read summary explanation of your benefits. Every effort has been made to assure that this explanation is accurate.

The LTD contract is the official plan document for LTD benefits. In case of a conflict between this SPD and the LTD contract, the LTD contract will govern.

Liberty002236

# EXHIBIT 5

October 1, 2009

4200647291710692632210250032

The Liberty Life Assurance Company of Boston
Attn: Monique Furgalack
Disability Claims
P.O. Box 5031
Wallingford, CT 06492-7531

Re: Short Term Disability Benefits
    United Technologies Corp.-Choice
    Claim # 1676027
    Haley Spears

Dear Ms. Furgalack,

I am writing to you to appeal your May 13, 2009 denial of claim for disability benefits.

As the attached doctors' letters attest I continued to be disabled, and unable to work.

Dario M Zagar, MD wrote on October 6, 2009, "Unfortunately, she has had minimal improvement in symptoms, and she continues to have fatigue and cognitive issues which limit her daily functioning, and in my opinion she remains unable to work, even on a part time basis. We will readdress this in several months."

Bernard D. Raxlen, MD and Carolyn B. Welcome, PA-C wrote on June 22, 2009, "At the time of her initial visit she presented with symptoms including but not limited to fatigue, migraine headaches, visual disturbances, sensitivity to smells, slurred speech, sensitivity to sound, neck pain, drenching night sweats, fevers, recurrent infections, heart palpitations, gastrointestinal problems, join pains, muscle weakness and fasciculations, neuropathy, sleep disturbance, depression, anxiety, and neurocognitive deficits including brain fog, confusion, and memory problems. Please find her Complete Lyme Disease Symptom Check List enclosed". "At this time it is not possible for Ms. Spears to work

Full-time or part-time, and disability leave is medically necessary for her. Due to the duration of her illness and the extensive, multi-systemic nature of her symptoms, particularly the neurological involvement, her treatment is very likely to last for a minimum of 12 months. Her condition will be reassessed periodically."

On July 21, 2009, Lauren Gouin, ND wrote, "Due to her conditions, Haley is unable to perform the duties required for her job and needs to continue to seek medical treatments for her condition. To my knowledge, it has not yet been determined when she will be well enough to perform the duties of her job. It is my clinical opinion that she should continue on treatment with the specialists managing her care and be supported with disability coverage."

Barbara Kage, MD, FACR wrote on August 4, 2009, "Due to her current clinical status, Haley is not able to work part time or full time, and it is medically necessary for her to be on full time disability. With the lengthy duration of her illness and the extensive, multi-systemic nature of her

symptoms, including neurological involvement, her treatment is likely to last for a minimum of 12 months. Her condition will be reassured periodically."

My claim for STD was closed on February 9, 2009 even though Dr. Kage stated that I needed to continue working part-time. I have enclosed the note Dr. Kage provided to my employer. My employer was aware of this and was working with me on my part time schedule. I communicated this to you along with the fact that I was out of work due to medical procedures and illness on February 3-13 and March 2 and 3. I was also told my hours were reported to you from HR on a weekly basis.

Initially when I returned to work on January 8, 2009 my intention was to work part time for one month while building up to full time hours. Dr. Kage stated that moving to full time hours on February 9, 2009 was not an option because I struggled working 4 hours per day due to exhaustion, my continued medical complications, pain and neuro-cognitive difficulties. She stated continuing reduced work hours with frequent re-evaluations or stopping working all together was imperative for my health.

Since you told me that only one of my physicians needed to submit information; only Dr. Kage did so. You said that Liberty Mutual staff would contact my other physicians to gather additional information. But my key physicians, the ones that see me on a regular basis for debilitating condition, were not contacted. Instead, only those treating me for other problems, including a Dr. I saw only once to rule out another diagnosis, were contacted.

When I returned to work in January 2009, it was difficult for me to understand the tasks I was assigned, comprehend what I read and focus on a task. My short term memory was poor. It took me much longer to complete tasks compared to before I was on disability. My struggle was obvious to my bosses who commented that I was not the same person I was before being out on disability. This was noted to me and to HR.

In addition to these difficulties, after January 8, 2009 I was diagnosed with Neurological Lyme Disease after being referred to specialists. As a result, additional treatments began and I had reactions to these which added to my complications. I required physical assistance to get out of bed and walk down stairs. Taking a shower wore me out. Work became unbearable. I have always been a hard, independent worker and I want to get well and back to work as quickly as possible.

In summary, as my doctors and I stated above, I have an array of ongoing symptoms to mention a few: Neurocognitive deficits, extreme fatigue, sleep disturbances, neuropathy, confusion, focusing and memory problems and am unable to work for any duration of time.

Regards,

Haley A. Spears

CC: Attorney Richard Blumenthal
    Attorney Charles Hulin

Liberty 001770

# EXHIBIT 6



Liberty
Mutual.

Group Market Disability Claims
Liberty Life Assurance Company of Boston
P.O. Box 7213
London, KY 40742-7213
Phone No.: (800) 210-0268
Secure Fax No.: (603) 422-0142

January 29, 2010

Haley Spears
1008 Troutbrook Drive
West Hartford CT 06119

RE:  Claim Number:      1676027
     Plan Sponsor:      UTC – Choice Integrated Disability Benefit Program
                        Appeal for Sick Pay/Short Term Disability Benefits

Dear Ms. Spears:

On behalf of the Plan Sponsor, UTC – Choice Integrated Disability Benefit Program, we have
completed our review of your request for reconsideration of your claim for short-term disability
benefits and have determined we are unable to alter our original decision to deny your claim beyond
February 8, 2009.

As stated in our letter of May 13, 2009, the UTC – Choice Integrated Disability Benefit Program's
Sick Pay/Short Term Disability plan, under which you are covered, states:

**Sick Pay Disability:**

*Unable to perform the material and substantial duties of your own job due to illness, injury, surgery, or
pregnancy.*

**Short Term Disability (STD):**

*If sick pay has been exhausted, or if no sick pay days are available, and you are unable to perform the
material and substantial duties of your own job for 24 hours or more.*

The basis for our denial was outlined in our letter of May 13, 2009, refer to the enclosed copy. At
that time, you were given the opportunity to provide additional medical documentation, which you
felt, would support your claim. Specifically, we asked for copies of office treatment notes,
diagnostic test results, consultations, and medications from all your treating physicians. We received
your appeal request on October 13, 2009, which included additional medical information.

You submitted a claim for migraines and lyme disease with a date of disability of September 27,
2008. You satisfied the Elimination Period on October 4, 2008. In order to remain eligible for
short-term disability benefits, you must be disabled <u>throughout</u> the Elimination Period and beyond.
Additionally, it was noted you returned to work, part-time, from January 8, 2009, through February

Liberty 000319

Haley Spears
January 29, 2010
Page 2 of 5

8, 2009, at which time you were to return to work full-time. However, you continued working part-time through March 24, 2009, and you went out of work again full-time as of March 25, 2009.

The medical information contained in your file includes office treatment notes, diagnostic test results, and medications from Drs. Brien, Silvers, Gordon, Zagar, Kage, and Raxlen. Based on the medical information contained in your file, we conducted our claim investigation.

During our claim investigation, we reviewed the information contained in your file. We referred your file to Managed Disability Services who consulted with a neurologist and opined that the medical information supported an impairment that would prevent you from performing the duties of your job; therefore, your claim was approved. We requested and received additional medical records. The information from Dr. Silvers stated that you were released to return to work on January 8, 2009, part-time, and work up to full-time in a month.

However, you did not return to work full-time on February 9, 2009, so we requested additional medical records. We referred your file to managed disability services for review. This medical review concluded your file should be reviewed by a physician, specializing in Internal Medicine and Occupational Medicine. Following the review of your file, which included a telephone conversation with Drs. O'Brien and Kage, the physician concluded:

Recommendations:

Ms. Spears' initially presented with headache diagnosed as migraine headache. She also reported generalized body pain and she was evaluated by a rheumatologist for the possibility of an immune mediated inflammatory disorder. However, her most recent medical information show that she was seen by another physician who was convinced that her diagnosis was Lyme disease; therefore, her rheumatologist has suspended further workup till she completes her Lyme treatment. However, she saw another rheumatologist who concluded that she did not have Lyme disease. Ms. Spears has now stated that she is currently under the care of a neuropsychologist who specializes in Lyme disease and a naturopathic physician.

Ms. Spears has been recently evaluated by multiple practitioners including three neurologist, an internist/gastroenterologist, two rheumatologists, and more recently a neuropsychologist who specializes in Lyme disease and a naturopathic clinician. Her diagnoses and treatment plan remains unclear. Further, the medical records provided for review do not support any specific limitations or restrictions that would prevent her from sitting, standing, or walking at a sedentary physical demand level from March 24, 2009, through the present time.

In order to provide a full and fair appeal review, we referred your complete file to Managed Disability Services. This review concluded we should refer your file for a physician peer review. Therefore, we referred your file to Michael Silverman, MD, board certified in Internal Medicine, subspecialty Infectious Disease. Following the review of your file Dr. Silverman responded to the

Liberty 000320

Haley Spears
January 29, 2010
Page 3 of 5

following questions:

*Do the records support the presence of Lyme disease or any other infectious process?*
According to the medical records reviewed, the claimant does not have any history or
evidence of Lyme disease. The claimant had two tests done on October 1, 2008, and also
January 7, 2009. These tests were negative. The claimant was being evaluated for
connective tissue disorder and underwent a spinal tap on February 3, 2009. This was
positive by IgG for Borrelia burgdorferi antibodies, but negative for IgM. The significance
of this testing is not consistent with the diagnosis of neuroborreliosis. Furthermore, there
are no other diagnostic tests which support evidence of co-infections of which treatment
was based by Dr. Raxlen. There is no further documentation and no other diagnostic
criteria which supports evidence of infectious disease process.

Ms. Spears is a 34-year-old female with multiple medical problems including a
gastrointestinal diagnosis of colitis and the onset of migraine headaches since June 2008.
Workup was also included at rheumatological evaluation and suggestions of a connective
tissue disorder. The claimant was treated with Rocephin by Rheumatology after discussions
with Dr. Zagar. Claimant then came to the attention of Dr. Raxlen who is a psychiatrist, but
is involved with the care of Lyme patients. There is limited information from his office note
of April 21, 2009, but he has prescribed multiple antibiotics for treatment of co-infections
associated with Lyme disease. There is no substantiation to support these diagnoses.

*Is the treatment within the standard of care?*
The treatment courses recommended by Rheumatology (except for institution of Rocephin),
Endocrinology and Gastroenterology are all within the standard of care. There is no
evidence of tickborne illness or associated cofactors related with Lyme disease. Therefore,
further treatment recommendations are not consistent with the standard of care and that the
diagnosis of co-infections is not supported given the lack of diagnostic testing that is
available for review.

*Is the diagnosis and treatment of late stage Lyme disease within the area of expertise of a physician trained in
Psychiatry?*
Dr. Raxlen has been associated, from the reviewer's expertise, with Lyme disease for many
years and evaluates and treats all patients for Lyme disease; therefore, he is essentially known
as a Lyme specialist based on his treatment regimen for patients presenting to his office.
The reviewer defers comment on his expertise in the treatment of patients with Lyme
disease given the reviewer's lack of clearcut knowledge of his training and further treatment
recommendations.

*Is there evidence of impairment from February 8, 2009, to the present? If so, please indicate supported
restrictions and limitations as well as their duration.*
There is no clearcut evidence of impairment from February 8, 2009, to the present. Physical
exams do not support evidence of restrictions and/or limitations. Physical exams are
somewhat limited after February 9, 2009, other than rheumatology evaluations which reveal
fatigue at 7 over 10 and tightness in bilateral calves and upper back pain through the

Liberty 000321

Haley Spears
January 29, 2010
Page 4 of 5

shoulder blades and also previous history of migraine headaches. There are no clearcut findings which suggest impairment from February 8, 2009, to the present. The claimant therefore, does not have any physical restrictions and/or limitations on activities including sitting, standing, walking, reaching, lifting, carrying, and performing repetitive and fine motor hand motions.

Additionally, Dr. Silverman made multiple attempts to reach Dr. Raxlen, via telephone, and left several messages. However, Dr. Silverman did not receive a return call. During our telephone conversation on December 4, 2009, I informed you that Dr. Silverman was not able to speak with Dr. Raxlen and we agreed that we would have him make 3 (three) more attempts. Therefore, Dr. Silverman made three more attempts to reach Dr. Raxlen and left three more messages. To date, he has not received a return call.

According to your job description, as an Administrative Assistant, your job duties are Sedentary in nature and involve mostly sitting, as well as some standing and walking. You are required to:

1. Provide secretarial and clerical support,
2. Plan and arrange domestic and international travel,
3. schedule appointments and meetings, reserve facilities, obtain/assemble supporting material,
4. Maintain files, review mail, highlight important items,
5. Assist in preparing, gathering, and maintaining expense, reports, vacation schedules, distribution lists, etc.
6. Assist with mail distribution, maintaining copiers, printers, and ordering supplies.

Additionally, you need to have strong oral, written, and computer skills.

This claim determination is based on the medical documentation received and whether this would prevent you from returning to work at your own job. Although you may continue to experience some symptoms, it remains our opinion that based on the medical documentation you do not meet the definition of disability under the terms of the UTC – Choice Integrated Disability Benefit Program's short-term disability plan. Therefore, short-term disability benefits beyond February 8, 2009, are not payable.

This claim determination reflects an evaluation of the claim facts and plan provisions.

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, you were entitled to appeal the determination made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information wished to be considered as part of the appeal. Liberty has conducted a full and fair review of your appeal and accompanying materials, and has determined that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted and no further review will be conducted by Liberty and your claim will remain closed. You may request to receive, free of charge,

Liberty 000322

Haley Spears
January 29, 2010
Page 5 of 5

copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned plan administrator and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in the UTC -- Choice Integrated Disability Benefit Program's plan. These provisions are not contingent on decisions made by the Social Security Administration nor the Workers' Compensation Carrier.

Sincerely,

Chuck Johnson
Appeal Review Consultant
Phone No.: (800) 210-0268 Ext. 30184
Secure Fax No.: (603) 422-0142

Liberty 000323

# EXHIBIT 7



Group Market Disability Claims
Liberty Life Assurance Company of Boston
P.O. Box 7213
London, KY 40742-7213
Phone No.: (800) 210-0268
Secure Fax No.: (603) 422-7909

May 13, 2010

Haley Spears
1008 Trout Brook Drive
West Hartford CT 06119

RE:    Claim Number:    1676027
       Plan Sponsor:    UTC – Choice Integrated Disability Benefit Program
                        Appeal for Sick Pay/Short Term Disability Benefits

Dear Ms. Spears:

On behalf of the Plan Sponsor, UTC – Choice Integrated Disability Benefit Program, we have
completed our review of your request for reconsideration of your claim for short-term disability
benefits and have determined we are unable to alter our original decision to deny your claim beyond
February 8, 2009.

As stated in our previous letters, the UTC – Choice Integrated Disability Benefit Program's Sick
Pay/Short Term Disability plan, under which you are covered, states:

*Sick Pay Disability:*

*Unable to perform the material and substantial duties of your own job due to illness, injury, surgery, or
pregnancy.*

*Short Term Disability (STD):*

*If sick pay has been exhausted, or if no sick pay days are available, and you are unable to perform the
material and substantial duties of your own job for 24 hours or more.*

The basis for our denial was outlined in our letter of May 13, 2009. At that time, you were given the
opportunity to provide additional medical documentation, which you felt, would support your claim.
Specifically, we asked for copies of office treatment notes, diagnostic test results, consultations, and
medications from all your treating physicians. We received your appeal request on October 13,
2009, which included additional medical information.

You submitted a claim for migraines and lyme disease with a date of disability of September 27,
2008. You satisfied the Elimination Period on October 4, 2008. In order to remain eligible for
short-term disability benefits, you must be disabled <u>throughout</u> the Elimination Period and beyond.
Additionally, it was noted you returned to work, part-time, from January 8, 2009, through February

Liberty 000268

Haley Spears
May 13, 2010
Page 2 of 6

8, 2009, at which time you were to return to work full-time. However, you continued working part-time through March 24, 2009, and you went out of work again full-time as of March 25, 2009.

The medical information contained in your file includes office treatment notes, diagnostic test results, and medications from Drs. Brien, Silvers, Gordon, Zagar, Kage, and Raxlen. Based on the medical information contained in your file, we conducted our claim investigation.

During our claim investigation, we reviewed the information contained in your file. We referred your file to Managed Disability Services who consulted with a neurologist and opined that the medical information supported an impairment that would prevent you from performing the duties of your job; therefore, your claim was approved. We requested and received additional medical records. The information from Dr. Silvers stated that you were released to return to work on January 8, 2009, part-time, and work up to full-time in a month.

However, you did not return to work full-time on February 9, 2009, so we requested additional medical records. We referred your file to managed disability services for review. This medical review concluded your file should be reviewed by a physician, specializing in Internal Medicine and Occupational Medicine. Following the review of your file, which included a telephone conversation with Drs. O'Brien and Kage, the physician concluded:

### Recommendations:

Ms. Spears' initially presented with headache diagnosed as migraine headache. She also reported generalized body pain and she was evaluated by a rheumatologist for the possibility of an immune mediated inflammatory disorder. However, her most recent medical information show that she was seen by another physician who was convinced that her diagnosis was Lyme disease; therefore, her rheumatologist has suspended further workup till she completes her Lyme treatment. However, she saw another rheumatologist who concluded that she did not have Lyme disease. Ms. Spears has now stated that she is currently under the care of a neuropsychologist who specializes in Lyme disease and a naturopathic physician.

Ms. Spears has been recently evaluated by multiple practitioners including three neurologist, an internist/gastroenterologist, two rheumatologists, and more recently a neuropsychologist who specializes in Lyme disease and a naturopathic clinician. Her diagnoses and treatment plan remains unclear. Further, the medical records provided for review do not support any specific limitations or restrictions that would prevent her from sitting, standing, or walking at a sedentary physical demand level from March 24, 2009, through the present time.

In order to provide a full and fair appeal review, we referred your complete file to Managed Disability Services. This review concluded we should refer your file for a physician peer review. Therefore, we referred your file to Michael Silverman, MD, board certified in Internal Medicine, subspecialty Infectious Disease. Following the review of your file Dr. Silverman responded to the

Liberty 000269

Haley Spears
May 13, 2010
Page 3 of 6

following questions:

*Do the records support the presence of Lyme disease or any other infectious process?*
According to the medical records reviewed, the claimant does not have any history or
evidence of Lyme disease. The claimant had two tests done on October 1, 2008, and also
January 7, 2009. These tests were negative. The claimant was being evaluated for
connective tissue disorder and underwent a spinal tap on February 3, 2009. This was
positive by IgG for Borrelia burgdorferi antibodies, but negative for IgM. The significance
of this testing is not consistent with the diagnosis of neuroborreliosis. Furthermore, there
are no other diagnostic tests which support evidence of co-infections of which treatment
was based by Dr. Raxlen. There is no further documentation and no other diagnostic
criteria which supports evidence of infectious disease process.

Ms. Spears is a 34-year-old female with multiple medical problems including a
gastrointestinal diagnosis of colitis and the onset of migraine headaches since June 2008.
Workup was also included at rheumatological evaluation and suggestions of a connective
tissue disorder. The claimant was treated with Rocephin by Rheumatology after discussions
with Dr. Zagar. Claimant then came to the attention of Dr. Raxlen who is a psychiatrist, but
is involved with the care of Lyme patients. There is limited information from his office note
of April 21, 2009, but he has prescribed multiple antibiotics for treatment of co-infections
associated with Lyme disease. There is no substantiation to support these diagnoses.

*Is the treatment within the standard of care?*
The treatment courses recommended by Rheumatology (except for institution of Rocephin),
Endocrinology and Gastroenterology are all within the standard of care. There is no
evidence of tickborne illness or associated cofactors related with Lyme disease. Therefore,
further treatment recommendations are not consistent with the standard of care and that the
diagnosis of co-infections is not supported given the lack of diagnostic testing that is
available for review.

*Is the diagnosis and treatment of late stage Lyme disease within the area of expertise of a physician trained in
Psychiatry?*
Dr. Raxlen has been associated, from the reviewer's expertise, with Lyme disease for many
years and evaluates and treats all patients for Lyme disease; therefore, he is essentially known
as a Lyme specialist based on his treatment regimen for patients presenting to his office.
The reviewer defers comment on his expertise in the treatment of patients with Lyme
disease given the reviewer's lack of clearcut knowledge of his training and further treatment
recommendations.

*Is there evidence of impairment from February 8, 2009, to the present? If so, please indicate supported
restrictions and limitations as well as their duration.*
There is no clearcut evidence of impairment from February 8, 2009, to the present. Physical
exams do not support evidence of restrictions and/or limitations. Physical exams are
somewhat limited after February 9, 2009, other than rheumatology evaluations which reveal
fatigue at 7 over 10 and tightness in bilateral calves and upper back pain through the

Liberty 000270

Haley Spears
May 13, 2010
Page 4 of 6

shoulder blades and also previous history of migraine headaches. There are no clearcut findings which suggest impairment from February 8, 2009, to the present. The claimant therefore, does not have any physical restrictions and/or limitations on activities including sitting, standing, walking, reaching, lifting, carrying, and performing repetitive and fine motor hand motions.

Additionally, Dr. Silverman made multiple attempts to reach Dr. Raxlen, via telephone, and left several messages. However, Dr. Silverman did not receive a return call. During our telephone conversation on December 4, 2009, I informed you that Dr. Silverman was not able to speak with Dr. Raxlen and we agreed that we would have him make 3 (three) more attempts. Therefore, Dr. Silverman made three more attempts to reach Dr. Raxlen and left three more messages. To date, he has not received a return call.

As outlined in our February 11, 2010, letter, following a discussion with your employer, it was agreed that we would provide you an additional 30-days to review your file and submit any additional medical records. When those were received we would conduct another appeal review. Our letter of April 1, 2010, stated we received the additional information you submitted and the letter from Mr. Charles Hulin at the State of Connecticut Attorney General's office and that we would be proceeding with the additional appeal review.

We referred all the additional information you submitted for this second appeal review back to Michael Silverman, M.D., board certified in Internal Medicine, subspecialty Infectious Disease for review. Following Dr. Silverman's review of the updated records, which included a telephone conversation with Dr. Kage, he issued the following addendum:

> *Please review the additional information received for review and comment on the assertion by Assistant Attorney General Hulin in the March 2, 2010, letter regarding the IgG results. Does this information alter your prior assessment?*
> The letters that are included in the current package of information regarding the claimant have been reviewed. It should be noted that the claimant has had previous negative Lyme testing done despite no clearcut evidence of acute infection or evidence of chronic infection with Lyme disease or other tick-borne illnesses in my medical opinion. The claimant underwent a spinal tap. The only result that was reportedly positive was an IgG positive for Borrelia burgdorferi.
>
> Nevertheless, the claimant did receive almost a four-week course of intravenous Ceftiaxone, which is standard therapy for his diagnosis. Despite this acceptable standard of four weeks of intravenous Rocephin antibiotic therapy, the claimant had no significant improvement or evidence of any noticeable change in her clinical symptoms. Therefore, it is my opinion, within a reasonable degree of medical certainty, that the diagnoses are not appropriate with respect to Lyme disease, and specifically, neuroborreliosis.
>
> In addition, to date there has not been any documentation revealing any evidence of other tic-borne illness supporting these other diagnoses. The claimant has been receiving multiple courses of other intravenous therapies, all of which are not the standard of care in treatment

Liberty 000271

Haley Spears
May 13, 2010
Page 5 of 6

recommendations for these diagnoses which indeed had not been confirmed or further elucidated through requests for information by Dr. Raxlen.

Following the telephone conversation with Dr. Kage, Dr. Silverman sent a letter to Dr. Kage confirming their telephone conversation. This letter stated:

"She stated that the claimant, Ms. Spears, was being evaluated for an astrocytoma with an MRI, which reportedly has been stable. She stated she was also receiving intravenous antibiotics of which she would defer to Dr. Raxlen, a Lyme specialist, who is handling her care. She stated that there was no clearcut evidence of rheumatological disorder which would explain the claimant's current symptomatology from her perspective, she would defer to Dr. Raxlen for evaluation and treatment management of the claimant's current reported diagnoses of tick-borne illness."

Dr. Kage was asked to review, sign, and return the letter and if the conversation was misinterpreted or anything taken out of context, to please make any changes necessary. On April 29, 2010, we received a response from Dr. Kage, which stated that she does not follow you for astrocytoma. However, no additional changes were made.

Additionally, Dr. Silverman made multiple attempts to speak with Dr. Raxlen, via telephone and left several messages. However, no return call was received. In place of the telephone conversation, Dr. Silverman sent Dr. Raxlen a letter; however, there has been no return correspondence or telephone call.

According to your job description, as an Administrative Assistant, your job duties are Sedentary in nature and involve mostly sitting, as well as some standing and walking. You are required to:

1. Provide secretarial and clerical support,
2. Plan and arrange domestic and international travel,
3. schedule appointments and meetings, reserve facilities, obtain/assemble supporting material,
4. Maintain files, review mail, highlight important items,
5. Assist in preparing, gathering, and maintaining expense, reports, vacation schedules, distribution lists, etc.
6. Assist with mail distribution, maintaining copiers, printers, and ordering supplies.

Additionally, you need to have strong oral, written, and computer skills.

This claim determination is based on the medical documentation received and whether this would prevent you from returning to work at your own job. Although you may continue to experience some symptoms, it remains our opinion that based on the medical documentation you do not meet the definition of Disability under the terms of the UTC – Choice Integrated Disability Benefit Program's short-term disability plan. Therefore, short-term disability benefits beyond February 8, 2009, are not payable.

This claim determination reflects an evaluation of the claim facts and plan provisions.

1

Liberty 000272

Haley Spears
May 13, 2010
Page 6 of 6

Under the Employee Retirement Income Security Act (ERISA) Appeal guidelines, you were entitled to appeal the determination made by Liberty Life Assurance Company of Boston (Liberty), and to submit any additional information wished to be considered as part of the appeal. Liberty has conducted a full and fair review of your appeal and accompanying materials, and has determined that the denial of benefits will be maintained.

At this time, your administrative right to review has been exhausted and no further review will be conducted by Liberty and your claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

Nothing in this letter should be construed as a waiver of any rights and defenses under the above captioned plan administrator and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

Determinations made by Liberty Life Assurance Company of Boston are based on the provisions outlined in the UTC – Choice Integrated Disability Benefit Program's plan. These provisions are not contingent on decisions made by the Social Security Administration nor the Workers' Compensation Carrier.

Sincerely,

Chuck Johnson
Appeal Review Consultant
Phone No.: (800) 210-0268 Ext. 30184
Secure Fax No.: (603) 422-7909

Cc:    Office of the Attorney General
       State of Connecticut
       Attn: Mr. Charles Hulin
       55 Elm Street
       PO Box 120
       Hartford CT  06141-0120

       Winona W. Zimberlin
       Attorney at Law
       2 Congress Street
       Hartford CT  06114-1024

       Dave Durgins, UTC, sent via email, David.Durgins@utc.com

Liberty 000273

# EXHIBIT 8

 **Liberty Mutual.**

Group Market Disability Claims
Liberty Life Assurance Company of Boston
P.O. Box 7213
London, KY 40742-7213
Phone No.: (800) 210-0268
Secure Fax No.: (603) 422-7909

June 18, 2010

Winona W. Zimberlin
Attorney at Law
2 Congress Street
Hartford CT 06114-1024

RE:    Short Term Disability Benefits
       UTC Choice
       Claimant:      Ms. Haley Spears
       Claim #:       1676027

Dear Ms. Zimberlin:

We are writing to you to update you on the status of your request for reconsideration of disability benefits for Ms. Haley Spears for her short-term benefits.

As we have previously explained, her claim was denied on May 13, 2009. She was advised of her right, under ERISA guidelines, to appeal the denial within 180 days of receipt of the denial letter and to submit any additional information she wished to be considered in the review of her claim. We received her appeal request on October 13, 2009, along with additional medical records. As outlined in our letter of January 29, 2010, we conducted a full and fair appeal review and determined that we must maintain the denial.

As outlined in our letter of February 11, 2010, after discussion with Ms. Spears' employer it was agreed that we would provide Ms. Spears with another complete copy of her claim file and allow her an additional 30 days to submit any and all records to be considered with her appeal. Upon receipt of these records we would conduct another appeal review. Ms. Spears submitted additional medical information and we conducted another appeal review. As outlined in our May 13, 2010, letter, our decision was to continue to maintain the denial of benefits.

We received and reviewed your letter of May 21, 2010. In this letter you again request a 180 day extension from April 12, 2010, to gather additional evidence. After further discussion, we agree to allow you until August 31, 2010, to provide any and all additional evidence wished to be considered with Ms. Spears' appeal. Please note that this information should include not only current medical records, but also records that are coincident with the date benefits ceased, February 8, 2009.

Liberty 000261

Haley Spears
June 18, 2010
Page 2 of 2

This and any other information you wish to submit in support of your claim may be faxed or mailed
to my attention at:

> Liberty Life Assurance Company
> Attn: Group Market Disability Claims
> Liberty Life Assurance Company of Boston
> P.O. Box 7213
> London, KY 40742-7213
> Secure Fax No.: (603) 422-7909

If we do not receive any additional information by August 31, 2010, we must base our decision on
the information contained in your file. Once this information has been received and reviewed, you
will be notified in writing of our determination. Please inform us of any plan documents that remain
outstanding.

If you have any questions or concerns about this correspondence or what information we are
requesting, please call me.

Sincerely,

Chuck Johnson
Appeal Review Consultant
Phone No.: (800) 210-0268 Ext. 30184
Secure Fax No.: (603) 422-7909

Cc:     Haley Spears
        1008 Trout Brook Drive
        West Hartford, CT 06119

Liberty 000262

# EXHIBIT 9

## Winona W. Zimberlin
Attorney At Law
2 Congress Street
Hartford, CT 06114-1024

Telephone (860) 249-5291
Facsimile (860) 247-4194

August 21, 2010

Chuck Johnson
Liberty Life Assurance Company of Boston
100 Liberty Way
Dover, NH 03820

Dear Mr. Johnson:

    RE:  Haley Spears

    This is an appeal of the Liberty Mutual denial of short term and/or long term disability benefits in its letters of January 29, 2010 and May 13, 2010. Pursuant to your instruction, this material is being sent to your New Hampshire office. New and material evidence is attached. The attached records document specific limitations and restrictions which prevent Ms. Spears from sitting, standing, or walking at a sedentary physical demand level from March 24, 2009 through the present time. They also document cognitive limitations which prevent her from engaging in her own occupation or any other occupation. Enclosed please find:

1. State of Connecticut Department of Social Services, finding that Ms. Spears is unemployable. 4/22/10,  4 p.
2. Raymond Edward Cestar, Vocational Expert, Resume, and report.
3. Liberty Mutual / Application and Denial of life insurance, 8/2/10, 3 p.
4. Affidavit of Christine P. Baumann, 3 p.
5. Affidavit of Haley Spears, 3 p.
6. Affidavit of Israel Moreno-Lozano, 2 p.
7. Affidavit of Chatura Weliwitigoda, 2 p.
8. Neuropsychological evaluation, Marian Rissenberg, Ph.D., July 2010, 12.p.
9. Grosso Chiropractic medical record of 5-26-10, 2 p.
10. Yale New Haven Hospital medical records from 11-25-08 to 7-31-09, 13 p.
11. Dr. B. Patterson-Marshall medical records from 1-13-10 to 1-22-10 and other doctor records in doctor's possession , 76 p.
12. Dr. Zagar Physical RFC and Medical Source Assessment, 8 p.
13. Dr. Giannini Physical RFC and Medical Source Assessment, 8 p.
14. Manchester Memorial Hospital medical records from 11-19-08 to 4-27-10, 8 p.
15. Dr. Baehring, Yale New Haven Medical Oncology Clinic medical records from 11-25-08 to 8-5-09, 8 p.
16. Professional Home Care Services medical records from 3-3-09 to 4-26-10, 170 p.

Liberty 000453

Liberty Mutual
p. 2

17. Visiting Nurse Association of Central Connecticut medical records from 3-30-10 to 5-10-10, 37 p.
18. Dr. Raxlen medical records from 4-21-09 to 7-8-10 and CV
19. Hartford Medical Group medical records from 5-18-07 to 1-30-09 and other records in their possession, 149 p.
20. Dr. Barbara Kage, Rheumatology and Allergy Institute of Connecticut medical records from 1-6-09 to 5-6-10, 210 p.
21. Dr. Giannini, Rockville Family Physicians, medical records from 3-10-09 to 4-27-10, 146 p.
22. Dr. Silvers, Hartford Neurology, CV and medical records from 8-8-08 to 11-14-08, 27 p.
23. St. Francis Hospital medical records
24. Hartford Hospital medical records from 6-29-07 to 11-22-09, 39 p.
25. Dr. Zagar CV and medical records from 1-12-09 to 3-19-10, 131 p.
26. Dr. Donta CV and report
27. UConn Neurology, 1-20-09, 4 p.
28. Dr. Gordon, 10-1-08 to 11-3-08
29. Lauren Gouin, ND, chart and CV, 8-27-09 to 7-9-10, 10 p.

The definition of disability, in the UTC Choice SPD, for short term disability, is:

You have a covered disability under the Integrated Sick Pay/STD plan if, due to a medical condition related to an illness, injury or surgery you meet the following conditions:

You are unable to perform the material and substantial duties of your current or a similar job for more than 5 consecutive scheduled workdays:

Your physician provides medical evidence to support his or her assessment of your medical condition.

The Long Term Disability Plan has a definition of disability as follows:

You are considered disabled under the LTD plan if, solely because of Injury or Sickness, you are unable to perform all of the material and substantial duties of your Own Occupation.

After LTD Disability Benefits have been payable for 24 months, you are considered disabled if, solely due to injury or illness, you are unable to perform all of the material and substantial duties of Any Occupation.

Liberty 000454

Liberty Mutual
p. 3

> "any occupation" means "any occupation for which you are reasonably fitted based on
> your training, education, experience, age, physical and mental capacity and the salary of
> which is at least 80% of your covered earnings."

> "Regular Occupation" means "the occupation you routinely perform at the time the
> disability begins. In evaluating disability, the duties of the occupation as it is normally
> performed in the general labor market in the national economy will be considered.

Ms. Spear's STD claim was approved until February 8, 2009. Her LTD claim was denied
January 30, 2009. She is currently in the "own occ" period of LTD coverage.

The medical records show that Ms. Spears is disabled under the STD and LTD provisions
of the Liberty Mutual Plan. Liberty Mutual itself recognized the severity of Ms. Spears' health
problems, when it denied Ms. Spears life insurance. As written by Karen Beaudet, Individual
Life Underwriting, "We regret that, based on your overall medical history, we cannot issue the
policy for which you applied."

Marian Rissenberg, Ph.D., conducted extensive neuropsychological tests. She concluded
that Ms. Spears has had a significant decline in mental status. There is a marked deficit in the
area of Working Memory. Ms. Spears was highly motivated, yet fatigued quickly during testing
sessions. Test findings were consistent with frontal or diffuse cerebral dysfunction as is seen in
chronic infectious or inflammatory illness. She concluded that the nature and severity of these
cognitive deficits, particularly when coupled with Ms. Spears' physical symptoms, would
preclude gainful employment of any kind at this time.

Affidavits executed by claimant, her mother, and former co-workers document that Ms.
Spears was a highly motivated go-getter before she became ill. She now has significant
symptoms of inability to concentrate, difficulty in cognition, memory problems, excessive
fatigue and pain.

Dr. Zagar's medical source statement describes symptoms of neck and shoulder pain,
migraines, fatigue, cognitive impairment and joint pains. His patient's experience of pain or
other symptoms are severe enough to interfere with attention and concentration needed to
perform even simple work tasks on a frequent basis. "Frequent" means 34% to 66% of an 8 hour
working day. Ms. Spears can sit only 1 hour at a time before needing to get up. She can stand or
walk less than 2 hours in an 8 hour work day. She can only sit about 4 hours in an 8 hour work
day. She would need unscheduled breaks if she were working, every hour, and would need to
rest for 15 minutes. Her impairment produces good days and bad days. If she were working, she
would likely be absent from work as a result of the impairments or treatment more than 5 days
per month.

Dr. Giannini has a similar assessment of residual functional capacity, adding that Ms.
Spears should rarely lift 10 pounds, and has trouble with loud noises, has blurry vision at times,

Liberty 000455

Liberty Mutual
p. 4

is easily fatigued, must avoid temperature extremes, humidity, noise fumes and gases. Both Dr. Zagar's and Dr. Giannini's mental source assessments state that Ms. Spears is not able to perform numerous work related tasks on a regular, reliable and sustained schedule.

Vocational expert, Raymond Cestar, M.S., M.B.A., has prepared a report which concludes that the vocational base of employability of Ms. Spears has greatly eroded. Her needs to frequently alternate positions of sitting and standing at will and taking frequent naps cannot be accommodated by regularly scheduled rest and lunch periods in a normal workplace. The activities of competitive employment require that a worker remain on task for extended periods to consistently meet required quality standards and productivity norms. Additionally, the cognitive deficiencies of Ms. Spears further exacerbate her capability to be gainfully employed. He concludes that Ms. Spears is disabled from performing all of the material and substantial working duties of her past employment as an executive administrative assistant as it is normally performed in the national economy. Additionally, her impairment and its harmful residuals militate against her from making a transition to any other occupations which she may reasonably pursue – whether transferring her skills or making a vocational adjustment to unskilled work. Therefore, she is unemployable at any job.

The State of Connecticut, Department of Social Services, agrees that Ms. Spears is unemployable due to her disabilities.

Making a decision, without the necessary medical and vocational expertise, and without all pertinent records, is arbitrary and an abuse of discretion. There is overwhelming evidence that Ms. Spears cannot perform her past sedentary job, or any other sedentary job.

In light of the above, Ms. Spears meets the definition of disability for the first 24 months. Functional restrictions, both physical and mental, are well documented. We are requesting that benefits be granted. The previous denial was based on a selective review of the evidence by an entity which has an inherent conflict of interest. A denial based all or in part on the lack of a return telephone call from Dr. Raxlen is arbitrary and capricious. Dr. Raxlen will not respond to telephone calls from insurers. This office policy of Dr. Raxlen does not provide a basis to deny the claim of Haley Spears, in light of all the attached documentation of functional restrictions. Basing a denial of coverage on alleged, undocumented, telephone calls with only some medical providers is similarly arbitrary and capricious, especially when extensive medical reports are provided by the claimant. All the medical evidence should be considered. Ms. Spears is disabled due to the combination of her impairments. Additionally, please provide me with the identity and qualifications of all individuals who are now reviewing this claim and will be involved in the decision making process.

Liberty 000456

Liberty Mutual
p.5

Thank you for your consideration.

Very truly yours,

Winona W. Zimberlin

WWZ/dz
Enclosure

Liberty 000457

# EXHIBIT 10



Group Market Disability Claims
Liberty Life Assurance Company of Boston
P.O. Box 7211
London, KY 40742-7211
Phone No.: (800) 985-3810  Ext. 10302
Secure Fax No.: (603) 422-7905

November 16, 2010

Haley Spears
1008 Troutbrook Dr
West Hartford, CT 06119

RE:   Long Term Disability Benefits
      United Technologies Corp.-Choice
      Claim #: 2500391

Dear Ms. Spears:

We are writing in regard to the above referenced LTD claim. Please refer to our previous letter dated February 2, 2009. We had completed a thorough review of your LTD claim and had determined that benefits were not payable. United Technologies Corp.-Choice's Long Term Disability Policy requires that to receive LTD benefits you must meet the definition of disability and fulfill an elimination period defined as follows:

*Elimination Period:*

*The greater of:*

*a. the end of the Covered Person's sick pay, Short Term Disability Benefits; or*

*b. 180 days.*

*"Elimination Period" means a period of consecutive days of Disability or Partial Disability for which no benefit is payable. The Elimination Period is shown in the Schedule of Benefits and begins on the first day of Disability.*

*If the Covered Person returns to work for any thirty or fewer days during the Elimination Period and cannot continue, Liberty will count only those days the Covered Person is Disabled or Partially Disabled to satisfy the Elimination Period.*

*"Disability" or "Disabled" means:*

*1 .i.    "Disability" or "Disabled" means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

Liberty 000211

*"Any Occupation" means any occupation, for which the Covered Person is reasonably fitted considering his training, education, experience, age, physical and mental capacity, and the salary of which is at least 80 percent of the Covered Person's Basic Monthly Earnings.*

Since you were determined to be no longer disabled before satisfying your 180 day LTD elimination period, and did not meet the definition of disability, we were unable to approve your LTD claim at that time.

Please note that we received notice from the Appeal Review Unit that per their review, they upheld the decision to deny short term disability benefits beyond February 8, 2009. They did notify us that your employer has requested an administrative override for release of payment of short term disability benefits for February 9, 2009 through March 27, 2009. This payment of short term disability benefits is based on the employer override only. This employer override for payment of short term disability benefits did not alter the Appeal Review Unit's determination to uphold denial of benefits beyond February 8, 2009.

Medical reviews were conducted during your appeal review by two physicians board certified in infectious disease. One dated November 23, 2009 and the second dated September 27, 2010.

The November 23, 2009 peer medical review concluded:

*"According to the medical records reviewed, the claimant does not have any history or evidence of Lyme disease. The claimant had two tests done on 10/01/08 and also 01/07/09. These tests were negative. The claimant was being evaluated for connective tissue disorder and underwent a spinal tap on 02/03/09. This was positive by IgG for Borrelia burgdorferi antibodies, but negative for IgM. The significance of this testing is not consistent with the diagnosis of neuroborreliosis. Furthermore, there are no other diagnostic tests which support evidence of co-infections of which treatment was based by Dr. Raxlen. There is no further documentation and no other diagnostic criteria which supports evidence of infectious disease process...The claimant was treated with Rocephin by Rheumatology after discussions with Dr. Zagar. Claimant then came to the attention of Dr. Raxlen who is a psychiatrist, but is involved with the care of Lyme patients. There is limited information from his office note of 04/21/09, but he has prescribed multiple antibiotics for treatment of co-infections associated with Lyme disease. There is no substantiation to support these diagnoses."*

The September 27, 2010 peer medical review report concluded:

*"Peer reviewer... [board certified internal medicine, geriatric medicine and infectious disease]... opined in his report of 9/27/10 that many diseases have been involved to explain the claimant's clinical picture but there are very few substantiated clinically. Among these are peptic ulcer disease, hashimoto's thyroiditis, autoimmune disorders, migraine headaches, asthma and irritable bowel syndrome. From an infectious disease evaluation, the claimant does not have any restrictions and limitations to her activity from 02/08/2009 forward. The treatment of her purported infectious diseases, including lyme disease, does not meet standards of care. Regarding qualifications of Dr. Raxlan... he is trained primarily as a psychiatrist. He does not have any formal infectious disease ID training and is not ID board-certified. Based on his submitted documentation, his practice pattern of the diagnosis and management of lyme disease does not adhere to the guidelines established by the Infectious Diseases Society of*

Liberty 000212

*America. The best physician to manage lyme disease is a board-certified infectious disease physician. He further notes the claimant does have a sustainable full time capacity as of 02/08/2009"*

Per the Appeal Review Unit's determination on your short term disability claim, impairment precluding you from working was not supported by the medical documentation beyond February 8, 2009. This date is during your short term disability benefit period and prior to the begin date of LTD. Based on the review you do not meet the LTD policy's definition of disability and did not satisfy the elimination period, therefore your LTD claim will remain closed.

This claim determination reflects an evaluation of the claim facts and Policy provisions. We reserve the right to make a determination on any additional information that may be submitted.

Under the Employee Retirement Income Security Act of 1974 (ERISA), you may request a review of this denial by writing to the address below:

The Liberty Life Assurance Company of Boston
Attn: Monique Furgalack
Group Benefits Disability Claims
P.O. Box 7211
London, KY 40742-9955

The written request for review must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been denied. In your request for review please include the following documentation: any additional medical information such as office visit notes, test results, reports, and medications, as well as any additional information which you feel will support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted. Under normal circumstances, you will be notified of the final decision within 45 days of the date that your request is received. If special circumstances cause a delay in our decision, you will be notified of the final decision no later than 90 days after your request for review is received.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

If you have any questions please contact our office.

Liberty 000213

Sincerely,

Monique Furgalack
Senior Disability Case Manager
Phone No.: (800) 985-3810  Ext. 10302
Secure Fax No.: (603) 422-7905

Liberty 000214