# EXHIBIT 15

07/13/2016  13:18    8507835996                    ZIMBERLINLAW                          PAGE  01/01

 **Zimberlin Law LLC**
267 Main Street | Manchester, CT 06042
(p) 860.783.5999 | (f) 860.783.5996
www.zimberlinlaw.com

Winona W. Zimberlin
Russell D. Zimberlin

By appointment only:
Hartford Office
2 Congress Street
Hartford, CT 06114

July 13, 2016

Facsimile: 1-603-334-5708
Nancy Winterer
Appeals Review Consultant
Liberty Life Assurance Company of Boston
PO Box 7213
London, KY 40742-7611

Dear Ms. Winterer:

    RE:   Haley Spears
            DOB: 10/11/1977
            Your claim #: 250039

    Pursuant to your June 16, 2016 letter, we are requesting a review of the denial. Additional documentation will be submitted at a later time. Thank you.

Very truly yours,

Winona W. Zimberlin

WWZ:

# EXHIBIT 16

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Haley Spears

    Plaintiff

v.

Liberty Life Assurance Company of Boston;
United Technologies Corporation;
The Group Life Insurance and Disability
Plan Of United Technologies Corporation
aka The UTC Choice Integrated Disability
Benefit Program;

    Defendants

No. 3:16-cv-00572(VLB)

December 16, 2016

## SECOND AMENDED COMPLAINT

### Preliminary Statement

Plaintiff, Haley Spears, brings this action against defendants Liberty Life Assurance Company of Boston ("Liberty"); United Technologies Corporation ("United Technologies"); The Group Life Insurance and Disability Plan Of United Technologies Corporation aka The UTC Integrated Disability Program ("Plan"); (collectively "defendants") for violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001, et seq. ("ERISA"). Haley Spears ("Spears") is a participant in the Plan, an ERISA welfare benefit plan that is underwritten and insured by United Technologies and Liberty.

This Complaint alleges the following violations of ERISA: 1) Defendants' unlawful termination of Spears' Plan benefits without presenting any medical evidence supporting its decision; 2) Defendants' unjustified disregard of the

opinions of Spears' treating physicians, vocational consultant, the determination of Liberty and the determination of the Social Security Administration in an attempt to deprive her of the Plan benefits she is due; 3) Defendants' failure to provide a reasonable claims procedure that would yield a timely and accurate decision on the merits of Spears' claim and 4) Defendants' breach of their fiduciary duty to Spears and 5) UTC's liability as a co-fiduciary for the acts of Liberty.

Spears previously filed Civil No. 3-cv-01807(VLB) in order to recover benefits due her under the Plan. After briefs were filed, the Court ruled that Liberty's actions were arbitrary and capricious. The Court found that Liberty's reviews were deeply flawed and inadequate. Judgment was entered in favor of Spears. On March 31, 2015 the Court ordered that the case be remanded to the Plan Administrator for a new decision. Liberty was instructed to perform a full and fair review that complies with the ERISA claims regulations. On remand, Liberty did not exercise discretion and make a timely decision on her claim. On January 12, 2016, Spears requested that Liberty make a decision on her claim. Despite this request, as of the date of the filing of the April 11, 2016 Complaint, Liberty still had not made a decision on Spears' claim.  As defendants exceeded the time limit allowed by ERISA in which to make a decision, Spears' claim was deemed denied.

Spears is filing this action to recover benefits under the Plan, to enforce the present rights existing therein, to clarify rights under the terms of the Plan, to

2

recover equitable remedies and to recover costs and attorney's fees as provided by ERISA.

Jurisdiction And Venue

1. This action is brought pursuant to ERISA, 29 U.S.C. §1001, et seq.

2. The jurisdiction of the Court arises under ERISA, §502(e)(2) and (f), 29 U.S.C. §1132 (e)(2) and (f) without regard to jurisdictional amount or diversity of citizenship, in that the Plan is administered in this district.

3. Venue lies in the District under the provisions of 28 U.S.C. §1391(b) and (c) and 29 U.S.C. §1132.

The Parties

4. The plaintiff, Haley Spears, is a former resident of West Hartford, Connecticut and a current resident of Shreveport, LA. She is a Covered Person under the Plan. She is a former employee of United Technologies. She was employed as an Executive Administrative Assistant immediately prior to becoming disabled.

5. Liberty Life Assurance Company of Boston is a for-profit corporation with its principal place of business in Boston, Massachusetts. It transacts business in Connecticut. The LTD plan is fully insured by Liberty. The policy number is GF3-810-258966-016. All premiums are paid to Liberty, who in turn agrees to pay covered claims for qualifying disabilities in accordance with Plan provisions. Claim determinations are made by Liberty and United Technologies.

6. The defendant, United Technologies ion is a for –profit corporation with its

principal place of business in Hartford, Connecticut. It transacts business in Connecticut. United Technologies is the Plan Administrator.

7. The defendant, The Group Life Insurance and Disability Plan Of United Technologies Corporation aka The UTC Choice Integrated Disability Program ("Plan") transacts business in Connecticut. It agreed with defendant United Technologies to pay covered claims for qualifying disabilities in accordance with contract provisions. It is established and maintained by United Technologies. The Plan is designed to pay STD and LTD benefits. Its goals include: to provide income replacement when the presence of a health condition supported by medical documentation limits the functional ability of a Plan participant to do the essential duties of his or her own job; integrate the process of how Sick Pay and STD benefits are paid and managed; and to facilitate a seamless transition between Sick Pay, STD and LTD payments. These statements are false and misleading as applied to Spears.

8. The STD plan is self-insured by United Technologies. United Technologies contracts with Liberty to process claims and pays for these claims and services out of a designated trust. Claim determinations are made by Liberty and United Technologies. United Technologies is the Plan Administrator for STD benefits.

9. At all times relevant to the claims asserted in this Complaint, United Technologies and Liberty purported to act as ERISA claims fiduciaries with respect to participants in the Plan, and specifically, with respect to Spears, within the meaning of ERISA.

4

Factual Allegations

   10.   The material duties of Spears' position included: send and edit letters, order supplies for two departments, do internet research, organize executive desks and papers, keep a reference guide book updated, change computer settings and fix office equipment on a basic level. She was responsible for communication with the maintenance department. She communicated verbally and by e- mail. Accuracy was essential. She processed expense reports by entering data into the computer, filed documents, and made travel arrangements. She processed invoices and followed through to ensure that they were paid. She generated briefing material for senior level meetings. She completed internal and external training to better understand United Technologies business practices and company objectives.

   11.   Spears sat at a desk for most of the day, but was often on her feet. Some days, she would need to walk to another part of the building. She was back and forth during the day. Her department was spread out on three floors, and on occasion she was up and down. At times she picked up packages, which weighed up to 25 lbs.  She lifted files and boxes of printer paper. She was required to bend down to get files or supplies. Sometimes she had to squat. She was required to reach over her head. It was an active and busy job. She was required to be able to concentrate and focus on her job all the time. The job was fast paced. She needed to be alert. There was no room for error. When her boss gave

her assignments, she needed to pay attention, grasp the assignment immediately, and complete it in a timely manner. She provided support for over twenty people. There was no sit stand option. She was required to sit when typing.

12. Spears started to feel sick about 2008. She started taking sick days. She was in and out of work with different symptoms. She had fevers. She had night sweats. She developed respiratory problems. She was coughing at work. Her co-workers noticed this. Her boss encouraged her to go back to the doctor. She had asthma symptoms. She was put on prednisone and other medications. She started having migraines. These symptoms became debilitating in the summer of 2008. This led to more time out of work. She went to the St. Francis Hospital emergency room for migraines. She had a CT scan. The doctors told her that she needed an MRI. She had an MRI.

13. By the summer of 2008, Spears could not do her job. She had migraines, blurry vision, inability to focus. She could not think straight. She had memory problems. She had a hard time comprehending what her boss wanted her to do. She would sit and stare. She was in a daze. She could not understand what was wrong. This was out of character for her. Her employer put her on short term disability. Spears stopped working in September 2008 and applied for STD from the Plan. Defendants granted benefits effective September 27, 2008. The definition of disability for the purpose of STD is:

> You have a covered disability under the Integrated Sick Pay/STD plan if, due to a medical condition related to an illness, injury or surgery you meet the following conditions:
>
> You are unable to perform the material and substantial duties of your current or a similar job for more than 5 consecutive scheduled workdays:

6

> Your physician provides medical evidence to support his or her
> assessment of your medical condition.

14. Spears discussed her condition with a representative of defendants. The representative assured Spears that, if she tried to go back to work part time, and could not sustain work, that her claim would still be open, and she could still collect STD if she contacted defendants with updated information. Spears tried to go back to work part time in January 2009. That lasted a few months. She could not perform her job during that time. She could not focus, even with lessened responsibilities. The temp who was there in Spears' absence did Spears' job after Spears returned. Spears was given simpler responsibilities, but she could not do these effectively and timely. She was in and out of work because of doctor appointments. She had a spinal tap which had complications of a spinal leak. It was challenging for her to try to transfer a phone call. She felt nauseous during work. She had blurred and disturbed vision.

15. A February 2, 2009 test was positive for antibodies for Borrelia burdorferi IgM, WB. In 2009, the pain was constant. Spears tried to mask her symptoms. She covered up the IV in her arm by wearing long sleeves. One of Spears' bosses said he was concerned about her health. Spears was too sick to work. Defendants approved her STD claim through February 8, 2009. On February 9, 2009, treating physician Barbara Kage, M.D., restricted her to four hours of work a day, mornings only. Her employer's medical department cleared her to return to work four hours a day, light duty, no bending, twisting, or lifting. Spears worked part time, with restrictions, through March 23, 2009. She then

7

stopped work due to her health condition. She returned to other work in 2014 and has worked sporadically since then.

16. From the time Spears left work to the present, she has seen many doctors and has received numerous diagnoses which include: daily tension headaches, frequent migraines with aura, history of blackouts, encephalopathy, asthma, colitis, peptic ulcer disease, insomnia, abdominal pain, diarrhea, gastritis, gastroduodenitis, regional enteritis of the large intestine, nausea, elevated serum LDH level/abnormal LFT, Crohn's disease, lymphocytic colitis, rectal hemorrhage, lumbago, systemic lupus erythematosus, Raynaud's Syndrome, nonspecific skin eruptions, immune mechanism DIS NOS, joint effusion-hand, reflux esophagitis, sicca syndrome, fatty liver, thyroid cyst, plantar fasciitis, consider demyelinating disorders, multinodular goiter, Hashimoto's thyroiditis, low attenuation changes in the white matter of the right temporal lobe of the brain which may represent gliosis or edema, lobulated lesion in the white matter of the right temporal lobe of the brain which may represent inactive demyelinating plaque, cervicalgia, straightening of the normal cervical lordosis, fatigue, rare independent polymorphic delta slowing in both temporal regions, single borderline right frontotemporal sharp wave on EEG that raises a question of potential epileptogenicity, Borrelia bugdorferi IgG and Lyme Disease. When she left work, she could not do her past job, or any other job. She was not reliable. She could not work a consistent work week. Her illness was very unpredictable.

17. LTD benefits were first denied by Liberty on January 30, 2009, as Liberty wrote that the LTD elimination period was not met. In May 2009 Liberty denied STD beyond February 8, 2009 on the ground that "the available records do not support any restrictions and limitations or impairment precluding you from performing the duties of your job as administrative support during the period of February 9, 2009 through the present date." Liberty denied LTD benefits before Spears requested LTD benefits. LTD benefits were denied by Liberty before STD benefits were denied by Liberty.

18. In June 2009, treating physician Bernard Raxlen, M.D. wrote that Spears was diagnosed with Borreliosis (Lyme disease) and multiple co-infections. He wrote that, because of her condition, she was not able to work full time or part time, and that disability leave was medically necessary.

19. In July 2009, infectious disease specialist Sam Donta, M.D., reported that Spears continued to have a PICC line in place, and that symptoms included fatigue, pains, swelling, numbness, headaches, diarrhea, concentration problems, memory problems, balance problems and palpitations. His impression was a chronic multi-symptom illness consistent with a chronic fatigue and fibromyalgia syndrome of longstanding duration that may be due to Lyme Disease in whole or in part.

20. In August 2009, treating rheumatologist Barbara Kage, M.D., FACR, wrote that she treated Spears for joint and bone pain, neck, shoulder and back pain, muscle weakness and pain, extreme fatigue, neurocognitive deficits, anxiety and sleep disturbances. Dr. Kage wrote that Spears tested positive for Central

9

Nervous System Lyme Disease with multiple co-infections. She wrote that, because of her condition, Spears was not able to work full time or part time, and that disability leave was medically necessary.

21. In October 2009, treating neurologist Dario Zagar, M.D., wrote that Spears had minimal improvement in her symptoms, and she continued to have fatigue and cognitive issues which limit her daily functioning, and she remained unable to work, even on a part-time basis.

22. In October 2009, Spears appealed the denial and provided additional documentation including reports from Dr. Zagar, Dr. Raxlen, Dr. Gouin, and Dr. Kage. All reports stated that Spears was unable to work because of her symptoms. Defendants denied the appeal in January 2010 on the ground that there was no evidence of impairment, restrictions or limitations from February 8, 2009 to the present. In May 2010, defendants reiterated their denial. In June 2010 defendants requested additional evidence from Spears, to include current medical records and records as of the date benefits ceased, February 8, 2009. Spears provided additional information, including a vocational expert report, denial by Liberty of life insurance for Spears on the basis of her poor health, four affidavits, a neuropsychological evaluation, residual functional capacity reports, Department of Social Services finding that Spears was unemployable, and numerous medical records.

23. United Technologies was involved in the disability determination decision. In October, 2010, United Technologies requested that Liberty override its short term disability decision and issue Spears additional short term disability

10

benefits, through the remainder of the STD eligibility period. Liberty did so. United Technologies also requested that Liberty reopen Spears' LTD claim, make an LTD determination, and notify United Technologies of its decision. Liberty did so. Defendants then denied LTD benefits.

24. In November 2010, defendants denied LTD benefits and referred to its February 2, 2009 denial of LTD benefits. Defendants wrote that impairment precluding Spears from working was not supported by the medical documentation beyond February 8, 2009. Defendants made this statement even though they had already granted STD benefits through March 27, 2009. Defendants also wrote that the February 8, 2009 date was prior to the begin date of LTD and that, therefore, Spears did not satisfy the elimination period. Defendants also referred to a September 27, 2010 peer review report that it relied upon for its denial. Defendants did not supply this document to Spears.

25. The Social Security Administration granted Spears' request for disability benefits on February 25, 2011 with an onset date of August 31, 2008. The Administrative Law Judge found that the part-time work after that date was an unsuccessful work attempt. He found that chronic neurologic Lyme disease with co-infections of chronic Babesiosis and Bartonella were severe impairments. The Judge found that Spears was disabled and could not work because she required frequent unscheduled breaks and absences of an unpredictable duration.

26. In May 2011, Spears appealed the termination of Plan benefits, submitting her Fully Favorable Social Security disability decision, medical journal

11

articles, and numerous medical records and reports. Spears requested that the September 27, 2010 peer review report be provided to her, and that the record be held open so that she could respond to the report.

27. In June 2011, defendants denied the appeal for additional Plan benefits on the ground that she "has not provided medical evidence to support Disability throughout the Elimination Period." Defendants provided a copy of the September 27, 2010 peer review report with its June 2011 denial, but did not allow Spears any additional time to respond to the report.

28. The Plan defines "Covered Disability" for LTD benefits as follows:

You are considered disabled under the LTD Plan if, solely because of Injury or Sickness, you are unable to perform all of the material and substantial duties of your Own Occupation.

After LTD Disability Benefits have been payable for 24 months, you are considered disabled if, solely due to injury or illness, you are unable to perform all of the material and substantial duties of Any Occupation.

"Any occupation" is defined by the Plan as

any occupation for which you are reasonably fitted based on your training, education, experience, age, physical and mental capacity and the salary of which is at least 80% of your covered earnings.

29. Spears was disabled under both the STD and LTD definitions of disability. All defendants had a fiduciary duty towards Spears. Defendants breached this duty, and breached the plan provisions by: Defendants did not perform a physical examination of Spears until 2016, approximately eight years after Spears became sick and after Spears returned to work. At no time have defendants or any entity acting under its direction or on its behalf performed any functional capacity examinations or vocational tests on Spears in an attempt to

obtain evidence which would support its argument that she is able to perform her job. Defendants should be persuaded by the findings of the Social Security Administration, because the definition of "disability" in Social Security cases is much more stringent than defendants' definition of "disability."

30. Defendants breached their fiduciary duty, and breached the plan provisions by: Defendants failed to consider the arguments Spears made in her appeals, failed to consider all of the evidence in the claim file, conducted a selective review of the evidence and did not fulfill its fiduciary obligation to properly seek out and investigate her claims. This Court held that termination of Spears' benefits by defendants was arbitrary, capricious and erroneous.

31. Defendants breached their fiduciary duty, and breached the plan provisions by: Defendants have an inherent conflict of interest in that Liberty both evaluates claims for LTD benefits and pays LTD benefits claims. Defendants showed bias in administering the Plan as they failed to provide fair process to Spears, in that they failed to timely provide the peer review report on which it relied, and refused to allow Spears a reasonable time to respond to the report.

32. On March 31, 2015, the Court ordered that the case be remanded to the Plan Administrator for a new decision. Liberty was instructed to perform a full and fair review that complies with the ERISA claims regulations. On remand, defendants did not exercise discretion and make a timely decision on her claim. Spears requested that Liberty make a decision on her claim on January 12, 2016. Despite this request, as of the date of the filing of the April 11, 2016 Complaint, Liberty still had not made a decision on Spears' claim. Liberty did not make a

13

decision until June 16, 2016, 156 days later. This was a breach of Liberty's fiduciary duty towards Spears, as ERISA regulations require that a claim be decided within 45 days. United Technologies failed to ensure that Liberty made a timely decision. This was a breach of United Technologies' fiduciary duty towards Spears under 29 U.S. C. §1105 and a violation of ERISA 29 C.F.R. §2509.75-8.

33. This denial was arbitrary, capricious and erroneous. Spears filed an administrative appeal, on July 13, 2016. As of this date, defendants have not acted on this appeal. ERISA regulations require that an appeal be decided within 45 days. As the ERISA time limit has passed, this appeal is deemed denied.

34. Defendants' actions are in breach of the terms of the Plan and ERISA, §503, 29 U.S.C. §1133 by failing to provide a timely decision on the claim on remand, and by failing to pay Spears' claim for benefits. Defendants' actions constitute an unlawful denial of benefits under ERISA and a breach of fiduciary duty. In accordance with 29 U.S.C. §1132, Spears is entitled to be paid benefits under the Plan based upon her disabled status. Defendants have refused to provide Spears with these disability benefits and are, therefore, in breach of the terms of the Plan and ERISA's fiduciary duties.

35. United Technologies was involved in the decision to pay Spears' benefits in 2009 when it overrode Liberty's denial. United Technologies is liable for the actions of its co-fiduciary, Liberty. United Technologies was required by ERISA to establish a formal review of Liberty's actions at reasonable intervals. United Technologies breached its duty as to Spears under 29 USC §1105.

36. Defendants were influenced by their financial conflict of interest when they made the decision to terminate Spears's benefits.

37. As a direct and proximate result of this unlawful denial of Plan benefits, Spears has been harmed and has suffered a cognizable loss.

38. Under the standards applicable to ERISA, Spears deserves to recover a "reasonable attorney's fee and costs of the action" herein, pursuant to ERISA, §502(g)(1), 29 U.S.C. §1132(g).

39. Defendants have the ability to satisfy the award.

40. Spears' conduct of this action is in the interest of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all participants. Defendants have acted in bad faith in denying Spears' benefits under the Plan.

41. The award of attorney's fees against defendants will deter others acting under similar circumstances.

WHEREFORE the plaintiff prays for judgment against the defendants as follows:

1. Declare, adjudge, and decree that Spears is entitled to Plan benefits as calculated under the terms of the Plan under ERISA § 502(a)(1)(B);

2. Declare that defendants breached their fiduciary duty as to Spears under ERISA § 502(a)(3) and that United Technologies is liable for the actions of its co-fiduciary, Liberty, under 29 U.S.C. §1105. Declare that Spears is entitled to equitable remedies, including, but not limited to, restitution, disgorgement of profits made by withholding benefits, surcharge, reformation and injunction.

3.  Award Spears the full amount of unpaid benefits under the Plan to which she is entitled, together with such pre-judgment interest as may be allowed by law;

4.  Award costs and reasonable attorney's fees;

5.  Award such other relief as the Court deems just, reasonable or equitable.

The Plaintiff

By: /s/   Winona W. Zimberlin
Winona W. Zimberlin
Zimberlin Law, LLC
267 Main Street
Manchester, CT 06042
Ct 05501
(860) 783-5999

### CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated o the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/   Winona W. Zimberlin
Winona W. Zimberlin

17