**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

Haley Spears                                    No. Civil No. 3:11-cv-01807 (VLB)

    **Plaintiff**

**v.**

**Liberty Life Assurance Company of Boston;
United Technologies Corporation;
The Group Life Insurance and Disability
Plan Of United Technologies Corporation
aka The UTC Choice Integrated Disability
Benefit Program;**                              **October  30,  2017**

    **Defendants**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

      Defendants, on September 13, 2017,  filed a Motion to Dismiss parts of Plaintiff's Amended Complaint of August 30, 2017 claiming: 1) plaintiff may not claim a breach of fiduciary duty and 2) plaintiff is barred from filing a Complaint against United Technologies Corporation. Both grounds are insufficient as a matter of law and must fail.   In the alternative, defendants' arguments are premature and should be deferred until this Court considers dispositive motions.

**I.**      **BACKGROUND**

      Haley Spears sued defendants in *Spears v. Liberty Life Assurance Co,* 3:11cv1807 ("*Spears I* ") when they terminated her from benefits under a disability plan sponsored by her employer, United Technologies, Inc. ("UTC"). In 2012, this Court dismissed defendant UTC and dismissed Spears' claim for equitable relief

under §502(a)(3). After discovery, and summary judgment motions, this Court granted summary judgment in Spears' favor, finding that Liberty did not provide a full and fair review under the ERISA regulation, and remanded the case to Liberty. This Court held that Liberty's actions were arbitrary and capricious, and that its reviews were deeply flawed and inadequate.  Mem. Dec. dkt. 103 (March 31, 2015). On remand, Liberty was directed to consider Spears' claim again and to perform a full and fair review that complies with the ERISA claim regulation.   On January 12, 2016, after waiting almost ten months for a decision from Liberty after the remand order, Spears made a written request that Liberty make a decision on her claim. No. 3:16-cv-00572(VLB) ("*Spears II*"). Amended Complaint, p. 2.   When Liberty did not issue a timely decision within 45 days after the January 12, 2016, request, Spears filed a Motion to Reinstate with the Court, and later brought *Spears II*,  filed on April 11, 2016. As defendants exceeded the time limit allowed by ERISA in which to make a decision, Spears' claim was deemed denied.

After *Spears II*  was brought, Liberty denied the claim on June 16, 2016, well beyond the 45 day ERISA deadline. *Spears II*, Amended Complaint, ¶ 32. Pursuant to ERISA, 29 C.F.R. § 2560.503-1(i),  Spears submitted an internal appeal on July 13, 2016. Amended Complaint, ¶33. Liberty, in its Motion to Dismiss, p. 8, takes the position that the administrative appeal procedures and deadlines no longer applied to it, since this claim was being considered after a Federal Court remand. (Defendants brief claims, "Although Liberty was not required by this Court's March 31, 2015, ruling or by law to grant Plaintiff an additional appeal of its remand determination…."). That erroneous position may explain its delays in

issuing the initial denial and the appeal denial.  It is undeniably wrong for Liberty, after being chided by this Court for violations of the claim procedure regulation, to take the position that, because it lost *Spears I*, it was no longer bound to comply with ERISA on remand. Once it lost *Spears I*, Liberty should have been more cognizant of its duties under ERISA and this Court's orders, not less. This was a breach Liberty's fiduciary duty towards Spears, as ERISA regulations require that a claim be decided with 45 days.  UTC failed to ensure that Liberty made a timely decision.  This was a breach of UTC's fiduciary duty toward Spears under 29 U.S.C. §1105 and a violation of ERISA 29 C.F.R. §2509.75-8.

After repeated requests by Spears for a decision on the July 2016 administrative appeal, Liberty denied the appeal on May 4, 2017. Liberty, again, had missed its 45 day deadline to provide a decision, under the erroneous belief that the ERISA deadlines did not apply on remand.

Defendants filed a Motion to Dismiss in *Spears II*. This Court dismissed *Spears II*, denied defendant's Motion to Dismiss as moot, and amended the prior order in Spears to allow Spears to file a new motion for summary judgment and to file a Motion to Amend the Complaint. Spears filed an Amended Complaint on August 30, 2017, and this Court granted the Motion to Amend on September 21, 2017. This Court re-opened *Spears I,* dkt. 117. Defendants have now moved to dismiss part of the August 30, 2017, Amended Complaint.

## II.  LAW & ARGUMENT

### A.  Legal Standard - Defendants' 12(b)(6) Motion Should Be Limited To  The Allegations Of The Complaint

To avoid dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face."     As*hcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "…[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic, supra.* A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Bell Atlantic, supra*. When ruling on a motion to dismiss pursuant to Rule 12 (b)(6), the Court must take the allegations of the Complaint to be true and draw reasonable inferences in favor of the plaintiff*. Bell Atlantic, supra.*

In reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider the facts alleged in the Complaint, documents attached to the Complaint as exhibits, and documents incorporated by reference in the Complaint. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Where a document is not incorporated by reference, the Court may nevertheless consider it where the Complaint "relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (internal quotation marks omitted). Here, Spears did not attach any exhibits to the Amended Complaint and did not incorporate any documents by reference. The Amended Complaint did not rely heavily upon the terms and effect of any document. No document was integral to the Amended Complaint.

Defendants have not filed a summary judgment motion. Their attempt to add bits and pieces of correspondence between the parties as exhibits has no place

4

in a Motion to Dismiss.  It has been two years since this Court's 2015 remand; hundreds of pages have been added to the administrative record. The question here is narrow: whether plaintiff's Amended Complaint states a claim upon which relief may be granted. Their description of "Review on Remand" at p. 8 of their brief belongs in a motion for Summary Judgment, not a Motion to Dismiss. Here, the Court must take the allegations of the Complaint to be true and draw reasonable inferences in favor of Spears. Defendants attempt to avoid this standard by providing its version of its "review on remand" and "procedural history post-remand" in order to distract this Court from the limited issues involved in the Motion to Dismiss. Defendants' argument regarding what happened post-remand is premature and incomplete. Defendants, by citing to parts of the administrative record of *Spears I*, def. br. p.10, are injecting issues which are not before this Court at this time. In due course, defendants will have the opportunity to file a motion for summary judgment and can then cite to all the pages in the Record that they believe supports their position. At that point, Spears also will have the opportunity to cite to pages in the Record.

Defendants, br. p. 9 – 14,  in their "Procedural History Post Remand" discuss differences between the Complaint in *Spears I*  and the present operative Amended Complaint. Defendant's procedural history in their memorandum in support of Motion to Dismiss discusses prior Complaints at great length, however, none of that matters. The August 30, 2017, Amended Complaint is the operative Complaint. Plaintiff agrees that the Amended Complaint filed on August 30, 2017, is different than the original Complaint; that is why it was amended. It is

not surprising that an Amended Complaint differs from previous Complaints in the same action; that is the purpose behind the procedures of Fed. R. Civ. P. 15. Of course the allegations are different. The original Complaint was filed six years ago. The law has changed in six years. The facts have changed; defendants have reconsidered Spears' claim, and written discovery has been conducted. Defendants cannot complain that the allegations of the Amended Complaint are different from the previous Complaint; it is defendants who filed a "Motion for Denial of Pending Motions, as Moot and Without Prejudice, and For Modification of Scheduling Order" on March 21, 2017. Defendants consented to the filing of the Amended Complaint of August 30, 2017, reserving all rights to move for dismissal. Defendants have waived the right to challenge plaintiff's ability to file an amended Complaint, which contains facts and claims which are different from the previous Complaint. Accordingly, their argument that the Complaints are different is irrelevant to the issues before the Court at this time.

Defendants' submission of Exhibits 1 – 16 to their Motion to Dismiss is improper. These documents are parts of correspondence between the parties from 2011 – 2016 and various pleadings.  A motion for summary judgment is the proper place for defendants to refer to documents outside the Complaint.  At that time, the Court will have the benefit of Rule 56(a) statements and will be able to determine which facts are disputed and which are not. Additionally, in considering motions for summary judgment, this Court will have the opportunity to decide what standard of review to apply to disputed facts; either an arbitrary and capricious standard or a de novo standard. The Second Circuit, in *Halo v.*

*Yale Health Plan,* 819 F.3d 42 (2d Cir. 2016), held that, when a plan violates the claim regulation,  a  district court must apply a de novo standard when reviewing that plan's denial determination. The decision of what standard of review to apply will impact on the weight to be given to Liberty's factual allegations. That decision cannot be made on a Motion to Dismiss.

Rule 12 (d) provides that on a motion under Rule 12(b)(6) or 12(c), if matters outside the pleadings are presented to and not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. This rule ensures that the distinct policies of pleadings challenges (i.e., testing the pleaded allegations) and factual challenges (i.e., testing the availability of the supporting evidence) are respected. *Global Network Comm. Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). The purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the Complaint, but does not weigh the evidence that might be offered to support it. *Global Network, supra*, se*e AmBase Corp. v. City Investing Co. Liquidating Trust,* 326 F.3d 63, 72 (2d Cir. 2003); 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004).

The streamlined testing of the substantive merits, on the other hand, is more appropriately reserved for the summary judgment procedure, governed by Rule 56, where both parties may "conduct appropriate discovery and submit the

additional supporting material contemplated by" that rule. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 154 (2d Cir. 2002); *see Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997) ("Although the mere allegation of the existence of [a fact] would be sufficient to withstand a challenge for failure to state a claim, something more is required to avoid summary judgment [, which] is designed to pierce the pleadings [and] flush out those cases that are predestined to result in a directed verdict.") Consideration of a summary judgment motion is fact-intensive. It is the proper procedural device to consider matters outside the pleadings, such as facts unearthed in discovery, depositions, affidavits, statements, and any other relevant form of evidence. See *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016).

The Second Circuit has stressed the importance of adherence to the requirement of notice to the other party when converting a Rule 12 motion to a Rule 56 motion. As stated by the Court in *Global Network, supra:*

> The conversion requirement of Rule 12(b) thus furthers the policies of both Rules by directing a pretrial motion to the vehicle most appropriate for its resolution, ensuring that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular stage of the litigation. Moreover, the requirement expressly addresses and solves the major problem that arises when a court considers matters extraneous to a complaint, namely, the lack of notice to the plaintiff that outside matters would be examined. It deters trial courts from engaging in factfinding when ruling on a motion to dismiss and ensures that when a trial judge considers evidence dehors the complaint, a plaintiff will have an opportunity to contest defendant's relied-upon evidence by submitting material that controverts it. *See* Fed.R.Civ.P. 12(b) (requiring that "all parties ... be given reasonable opportunity to present all material made pertinent to [the converted motion]"); *Amaker,* 179 F.3d at 50; *Cortec Indus. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("[I]t is for that reason--requiring notice so that the party against whom the motion to dismiss is made may respond--that Rule 12(b)(6) motions are ordinarily

converted into summary judgment motions."). That these two motions can be easily confused, *see MacDonald v. Safir,* 206 F.3d 183, 190 (2d Cir.2000); 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2713 (3d ed.1998), underscores the importance of our adherence to the requirement.

A Complaint which refers to a document does not mean that the document is incorporated by reference and thus can be introduced by the moving party in support of a motion to dismiss. *Global Network, supra,* at 157, quoting from *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1015 (1st Cir.1988). Merely mentioning a document in the Complaint will not satisfy this standard; indeed, even offering "limited quotation[s]" from the document is not enough. *Goel v. Bunge, Ltd, supra.* "A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding--one featuring a bespoke factual record, tailor-made to suit the needs of defendants*." Id.,* 561.

The cases cited by defendants at def. br. 15, *Tessler v. Paterson,* 451 Fed. Appx. 30, 32 (2d Cir. 2011) (summary order) and *Colon v. Town of West Hartford,* No. 3:00cv168(AHN), 2001 U.S. Dist. LEXIS 484, at *5 n.1 (D.Conn. Jan. 5, 2001), are not precedent and are distinguishable.  In *Tessler,* the Court never identified a particular document which it reviewed in addition to the Complaint.  There is no holding by the *Tessler* Court which in any way supports defendants' argument. *Tessler*  held that, in reviewing the dismissal of a Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6), it construes the Complaint liberally, accepts all factual allegations therein as true, and draws all reasonable inferences in plaintiff's favor. In *Colon,* the Court found that a newspaper article was integral to the Complaint. The plaintiff quoted selected portions of the article and the

9

defendants submitted the article in its entirety.  It does not appear that plaintiff objected to the defendants' use of the entire article in their motion to dismiss. Additionally, this was not an ERISA case and there was no issue as to whether a deferential or de novo standard of review of a defendants' factual findings should be used. Here, by contrast, the standard of review of factual findings will be a central issue on summary judgment.

The Summary Judgment standard is completely different than the 12(b)(6) standard. Spears has complied with the *Bell Atlantic Corp. v. Twombly, supra,* requirements. The Motion to Dismiss should be denied.

If this Court decides to treat the Motion to Dismiss as a Motion For Summary Judgment under Fed. R. Civ. P. 12(d), then that rule requires that "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." As indicated by the word "shall," the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is "strictly enforce[d]" and "mandatory." *Global Network, supra*, quoting from *Amaker v. Weiner,* 179 F.3d 48, 50 (2d Cir.1999); *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985). Spears requests that such notice be given. Spears also requests that, if this Court decides to convert the Motion to Dismiss into a Motion for Summary Judgment so that extrinsic materials can be considered, that the Court defer consideration of the issues presented in this Motion until dispositive motions are filed. The Court will then have the benefit of the parties' Rule 56(a) responses, defendants'

Answer, and will have decided which standard of review it will apply when reviewing defendants' factual allegations.

**B.  None Of Spears' Claims Are Barred By The Law Of The Case Doctrine**

Defendants no longer argue that Spears' claims are barred by res judicata, which they argued in their *Spears II* Motion to Dismiss, dkt. 63-1. That defense has been abandoned. Defendants concede, as they must, that the law of the case doctrine is discretionary.

The law of the case doctrine states that when a Court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800 (1988), holds that a Court has the power to revisit its own prior decisions. *See also Dictograph Products Co. v. Sonotone Corp.* 230 F.2d 131, 135 (2d Cir.1956), *cert. dismissed* 352 U.S. 883 (1956); *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009). The law of the case doctrine "does not rigidly bind a court to its former decisions, but is only addressed to its good sense."); *Johnson v. Holder*, quoting from *Higgins v. Cal. Prune & Apricot Grower, Inc.,* 3 F.2d 896 (2d Cir.1924)(L. Hand, J). Instead, defendants limit their claim to a claim that this Court should not exercise its discretion to revisit the 2012 rulings. Because there have been significant intervening legal changes, and new evidence produced by defendants, the 2012 ruling should be reassessed.  A Court has the authority to revise its interlocutory rulings if it chooses. This Court, therefore, may reconsider its prior rulings at any time. Fed. R. Civ. P. 54(b). This Court has already done so by re-opening *Spears I.*

11

The doctrine of the law of the case does not bar Spears from relying on a change in the law in order to add claims in the present civil action. In any ongoing civil action, the Court can revisit a prior ruling if there is a change in precedent. To hold otherwise would mean that no district court could ever take note of new rulings from the Courts of Appeals in an ongoing case.

The law of the case doctrine does not limit a federal court's power, rather it directs its exercise of discretion. *Virgin Atl. Airways v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) cert. denied*, 113 S.Ct. 67 (1992). "The major grounds justifying reconsideration are `an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways,* 956 F.2d at 1255 (quoting 18 Charles A. Wright, Arthur R. Miller Edward H. Cooper, *Federal Practice Procedure* § 4478, at 790 (1981). *Estate of George v. Batista,* CV 3:08-cv-01023-VLB (D.Conn. 2013)(previous ordered amended). All three factors need not be present. A Court may depart from the law of the case for "cogent" or "compelling" reasons. *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009). Defendants argue that a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided. Def. Br. at 17. Spears did not file a motion to reconsider.  Spears filed a Motion to Amend the Complaint, which has been granted by the Court. A Motion to Amend a Complaint is not filed by a plaintiff unless a change has occurred which warrants a new Complaint. Defendants did not object and  were aware that the Amended Complaint would contain allegations which were different from those in the 2011 Complaint.

Defendants, br. at 23, argue that Spears never sought reconsideration of this Court's dismissal of defendant UTC. There was no requirement that Spears do so, and defendants have pointed to no such requirement.

1. <u>There Has Been An Intervening Change Of Controlling Law Since 2012</u>

There has been a dramatic change in the law since 2012. The Second Circuit has now explicitly ruled on the permissibility of dismissing an ERISA claim for equitable relief at the motion to dismiss stage. In no uncertain terms, the Second Circuit has held that it is premature to dismiss a claim for equitable relief in the beginning stage of an ERISA claim for benefits. *New York State Psychiatric Association v. United Health Group*, 798 F.3d 125 (2d Cir. 2015), *cert. den. sub. nom. United Health Grp. v. Denbo*, 136 S. Ct. 506, 193 L.Ed. 2d 397 (2015). In *New York State*, the Second Circuit interpreted *CIGNA Corp. v. Amara,* 563 U.S. 421 (2011), and clarified that a §502(a)(3) claim is not automatically undermined by the presence of a §502(a)(1)(B) claim. The Court noted that it was "important to distinguish between a cause of action and a remedy under 502(a)(3)" because "*Varity Corp.* did not eliminate a private cause of action for breach of fiduciary duty when another potential remedy is available." In *New York State*, the district court dismissed an (a)(3) claim on the ground that adequate relief was available under (a)(1)(B).

The Second Circuit reversed on the ground that the dismissal was premature. It was not clear at the motion to dismiss stage that monetary benefits under (a)(1)(B) alone would provide a sufficient remedy. The Second Circuit stated that an injunction coupled with a "monetary compensation" to prevent the

fiduciary's unjust enrichment constitutes equitable relief under §502(a)(3). The Court held that even though the §(a)(1)(B) and §(a)(3) claims were based on the same allegations of wrongful denial of benefits, the plaintiff was not necessarily limited to a §(a)(1)(B) cause of action. It stressed that a plaintiff was only barred from obtaining a duplicative remedy under ERISA. Therefore, it concluded that the district court must evaluate a plaintiff's ERISA claims under both sections before deciding whether recovery of benefits under §(a)(1)(B) fully compensates the plan participant for his injury, thereby rendering any other remedy duplicative, or whether an additional equitable remedy is appropriate to make the plan participant whole. Since the case was only at the motion to dismiss stage, the Court could not sufficiently determine whether recovery of benefits under §(a)(1)(B) would provide adequate relief. The Second Circuit then reversed the dismissal.

This Court's 2012 dismissal decision was issued shortly after *Amara*, and prior to appeal courts' interpretations of *Amara's* holding. Circumstances have changed, and several courts, including the Second Circuit, have now weighed in on the issue of whether an (a)(1)(B) claim  and a claim for equitable relief may be joined in the same civil action.

This Court did not have the benefit of *New York State Psychiatric Association* when it dismissed the claim for equitable relief in 2012. In *Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.* 14 Civ. 2495 (ER) (S.D.N.Y. Aug. 15. 2016), the district court rejected an argument that the equitable relief sought by plaintiff under ERISA §503 was duplicative of a claim for benefits

under §502(a)(1)(B). As the Court stated in *Mbody*: "…it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under §502(a)(1)(B) alone will provide [Plaintiffs] a sufficient remedy."    The *Mbody* Court denied defendant's Motion to Dismiss, since the Amended Complaint plausibly alleged violations of ERISA §503. Equitable remedies can include disgorgement of the fiduciary's profits for delayed payment of benefits. *Dunnigan v. Metropolitan Life Ins. Co.,* 277 F.3d 223, 230-32 (2d Cir. 2002); *Dobson v. Hartford Fin. Servs.,* 196 D. Supp. 2d 152, 165-74 (D. Conn. 2002), *aff'd in part, vacated in part*, 389 F.3d 389 (2d Cir. 2004), 342 F.2d App'x 706 (2d Cir. 2009)(summary order).

Other courts are in accord with *New York State*. *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) held, in light of *Amara*, that a claim for equitable relief on a theory of surcharge may be alleged along with an (a)(1)(B) claim. Because Silva pleaded facts that, if proven to be true, could show an ERISA violation and resulting harm, and because that breach has a remedy under the equitable theory of surcharge, the Eighth Circuit reversed the district court's determination that a claim under §1132(a)(3) would be futile. Additionally, the Court held that to dismiss an §(a)(3) claim as duplicative at the pleading stage would require the plaintiff to elect a legal theory and would, therefore, violate the Federal Rules of Civil Procedure which allow alternative theories. *See Moyle v. Liberty Mut. Ret. Benefit Plan,* 823 F.3d 948(9th Cir. 2016)(Federal Rules of Civil Procedure require that a pleading which contains a demand for relief may include relief in the alternative or different types of relief, Fed. R. Civ. P. 8(a)(3), moreover, allowing plaintiffs to seek relief under both (a)(1)(B) and (a)(3), is consistent with

ERISA's intended purpose of protecting participants' and beneficiaries' interests); *McGlasson v. Long Term Disability Coverage*, 2:15-cv-01512 JWS(D. Ariz. Feb. 11, 2016)(defendant sought dismissal of (a)(3) claims arguing that plaintiff was not seeking appropriate equitable relief, but was improperly repackaging his benefits denial claim. The Court denied dismissal, finding the Second Circuit's decision in *New York State, supra*, to be persuasive); *Health Net v. Am Int'l Specialty Lines Ins. Co.*, B262716 (Cal. Ct. App. Oct. 6, 2016)(extracontractual monetary damages are recoverable under (a)(3). Citing *New York State*, the California Court held that *Amara* permits a plaintiff to pursue a claim for plan benefits under (a)(1)(B) while simultaneously pursuing a breach of fiduciary duty claim for equitable monetary relief under (a)(3) as an alternative remedy in the event the claim for plan benefits fails.)

Equitable remedies in the present case could include injunction, reformation, monetary surcharge, equitable estoppel or disgorgement of profits to avoid unjust enrichment. *Cf. Rochow v. Life Ins. Co. of North America,* 780 F.3d 364, 375 (6th Cir. 2015)(disgorgement of profits not allowed under those particular facts). Equitable relief can take the form of monetary compensation, referred to as a surcharge. In *CIGNA Corp. v. Amara*, *supra*, the Court explained that, "[t]he surcharge remedy was extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary" and could be imposed to compensate a plaintiff "for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."

16

Here, for example, this Court may hold that an award of simple prejudgment interest to Spears is not adequate to prevent Liberty's unjust enrichment, or the Court may wish to award the Connecticut statutory rate of 10%. In *Fairbaugh v. Life Ins. Co. of North America,* 872 F.Supp. 2d 174 (D.Conn. 2012), the Court granted 10% prejudgment interest, compounded annually, to compensate plaintiff for her loss resulting from defendant's contempt in not paying a judgment in an ERISA long term disability case. This Court may wish to order a surcharge remedy. A remand in an ERISA disability case is also considered to be equitable in nature. *Smith v. Champion Int'l Corp.*, 220 F. Supp. 2d 124, 129 (D. Conn. 2002), "Indeed, the usual remedy for a violation of § 1133 would be equitable in nature, such as remanding plaintiffs' claims for benefits...for a 'full and fair' review." *Mbody, supra, Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614 (2d Cir. 2008). *See also Dobson v. Hartford Fin. Servs.,* supra, discussed in section C. 1. of this brief.

Defendants argue that *New York State* should not apply because in 2012 this Court looked at the allegations of Spears' Complaint, and found that plaintiff had not alleged sufficient factual content. Def. br. at 19. That Complaint, however, is not the operative Complaint. The Amended Complaint of August 30, 2017 is the operative Complaint. It alleges additional factual content as compared with the 2011 Complaint. Defendants' current Motion to Dismiss appears more focused on the pleadings which were before this Court in 2012, rather than the pleadings as they are now.

17

It is too early, at this stage of the litigation, for this Court to make a determination that there can be no possible equitable remedy for Spears. Liberty's post remand behavior shows that it has disregarded ERISA's time limits and this Court's remand orders. *Spears II* was filed when Liberty missed the time limit for deciding the new administrative claim. It was not until after *Spears II* was filed and served that Liberty decided (and denied) the claim. Spears filed an administrative appeal which was denied on May 4, 2017. Again, Liberty missed the regulatory time limit for deciding the administrative appeal. This Court may want the option of considering an equitable remedy for Spears based on Liberty's actions of not deciding the claim until suit was brought. This Court may also want the option of considering an equitable remedy for Spears against UTC. UTC, as the plan administrator, has taken the position that it bears no responsibility for the denial of LTD benefits to Spears. It has taken the position that its duties have been delegated to Liberty. If this Court disagrees with that position, then it may wish to provide some sort of equitable relief to Spears from UTC.  This option for the Court should not be foreclosed at this time. This Court should wait for a more fully developed record before deciding whether equitable relief would be duplicative of the relief allowed by (a)(1)(B).

The holding of *New York State, supra*, is especially important as applied to the present case, which involves disability benefits.  In a related context, the Supreme Court has recognized that "important human values—such as the lawfulness of continuing personal disability or restraint—are at stake, even a slight change of circumstances may afford a sufficient basis for concluding that a

18

second action may be brought." *See Whole Woman's Health v. Hellerstedt* (15-274) (579 U.S.__ June 27, 2016), quoting from the Restatement (Second) of Judgments §24, Comment f. Spears was deprived of her LTD disability benefits for the entire time she was sick.[1]  Here, the intervening change in the case law since 2012, and the importance of the human values at issue,  militate in favor of revisiting the 2012 ruling and denying the Motion to Dismiss.

### 2. There is New Evidence As To UTC, Which Was Not Available in 2012

The second factor for this Court to consider when deciding if the 2012 ruling should be revisited is the availability of new evidence, *Virgin Atl. Airways, supra.* Defendants do not brief this issue.

In 2011, in *Spears I*, UTC was sued as the employer. See Complaint in *Spears I*, Nov. 11, 2011. There was no allegation that UTC was the plan administrator. See ¶ 5, which alleged that Liberty was the plan administrator. In fact, defendants' February 6, 2012, Memorandum in Support of their Motion to Dismiss (dkt. 14), which the Court relied upon, never admitted that UTC was the plan administrator. Defendants' memorandum in support of its 2012 Motion to Dismiss makes the opposite claim – "Liberty Life is the administrator of the Plan...." Def. br. in *Spears I*, p. 10, ex. A.

Defendants were playing fast and loose with the facts. Instead of admitting that UTC was the plan administrator and then arguing that UTC should be dismissed, defendants failed to inform this Court that UTC was the plan administrator. It was not until Rule 56(a)(2) statements were filed that defendants

---

[1] Spears has since recovered and has returned to work.

finally admitted that UTC was the Plan Administrator. See defendants' response to #35: "Defendants admit that the plan administrator is UTC....", ex. B. This illustrates the wisdom behind *New York State, supra*, and waiting until dispositive motions are filed prior to dismissing a party such as UTC. Consequently, when the Amended Complaint of August 30, 2017 was filed, Spears alleged that UTC was the plan administrator. Amended Complaint ¶ 6.  *See Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 222, 236-38 (W.D.N.Y. 2002)(plan administrator evades admission that it is the plan administrator).

As recognized by *Varity v. Howe*, 516 U.S. 489 (1996), an employer can act as an employer or as a plan fiduciary. Varity was the plan administrator as well as the employer. Varity argued that it was not acting as a plan fiduciary, but as an employer when it deceived its employees. The Supreme Court disagreed and affirmed the district court which had concluded that Varity was acting as a plan administrator when it misled plan beneficiaries.

In the present case, Spears alleges that UTC was the plan administrator and purported to act as an ERISA fiduciary. Amended Complaint ¶ 6, 8, 9. There is no question that a plan administrator is a proper defendant in the Second Circuit. *Leonelli v. Pennwalt*, 887 F.2d 1195, 1199 (2d Cir. 1989). In *Leonelli*, the Second Circuit held, "[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable." Defendants do not deny that a plan administrator is a proper defendant in the Second Circuit. Their argument is simply that the Court's 2012 ruling should not be disturbed. To leave the 2012 ruling undisturbed would reward UTC for its

20

"hide the ball" tactics. It is additionally important that the Court reconsider its 2012 ruling because the Amended Complaint includes a legal claim that UTC is liable as a co-fiduciary under ERISA, 29 U.S.C. §1105. See ¶ 35, Claim for Relief, Amended Complaint.

### 3. The Need To Correct A Clear Error Or Prevent Manifest Injustice

There is a manifest injustice here if the August 2012 ruling prevents this Court from reconsidering equitable remedies which this Court may wish to impose. Cases post *Amara, supra*, give this Court the freedom and flexibility to fashion equitable remedies as it sees fit. There is also a clear error here if UTC is allowed to continue to disclaim all responsibility for its actions and inactions while it was a plan administrator. Defendants argue that UTC's role with respect to the Plan has not changed since Spears filed her 2011 Complaint. Defendants claim, def. br. at 24, that UTC was the plan administrator "under the express terms of the Summary Plan Description."  Defendants cite to page 38 of their ex. 4. The Summary Plan Description ["SPD"] is vague, misleading and does not affirmatively state that UTC is the Plan Administrator for the LTD Plan. Page 38, left side column, contains a heading that states, "Plan Sponsor."  The name and address of UTC is clearly indicated. Page 38, however, contains a right side column contains a heading entitled, "Plan Administrator." It does not list the name and address of any entity as Plan Administrator of the LTD Plan. It states that the plan administrator has full discretionary authority but does not tell us the identity of that plan administrator. The provisions of those paragraphs are internally inconsistent; they state that sick pay benefits are administered by UTC;

21

then in another paragraph the SPD states that UTC has delegated responsibility to Liberty to determine eligibility for sick pay. Either UTC or Liberty administers sick pay benefits, but not both.  29 C.F.R. §2520.102-3(f) requires that the SPD must state, "[t]he name, business address and business telephone number of the plan administrator as that term is defined by section 3(16) of the Act." This regulation additionally provides, at (t)(1) that explanatory and descriptive provisions shall not have the effect of misleading, misinforming or failing to inform participants and beneficiaries of a plan. Further, '[a]ll such information shall be written in a manner calculated to be understood by the average plan participant, taking into account factors such as the level of comprehension and education of typical participants in the plan and the complexity of the items required under this subparagraph to be included in the statement. Inaccurate, incomprehensible or misleading explanatory material will fail to meet the requirements of this section." See also 29 C.F.R. §2520.102-2(a)

Page 39 of the SPD, top of the page, states that short and long term disability benefits are administered by:

> Liberty Life Assurance Company of Boston
> United Technologies Service Center
> PO Box 5031
> Wallingford, CT. 06492

Liberty and UTC use the same address in Wallingford.  It is unclear, from this SPD, if LTD benefits are administered by Liberty, UTC, or both.  Based on the address listed above and the "override" ordered by UTC, it appears to be both.

This name and address are misleading. It should be a simple matter to insert the name and address of a plan administrator, yet that did not happen.

Liberty has been complicit in UTC's evasiveness. On April 12, 2010, counsel for Spears wrote to Liberty and requested the name and address of the plan administrator. See Record ("R.") 283, attached as ex. D. The "response" received from Liberty does not provide the name of the plan administrator – it simply encloses the misleading SPD and the Liberty policy. R. 265, ex. E. The Liberty policy contains Section 2, "Definitions," but does not define the term "plan administrator" or provide the name of the plan administrator. It does define "administrative office," as "means Liberty Life Assurance Company of Boston, 9 Riverside Road, Weston, MA. 02493." This implies that Liberty is the plan administrator. R. 1 – 40. R. 6, definitions, attached as ex. F.

Thus, it appears that UTC, by failing to accurately identify itself as the plan administrator in the SPD,  has obscured identification of itself as the plan administrator.   It did not admit that it was plan administrator until Rule 56 statements were filed. UTC has itself to blame if this Court allows the case to proceed against UTC.  UTC's lack of transparency and evasiveness in its SPD should not work to its benefit. This Court may wish to issue an injunction requiring UTC to clearly identify itself as the plan administrator on the SPD.

**C.     Spears' Claims For Equitable Relief And Claims Against UTC State A Claim Upon Which Relief Can Be Granted**

**1.     Equitable Relief Under §502(a)(3)**

Defendants conflate an argument under Rule 12(b)(6) with an argument that the facts do not support equitable  relief for Spears.  The Court's role, at this point, is to view the Complaint in the light most favorable to plaintiff and decide if sufficient facts have been pleaded. Defendants cite to *Hall v. Kodiak Ret. Income Plan*, 363 F. App'x 103,107(2d Cir. Feb. 1, 2010) for the proposition that a claim for unspecified relief, where the gravamen of the Complaint is a claim for damages, is insufficient to assert a proper equitable claim under §502(a)(3). *Hall* was decided prior to *New York State, supra*, which held that §502(a)(3) claims may properly be pleaded along with §502(a)(1)(B) claims. Here, by contrast, Spears has alleged claims under §502(a)(3) on page 2,3, para. 9, 30, 31, 32, 34, 35 and in the prayer for relief.

The issues relating to pleading a §502(a)(3) claim are intertwined with the issue discussed in Section B above, regarding whether this Court should revise its 2012 ruling. In order to respond to the claims in the Motion to Dismiss, plaintiff must repeat some of the arguments made in section B of this brief.

There have been major developments in the law since 2012 which militate in favor of this Court denying the present  Motion to Dismiss. Defendants only briefly mention the new controlling case on the 12(b)(6) issue  in fn. 11: *New York State Psychiatric Association v. United Health Group*, *supra*. In *New York State*, the Second Circuit interpreted *CIGNA Corp. v. Amara, supra,* and clarified that a §502(a)(3) claim is not automatically undermined by the presence of a §502(a)(1)(B) claim.   The Court noted that it was "important to distinguish between a cause of action and a remedy under §502(a)(3)" because "*Varity Corp.*

did not eliminate a private cause of action for breach of fiduciary duty dismissed an (a)(3) claim on the ground that adequate relief was available under (a)(1)(B).

The Second Circuit reversed on the ground that the dismissal was premature. It was not clear at the motion to dismiss stage that monetary benefits under (a)(1)(B) alone would provide a sufficient remedy. The Second Circuit stated that an injunction coupled with a "monetary compensation" to prevent the fiduciary's unjust enrichment constitutes equitable relief under §502(a)(3). The Court held that even though the (a)(1)(B) and (a)(3) claims were based on the same allegations of wrongful denial of benefits, the plaintiff was not necessarily limited to an (a)(1)(B) cause of action. It stressed that a plaintiff was only barred from obtaining a duplicative remedy under ERISA. Therefore, it concluded that the district court must evaluate a plaintiff's ERISA claims under both sections before deciding whether recovery of benefits under (a)(1)(B) fully compensates the plan participant for his injury, thereby rendering any other remedy duplicative, or whether an additional equitable remedy is appropriate to make the plan participant whole. Since the case was only at the motion to dismiss stage, the Court could not sufficiently determine whether recovery of benefits under (a)(1)(B) would provide adequate relief. The Second Circuit then reversed the dismissal.

Based on the holding of *New York State Psychiatric Association,* the present Complaint states a claim for which relief may be granted. In *Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co.* 14 Civ. 2495 (ER) (S.D.N.Y. Aug. 15. 2016), the district court rejected an argument that the equitable

relief sought by plaintiff under ERISA §503 was duplicative of a claim for benefits under §502(a)(1)(B). As the Court stated in *Mbody*: "…it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under §502(a)(1)(B) alone will provide [Plaintiffs] a sufficient remedy."   The *Mbody* Court denied defendant's Motion to Dismiss, since the Amended Complaint plausibly alleged violations of ERISA §503. Equitable remedies can include disgorgement of the fiduciary's profits for delayed payment of benefits. *Dunnigan v. Metropolitan Life Ins. Co.,* 277 F.3d 223, 230-32 (2d Cir. 2002); *Dobson v. Hartford Fin. Servs., supra.*

This Court's 2012 dismissal decision was issued shortly after *Amara*, and prior to appeal courts' interpretations of *Amara's* holding. Circumstances have changed, and several courts, including the Second Circuit, have weighed in on the issue of whether an §(a)(1)(B) claim  and a claim for equitable relief may be joined in the same civil action.  A claim for disability benefits, moreover, is an important human value under *Whole Women's Health, supra*, so that even a slight change of circumstances affords a sufficient basis for concluding that a second action for equitable relief may be brought.

Other courts are in accord with *New York State*.  *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 727 (8th Cir. 2014) held, in light of *Amara*, that a claim for equitable relief on a theory of surcharge may be alleged along with an §(a)(1)(B) claim. Because Silva pleaded facts that, if proven to be true, could show an ERISA violation and resulting harm, and because that breach has a remedy under the equitable theory of surcharge, the Eighth Circuit reversed the district court's determination that a claim under §1132(a)(3) would be futile. Additionally, the

Court held that to dismiss an §(a)(3) claim as duplicative at the pleading stage would require the plaintiff to elect a legal theory and would, therefore, violate the Federal Rules of Civil Procedure which allow alternative theories; *Moyle v. Liberty Mut. Ret. Benefit Plan, supra* (Federal Rules of Civil Procedure require that a pleading which contains a demand for relief may include relief in the alternative or different types of relief, Fed. R. Civ. P. 8(a)(3), moreover, allowing plaintiffs to seek relief under both §(a)(1)(B) and §(a)(3), is consistent with ERISA's intended purpose of protecting participants' and beneficiaries' interests).

In *McGlasson v. Long Term Disability Coverage*, 2:15-cv-01512 JWS(D. Ariz. Feb. 11, 2016), defendant sought dismissal of §(a)(3) claims arguing that plaintiff was not seeking appropriate equitable relief, but was improperly repackaging his benefits denial claim. The Court denied dismissal, finding the Second Circuit's decision in *New York State, supra*, to be persuasive; *Health Net v. Am Int'l Specialty Lines Ins. Co.*, B262716 (Cal. Ct. App. Oct. 6, 2016)(extracontractual monetary damages are recoverable under (a)(3). Citing *New York State*, the California Court held that *Amara* permits a plaintiff to pursue a claim for plan benefits under §(a)(1)(B) while simultaneously pursuing a breach of fiduciary duty claim for equitable monetary relief under (a)(3) as an alternative remedy in the event the claim for plan benefits fails.)

*Stevens v. Santander Holdings*, 799 F.3d 290 (3d Cir. 2015), was an ERISA case where Liberty Life was a defendant. In *Stevens*, the Third Circuit considered the question of whether the district court's remand order was a final decision: appealable pursuant to 28 U.S.C. §1291 or was otherwise appealable. *Stevens*

followed the *Mead* reasoning and found that the remand order was not appealable. The Court noted that the district court did not intend to enter a final judgment under Rule 54 as it did not make the findings required by that rule to enter a final judgment.

Equitable remedies in the present case could include injunction, reformation, monetary surcharge, equitable estoppel or disgorgement of profits to avoid unjust enrichment. *Cf. Rochow v. Life Ins. Co. of North America,* 780 F.3d 364, 375 (6th Cir. 2015)(disgorgement of profits not allowed under those facts). Equitable relief can take the form of monetary compensation, referred to as a surcharge. In *CIGNA Corp. v. Amara, supra*, the Court explained that, "[t]he surcharge remedy was extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary" and could be imposed to compensate a plaintiff "for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." Here, for example, this Court may hold that an award of simple prejudgment interest to Spears is not adequate to prevent Liberty's unjust enrichment, or the Court may wish to award the Connecticut statutory rate of 10%. In *Fairbaugh v. Life Ins. Co. of North America,* 872 F.Supp. 2d 174 (D.Conn. 2012), the Court granted 10% prejudgment interest, compounded annually, to compensate plaintiff for her loss resulting from defendant's contempt in not paying a judgment in an ERISA long term disability case. This Court may wish to order a surcharge remedy. A remand in an ERISA disability case is also considered to be equitable in nature. *Smith v. Champion Int'l Corp.*, 220 F. Supp. 2d 124, 129 (D. Conn. 2002), "Indeed, the usual remedy for

28

a violation of § 1133 would be equitable in nature, such as remanding plaintiffs' claims for benefits...for a 'full and fair' review." *Mbody, supra, Krauss v. Oxford Health Plans, Inc*., 517 F.3d 614 (2d Cir. 2008).

In *Dobson v. Hartford Fin. Serv.,* 389 F.3d 386 (2d Cir. 2004), the Second Circuit considered a claim for interest on delayed LTD benefit payments made by Hartford. Plaintiff alleged two alternative theories: (A) that interest was a benefit implicitly provided by his plan, and was therefore recoverable in a civil action brought under ERISA  §502(a)(1)(B) and (B) that ERISA §502(a)(3) provides a right to equitable disgorgement of profits Hartford earned by wrongfully delaying his benefit payments. The district court denied Hartford's motion for summary judgment on the §502(a)(3) claim, holding that if Hartford's withholding of Dobson's benefits was unreasonable, and constitutes a breach of fiduciary duty, Hartford would have to disgorge any profits it had earned on investment of the withheld benefits. The question of entitlement to interest was remanded to the district court.  On remand, Judge Arterton entered judgment for plaintiff on his individual §502(a)(3) claim, determining "that [Hartford] breached its fiduciary duty to the Plaintiff in violation of ERISA 404, 29 U.S.C. §1104, and…that Plaintiff is entitled to equitable relief in the form of equitable disgorgement pursuant to ERISA 502 (a)(3), 29 U.S.C. 1132(a)(3)."   The Court awarded plaintiff interest constituting the equitable disgorgement of profits earned by Hartford on plaintiff's long term disability benefits from the period the benefits were withheld. *Dobson   v.   Hartford   Life   &   Accident   Ins.Co*.   518   F.   Supp.2d   365 (D.Conn.2007)(JBA). The interest awarded for equitable disgorgement of profits

was in addition to a separate award for prejudgment interest and attorney fees and costs.

Consistent with *Dobson*, after dispositive motions are filed, this Court may wish to order equitable relief consisting of disgorgement of profits against defendants. As the Amended Complaint pleads a claim for disgorgement of profits, the Rule 12(b)(6) motion must be denied.

Again, it is too early, at this stage of the litigation, for this Court to make a determination that there can be no possible equitable remedy for Spears. Liberty's arguments belong in a Motion for Summary Judgment, not a Motion to Dismiss. Liberty's post remand behavior shows that it has disregarded ERISA's time limits and this Court's remand order. This civil action was filed when Liberty missed the time limit for deciding the new administrative claim. It was not until after this suit was filed and served that Liberty decided (and denied) the claim. Spears filed an administrative appeal which was denied on May 4, 2017. Again, Liberty missed the regulatory time limit for deciding the administrative appeal. This Court may want the option of considering an equitable remedy for Spears based on Liberty's actions of not deciding the claim until suit was brought. If the Court holds that plan benefits should only be paid by Liberty, it may want the option of issuing a declaratory ruling or disgorgement of profits as to UTC.  A declaratory ruling could include a finding that UTC was a fiduciary or misled plan participants as to the identity of the plan administrator. This option for the Court should not be foreclosed at this time. This Court should wait for a more fully

developed record before deciding whether equitable relief would be duplicative of the relief allowed by §(a)(1)(B).

Spears has alleged sufficient facts to support a claim based on an §(a)(3) remedy.  This Court does not decide the substantive merits of a claim on a Motion to Dismiss. The Motion to Dismiss must be denied.

### 2. UTC Has Potential Liability For The Actions Of Liberty

Plaintiff's Second Amended Complaint requests, inter alia, a declaratory judgment that defendants breached their fiduciary duty as to Spears and seeks any such other relief as the Court deems just, reasonable or equitable. ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), states: "A civil action may be brought...by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"  Where a plan fails to provide a full and fair review, a claimant "shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."  29 C.F.R. §2560.503-1.

The Second Amended Complaint alleges that UTC  influenced Liberty's decisions regarding administering the LTD claim. As this Court noted in *Spears I,* UTC overrode Liberty's denial of short term disability benefits. Mem. Dec. p. 29. UTC, as plan administrator, made decisions which affected the amount of benefits paid to Spears. UTC requested that Liberty reopen Spears' LTD claim,

make an LTD determination, and notify UTC of its decision. Liberty did as instructed. December 2016 Complaint, ¶23.

The United States Department of Labor has issued guidance to plan administrators who use third party service providers such as insurance companies to administer a plan's day to day operations. The guidance, ex. C, attached, p. 4, emphasizes that "all fiduciaries have potential liability for the actions of their co-fiduciaries." Furthermore, hiring a service provider in and of itself is a fiduciary function. The Department of Labor also states that, for a service contract or arrangement to be reasonable, service providers must provide certain information about the services they will provide and all of the compensation they will receive. Ex. C, p. 5. An employer should establish and follow a formal review process at reasonable intervals. Ex. C, p. 6.

ERISA regulation, 29 C.F.R. §2509.75-8 sets forth obligations of plan fiduciaries. It answers the question, "[d]oes a person automatically become a fiduciary with respect to a plan by reason of holding certain positions in the administration of such plan?" Question D-3. The Department of Labor answered this question: "A: Some offices or positions of an employee benefit plan by their very nature require persons who hold them to perform one or more of the functions described in section 3(21)(A) of the Act.  For example, a plan administrator or a trustee of a plan must be [sic] the very nature of his position have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of section 3(21)(A)(iii) of the Act.

Persons who hold such positions will therefore be fiduciaries." Here, UTC is a fiduciary of its own plan.

ERISA regulation 29 C.F.R. §2509.75-8, question 17, asks, "what are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these appointments?" The response  provides that, at reasonable intervals, the performance of fiduciaries (such as Liberty) should be reviewed by the appointing fiduciary (such as UTC).  The ERISA statute, 29 U.S.C. §1105,  provides that a plan fiduciary can be liable for a breach of fiduciary responsibility of another fiduciary in some circumstances. For example, a fiduciary can be liable if he has knowledge of a breach by another fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. §1105 (a)(3) and §1105(c)(2)(A).  This provides for the possibility of liability when a fiduciary merely has knowledge of the facts and circumstances of another's fiduciary breach, even if that breach involves an aspect of the plan over which the fiduciary has no fiduciary responsibility. Once a plan fiduciary has knowledge of another fiduciary's breach, the only way the fiduciary can avoid liability is to undertake "reasonable effort" to remedy the breach. The co-fiduciary rules impose this duty regardless of whether the fiduciary has fiduciary status with respect to the subject matter of the breach. UTC undertook to remedy Liberty's breach when it directed Liberty to pay the remaining balance of Spears' short term disability benefits. This case raises the question of whether UTC undertook such reasonable efforts when it failed to remedy Liberty's breach of fiduciary responsibility when it denied Spears' LTD benefits claiming that she did

not meet the elimination period. Again, that issue belongs in a Motion for Summary Judgment, not in a 12(b)(6) Motion to Dismiss.

Defendants cite to *Mertens v. Hewitt Associates*, 508 U.S. 248 (1993), for the proposition that UTC cannot be found to be a fiduciary under ERISA. *Mertens* held that ERISA does not authorize suits for money damages against nonfiduciaries who knowingly participate in a fiduciary's breach of fiduciary duty. The district court held that respondent was not a fiduciary, and petitioners did not contest that holding. That case is not on point; here UTC is the plan administrator and therefore is a fiduciary. The *Mertens* Court also notes that ERISA does explicitly impose knowing participation liability on cofiduciaries. It is noteworthy that UTC is not a typical insured, it is a large corporation which has, or can have, greater influence on its insurance contractors than does a small business. This power is shown in this case by its influence over Liberty when it directed Liberty to pay the balance of Spears' short term disability benefits. This shows that UTC retained the authority to instruct Liberty as to whether or not to pay Spears.

Although UTC characterizes its actions in directing that Spears be paid until March 27, 2009, as a "good deed," def. br. at. 3, a plan administrator cannot pay out Plan benefits as a "good deed." Benefits can only be paid based on the Plan's terms. 29 U.S.C. §1104(a)(1).  In spite of this decision by the plan administrator that Spears was disabled throughout the elimination period, Liberty continues to deny benefits to Spears for the time she was disabled on the ground that she was not disabled throughout the elimination period. UTC decided that Spears was disabled at least until March 27, 2009. In *Lopresti v. Terwilliger*, 126 F.3d 34 (2d

34

Cir. 1997), the Second Circuit found that an employer, who "had a role in determining which bills to pay" was an ERISA fiduciary, even though he did not administer the subject Funds. Thus, he could be personally liable for breach of fiduciary duty.

Defendants cite to 29 U.S.C. §1105(c) and claim that UTC is exempted from fiduciary liability unless it participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach, or it has knowledge of a breach by such other fiduciary. Defendants argue, def. br. p. 38, that Spears does not allege that UTC had knowledge of Liberty's failure to make a timely decision on remand. UTC, however, is represented by the same counsel as Liberty. The knowledge of counsel can be attributed to UTC. *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. Partnership*, 507 U.S. 380, 396 (1993).

Significantly, UTC does not claim that it did not have knowledge of Liberty's actions. Here, based on the ERISA statute, UTC has potential liability for the acts of Liberty. This supports a potential liability UTC may have to Spears, independent of her claim for plan benefits against Liberty. It cannot be said, moreover, that UTC had no influence on Liberty's decision regarding payment of benefits. As this Court noted in *Spears I,* UTC overrode Liberty's denial of short term disability benefits. Mem. Dec. p. 29. UTC, as plan administrator, made decisions which affected whether or not benefits were paid to Spears.  29 U.S.C. §1105(c) does not protect a plan administrator who has knowledge of a breach by another fiduciary, unless he makes reasonable efforts under the circumstances to

remedy the breach. Section 1105(c) also does not protect a Plan Administrator who violates §1104(a)(1). Section 1104(a)(1) provides that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries. If UTC's claim that payment to Spears for the elimination period was a "good deed" then UTC has admitted a violation of §1104(a)(1) by paying benefits outside of plan terms and it has lost the protection of §1105(c). The administrative record, when considered by this Court, will shed light on whether UTC made reasonable efforts under the circumstances to remedy the breach. That is an issue for a Motion for Summary Judgment, not a Motion to Dismiss.

*New York State Psychiatric Ass'n, supra*, raises questions about whether a claims administrator such as Liberty should be the only proper defendant.  In *New York State*, the Second Circuit held that a claims administrator who exercises total control over claims for benefits is an appropriate defendant in an §(a)(1)(B) action for benefits. The Court did not decide whether an administrator who exercises less than total control over the benefits denial was an appropriate defendant under (a)(1)(B). *New York State*, fn. 5. In addressing the issue of the proper defendants in an (a)(3) claim, the Court held that "§502(a)(3) admits of no limit...on the universe of possible defendants," *id*, quoting from *Harris Tr. & Sav. Bank,* 530 U.S. 238, 246 (2000).    *Harris* held that "defendant status under §502(a)(3) may arise from duties imposed by §502(a)(3) itself, and hence does not turn on whether the defendant is expressly subject to a duty under one of

ERISA's substantive provisions." Here, because of the override exercised by UTC, it is clear that Liberty did not exercise total control over claims for benefits.

If UTC believes that Liberty is the party primarily at fault, it has a remedy against Liberty based on contribution and indemnity. *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240-41(2d Cir. 2002); *Sunderlin v. First Reliance Standard Life Ins. Co.*, *supra*, 236-38.

Defendants cite to *Flanigan v. General Electric Co.*, 242 F.3d 78 (2d Cir. 2001), *cert. den.*, 534 U.S. 1065 (2001), def. br. at 33. In *Flanigan*, Lockheed acquired GE's aerospace division and agreed to hire GE's employees and give them benefits that were substantially similar to their GE benefits. Employees of GE brought the action to stop the pension asset transfer.  The Court considered whether Lockheed was a fiduciary of a GE plan at the time certain communications occurred. It was not, because the plaintiffs who challenged the communications were never Lockheed's employees. They were simply potential employees.  Lockheed had no authority or responsibility over the plan. This case is distinguishable from the present case where UTC was the Plan Administrator and had authority over the plan.

Written discovery has taken place in this case. Discovery responses may be added as exhibits to summary judgment motions when those motions are filed. It is premature, at the motion to dismiss stage, for this Court to determine if UTC properly delegated all responsibility to Liberty to fulfill its obligations. Plaintiff has attached exhibits to this memorandum in order to respond to defendants' argument. By doing so, plaintiff does not intend that the pending motion should

be converted to a Rule 56 motion. Summary judgment is a more appropriate procedure to fully explore UTC's liability, as the Court will have the benefit of Rule 56(a) statements. The Second Amended Complaint requests a declaration that UTC is liable for the actions of its co-fiduciary, Liberty, under 29 U.S.C. §1105. The Ninth Circuit has found liability against a party, in an ERISA context, based on the Federal common law of agency. *Salyers v. Metropolitan Life Ins. Co.,* No. 15-56371 (9th Cir. 2017). The claim against UTC should be adjudicated on the merits by this Court, after dispositive motions are filed.

If the Court takes the allegations of the Complaint as true and draws reasonable inferences in favor of the plaintiff, then the Motion to Dismiss must be denied.

### III. CONCLUSION

The 2012 ruling on the Motion To Dismiss was interlocutory in nature. The ruling can be modified by this Court if there has been an intervening change in the law or additional facts are revealed. There have been significant changes in ERISA law since 2012.  It is, moreover, premature for this Court to decide whether Spears can claim an equitable remedy in addition to a claim under (a)(1)(B). It is also premature for this Court to decide whether UTC has liability under §503(a)(3). The claim has been sufficiently pleaded. Rule 56(a) statements will shed light on UTC's actions and involvement in Spears' claim.

Materials outside the pleadings should not be considered, as the Second Amended Complaint does not attach exhibits and does not incorporate any documents by reference. There are no documents which are integral to the

Second Amended Complaint. In the alternative, if this Court decides that materials outside the pleadings should be considered, then this motion should be converted to a Motion For Summary Judgment, and plaintiff should be given advance notice of this conversion, with an opportunity to submit a Rule 56(a) statement, other exhibits, and to cite to the entire administrative record.

Defendants, in pressing their claim that the law of the case should control, prefer that the ERISA law of 2012 should apply, rather than the law as it is in 2017. This is a self-created hardship. Defendants' delays did not work to their benefit, as the law has evolved. This civil action was brought when Liberty did not make a timely decision on remand. Liberty could easily have made a timely decision and avoided this lawsuit.

Liberty denied Spears the right to a full and fair review, as held by this Court in *Spears I.* Liberty's actions were arbitrary and capricious. If Liberty had simply complied with all ERISA requirements, this civil action, and *Spears I*, would not have been necessary.

The Motion To Dismiss should be denied, or at the least, deferred until this Court considers Motions for Summary Judgment when it will have the benefit of Rule 56(a) statements, and will have determined whether it will review the facts under a deferential or de novo standard.

**The Plaintiff**

**By**

**_/s/Winona W. Zimberlin_**
**Winona W. Zimberlin**
**Zimberlin Law, LLC**
**267 Main St.**
**Manchester, CT. 06042**
**Ct 05501**
**(860) 783-5999**

## CERTIFICATE OF SERVICE

     **I hereby certify that on October 30, 2017, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated o the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.**

**/s/      Winona W. Zimberlin**
**Winona W. Zimberlin**