# Meeting Your Fiduciary Responsibilities



To view this and other EBSA publications, visit the agency's Web site at:
**www.dol.gov/ebsa.**
To order publications, contact us electronically at:
**www.askebsa.dol.gov.**
Or call toll free: **1- 866-444-3272**

For assistance from a benefits advisor, visit EBSA's Web site at **www.dol.gov/ebsa** and click on "Request Assistance."
Or call toll-free: **1-866-444-3272.**

This material will be made available in alternative format to persons with disabilities upon request:
Voice phone: (202) 693-8664
TTY:             (202) 501-3911

This booklet constitutes a small entity compliance guide
for purposes of the Small Business Regulatory Enforcement Fairness Act of 1996.

Case 3:11-cv-01807-VLB   Document 119-4   Filed 10/30/17   Page 3 of 20
Case 3:16-cv-00572-VLB   Document 34-4   Filed 12/16/16   Page 3 of 20

# Meeting Your Fiduciary Responsibilities

February 2012



U.S. Department of Labor
Employee Benefits Security Administration

# Meeting Your Fiduciary Responsibilities

Offering a retirement plan can be one of the most challenging, yet rewarding, decisions an employer can make. The employees participating in the plan, their beneficiaries, and the employer benefit when a retirement plan is in place. Administering a plan and managing its assets, however, require certain actions and involve specific responsibilities.

To meet their responsibilities as plan sponsors, employers need to understand some basic rules, specifically the Employee Retirement Income Security Act (ERISA). ERISA sets standards of conduct for those who manage an employee benefit plan and its assets (called fiduciaries). *Meeting Your Fiduciary Responsibilities* provides an overview of the basic fiduciary responsibilities applicable to retirement plans under the law.

This booklet addresses the scope of ERISA's protections for private-sector retirement plans (public-sector plans and plans sponsored by churches are not covered by ERISA). It provides a simplified explanation of the law and regulations. It is not a legal interpretation of ERISA, nor is it intended to be a substitute for the advice of a retirement plan professional. Also, the booklet does not cover those provisions of the Federal tax law related to retirement plans.

## What are the essential elements of a plan?

Each plan has certain key elements. These include:

- A written plan that describes the benefit structure and guides day-to-day operations;
- A trust fund to hold the plan's assets[1];
- A recordkeeping system to track the flow of monies going to and from the retirement plan; and
- Documents to provide plan information to employees participating in the plan and to the government.

Employers often hire outside professionals (sometimes called third-party service providers) or, if applicable, use an internal administrative committee or human resources department to manage some or all of a plan's day-to-day operations. Indeed, there may be one or a number of officials with discretion over the plan. These are the plan's fiduciaries.

## Who is a fiduciary?

Many of the actions involved in operating a plan make the person or entity performing them a fiduciary. Using discretion in administering and managing a plan or controlling the plan's assets makes that person a fiduciary to the extent of that discretion or control. Thus, fiduciary status is based on the *functions performed for the plan,* not just a person's title.

A plan must have at least one fiduciary (a person or entity) named in the written plan, or through a process described in the plan, as having control over the plan's operation.

---

[1] If a plan is set up through an insurance contract, the contract does not need to be held in trust.

1

The named fiduciary can be identified by office or by name. For some plans, it may be an administrative committee or a company's board of directors.

A plan's fiduciaries will ordinarily include the trustee, investment advisers, all individuals exercising discretion in the administration of the plan, all members of a plan's administrative committee (if it has such a committee), and those who select committee officials. Attorneys, accountants, and actuaries generally are not fiduciaries when acting solely in their professional capacities. The key to determining whether an individual or an entity is a fiduciary is whether they are exercising discretion or control over the plan.

A number of decisions are not fiduciary actions but rather are business decisions made by the employer. For example, the decisions to establish a plan, to determine the benefit package, to include certain features in a plan, to amend a plan, and to terminate a plan are business decisions not governed by ERISA. When making these decisions, an employer is acting on behalf of its business, not the plan, and, therefore, is not a fiduciary. However, when an employer (or someone hired by the employer) takes steps to implement these decisions, that person is acting on behalf of the plan and, in carrying out these actions, may be a fiduciary.

## What is the significance of being a fiduciary?

Fiduciaries have important responsibilities and are subject to standards of conduct because they act on behalf of participants in a retirement plan and their beneficiaries. These responsibilities include:

- Acting solely in the interest of plan participants and their beneficiaries and with the exclusive purpose of providing benefits to them;
- Carrying out their duties prudently;
- Following the plan documents (unless inconsistent with ERISA);
- Diversifying plan investments; and
- Paying only reasonable plan expenses.

The duty to act prudently is one of a fiduciary's central responsibilities under ERISA. It requires expertise in a variety of areas, such as investments. Lacking that expertise, a fiduciary will want to hire someone with that professional knowledge to carry out the investment and other functions. Prudence focuses on the *process* for making fiduciary decisions. Therefore, it is wise to document decisions and the basis for those decisions. For instance, in hiring any plan service provider, a fiduciary may want to survey a number of potential providers, asking for the same information and providing the same requirements. By doing so, a fiduciary can document the process and make a meaningful comparison and selection.

Following the terms of the plan document is also an important responsibility. The document serves as the foundation for plan operations. Employers will want to be familiar with their plan document, especially when it is drawn up by a third-party service provider, and periodically review the document to make sure it remains current. For example, if a plan official named in the document changes, the plan document must be updated to reflect that change.

Diversification – another key fiduciary duty – helps to minimize the risk of large investment losses to the plan. Fiduciaries should consider each plan investment as part of the plan's entire portfolio. Once again, fiduciaries will want to document their evaluation and investment decisions.

## LIMITING LIABILITY

With these fiduciary responsibilities, there is also potential liability. Fiduciaries who do not follow the basic standards of conduct may be personally liable to restore any losses to the plan, or to restore any profits made through improper use of the plan's assets resulting from their actions.

However, fiduciaries can limit their liability in certain situations. One way fiduciaries can demonstrate that they have carried out their responsibilities properly is by documenting the processes used to carry out their fiduciary responsibilities.

There are other ways to reduce possible liability. Some plans, such as most 401(k) and profit sharing plans, can be set up to give the participants control over the investments in their accounts and limit a fiduciary's liability for the investment decisions made by the participants. For participants to have control, they must be given the opportunity to choose from a broad range of investment alternatives. Under Labor Department regulations, there must be at least three different investment options so that employees can diversify investments within an investment category, such as through a mutual fund, and diversify among the investment alternatives offered. In addition, participants must be given sufficient information to make informed decisions about the options offered under the plan. Participants also must be allowed to give investment instructions at least once a quarter, and perhaps more often if the investment option is volatile.

Plans that automatically enroll employees can be set up to limit a fiduciary's liability for any plan losses that are a result of automatically investing participant contributions in certain default investments. There are four types of investment alternatives for default investments as described in Labor Department regulations and an initial notice and annual notice must be provided to participants. Also, participants must have the opportunity to direct their investments to a broad range of other options, and be provided materials on these options to help them do so. (See **Resources** for further information.)

However, while a fiduciary may have relief from liability for the specific investment allocations made by participants or automatic investments, the fiduciary retains the responsibility for selecting and monitoring the investment alternatives that are made available under the plan.

A fiduciary can also hire a service provider or providers to handle fiduciary functions, setting up the agreement so that the person or entity then assumes liability for those functions selected. If an employer appoints an investment manager that is a bank, insurance company, or registered investment adviser, the employer is responsible for the selection of the manager, but is not liable for the individual investment decisions of that manager. However, an employer is required to monitor the manager periodically to assure that it is handling the plan's investments prudently and in accordance with the appointment.

### Other Plan Fiduciaries

A fiduciary should be aware of others who serve as fiduciaries to the same plan, because all fiduciaries have potential liability for the actions of their co-fiduciaries. For example, if a fiduciary knowingly participates in another fiduciary's breach of responsibility, conceals the breach, or does not act to correct it, that fiduciary is liable as well.

### Bonding

As an additional protection for plans, those who handle plan funds or other plan property generally must be covered by a fidelity bond. A fidelity bond is a type of insurance that protects the plan against loss resulting from fraudulent or dishonest acts of those covered by the bond.

## How do these responsibilities affect the operation of the plan?

Even if employers hire third-party service providers or use internal administrative committees to manage the plan, there are still certain functions that can make an employer a fiduciary.

### Employee Contributions

If a plan provides for salary reductions from employees' paychecks for contribution to the plan (such as in a 401(k) plan), then the employer must deposit the contributions in a timely manner. The law requires that participant contributions be deposited in the plan as soon as it is reasonably possible to segregate them from the company's assets, but no later than the 15th business day of the month following the payday. If employers can reasonably make the deposits sooner, they need to do so.

For plans with fewer than 100 participants, salary reduction contributions deposited with the plan no later than the 7th business day following withholding by the employer will be considered contributed in compliance with the law.

For all contributions, employee and employer (if any), the plan must designate a fiduciary, typically the trustee, to make sure that contributions due to the plan are collected. If the plan and other documents are silent or ambiguous, the trustee generally has this responsibility.

## Hiring a Service Provider

Hiring a service provider in and of itself is a fiduciary function. When considering prospective service providers, provide each of them with complete and identical information about the plan and what services you are looking for so that you can make a meaningful comparison.

For a service contract or arrangement to be reasonable, service providers must provide certain information to you about the services they will provide to your plan and all of the compensation they will receive. This information will assist you in understanding the services, assessing the reasonableness of the compensation (direct and indirect), and determining any conflicts of interest that may impact the service provider's performance.

Some additional items a fiduciary needs to consider when selecting a service provider include:

- Information about the firm itself: financial condition and experience with retirement plans of similar size and complexity;
- Information about the quality of the firm's services: the identity, experience, and qualifications of professionals who will be handling the plan's account; any recent litigation or enforcement action that has been taken against the firm; and the firm's experience or performance record;
- A description of business practices: how plan assets will be invested if the firm will manage plan investments or how participant investment directions will be handled; and whether the firm has fiduciary liability insurance.

An employer should document its selection (and monitoring) process, and, when using an internal administrative committee, educate committee members on their roles and responsibilities.

## Fees

Fees are just one of several factors fiduciaries need to consider in deciding on service providers and plan investments. When the fees for services are paid out of plan assets, fiduciaries will want to understand the fees and expenses charged and the services provided. While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example, mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other

services. There also may be sales and other related charges for investments offered by a service provider. The information provided by service providers noted above should include a description of all compensation related to the services to be provided that the service providers expect to receive directly from the plan as well as the compensation they expect to receive from other sources.

Who pays the fees? Plan expenses may be paid by the employer, the plan, or both. In addition, for expenses paid by the plan, they may be allocated to participants' accounts in a variety of ways. (See **Resources** for further information.) In any case, the plan document should specify how fees are paid.

## Monitoring a Service Provider

An employer should establish and follow a formal review process at reasonable intervals to decide if it wants to continue using the current service providers or look for replacements. When monitoring service providers, actions to ensure they are performing the agreed-upon services include:

- Evaluating any notices received from the service provider about possible changes to their compensation and the other information they provided when hired (or when the contract or arrangement was renewed);
- Reviewing the service providers' performance;
- Reading any reports they provide;
- Checking actual fees charged;
- Asking about policies and practices (such as trading, investment turnover, and proxy voting); and
- Following up on participant complaints.

## Providing Information in Participant-Directed Plans

When plans allow participants to direct their investments, fiduciaries need to take steps to regularly make participants aware of their rights and responsibilities under the plan related to directing their investments. This includes providing plan and investment-related information, including information about fees and expenses, that participants need to make informed decisions about the management of their individual accounts. Participants must receive the information before they can first direct their investment in the plan and annually thereafter. The investment-related information needs to be presented in a format, such as a chart, that allows for a comparison among the plan's investment options. A model chart is available on www.dol.gov/ebsa. If you use information provided by a service provider that you rely on reasonably and in good faith, you will be protected from liability for the completeness and accuracy of the information.

## Investment Advice and Education

More and more employers are offering participants help so they can make informed investment decisions. Employers may decide to hire an investment adviser offering specific investment advice to participants. These advisers are fiduciaries and have a responsibility to the plan participants. On the other hand, an employer may hire a service provider to provide general financial and investment education, interactive investment materials, and information based on asset allocation models. As long as the material is general in nature, providers of investment education are not fiduciaries. However, the decision to select an investment adviser or a provider offering investment education is a fiduciary action and must be carried out in the same manner as hiring any plan service provider.

## Are there some transactions that are prohibited? Is there a way to make them permissible if the actions will benefit the plan?

Certain transactions are prohibited under the law to prevent dealings with parties who may be in a position to exercise improper influence over the plan. In addition, fiduciaries are prohibited from engaging in self-dealing and must avoid conflicts of interest that could harm the plan.

## Prohibited Transactions

Who is prohibited from doing business with the plan? Prohibited parties (called parties in interest) include the employer, the union, plan fiduciaries, service providers, and statutorily defined owners, officers, and relatives of parties in interest.

Some of the prohibited transactions are:

- A sale, exchange, or lease between the plan and party in interest;
- Lending money or other extension of credit between the plan and party in interest; and
- Furnishing goods, services, or facilities between the plan and party in interest.

Other prohibitions relate solely to fiduciaries who use the plan's assets in their own interest or who act on both sides of a transaction involving a plan. Fiduciaries cannot receive money or any other consideration for their personal account from any party doing business with the plan related to that business.

## Exemptions

There are a number of exceptions (exemptions) in the law that provide protections for the plan in conducting necessary transactions that would otherwise be prohibited. The Labor Department may grant additional exemptions.

Exemptions are provided in the law for many dealings with banks, insurance companies, and other financial institutions that are essential to the ongoing operations of the plan. One exemption in the law allows the plan to hire a service provider as long as the services are necessary to operate the plan and the contract or arrangement under which the services are provided and the compensation paid for those services is reasonable.

One exemption allows the provision of investment advice to participants who direct the investments in their accounts. This applies to the buying, selling, or holding of an investment related to the advice as well as to the receipt of related fees and other compensation by a fiduciary adviser.

Another important exemption in the law – and a popular feature of most plans – permits plans to offer loans to participants. The loans, which are considered investments of the plan, must be available to all participants on a reasonably equivalent basis, must be made according to the provisions in the plan, and must charge a reasonable rate of interest and be adequately secured.

The exemptions issued by the Department can involve transactions available to a class of plans or to one specific plan. Both class and individual exemptions are available at www.dol.gov/ebsa (click on "Compliance Assistance"). For more information on applying for an exemption, see the procedures on the exemption Web pages at www.dol.gov.ebsa.

## Additional Considerations for Plans Investing in Employer Stock

Plans that invest in employer stock need to consider specific rules relating to this investment. Traditional defined benefit pension plans have limits on the amount of stock and debt obligations that a plan can hold and the amount of the plan's assets that can be invested in employer securities. For 401(k) plans, profit sharing plans, and employee stock ownership plans, there is no limit on how much in employer securities the plans can hold if the plan documents so provide.

If an employer decides to make employer stock an investment option under the plan, proper monitoring will include ensuring that those responsible for making investment decisions, whether an investment manager or participants, have critical information about the company's financial condition so that they can make informed decisions about the stock. Participants in individual account plans must be provided an opportunity to divest their investment in publicly traded employer securities and reinvest those amounts in other diversified investment options under the plan. For employee contributions invested in employer securities, participants have the right to divest immediately. Where employer contributions are invested in employer securities, participants can divest if they have 3 years of service. This does not apply to stand-alone employee stock ownership plans where there are no employee or employer matching contributions.

A plan can buy or sell employer securities from a party in interest, such as an employer, an employee, or other related entity as described above (which would otherwise be prohibited) if it is for fair market value and no sales commission is charged. If the plan is a defined benefit plan (a traditional pension plan), the plan generally is not permitted to hold more than 10 percent of its assets in employer stock.

## How do employees get information about the plan? How are employers required to report plan activities?

ERISA requires plan administrators to furnish plan information to participants and beneficiaries and to submit reports to government agencies.

## Informing Participants and Beneficiaries

The following documents must be furnished to participants and beneficiaries.

The summary plan description (SPD) — the basic descriptive document — is a plain language explanation of the plan and must be comprehensive enough to apprise participants of their rights and responsibilities under the plan. It also informs participants about the plan features and what to expect of the plan. Among other things, the SPD must include information about:

- When and how employees become eligible to participate;
- The source of contributions and contribution levels;
- The vesting period, i.e., the length of time an employee must belong to a plan to receive benefits from it;
- How to file a claim for those benefits; and
- A participant's basic rights and responsibilities under ERISA.

This document is given to employees after they join the plan and to beneficiaries after they first receive benefits. SPDs must also be redistributed periodically and provided on request.

The summary of material modification (SMM) apprises participants and beneficiaries of changes to the plan or to the information required to be in the SPD. The SMM or an updated SPD for a retirement plan must be furnished automatically to participants within 210 days after the end of the plan year in which the change was adopted.

An individual benefit statement (IBS) provides participants with information about their account balances and vested benefits. Plans that provide for participant-directed accounts must furnish statements on a quarterly basis. Individual account plans that do not provide for participant direction must furnish statements annually. Traditional defined benefit pension plans must furnish statements every three years.

As noted above, for plans that allow participants to direct the investments in their accounts, plan and investment information, including information about fees and expenses, must be provided to participants before they can first direct investments and periodically thereafter– primarily on an annual basis with information on the fees and expenses actually paid provided at least quarterly. The initial plan related information may be distributed as part of the SPD

9

provided when a participant joins the plan as long as it is provided before the participant can first direct investments. The information provided quarterly may be included with the IBS.

If a plan automatically enrolls employees, the <u>automatic enrollment notice</u> details the plan's automatic enrollment process and participant's rights.  The notice must specify the deferral percentage, the participant's right to change that percentage or not make automatic contributions, and the plan's default investment. (See **Resources** for information on a sample notice.) The participant generally must receive an initial notice at least 30 days before he or she is eligible to participate in the plan. Employers that provide for immediate eligibility can provide this initial notice on an employee's first day of employment if they allow participants to withdraw contributions within 90 days of their first contribution.  An annual notice also must be provided to participants at least 30 days prior to the beginning of each subsequent plan year.

A <u>summary annual report (SAR)</u> outlines in narrative form the financial information in the plan's Annual Report, the Form 5500 (see below), and is furnished annually to participants. Traditional defined benefit pension plans that are required to provide an annual plan funding notice are not required to furnish an SAR.

The <u>blackout period notice</u> requires at least 30 days' (but not more than 60 days') advance notice before a 401(k) or profit sharing plan is closed to participant transactions. During blackout periods, participants (and beneficiaries) cannot direct investments, take loans, or request distributions.  Typically, blackout periods occur when plans change recordkeepers or investment options, or when plans add participants due to a corporate merger or acquisition.

### Reporting to the Government

Plan administrators generally are required to file a Form 5500 Annual Return/Report with the Federal Government. The Form 5500 reports information about the plan and its operation to the U.S. Department of Labor, the Internal Revenue Service (IRS), and the Pension Benefit Guaranty Corporation (PBGC).  These disclosures are made available to participants and the public.  Depending on the number and type of participants covered, the filing requirements vary.  The form is filed and processed electronically under the ERISA Filing Acceptance System II (EFAST2).  For more information on the forms, their instructions, and the filing requirements, see www.efast.dol.gov and request the publication *Reporting and Disclosure Guide for Employee Benefit Plans*. See the **Resources** section to obtain a copy.

There are penalties for failing to file required reports and for failing to provide required information to participants.

10

### Can a fiduciary terminate its fiduciary duties?

Yes, but there is one final fiduciary responsibility. Fiduciaries who no longer want to serve in that role cannot simply walk away from their responsibilities, even if the plan has other fiduciaries. They need to follow plan procedures and make sure that another fiduciary is carrying out the responsibilities left behind. It is critical that a plan has fiduciaries in place so that it can continue operations and participants have a way to interact with the plan.

### What help is available for employers who make mistakes in operating a plan?

The Department of Labor's Voluntary Fiduciary Correction Program (VFCP) encourages employers to comply with ERISA by voluntarily self-correcting certain violations. The program covers 19 transactions, including failure to timely remit participant contributions and some prohibited transactions with parties in interest. The program includes a description of how to apply, as well as acceptable methods for correcting violations. In addition, the Department gives applicants immediate relief from payment of excise taxes under a class exemption.

In addition, the Department's Delinquent Filer Voluntary Compliance Program (DFVCP) assists late or non-filers of the Form 5500 in coming up to date with corrected filings.

For an overview of both programs, consult www.dol.gov/ebsa.

Case 3:16-cv-00872-VLB   Document 34-4   Filed 12/30/16   Page 16 of 20

# Meeting Your Fiduciary Responsibilities

## Tips for Employers with Retirement Plans

Understanding fiduciary responsibilities is important for the security of a retirement plan and compliance with the law. The following tips may be a helpful starting point:

- Have you identified your plan fiduciaries, and are they clear about the extent of their fiduciary responsibilities?

- If participants make their own investment decisions, have you provided the plan and investment related information participants need to make informed decisions about the management of their individual accounts? Have you provided sufficient information for them to exercise control in making investment decisions?

- Are you aware of the schedule to deposit participants' contributions in the plan, and have you made sure it complies with the law?

- If you are hiring third-party service providers, have you looked at a number of providers, given each potential provider the same information, and considered whether the fees are reasonable for the services provided?

- Have you documented the hiring process?

- Are you prepared to monitor your plan's service providers?

- Have you identified parties in interest to the plan and taken steps to monitor transactions with them?

- Are you aware of the major exemptions under ERISA that permit transactions with parties in interest, especially those key for plan operations (such as hiring service providers and making plan loans to participants)?

- Have you reviewed your plan document in light of current plan operations and made necessary updates? After amending the plan, have you provided participants with an updated SPD or SMM?

- Do those individuals handling plan funds or other plan property have a fidelity bond?



**U.S. Department of Labor**
**Employee Benefits Security Administration**

13

## RESOURCES

The U.S. Department of Labor's Employee Benefits Security Administration (EBSA) offers more information on its Web site and through its publications. The following are available on EBSA's Web site at www.dol.gov/ebsa or by calling **1-866-444-3272.**

For employers:

*Reporting and Disclosure Guide for Employee Benefit Plans*
*401(k) Plans for Small Businesses*
*Understanding Retirement Plan Fees and Expenses*
*SEP Retirement Plans for Small Businesses*
*SIMPLE IRA Plans for Small Businesses*
*Automatic Enrollment 401(k) Plans for Small Businesses*
*Automatic Enrollment Sample Notice* (Web only)
*Adding Automatic Enrollment to Your 401(k) Plan*
*Profit Sharing Plans for Small Businesses*
*Retirement Plan Correction Programs*
(Also see DFVCP and VFCP fact sheets, frequently asked questions and calculators at www.dol.gov/ebsa)

For employees:

*Savings Fitness: A Guide to Your Money and Your Financial Future*
*Taking the Mystery Out of Retirement Planning*
*What You Should Know about Your Retirement Plan*
*Top 10 Ways to Prepare for Retirement*
*Women and Retirement Savings*



**U.S. Department of Labor**
**Employee Benefits Security Administration**