Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....     https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-01807-VLB Document 130-1 Filed 10/30/17 Page 1 of 41
Case 3:16-cv-00872-VLB Document 134-7 Filed 12/16/16 Page 1 of 41

COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT DIVISION THREE

- B262716 (Cal. Ct. App. Oct. 6, 2016)




# ⊞ HEALTH NET, INC. V. AM. INT'L SPECIALTY LINES INS. CO.

---

HOGUE, J.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.** (Los Angeles County Super. Ct. No. BC357436) APPEAL from a judgment and an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Affirmed in part, reversed in part. Covington & Burling, David B. Goodwin, Jeffrey M. Davidson, Michael S. Greenberg, Rani Gupta, Neha Jaganathan and Rene L. Siemens for Plaintiff and Appellant. Waxler Carner Brodsky; Kaufman Dolowich Voluck, Andrew J. Waxler and Gretchen S. Carner for Defendant and Respondent American International Specialty Lines Insurance Company. *2 Troutman Sanders, Robert M. Pozin, Jennifer Mathis and Melissa J. Perez for Defendant and Respondent Executive Risk Specialty Insurance Company. Sedgwick, Susan Koehler Sullivan and Michael R. Davisson for Defen-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....        https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 130-1   Filed 10/30/17   Page 2 of 41
Case 3:16-cv-00872-VLB   Document 134-1   Filed 12/18/16   Page 2 of 41

dant and Respondent RLI Insurance Company. P.K. Schrief-
fer, Paul K. Schrieffer, Kenneth A. Remson and James G.
Bernald for Defendant and Respondent Certain Underwrit-
ers at Lloyd's, London.

---

*3

# INTRODUCTION

This is the second appeal in this insurance coverage dispute
between Health Net, Inc. and four of its insurers (one pri-
mary and three excess carriers, collectively, the Insurers).
The operative complaint seeks a declaratory judgment that
the Insurers had a duty to defend and indemnify Health Net
in three underlying class action lawsuits. Health Net is a
managed care company that administers employer-spon-
sored health plans subject to the requirements of the Em-
ployee Retirement Income Security Act of 1974 (ERISA) (29
U.S.C. 1001 (/statute/29-usc-1001-congressional-findings-
and-declaration-of-policy) et seq.). The underlying actions
were brought against Health Net by plaintiffs representing
three separate classes of Health Net plan beneficiaries.

In the first appeal, this court held the Insurers' policies did
not cover claims by the underlying plaintiffs that sought
damages for allegedly unpaid benefits due under the terms
of their health plans. (*Health Net, Inc. v. RLI Ins. Co.* (2012)
206 Cal.App.4th 232, 252-254 (/case/health-net#p252) (*Health
Net I*).) However, we also held claims for "extracontractual
damages"—that is, damages resulting from Health Net's al-
leged non-contractual wrongful acts, as opposed to its fail-
ure to honor the terms of its health plans—could "poten-
tially" fall within the scope of coverage. (*Id.* at pp. 255-256.)
While this court did not decide whether such damages were
"actually sought" in the underlying actions or "legally recov-
erable" under ERISA, we held the possibility that the under-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....     https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-01807-VLB  Document 130-1   Filed 10/30/17   Page 3 of 41
Case 3:16-cv-00872-VLB  Document 34-1   Filed 12/16/16   Page 3 of 41

lying actions sought recoverable extracontractual damages demonstrated that the Insurers had failed to meet their summary judgment burden. (See *id.* at p. 255, fn. 28.) Accordingly, this court reversed the summary judgment and remanded with directions to the trial court to "determine whether and to what extent there is any merit to the claim of coverage for such potentially covered matters." (*Id.* at p. 263.)

On remand, the trial court granted the Insurers' renewed motion for summary judgment, concluding extracontractual damages were not legally recoverable under ERISA and, therefore, the Insurers had no duty to defend or indemnify Health Net against the claims asserted in the underlying actions. We now address the issue deferred by this court's earlier opinion, and conclude that extracontractual monetary damages are recoverable under ERISA's "other appropriate equitable relief" provision, ERISA section *4 502(a)(3) (29 U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-enforcement)). Because the underlying plaintiffs pled facts upon which they could potentially have recovered extracontractual damages, we also conclude the Insurers had a duty to defend Health Net, and reverse the summary judgment accordingly. As for the trial court's separate order sustaining the excess insurers' demurrer to Health Net's breach of contract claim, we affirm.

# FACTS AND PROCEDURAL BACKGROUND

1. *The Underlying Actions*

Health Net is a managed care company that administers employer-sponsored health plans subject to the requirements of ERISA. Under Health Net's plans, subscribers and beneficiaries can obtain medical services from health care practitioners within Health Net's preferred network and from

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 130-1   Filed 10/30/17   Page 4 of 41
Case 3:16-cv-00872-VLB   Document 134-1   Filed 12/16/16   Page 4 of 41

those outside of the network. The underlying actions primarily concerned Health Net's handling of out-of-network health care claims.

While each Health Net plan uses somewhat different language, the plans, in general, provide for reimbursement for out-of-network services at some established percentage of the usual, customary and reasonable charge (UCR) for those services. In determining the UCR for any particular medical procedure, Health Net uses one or more databases provided by a third-party vendor, Ingenix, which compiles data about provider charges for healthcare services in different locations.

The three underlying actions, for which Health Net seeks coverage in this case, were consolidated in the New Jersey federal district court and are referred to in this opinion as the *Wachtel*, *McCoy* and *Scharfman* actions. The district court certified the *Wachtel* action on behalf of a class of New Jersey small employer group health plan members from 1995 to 2004. The court certified the *McCoy* action on behalf of a nationwide class of all other Health Net employer group plan members from 1997 to 2004. And the court certified the *Scharfman* action on behalf of a nationwide class of all other Health Net employer group plan members from 2004 to 2007. *5

All three underlying actions alleged Health Net violated ERISA by (1) using the "inherently flawed" Ingenix database and outdated data to miscalculate UCR and pay lower benefit reimbursements, (2) failing to make required disclosures, (3) failing to provide full and fair reviews of adverse benefit determinations, and (4) otherwise breaching fiduciary duties. All plaintiffs asserted claims to recover plan benefits pursuant to ERISA section 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B) (/statute/29-usc-1132-civil-enforcement)) and for equitable relief pursuant to ERISA section 502(a)(3) (29 U.S.C.

§ 1132(a)(3) (/statute/29-usc-1132-civil-enforcement).) The *Scharfman* plaintiffs also asserted a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 (/statute/18-usc-1961-definitions) et seq.).

In December 2006, the New Jersey district court issued a ruling sanctioning Health Net for discovery abuses related to evidence of its use of outdated UCR data. The district court found that "[d]espite numerous specific Court Orders, Health Net never produced thousands and thousands of pages of relevant and responsive documents within the three-year-long discovery period" and that "[m]any of these documents [were] highly relevant to the knowledge of key personnel at Health Net about the company's use of the outdated data described above." (*Wachtel v. Health Net, Inc.* (D.N.J. 2006) 239 F.R.D. 81, 91 (/case/wachtel-v-health-net#p91).) As a result of the discovery abuses, the district court sanctioned Health Net by deeming certain facts established against it: "[T]his Court will deem established for the purposes of this litigation the facts found in this Opinion regarding Health Net's knowing and willful use of outdated data; Health Net and its officials' actions to hide the full scope of its conduct from [New Jersey insurance regulators]; [and] Health Net's false claims of 'recent discovery' of the 1999-July 2001 malfeasance to avoid injunctive relief . . . . These facts will be deemed admitted for all purposes, including equitable relief." (*Id.* at p. 104.)

In 2008, Health Net settled the underlying actions. (*McCoy v. Health Net, Inc.* (D.N.J. 2008) 569 F.Supp.2d 448, 452 (/case/mccoy-v-health-net#p452).) Pursuant to the settlement agreement, Health Net agreed to pay a total of $215 million in exchange for the underlying plaintiffs' release of "any and all claims." The settlement allocated the $215 million as follows: $15 million toward restitution to New Jersey policyholders, in partial satisfaction of \*6 certain consent orders

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-01872-VLB   Document 130-1   Filed 12/16/16   Page 6 of 41
Case 3:16-cv-00872-VLB   Document 130-1   Filed 10/30/17   Page 6 of 41

with New Jersey insurance regulators; $40 million to class members who submit claims for underpayment of out-of-network benefits; and an additional $160 million to resolve the remaining class claims, including approximately $69 million for the plaintiffs' attorneys' fees and costs. Health Net also agreed to cease using the Ingenix databases for the next four years, unless required or approved by state law, to change the information it provided its participants, and to create a new appeals process to enable participants to challenge the denial or underpayment of out-of-network claims.

2. *The Coverage Action and Health Net's Professional Liability Insurance Policies*

Prior to settling the underlying actions, Health Net brought the instant action seeking insurance coverage for a portion of its defense and settlement payments under its four professional liability insurance policies with the Insurers. The primary policy by American International Specialty Lines Insurance Company (AISLIC) covers the first $25 million in losses above a $500,000 retention, which Health Net has satisfied. The three excess policies by Executive Risk Specialty Insurance Company (ERSIC), RLI Insurance Company and Lloyd's of London (the Excess Insurers) all conform in terms to the primary policy and insure losses in $25 million increments up to a total of $100 million.

By their terms, the policies cover "all sums which [Health Net] shall become legally obligated to pay as Damages . . . resulting from any Claim or Claims first made against [Health Net] . . . for any Wrongful Act of [Health Net] . . . ." " 'Claim' " is defined to include "any judicial . . . proceeding initiated against [Health Net] in which [Health Net] may be subjected to a binding adjudication of liability for monetary Damages sustained by a third party as result of [Health Net's] rendering or failing to render Professional Services." A " 'Wrongful Act' " is "any actual or alleged breach of duty, . . . misleading

statement or omission . . . committed solely in the conduct of [Health Net's] Professional Services . . . ." The covered "Professional Services" include *7 "the review of health care costs including per unit prices, charges[,] fees, rates, health care supplies and services."

Additionally, the policies contain a standard provision for the Insurers to pay Health Net's defense costs, which is superseded by a "Choice of Counsel Endorsement" permitting Health Net to choose its own counsel and obtain reimbursement from the Insurers for "all reasonable and customary Defense Costs incurred by [Health Net] in excess [of its retention] in defense of any Claim or law suit . . . alleging a Wrongful Act."

Lastly, the policies include exclusions from coverage for Claims "arising out of or alleging any criminal, malicious, dishonest or fraudulent act" or "any Wrongful Act committed with the knowledge that it was a Wrongful Act." The fraudulent act exclusion stipulates that the Insurers "shall defend Claims alleging fraud, dishonesty, malicious or criminal acts . . . up until a judgment [or] finding in fact" establishing Health Net personally committed the fraud.

3. *The First Appeal*

In 2009, the Insurers moved for summary judgment, arguing the fraudulent act exclusion barred coverage for the *Wachtel* and *McCoy* actions. (*Health Net I*, *supra*, 206 Cal.App.4th at pp. 248-249 (/case/health-net#p248).) The Insurers maintained the discovery sanctions order in *Wachtel* constituted a "finding in fact" that eliminated coverage for all claims and defense costs in the two underlying actions. (*Id.* at p. 248.) The trial court agreed, holding both actions "arose out of" Health Net's dishonest use of outdated UCR data. (*Id.* at p. 249.) The court entered judgment for the Insurers; Health Net appealed.

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....          https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-01872-VLB   Document 130-7   Filed 12/16/16   Page 8 of 41
Case 3:16-cv-01872-VLB   Document 130-1   Filed 12/30/17   Page 8 of 41

This court reversed the summary judgment. (*Health Net I*, *supra*, 206 Cal.App.4th at p. 264 (/case/health-net#p264).) We held the dishonest act exclusion did not preclude coverage for the entirety of the *Wachtel* and *McCoy* actions because only a fraction of the claims arose out of the alleged use of outdated UCR data. (*Id*. at pp. 262-263.) As we explained, the claims also arose out of alleged "flaws in the Ingenix databases" and "disclosure failures relate[d] to the systematic flaws in the Ingenix databases and non-Ingenix adjustment misconduct" that did not concern the use of outdated data. (*Id*. at p. 263.) *8

As for coverage generally, this court determined the underlying claims fell "broadly within the scope of coverage." (*Health Net I*, *supra*, 206 Cal.App.4th at p. 252 (/case/health-net#p252).) Applying the definitions of "Wrongful Act" and "Professional Services" to the claims asserted in the underlying complaints, we found "the *Wachtel* and *McCoy* actions, which generally arise out of [Health Net's] adjustment of [out-of-network] claims, allege Wrongful Acts within the scope of coverage of the policy." (*Ibid*.)

We then turned to the question of whether the underlying plaintiffs' alleged *damages* were covered by the insurance policies. Though finding the claims generally alleged Wrongful Conduct within the scope of the policies, we agreed with the Insurers that "the bulk of the damages sought by the *Wachtel* and *McCoy* classes [were] unpaid benefits under [the underlying plaintiffs'] health plans, which . . . are not covered by the policy." (*Health Net I*, *supra*, 206 Cal.App.4th at p. 252 (/case/health-net#p252).) Relying on *August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.* (2007) 146 Cal.App.4th 565, 578-579 (/case/august-ent-v-pa-indemnity#p578), this court observed, " '[A]n insured's alleged or actual refusal to make a payment under a contract does not give rise to a loss caused by a wrongful act' " and " ' "courts have held that a

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....        https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 130-1   Filed 10/30/17   Page 9 of 41
Case 3:16-cv-00872-VLB   Document 130-1   Filed 12/16/16   Page 9 of 41

claim alleging breach of contract is not covered under a professional liability policy because there is no 'wrongful act' and no 'loss' since the insured is simply being required to pay an amount it agreed to pay." [Citation.]' " (*Health Net I*, at p. 253.) Consistent with this authority, we reasoned that Health Net's covered misconduct did not convert the unpaid plan benefits into covered damages, because "the fact remains that [Health Net] was *contractually obligated to pay its participants and beneficiaries the full benefits to which they were entitled under their health plans*" and "[t]hese costs cannot be passed on to [Health Net's] insurers simply because [Health Net] may have committed a wrongful act in its failure to pay them." (*Ibid*.)

Applying this reasoning to the claims asserted in *Wachtel* and *McCoy*, we held the claims for relief under ERISA § 502(a)(1)(B) could not possibly be covered because that section of ERISA authorizes a plan participant to recover only " 'benefits due to him under the terms of his plan, [or] to enforce his rights under the terms of the plan.' " (*Health Net I*, *supra*, 206 Cal.App.4th at p. 254 (/case/health-net#p254), quoting 29 U.S.C. § 1132(a)(1)(B) (/statute/29-usc-1132-civil-enforcement).) ₉ However, we also noted that the underlying plaintiffs had asserted claims for breach of fiduciary duties and failure to provide necessary disclosures, which, under ERISA section 502(a)(3)'s "appropriate equitable relief" provision, might authorize "monetary compensation" for the alleged misconduct. (*Health Net I*, at p. 255 & fn. 28.) This court observed that it was "not at all clear" whether the underlying plaintiffs "actually sought extracontractual monetary damages under the equitable relief provision of ERISA, nor [was] it clear if such damages are legally recoverable under that provision." (*Id*. at p. 255, fn. 28.) But, to the extent those damages "were sought (and would be recoverable)," we held, "coverage is not barred for such damages." (*Ibid*.)

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00072-VLB   Document 120-1   Filed 12/30/16   Page 10 of 41
Case 3:16-cv-00072-VLB   Document 54-7   Filed 12/16/16   Page 10 of 41

After addressing other issues, we concluded the summary judgment must be reversed because there were claims for relief that were "potentially covered, and no policy exclusion completely bars coverage for those claims." (*Health Net I*, *supra*, 206 Cal.App.4th at p. 253 (/case/health-net#p253).) Accordingly, this court reversed the judgment and remanded the matter "with directions to the trial court to determine whether and to what extent there is any merit to the claim of coverage for such potentially covered matters." (*Ibid.*)

4. *Proceedings on Remand and Judgment*

Following remand, Health Net amended its complaint to seek coverage for the *Scharfman* action, which was not before this court in the first appeal, and to add a breach of contract count against the Excess Insurers. As discussed in greater detail below, the trial court sustained the Excess Insurers' demurrer to the breach of contract count, without leave to amend, holding Health Net could not state a claim because the Excess Insurers had no contractual obligation to pay under their policies until the primary insurer paid its limit.

The parties filed cross motions for summary adjudication and judgment. Health Net sought summary adjudication of the Insurers' duty to reimburse its defense expense. The Insurers' motion asserted none of the claims in the underlying lawsuits were covered, arguing ERISA did not support a claim for extracontractual monetary relief as a matter of law. The Insurers also argued coverage for the *Scharfman* RICO claim was barred by *10 Insurance Code section 533 and the policies' knowing wrongful act exclusion because the RICO claim was necessarily predicated on a claim of fraud.

The trial court granted the Insurers' motion and denied Health Net's cross-motion. With regard to the ERISA-based claims, the court addressed the unresolved question this court raised in *Health Net I* and concluded that no coverage

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:11-cv-01609-VLB   Document 120-1   Filed 12/30/16   Page 11 of 41
Case 3:16-cv-00572-VLB   Document 34-7   Filed 12/16/16   Page 11 of 41

was available because ERISA section 502(a)(3) did not authorize an award of extracontractual monetary damages, as a matter of law. As for the *Scharfman* RICO claim, the trial court held Insurance Code section 533 and the knowing wrongful act exclusion barred coverage, reasoning that the New Jersey district court's discovery sanction established that Health Net engaged in willful misconduct.

The trial court entered judgment for the Insurers, from which Health Net now appeals.

# DISCUSSION

1. *Standard of Review for Summary Judgment*

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (/case/guz-v-bechtel-national-inc#p334).) We make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 (/case/iverson-v-muroc-unified-school-dist#p222).)

A defendant may move for summary judgment "if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a).) A defendant meets its burden by showing that "one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 12 of 41
Case 3:16-cv-00872-VLB   Document 124-7   Filed 12/30/16   Page 12 of 41

thereto." (*Id.*, subd. (p)(2).) We will affirm the summary judgment "if all the papers *₁₁ submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (*Id.*, subd. (c).)

2. *Extracontractual Monetary Relief Is Legally Recoverable Under ERISA Section 502(a)(3); The Trial Court Erred in Granting Summary Judgment on this Basis*

In *Health Net I*, this court held that allegedly unpaid health plan benefits were not " 'Damages . . . resulting from any Claim or Claims . . . for any Wrongful Act' " and, hence, Health Net could not obtain coverage for such damages under its professional liability policies with the Insurers. (*Health Net I*, *supra*, 206 Cal.App.4th at pp. 252-253 (/case /health-net#p252).) We reasoned that unpaid benefits were not covered under the insurance policies because "[Health Net] was contractually obligated to pay its participants and beneficiaries the full benefits to which they were entitled under their health plans," and " '[p]erformance of a contractual obligation . . . is a debt [Health Net] voluntarily accepted[,] not a loss resulting from a [W]rongful [A]ct within the meaning of the polic[ies].' " (*Id.* at p. 253, italics omitted.) However, this court held "extracontractual" damages—that is, damages resulting from a Wrongful Act, as opposed to Health Net's contractual obligations—would potentially be covered, and claims affording potential recovery of such damages would be subject to the Insurers' duty to defend. (*Id.* at pp. 257-259.) While we identified certain claims in the *Wachtel* and *McCoy* complaints in which it appeared extra-contractual damages were "sought," we expressly declined to determine whether such damages were "legally recoverable" under ERISA section 502(a)(3) and the United States Supreme Court's decision in *CIGNA Corp. v. Amara* (2011) 563 U.S. 421 (/case/cigna-corp-v-amara-2) (*Amara*). (*Health*

*Net I*, at p. 255, fn. 28.)

On remand, the trial court granted the insurers' joint motion for summary judgment on the ground that ERISA section 502(a)(3) does not authorize the recovery of "extra-contractual damages" as a matter of law. As an explanatory note, the court added, "if [the underlying plaintiffs] sought monetary relief in the form ordered in equity in the *Amara* case for a reformed contract, that would constitute unpaid benefits under a contract for which the [*Health Net I* court] held there was no coverage." (AA 5595.) We *12 now address the question deferred by *Health Net I* and conclude, contrary to the trial court's determination, that monetary relief for extracontractual harm is legally recoverable under ERISA section 502(a)(3).

We begin with the United States Supreme Court's decision in *Amara*. The plaintiffs in *Amara* filed a putative class action against their employer and ERISA plan administrator, CIGNA, challenging CIGNA's adoption of a new pension plan. (*Amara*, *supra*, 563 U.S. at p. 424.) The original plan provided a defined benefit in the form of an annuity calculated on the basis of an employee's pre-retirement salary and length of service, while the new plan provided most retiring employees with a lump sum cash balance accrued under a different formula that turned out to be far less favorable to the employees. (*Id*. at pp. 426-427.) For employees who had already earned some benefits under the original plan, the new plan converted those benefits into an opening amount in the employee's new cash balance account. (*Ibid*.) Finally, the new plan provided employees a guarantee: upon retirement, an employee would receive *either* (1) the amount to which he or she had become entitled under the old plan as of the date the new plan was adopted, *or* (2) the amount then in his or her cash balance account, whichever was greater. (*Id*. at p. 428.)

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-06872-VLB    Document 120-1    Filed 12/30/16    Page 14 of 41
Case 3:16-cv-06872-VLB    Document 120-1    Filed 12/30/16    Page 14 of 41

The plaintiffs in *Amara* challenged CIGNA's adoption of the new plan, alleging CIGNA failed to give them proper notice of the changes in violation of its disclosure obligations under ERISA. (*Amara*, *supra*, 563 U.S. at p. 424.) The district court agreed, finding CIGNA's initial descriptions of the new plan were "significantly incomplete and misled its employees" to their detriment. (*Id.* at p. 428.) To remedy the identified harm, the court reformed the terms of the new plan's guarantee to provide each employee with *both* (1) the amount vested under the old plan *and* (2) the amount accrued via the new plan (excluding CIGNA's initial deposit). (*Id.* at pp. 434-435.) Finally, the district court ordered CIGNA to pay "'benefits under the terms of the plan' as reformed," citing ERISA section 502(a)(1)(B) as the "legal authority to enter this relief." (*Amara*, at p. 434.) The Supreme Court reversed.

*13

The *Amara* court held ERISA section 502(a)(1)(B) could not be invoked to *alter* the terms of the plan as they previously existed, because "[t]he statutory language speaks of '*en-forc*[*ing*]' the 'terms of the plan,' not of *changing* them." (*Amara*, *supra*, 563 U.S. at p. 436, quoting 29 U.S.C. § 1132(a)(1)(B) (/statute/29-usc-1132-civil-enforcement).) On the other hand, the Supreme Court observed that ERISA section 502(a)(3) "allows a participant, beneficiary, or fiduciary 'to obtain other *appropriate equitable relief*' to redress violations of (here relevant) parts of ERISA 'or the terms of the plan.'" (*Amara*, at p. 438, quoting 29 U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-enforcement).) While the Supreme Court found the district court's order could not be affirmed under the authority granted by ERISA section 502(a)(1)(B), the *Amara* court indicated such relief might have been available under ERISA section 502(a)(3) inasmuch as it resembled remedies traditionally available in equity courts prior to their merger with courts of law. (*Amara*, at pp. 439-442.)

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:11-cv-01967-VLB    Document 120-1    Filed 12/30/16    Page 15 of 41
Case 3:16-cv-00872-VLB    Document 120-1    Filed 12/30/16    Page 15 of 41

Of particular relevance to the question posed by this appeal, the *Amara* court held ERISA section 502(a)(3) would authorize the district court to order "the plan administrator to pay already retired beneficiaries money owed them under the plan *as reformed*." (*Amara*, *supra*, 563 U.S. at p. 441, italics added.) The court explained, "the fact that this relief takes the form of a *money payment* does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." (*Ibid.*, italics added.) This "surcharge remedy," the court added, "extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." (*Id.* at p. 442.) The Supreme Court thus clarified that equitable relief may come in the form of money damages when the defendant is a trustee in breach of a fiduciary duty, even though the plaintiff is not entitled to payment under the contract establishing the trust.

Here, the trial court concluded *Amara* did not authorize extracontractual monetary relief because, in the court's view, the equitable surcharge remedy identified in *Amara* "was really the contractually due plan benefit under a reformed contract." We disagree. By equating the surcharge remedy with contractual damages, the court's reasoning failed [14] to recognize that the predicate for equitable relief as articulated by *Amara* was not the administrator's alleged breach of the plan contract, but rather the administrator's breach of its fiduciary duty to fully and accurately disclose the terms of the proposed plan to the plaintiff beneficiaries. (*Amara*, *supra*, 563 U.S. at pp. 439-440.) Indeed, the *Amara* court's discussion of the surcharge and other equitable remedies available under ERISA section 502(a)(3) was driven entirely by the fact that the plaintiffs could not recover on the claim that they had been denied plan benefits under ERISA section

502(a)(1)(B). (See *Amara*, at p. 435.) Despite their inability to recover plan benefits on a breach of contract claim, the *Amara* court held the plaintiffs could recovery monetary relief in the form of a surcharge for the harm caused the administrator's breach of fiduciary duty. (*Id*. at p. 444.)

Several circuit courts of appeals have similarly applied *Amara* in allowing plaintiffs to pursue extracontractual monetary relief under ERISA section 502(a)(3) where contractual relief under ERISA section 502(a)(1)(B) was unavailable. For instance, in *Gearlds v. Entergy Services, Inc.* (5th Cir. 2013) 709 F.3d 448 (/case/gearlds-v-entergy-servs-inc-2), the plaintiff—a participant in an employee benefits plan—alleged that he agreed to retire early because the plan administrator told him he would be covered by his employer's medical benefits plan and would continue to receive medical benefits for life. The plaintiff also allegedly waived medical benefits available under his wife's retirement plan in reliance on the assurances he received from the administrator. Later, the administrator realized that it had miscalculated the plaintiff's years of service and that he was not entitled to lifetime medical benefits under the plan's terms. The plaintiff sued under ERISA seeking compensatory money damages for "past and future medical expenses." (*Id*. at p. 450.) The district court dismissed the case, holding the alleged damages were not available under section 502(a)(3). The Fifth Circuit reversed. Under *Amara*, the appellate court held the plaintiff could pursue the requested damages as an equitable surcharge based on the plan administrator's representation and the plaintiff's detrimental reliance on the representation, even though the plaintiff was not actually entitled to benefits under the terms of the plan. (*Gearlds*, at pp. 450-452.) *[15]

In *McCravy v. Metropolitan Life Ins. Co.* (4th Cir. 2012) 690 F.3d 176 (/case/mccravy-v-metro-life-ins-co), the plaintiff—a participant in a life and accidental death and dismember-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-06872-VLB   Document 120-1   Filed 12/30/16   Page 17 of 41
Case 3:16-cv-06872-VLB   Document 120-1   Filed 12/30/16   Page 17 of 41

ment plan—brought an action under ERISA challenging the plan administrator's decision not to disburse benefits following the accidental death of her 25-year-old daughter. Even though the plaintiff's daughter was no longer an " 'eligible dependent child' " within the plan's definition, the plan still named the daughter as a covered dependent and the plan administrator continued to accept premium payments for the daughter's coverage. (*Id.* at p. 178.) The district court granted summary judgment for the plaintiff, but limited her damages to the return of premiums the plaintiff paid for her daughter's coverage. The Fourth Circuit reversed, reasoning that the surcharge remedy identified in *Amara* was available to allow the plaintiff to pursue " 'the amount of life insurance proceeds lost because of that trustee's breach of fiduciary duty' " as " 'make-whole relief.' " (*Id.* at p. 181.) Thus, even though the plaintiff was not entitled to life insurance benefits under the terms of the plan, she was nevertheless permitted to pursue these benefits as a surcharge under section 502(a)(3) based on the plan administrator's breach of fiduciary duty.

Two other cases from the Seventh and Eighth Circuits reach similar conclusions. (See *Kenseth v. Dean Health Plan, Inc.* (7th Cir. 2013) 722 F.3d 869, 881-883 (/case/kenseth-v-dean-health-plan-inc-2#p881) [plaintiff could seek "make-whole money damages as an equitable remedy under [ERISA] section [502](a)(3)" for losses caused by fiduciary providing false coverage information, which led to plaintiff incurring substantial medical bills for a procedure that was not actually covered under the terms of her health plan]; *Silva v. Metro. Life Ins. Co.* (8th Cir. 2014) 762 F.3d 711, 725 (/case /silva-v-metro-life-ins-co-3#p725) [plaintiff could seek surcharge for payment of benefits owed under life insurance plan, even though decedent failed to complete insurance enrollment as required by plan terms, where decedent had made premium payments in reliance on apparent represen-

tation that enrollment had been accepted by plan adminis-trator].) [16]

In each of the foregoing cases, the plaintiffs were not enti-tled to benefits under the terms of their respective plans; nevertheless, the appellate courts allowed the plaintiffs to pursue make-whole monetary relief under ERISA section 502(a)(3) based on the plan administrator's alleged breach of fiduciary duty and the beneficiary's alleged detrimental re-liance. That is, the plaintiffs were permitted to pursue dam-ages because of what could be characterized under Health Net's professional liability policies as a Wrongful Act, even though the plaintiffs were not actually entitled to the bene-fits under their respective ERISA plans. These are "extracon-tractual" damages as articulated by this court's holding in *Health Net I.*

We conclude extracontractual damages are recoverable as a matter of law under ERISA section 502(a)(3) and the trial court therefore erred in granting the Insurers' motion for summary judgment on the ground stated in its decision. While this settles the legal issue left unresolved by this court's opinion in *Health Net I*, the question remains whether a *factual* basis existed upon which the underlying plaintiffs potentially could have recovered extracontractual damages. We turn to that issue now.

3. *The Allegations of the Underlying Complaints and Other Ex-trinsic Evidence Supply a Factual Basis for Potential Coverage Triggering the Duty to Defend*

Having tentatively concluded the trial court's basis for grant-ing summary judgment was erroneous, we notified the par-ties that this court was nevertheless considering whether the judgment should be affirmed on the alternative ground that the facts alleged or that could reasonably have been alleged in the *Wachtel*, *McCoy* and *Scharfman* complaints did not show that Health Net's alleged conduct caused the underly-

ing plaintiffs to suffer anything other than the uncovered
loss of unpaid benefits owing under the plaintiffs' ERISA
plans. We explained in our letter that, for duty to defend
purposes, determining whether a claim is potentially covered
by an insurance policy depends on whether the alleged or
otherwise disclosed *facts* indicate the insurer could *poten-tially* be obligated under the terms of the policy to indemnify
the insured against liability on the claim. (See *Buss v. Supe-rior Court* (1997) 16 Cal.4th 35, 45-46 (/case/buss-v-superior-court#p45); [17] *State Farm Mut. Auto. Ins. Co. v. Longden* (1987)
197 Cal.App.3d 226, 233 (/case/state-farm-mut-auto-ins-co-v-longden#p233); *Scottsdale Ins. Co. v. MV Transportation*
(2005) 36 Cal.4th 643, 655 (/case/scottsdale-ins-co-v-mv-transportation#p655).) In accordance with Code of
Civil Procedure section 437c, subdivision (m)(2), we asked
the parties to submit supplemental briefs addressing
"whether there were any facts alleged in the underlying com-plaints, facts reasonably inferable from the facts alleged in
the underlying complaints, or extrinsic facts known to the
insurers that, if accepted as true, would have supported a
claim for extra-contractual damages" and, hence, indicated a
potential for liability under the insurance policies as inter-preted by *Health Net I*.

In response to our inquiry Health Net cited language in its
health plan contracts authorizing its use of the Ingenix data-base to calculate UCR, juxtaposed against allegations in the
underlying complaints asserting that, notwithstanding this
contractual discretion, Health Net breached its fiduciary
duty by implementing undisclosed cost-saving reimburse-ment policies without regard to the best interests of the plan
beneficiaries. Health Net also cited allegations concerning
violations of its fiduciary disclosure obligations that, fairly
construed, could have supported a claim for equitable sur-charge under *Amara* and its progeny. We conclude these
facts were sufficient to trigger the Insurers' duty to reim-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....        https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 20 of 41
Case 3:16-cv-00872-VLB   Document 134-7   Filed 12/30/16   Page 20 of 41

burse Health Net's defense costs.

In *Health Net I*, this court concluded the Insurers' duty to reimburse Health Net's defense costs is triggered under the same circumstances that trigger the defense duty in a "traditional ′ duty′ defend′ case"—that is, upon the insurer ascertaining facts that suggest a mere *potential* for liability under the policy. (*Health Net I, supra*, 206 Cal.App.4th at p. 259 (/case/health-net#p259); *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 (/case/gray-v-zurich-insurance-co#p275) (*Gray*); *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 (/case/horace-mann-ins-co-v-barbara-b-2#p1081) (*Horace Mann*) ["a liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity"].) Implicit in the rule that the bare possibility or potential for indemnity will trigger the obligation "is the principle that the duty to defend is broader than the duty to indemnify" and "an insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded." (*Horace Mann*, at p. 1081.) Further, unlike the duty to indemnify, which is only determined after liability is finally [18] established, the duty to defend must be assessed at the outset of the case, usually by comparing the allegations of the complaint with the terms of the policy. (*Ibid.*; *CNA Casualty of California v. Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 605 (/case/cna-casualty-of-california-v-seaboard-surety-co#p605) (*CNA*).) However, "[t]he insurer's obligation to defend is not dependent on the facts contained in the complaint alone; the insurer must furnish a defense when it learns of facts from any source that create the potential of liability under its policy." (*CNA*, at p. 606; *Horace Mann*, at p. 1081.) "If any facts stated or fairly inferable in the complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises." (*Scottsdale Ins. Co. v. MV Transportation, supra*, 36 Cal.4th at p. 655 (/case/scottsdale-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-06872-VLB    Document 120-1    Filed 12/30/16    Page 21 of 41
Case 3:16-cv-06872-VLB    Document 34-7    Filed 12/16/16    Page 21 of 41

ins-co-v-mv-transportation#p655).) "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300 (/case /montrose-chemical-corp-v-superior-court#p299) (*Montrose*).)

" 'A duty to defend arises upon the tender to the insurer of a potentially covered claim and continues until the lawsuit is concluded or until the insurer shows that facts extrinsic to the third party complaint conclusively negate the potential for coverage. [Citations.] If a duty to defend arises, the insurer must defend the action in its entirety, including claims that are not potentially covered. [Citation.] If a duty to defend arises by virtue of the existence of a potential for coverage but is later extinguished, it is extinguished prospectively only, and not retroactively. [Citation.]' [Citation.] Thus, the fact that the underlying actions were settled has no impact on the existence of a duty to defend if such a duty arose before the settlements." (*Legacy Vulcan Corp. v. Superior Court* (2010) 185 Cal.App.4th 677, 693 (/case/legacy-vulcan-corp-v-sc#p693).)

To prevail in a dispute regarding the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*. In other words, the insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot*. Facts merely tending to show that the claim is not covered, or may not be covered, but [which] are insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming *19 disparity in the respective burdens merely reflects the substantive law." (*Montrose*, *supra*, 6 Cal.4th at p. 300 (/case /montrose-chemical-corp-v-superior-court#p300).)

"The insured's desire to secure the right to call on the insurer's superior resources for the defense of third party claims is, in all likelihood, typically as significant a motive for the purchase of insurance as is the wish to obtain indemnity for possible liability. As a consequence, California courts have been consistently solicitous of insureds' expectations on this score." (*Montrose*, *supra*, 6 Cal.4th at pp. 295-296 (/case/montrose-chemical-corp-v-superior-court#p295).)

This is especially true in this case, where the very nature of Health Net's fiduciary status as an ERISA health plan administrator made it vulnerable to claims that it failed to act in the best interests of its beneficiaries in determining the benefits due under plan contracts. Even if these claims proved baseless, and no covered damages were ever awarded, it would be reasonable for Health Net to secure and expect a broad defense obligation from its insurers in anticipation of such claims. (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2015) ¶ 7:502, p. 7B-2 ["Defense of third party claims is as important to the insured (sometimes more important) as indemnification because substantial costs may be incurred to defend any lawsuit, even frivolous claims"].)

In assessing whether the facts advanced by Health Net triggered the Insurers' defense duty, we are guided by the reasoning articulated by our Supreme Court in *Gray*. In *Gray*, the insurer refused to defend its insured in a civil action alleging assault on the ground that its policy excluded coverage for bodily injury "caused 'intentionally by or at the direction of the insured.'" (*Gray*, *supra*, 65 Cal.2d. at p. 273.) Relying on the exclusion, the insurer argued its defense duty had never been triggered because the complaint alleged "on its face" that the claimed bodily injury resulted from an "intentional" assault. (*Id*. at pp. 267-268.) The Supreme Court rejected the contention, holding the insurer's duty is not measured by the technical legal cause of action pleaded in the

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB    Document 120-1    Filed 12/30/16    Page 23 of 41
Case 3:16-cv-00872-VLB    Document 134-7    Filed 12/30/16    Page 23 of 41

underlying third party complaint, but rather by the *potential* for liability under the policy's coverage as revealed by the facts alleged in the complaint or otherwise known to the insurer. "Since modern procedural rules focus on the facts of a case rather than the theory of recovery in the complaint, the duty to defend should be fixed by the facts which [20] the insurer learns from the complaint, the insured, or other sources. An insurer, therefore, bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." (*Id.* at pp. 276-277.)

While the underlying complaint in *Gray* alleged bodily injury as a result of intentional conduct, the Supreme Court found it conceivably could have been amended to allege merely negligent conduct. (*Gray*, *supra*, 65 Cal.2d at p. 277 (/case /gray-v-zurich-insurance-co#p277).) Critically, the *Gray* court noted the insured notified his carrier that he acted in self defense when the alleged assault occurred. Though the insured unsuccessfully asserted this defense at trial, the court found the result made no difference for duty to defend purposes, because the insured "*might have*" been able to show that in physically defending himself, even if he exceeded the reasonable bounds of self-defense, he did not commit wilful and intended injury, but engaged only in nonintentional tortious conduct." (*Ibid.*, italics added.) Thus, the Supreme Court concluded, "even accepting the insurer's premise that it had no obligation to defend actions seeking damages not within the indemnification coverage, we find, upon proper measurement of the third party action against the insurer's liability to indemnify, it should have defended because the loss *could have* fallen within that liability." (*Ibid.*, italics added; see also *Horace Mann*, *supra*, 4 Cal.4th at pp. 1079, 1083-1084 (/case/horace-mann-ins-co-v-barbara-b-2#p1079) [insured teacher's plea of no contest to one count of molesting a student under the age of 14 did not negate duty to defend under criminal intentional act exclusion where facts in

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB  Document 120-1  Filed 12/30/16  Page 24 of 41
Case 3:16-cv-00872-VLB  Document 120-7  Filed 12/30/16  Page 24 of 41

civil complaint "evinced a possibility that [teacher] would be held liable for damages within the coverage of the policy [for educational activities] stemming from [teacher's] negligent nonsexual conduct in his public relationship with [student]".) *21

Like the insurer in *Gray*, the Insurers here argue they had no duty to defend or reimburse defense costs because the underlying complaints' factual allegations indicated the plaintiffs' alleged injuries consisted exclusively of unpaid plan benefits that, under *Health Net I*, do not create a potential for indemnity.[1]   (/case/health-net-inc-v-am-intl-specialty-lines-ins-co#idm140539021849328) While it is true that the underlying plaintiffs principally sought unpaid plan benefits based on facts indicating Health Net's use of the Ingenix database violated the terms of their health plans, those allegations do not conclusively negate the duty to defend if the facts also present the possibility that covered damages could be recovered. As explained, where the facts alleged or known to the insurer admit of more than one possible basis for liability, "[f]acts merely tending to show that the claim is not covered, or may not be covered, but [which] are insufficient to eliminate the possibility that resultant damages . . . will fall within the scope of coverage," do not negate the duty to defend. (*Montrose*, *supra*, 6 Cal.4th at p. 300 (/case/montrose-chemical-corp-v-superior-court#p300).) Conversely, under *Gray*, if an alternative factual basis was alleged or known to the Insurers by which Health Net could *potentially* be held liable for damages arising out of an independent non-contractual obligation, then the duty to defend would have been triggered. (See *Gray*, *supra*, 65 Cal.2d at pp. 276-277 (/case /gray-v-zurich-insurance-co#p276).) *22

The Insurers also contend no potential for coverage exists because the plaintiffs did not actually seek extracontractual damages in the underlying actions, citing deposition testimony by the underlying plaintiffs' attorney taken in this coverage dispute. The

trial court rejected this argument in the summary judgment proceedings below, observing the record was "rife with evidentiary conflicts regarding what exactly plaintiffs sought and what the parties in fact settled." We agree with the court's assessment of the record and its reasoning on this point. Moreover, the contention that the underlying plaintiffs never actually sought extracontractual damages is largely irrelevant, because the question of whether the duty to defend is triggered depends not on the legal theories of recovery asserted, but rather on whether the *facts* alleged, reasonably inferable or known to the insurer could support "a suit which *potentially* seeks damages within the coverage of the policy." (*Gray*, *supra*, 65 Cal.2d at p. 275 (/case/gray-v-zurich-insurance-co#p275); see also *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, 840 (/case/vandenberg-v-superior-court#p840) ["Predicating coverage upon an injured party's choice of remedy or the form of action sought is not the law of this state."].)

ERISA imposes on fiduciaries an extracontractual duty of loyalty and a duty of care to plan participants. (29 U.S.C. §§ 1104(a)(1)(B) (/statute/29-usc-1104-fiduciary-duties), 1106 (/statute/29-usc-1106-prohibited-transactions).) In this case, the distinction between contractual duties and fiduciary duties is manifested in the language of the health plans at issue and the underlying plaintiffs' allegations concerning Health Net's breach of fiduciary duty. As Health Net points out, by their terms the subject health plans permitted Health Net to calculate UCR based on " 'data compiled and reviewed by outside agencies, which determine customary charges within a certain geographic location,' " like Ingenix. (*Wachtel v. Guardian Life Ins. Co*. (D.N.J. 2004) 223 F.R.D. 196, 204 (/case/wachtel-v-guardian-life-ins-co-7#p204) [quoting language in Wachtel's plan defining UCR]; see also *ibid*. [quoting language in McCoy's plan defining UCR as an amount " 'determined based on a standard approved by a separate entity' "].) Other plans similarly defined UCR as " 'the amount [Health Net] determines to be the reasonable charge for a particular Service in the geographical area in which it is performed

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:11-cv-01609-VLB    Document 120-1    Filed 12/30/16    Page 26 of 41
Case 3:16-cv-00872-VLB    Document 34-7    Filed 12/30/16    Page 26 of 41

based upon a percentile of a modified nationwide database used for reimbursement to physicians, providers, and hospitals.' " (*Id.* at p. 202.) Notwithstanding the underlying plaintiffs' allegations about the Ingenix database's purported shortcomings, Health Net argued these contractual provisions authorized it to use the Ingenix database and that the evidence would establish the Ingenix database satisfied the standards imposed by the plan terms for calculating UCR. Health Net maintains the underlying plaintiffs responded to this defense by raising Health Net's independent fiduciary duties under ERISA and asserting breach of fiduciary duty claims for equitable relief that were not dependent on a finding that Health Net breached the health plan contracts. The record supports this contention.

For example, the New Jersey district court observed the underlying plaintiffs' allegation that "Health Net implemented cost-saving reimbursement policies without regard to the best interests of the beneficiaries," did not depend "on a determination of the terms of the plan," but "if true, would constitute [a breach] of fiduciary duties." (*Wachtel v. Guardian Life Ins. Co.*, *supra*, 223 F.R.D. at p. 206.) While the district court concluded this and other breach of fiduciary allegations were "not claims for plan benefits" (*ibid.*), Health Net contends these factual allegations could *potentially* have [23] supported monetary relief in the form of an equitable surcharge, if the underlying plaintiffs succeeded in establishing its allegedly unfair reimbursement practices failed to conform to the level of care required of fiduciaries. We agree. As the United States Supreme Court observed in *Amara* with respect to the surcharge remedy, "[e]quity courts possessed the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." (*Amara*, *supra*, 563 U.S. at p. 441.) The potential that Health Net could have been found liable for unjustly enriching itself through

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....     https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 27 of 41
Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 27 of 41

reimbursement practices that, though conforming to the terms of the health plan contracts, fell below the fiduciary standard of care was sufficient to trigger the duty to defend. (See *Gray*, *supra*, 65 Cal.2d at p. 277 (/case/gray-v-zurich-insurance-co#p277).)

The New Jersey district court also found the allegations that "Health Net concealed material information from beneficiaries" and "was purposefully dishonest in providing explanations to beneficiaries' questions about UCR" constituted claims for non-contractual relief that did not rest on "a determination of the terms of the plan." (*Wachtel v. Guardian Life Ins. Co.*, *supra*, 223 F.R.D. at p. 206.) This court likewise posited in *Health Net I* that the underlying plaintiffs' claims for "compensatory damages 'in an amount to be determined at trial' for disclosure violations" could have triggered the Insurers' duty to defend, so long as facts existed to show this conduct potentially caused "extracontractual damages." (*Health Net I*, *supra*, 206 Cal.App.4th at p. 256 (/case/health-net#p256).)

In response to our request for supplemental briefing, Health Net cites the underlying plaintiffs' factual allegations that their Summary Plan Descriptions did "not mention UCR" and that their Evidence of Coverage "authorize[d] the use of UCR only in the case of a medical emergency." We agree with Health Net that these facts, if accepted as true, could support a claim for extracontractual equitable monetary relief under *Amara*. In discussing the proof of harm required to obtain equitable surcharge relief, the *Amara* court stated it was "not difficult to imagine how the failure to provide proper summary information, in violation of the statute, injured employees," particularly where that information failed to inform them that the benefits provided by the new plan would be less favorable. (*Amara*, *supra*, 563 U.S. at p. 444.) So too here, insofar as the alleged *24 omission in the Summary

Plan Descriptions may have caused the underlying plaintiffs to believe reimbursement for their out-of-network services would not be subject to a UCR determination, the plaintiffs could *potentially* recover monetary relief in the form of a surcharge for the breach of fiduciary duty, even though the plan contracts authorized lower reimbursements based on the applicable UCR. (*Ibid*.; see also *Kenseth*, *supra*, 722 F.3d at p. 883 (/case/kenseth-v-dean-health-plan-inc-2#p883) [holding allegation that plan breached its fiduciary duty by mistakenly leading plaintiff to believe her surgery was covered supported a claim for "make-whole relief in the form of money damages" under ERISA section 502(a)(3), even though defendant health plan did not breach terms of the contract].) Health Net's potential liability for covered damages on these facts triggered the Insurers' duty to defend. (*Gray*, *supra*, 65 Cal.2d at pp. 276-277 (/case/gray-v-zurich-insurance-co#p276); *Montrose*, *supra*, 6 Cal.4th at p. 301 (/case/montrose-chemical-corp-v-superior-court#p301).)

Regardless of whether extracontractual monetary relief might "theoretically" have been recoverable under ERISA section 502(a)(3), the Insurers argue the plaintiffs could not have recovered such relief in the underlying cases because they "had an adequate remedy under [ERISA] [s]ection 502(a)(1)(B) for monetary recovery (i.e., payment of benefits due under their plans)." Hence, the Insurers maintain they had no duty to defend. The contention rests on an erroneous legal premise and ignores the breadth of the duty to defend as articulated by *Gray* and other controlling authorities.

The Insurers' premise that an adequate remedy under ERISA section 502(a)(1)(B) forecloses monetary recovery under ERISA section 502(a)(3) is contrary to the state of the law post-*Amara*. As the Ninth Circuit observed in *Moyle v. Liberty Mut. Ret. Ben. Plan*, though "[s]ome of our pre-*Amara* cases held that litigants may not seek equitable remedies under

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....     https://casetext.com/case/health-net-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 29 of 41
Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/16/16   Page 29 of 41

[ERISA section 502(a)(3)] if [ERISA section 502(a)(1)(B)] provides adequate relief . . . , those cases are now 'clearly irreconcilable' with *Amara*." (*Moyle v. Liberty Mut. Ret. Benefit Plan* (9th Cir. 2016) 823 F.3d 948, 962 (*Moyle*).) The *Moyle* court explained: "While *Amara* did not explicitly state that litigants may seek equitable remedies under [ERISA section 502(a)(3)] if [ERISA section 502(a)(1)(B)] provides adequate relief, *Amara's* holding in effect does precisely that. After the *Amara* court held that plaintiffs did not have reformation available to them under [ERISA section *25 502(a)(1)(B)], the Supreme Court then went on to authorize reformation as a form of equitable relief under [ERISA section 502(a)(3)]." (*Moyle*, at p. 960.) This reasoning, though not permitting duplicate *recoveries*, does permit a plaintiff to pursue a claim for plan benefits under ERISA section 502(a)(1)(B), while simultaneously pursuing a breach of fiduciary duty claim for equitable monetary relief under ERISA section 502(a)(3) as an alternative remedy in the event the claim for plan benefits fails. (*Moyle*, at p. 961; *New York State Psychiatric Ass'n v. UnitedHealth Group* (2d Cir. 2015) 798 F.3d 125, 134 (/case /ny-state-psychiatric-assn-inc-v-unitedhealth-grp-uhc-ins-co-united-healthcare-ins-co-of-ny-united-behavioral-health#p134) [reversing dismissal of ERISA section 502(a)(3) claims for breach of fiduciary duty where plaintiff had "not yet succeeded on his § 502(a)(1)(B) claim, and it [was] not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone [would] provide him a sufficient remedy"]; cf. *Rochow v. Life Ins. Co. of North America* (6th Cir. 2015) 780 F.3d 364, 375 [dismissing claim for disgorgement of profits under ERISA section 502(a)(3) on ground that plaintiff's "injury was remedied when he was awarded the wrongfully denied benefits and attorney's fees" under ERISA section 502(a)(1)(B)].)

The Insurers' assertion that the underlying plaintiffs' ERISA section 502(a)(3) claims would have failed because they "had

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:11-cv-01609-VLB   Document 120-1   Filed 12/30/16   Page 30 of 41
Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 30 of 41

an adequate remedy under [ERISA] [s]ection 502(a)(1)(B)" also ignores the broad scope of the duty to defend, which is triggered by the mere potential that the insured could be held liable for covered damages. As we have explained, where the facts alleged or known to the insurer suggest even a bare possibility that what the plaintiff alleges could subject the insured to liability for covered damages, the duty to defend is triggered, even though other facts alleged or known to the insurer suggest that liability ultimately will not be covered. Indeed, that was the posture of *Gray*, where the plaintiff alleged the insured " 'wilfully, maliciously, brutally, and intentionally assaulted' " him, while the insured insisted he acted in self-defense. (*Gray*, *supra*, 65 Cal.2d at pp. 267, 277 (/case/gray-v-zurich-insurance-co#p267).) The *possibility* of a judgment based on nonintentional conduct triggered the duty to defend, notwithstanding that the insured was ultimately found to have acted willfully. (*Id*. at p. 277.) The alleged facts compel the same conclusion here. Though the underlying plaintiffs sought recovery of unpaid plan benefits under ERISA *26 section 502(a)(1)(B), the facts alleged regarding Health Net's purported breaches of fiduciary duty presented the possibility that it would be held liable for extracontractual monetary damages under ERISA section 502(a)(3) in the event the claims for plan benefits failed. This was sufficient to trigger the Insurers' duty to defend or reimburse defense costs under the policies.[2] (/case/health-net-inc-v-am-intl-specialty-lines-ins-co#idm140539021804960)

Triable factual issues remain concerning the allocation of defense costs between covered and uncovered claims, as well as with respect to whether, or to what extent, the settlement embraced any indemnifiable damages. These issues must be resolved in the trial court in accordance with this court's opinion in *Health Net I* and other controlling authorities. (See *Health Net I*, *supra*, 206 Cal.App.4th at p. 259-261 (/case/health-net#p259); *Buss v. Superior Court*, *supra*, 16 Cal.4th at pp. 52-53 (/case/buss-v-su-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....          https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-06872-VLB   Document 120-7   Filed 12/30/16   Page 31 of 41
Case 3:16-cv-06872-VLB   Document 120-7   Filed 12/30/16   Page 31 of 41

perior-court#p52).)

4. *Neither Insurance Code Section 533 nor the Policy's Knowing Wrongful Acts Exclusion Bars Coverage for the* Scharfman *RICO Claim*

⋮

In granting the Insurers' motion for summary judgment with respect to coverage for the RICO claim asserted in *Scharfman*, the trial court concluded the New Jersey district court's discovery sanction negated any potential for coverage under Insurance Code section 533 and the policies' knowing wrongful act exclusion. For the reasons expressed in *Health Net I* with respect to the *Wachtel* and *McCoy* actions, we conclude the discovery sanction was insufficient to bar coverage for the entire RICO claim asserted in *Scharfman*. Further, because RICO liability can be established by proving reckless conduct that does not rise to the level of willfulness, we conclude the *Scharfman* plaintiffs' allegations that Health Net acted "intentional[ly]" did not conclusively negate the possibility of coverage.

We begin with *Health Net I's* analysis of the effect of the district court's discovery sanction. In *Health Net I* this court determined the following: "[T]he dishonest act found by the federal court is [Health Net's] knowing and willful use of outdated data. While some of the claims of *Wachtel* and *McCoy* arose out of this misconduct, many others did not. Claims seeking unpaid benefits due to the use of outdated data, claims based on the failure to disclose the use of outdated data, and claims based on the failure to provide a full and fair review for claim denials based on the use of outdated data clearly had their *27 origin in [Health Net's] use of the outdated data. However, claims having their origin in the systematic flaws in the Ingenix databases, and claims having their origins in non-Ingenix adjustment misconduct do not." (*Health Net I*, *supra*, 206 Cal.App.4th at pp. 262-263 (/case /health-net#p262).) Thus, because "not all claims originated

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....　　https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-06872-VLB　Document 120-1　Filed 12/30/16　Page 32 of 41
Case 3:16-cv-06872-VLB　Document 130-1　Filed 12/16/16　Page 32 of 41

out of the use of *outdated data*," this court held "the dishon-
est act exclusion [would] not preclude coverage for the en-
tirety of the potentially covered claims in the *Wachtel* and
*McCoy* actions." (*Id.* at p. 263.) The *Health Net I* court held
this analysis likewise applied to the Insurers' argument that
the discovery sanction barred coverage under Insurance
Code section 533. (*Health Net I*, at p. 263, fn. 37.)

The same logic applies with respect to the RICO claim as-
serted in *Scharfman*. While some of the predicate acts al-
leged in support of the RICO claim referred to "outdated In-
genix data," the alleged fraudulent enterprise also encom-
passed "licensing flawed and invalid Ingenix data," providing
"false and incomplete information to Health Net Members,"
using "licensing fees, administrative services fees, and the re-
duction of UCR costs" to benefit the enterprise, and using
"fee schedules, capitation and other risk-sharing mecha-
nisms, and other protocols" to save the enterprise money at
the expense of plan members. Just as the presence of "claims
having their origin in the systematic flaws in the Ingenix
databases, and claims having their origins in non-Ingenix ad-
justment misconduct" precluded application of the dishon-
est act exclusion and Insurance Code section 533 to bar cov-
erage of "the entirety of the potentially covered claims in the
*Wachtel* and *McCoy* actions" (*Health Net I*, *supra*, 206
Cal.App.4th at pp. 262-263 (/case/health-net#p262)), so too
does the presence of similar allegations in *Scharfman* pre-
clude application of the exclusion and Insurance Code to bar
coverage for the entire RICO claim. The trial [28] court's grant
of summary judgment on this ground was therefore incon-
sistent with *Health Net I*.[3] (/case/health-net-inc-v-am-intl-
specialty-lines-ins-co#idm140539021788880)

> As Health Net also points out, the New Jersey dis-
> trict court's sanctions order only concerned UCR
> determinations during portions of 1999 to 2002.
> (*Wachtel v. Health Net, Inc, supra*, 239 F.R.D. at pp.
> 85-88, 104 (/case/wachtel-v-health-net#p85).) Be-

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:11-cv-01609-VLB   Document 120-1   Filed 10/30/17   Page 33 of 41
Case 3:16-cv-00872-VLB   Document 34-7   Filed 12/16/16   Page 33 of 41

cause the *Scharfman* class sought remedies for RICO violations "from September 1, 2004 forward," the district court's willfulness finding could not conclusively bar coverage for the *Scharfman* claim.

⋮

On appeal, the Insurers do not attempt to defend the trial court's decision with respect to the New Jersey district court's discovery sanction. Instead, the Insurers argue the judgment was nevertheless proper because, they contend, the *Scharfman* RICO claim was "predicated on factual allegations that [Health Net] 'intentionally underpaid benefits' and acted with 'specific intent' to knowingly mail and wire materially false and invalid UCR determinations." The Insurers maintain "[a]ctual knowledge of wrongdoing is an essential element of the RICO claim asserted in *Scharfman*" and, therefore, the knowing act exclusion and Insurance Code section 533 preclude coverage. We disagree.

RICO liability depends on proof of a predicate offence, and the mental state required for a RICO violation "is the same as is required for the predicate crime." (*United States v. Baker* (9th Cir. 1995) 63 F.3d 1478, 1493 (/case/us-v-baker-10#p1493).) The *Scharfman* plaintiffs alleged that Health Net committed mail fraud, an offense that can be established by proof of reckless, not willful, conduct. (*United States v. Boyer* (3d Cir. 1982) 694 F.2d 58, 59-60 (/case/united-states-v-boyer#p59) [specific intent to deceive, as element of mail fraud and securities fraud, could be found from material misstatement of fact made with reckless disregard of the facts]; *United States v. Schaflander* (9th Cir. 1983) 719 F.2d 1024, 1027 (/case/united-states-v-schaflander-2#p1027) [reckless disregard for truth or falsity is sufficient to sustain a mail fraud conviction].) *29

In contrast to the scienter required for mail fraud, both the knowing wrongful act exclusion and Insurance Code section 533 require knowing or willful intent to commit harm. Exclusion (j) of the Insurers' policies with Health Net excludes

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 34 of 41
Case 3:16-cv-00872-VLB   Document 120-7   Filed 12/16/16   Page 34 of 41

coverage for claims "arising out of any **Wrongful Act** committed *with the knowledge* that it was a **Wrongful Act**." (Italics added.) Similarly, Insurance Code section 533 provides an insurer "is not liable for a loss caused by the wilful act of the insured."

Because RICO liability for mail fraud can be predicated upon facts establishing the defendant made misleading statements with reckless, but not necessarily willful, disregard for the truth, the allegations that Health Net acted intentionally do not conclusively negate the *potential* for coverage under the policies. (See *Gray*, *supra*, 65 Cal.2d at pp. 276-277 (/case/gray-v-zurich-insurance-co#p276).) Indeed, consistent with the recklessness standard, though the *Scharfman* plaintiffs at times alleged Health Net intentionally underpaid benefits, they also alleged Health Net should be held liable for mail fraud under RICO because "[Health Net] knew *or should have known* that the Ingenix data was flawed or invalid." (Italics added.) In view of this allegation, and the potential that Health Net could be held liable for mail fraud without proof of willful intent to deceive, the Insurers' summary judgment motion failed to establish coverage for the *Scharfman* RICO claim was absolutely barred by either the knowing wrongful act exclusion or Insurance Code section 533.

5. *The Trial Court Properly Sustained the Excess Insurers' Demurrer to the Breach of Contract Claim*

Following remand from the earlier appeal, Health Net amended its complaint to supplement its declaratory relief action against the three Excess Insurers with a claim for breach of contract. In sustaining the Excess Insurers' demurrer to the claim, the trial court held the "conditions precedent" to their performance had not been satisfied because AISLIC, the primary insurer, had "not paid out its policy limits." We conclude the ruling was correct. [30]

In determining whether Health Net stated a claim for relief,

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....          https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00072-VLB   Document 120-7   Filed 12/16/16   Page 35 of 41
Case 3:16-cv-00072-VLB   Document 120-7   Filed 12/16/16   Page 35 of 41

our standard of review is clear: " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment . . . .' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 (/case/zelig-v-county-of-los-angeles-2#p1126).) "Where written documents are the foundation of an action and are attached to the complaint and incorporated therein by reference, they become a part of the complaint and may be considered on demurrer." (*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800 (/case/city-of-pomona-v-superior-court-1#p800).)

The trial court properly sustained the Excess Insurers' demurrer to Health Net's breach of contract claim. The elements of a cause of action for breach of contract are: (1) A contract obligating the defendant; (2) performance of, or excuse from, conditions precedent to the defendant's obligations; (3) the defendant's breach of the obligation; and (4) resulting damage. (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 515, p. 648.) As Health Net's operative second amended complaint admits, an express condition precedent to the excess insurance performance was neither met nor excused because AISLIC refused to pay its limit of liability under the primary policy. Citing this admission, the trial court correctly reasoned that "the relevant terms in this case relate to the conditions precedent to triggering the excess insurers' liability" and "[t]he plain language on the excess polic[ies] states that the excess polic[ies] will not be triggered until

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 36 of 41
Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 36 of 41

the underlying policy has been exhausted by way of an actual payment of the maximum amount or a judgment of the same." *31

Health Net contends this ruling contravened California law, relying principally on the statement in *Fageol T. & C. Co. v. Pacific Indemnity Co.* (1941) 18 Cal.2d 748 (/case/fageol-t-c-co-v-pacific-indemnity-co-2) that joining a primary and excess insurer in the same action sensibly "avoid[s] a multiplicity of suits and a plurality of judgments." (*Id.* at p. 754.) However, in selectively quoting the foregoing text, Health Net neglects to acknowledge that the *Fageol* court premised this statement on statutory language in former Code of Civil Procedure section 383 that no longer appears in the current joinder statute. When *Fageol* was decided, former section 383 expressly provided: " 'where the same person is insured by two or more insurers separately in respect to the same subject and interest, such person . . . may join all or any of such insurers in a single action for the recovery of a loss under the several policies, and in case of judgment a several judgment must be rendered against each of such insurers *according as his liability shall appear*.' " (*Fageol*, at p. 754.) Underscoring the significance of former section 383 to its holding, the *Fageol* court added that "[t]he language of that section emphatically disposes of the contention that both insurers could not have been properly joined in the same action." (*Fageol*, at p. 754.) Critically, the direct successor to former section 383—Code of Civil Procedure section 379—contains no equivalent reference to a person insured by two or more insurers on the same subject and interest. In view of this statutory change, the statement relied upon by Health Net is not persuasive.[4] (/case/health-net-inc-v-am-intl-specialty-lines-ins-co#idm140539021763408)

> Health Net's reliance on *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592 (/case /ludgate-insurance-co-v-lockheed-martin-corp) is also misplaced, because *Ludgate* concerned only a

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00872-VLB   Document 120-1   Filed 12/30/16   Page 37 of 41
Case 3:16-cv-00872-VLB   Document 134-1   Filed 12/30/16   Page 37 of 41

declarative relief cause of action. (*Id.* at p. 606.) Indeed, the *Ludgate* court confirmed that "[e]xhaustion of underlying limits" was "necessary to entitle the insured to recover on the excess policy," though exhaustion was "not necessary to create actual controversy" for a declaratory relief action. (*Ibid.*) As in *Ludgate*, Health Net maintains a declaratory relief action to resolve the coverage controversy with the Excess Insurers.

In contrast, *Qualcomm, Inc. v. Certain Underwriters at Lloyd's, London* (2008) 161 Cal.App.4th 184 (/case/qualcomm-v-certain-underwriters) is instructive. In *Qualcomm*, the plaintiff sued its excess insurer to recover litigation and settlement costs incurred in excess of its primary policy limit after settling with its primary insurer for an amount less than the primary insurer's limit. *[32]* Relying on language in its policy providing the excess insurer would " 'be liable only after the insurers under each of the Underlying Policies . . . have paid or have been held liable to pay the full amount of the Underlying Limit of Liability,' " the excess insurer argued its reimbursement obligation was not triggered by the settlement. (*Id.* at p. 189.) The *Qualcomm* court agreed, concluding "under the referenced portion of the exhaustion clause, [the excess insurer's] liability—its reimbursement obligation—did not arise until [primary insurer] actually paid the *full $20 million amount* of its underlying limit." (*Id.* at p. 196.)

The exhaustion clauses in the excess policies dictate the same result here. Each of the policies provides the Excess Insurers' reimbursement obligation is not triggered until "exhaustion of all of the limits of liability of such **Underlying Insurance** solely as the result of *actual payment* of claims or losses thereunder." (Italics added.) Health Net's complaint admits AISLIC has not made "actual payment" of its $25 million limit. Accordingly, Health Net did not allege an essential element of its breach of contract claim.

The trial court also did not err in sustaining the demurrer insofar as the claim purported to allege an anticipatory breach

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....    https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:16-cv-00972-VLB    Document 120-7    Filed 12/30/16    Page 38 of 41
Case 3:16-cv-00972-VLB    Document 124-1    Filed 12/16/16    Page 38 of 41

of contract. To begin, "it is the general rule, recognized in this state, that the doctrine of breach by anticipatory repudiation does not apply to contracts which are unilateral in their inception or have become so by complete performance by one party." (*Diamond v. University of So. California* (1970) 11 Cal.App.3d 49, 53 (/case/diamond-v-university-of-so-california#p53) (*Diamond*); *Cobb v. Pacific Mutual. Life Ins. Co.* (1935) 4 Cal.2d 565, 573 (/case/cobb-v-pacific-mutual-life-ins-co#p573) (*Cobb*) ["There can be no anticipatory breach of a unilateral contract"].) "The theory underlying this rule is that since the plaintiff has no future obligations to perform, he is not prejudiced by having to wait for the arrival of the defendant's time for performance in order to sue for breach." (*Diamond*, at pp. 53-54.) Thus, in the insurance context, our Supreme Court has recognized that where an insured was "exempt from future performance so far as dues or assessments were concerned" for a permanent disability policy, the insured could not state a claim for anticipatory breach to recover ∗33 future " 'instalments not yet due.' " (*Cobb*, at p. 573.)[5]    (/case/health-net-inc-v-am-intl-specialty-lines-ins-co#idm140539021749360) Insofar as Health Net alleges it has fully performed its obligations under the excess policies, the contracts have become unilateral, and there can be no claim for breach in advance of the Excess Insurers' time for performance. (*Ibid.*)

> Though this rule has been criticized by some commentators, our Supreme Court's opinion in *Cobb* remains the controlling law of this state. (*Diamond*, *supra*, 11 Cal.App.3d at pp. 53-54 (/case/diamond-v-university-of-so-california#p53) & fn. 4; 1 Witkin (2005) Summary 10th Contracts, § 867.)

More to the point raised in the Excess Insurers' demurrer, Health Net cannot state a claim for anticipatory breach because the excess policies are not amenable to the remedy contemplated by the claim. "Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the

contract." (*Taylor v. Johnston* (1975) 15 Cal.3d 130, 137 (/case/taylor-v-johnston#p137) (*Taylor*).) "When a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and *immediately seek damages for breach of contract*, thereby terminating the contractual relation between the parties, or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time." (*Ibid.*, italics added.) "The real operation of a declaration of intention not to be bound [is] to give the promisee the right . . . to act upon the declaration and treat it as a final assertion by the promisor that he is no longer bound by the contract, and as a wrongful renunciation of the contractual relation into which he has entered. If [the promisee] elects to pursue [this] course, it becomes a breach of contract, *excusing performance on his part* and giving him an *immediate right to recover* upon it as such. Upon such election the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist." (*Atkinson v. District Bond Co.* (1935) 5 Cal.App.2d 738, 743 (/case/atkinson-v-district-bond-co#p743), italics added; see also *Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1246 (/case/martinez-v-scott-specialty-gases#p1246)).) *34

Here, regardless of the character of the Excess Insurers' alleged repudiations, the conditions precedent to their performance—the underlying insurers' "actual payment" of their policy limits—preclude Health Net from immediately seeking recovery for breach of contract. This is because an anticipatory repudiation excuses only the promisee's performance, it does not otherwise expand the promisee's rights or the repudiating promisor's obligations under the contract. (See, e.g., *Cobb*, *supra*, 4 Cal.2d at p. 573 (/case/cobb-v-pacific-mutual-life-ins-co#p573) [allegedly repudiating insurer had no obligation to make disability installment payments before

Health Net, Inc. v. Am. Int'l Specialty Lines Ins. Co., B262716 (Cal. Ct....          https://casetext.com/case/health-net-inc-v-am-intl-specialty-lines-ins-co

Case 3:11-cv-01007-VLB   Document 120-1   Filed 12/30/17   Page 40 of 41
Case 3:16-cv-00572-VLB   Document 34-7   Filed 12/16/16   Page 40 of 41

due]; Civ. Code, § 1440 ["If a party to an obligation gives notice to another, before the latter is in default, that he will not perform the same upon his part, . . . such other party is entitled to enforce the obligation without previously performing or offering to perform any *conditions upon his part* in favor of the former party"], italics added.) Notwithstanding the Excess Insurers' alleged repudiations, Health Net has no contractual right to payment under the excess policies until there has been "actual payment" by each respective underlying insurer, and it cannot recover damages for breach of contract until that condition is satisfied. The trial court did not err in sustaining the demurrer. *35

# DISPOSITION

The summary judgment is reversed. The order sustaining the Excess Insurers' demurrer to the breach of contract claim is affirmed. Health Net is awarded its costs with respect to its appeal from the summary judgment. The Excess insurers are awarded their costs with respect to Health Net's appeal from the demurrer.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

HOGUE, J.[*] (/case/health-net-inc-v-am-intl-specialty-lines-ins-co#idm140539021735232) We concur:

> Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution. --------

ALDRICH, Acting P. J.

LAVIN, J.

© 2016 Casetext, Inc.
Casetext, Inc. and Casetext are not attorneys or a law firm and do

Contact (mailto:contact@casetext.com)   Features (/features)

Case 3:11-cv-01807-VLB   Document 120-1   Filed 12/30/16   Page 41 of 41
Case 3:16-cv-00372-VLB   Document 34-7   Filed 12/30/16   Page 41 of 41

not provide legal advice.

Pricing (/pricing)   Terms (/terms)   Privacy (/privacy)

⋮