Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-01807-VLB   Document 130-2   Filed 10/30/17   Page 1 of 40
Case 3:16-cv-00872-VLB   Document 34-5   Filed 12/16/16   Page 1 of 40

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK

- 14 Civ. 2495 (ER) (S.D.N.Y. Aug. 15, 2016)

# ⊞ MBODY MINIMALLY INVASIVE SURGERY, P.C. V. UNITED HEALTHCARE INS. CO.



Ramos, D.J.

**OPINION AND ORDER** <u>Ramos, D.J.</u> :

MBody Minimally Invasive Surgery, P.C. ("MMIS") and Nick Gabriel, D.O. ("Dr. Gabriel") (together, "Plaintiffs") bring this suit seeking recoupment of underpaid and denied health insurance claims against United HealthCare Insurance Company, United HealthCare of New York, United HealthCare Service, LLC, and United HealthCare Services, Inc. (together, "United"). United has filed a motion to dismiss the First Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 40). Plaintiffs have cross-moved for leave to file a second amended complaint pursuant to Rule 15(a)(2). (Doc. 48). As explained below, both motions are GRANTED in part and DENIED in part. **I. BACKGROUND** [1] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265391191808)

> 1   All facts herein are taken from the Amended Complaint (Doc. 21) and presumed true for purposes of this motion.

MMIS is a medical practice located in Southampton, New

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-01807-VLB   Document 120-2   Filed 10/30/17   Page 2 of 40
Case 3:16-cv-00872-VLB   Document 134-2   Filed 12/16/16   Page 2 of 40

York, managed by Dr. Gabriel, a bariatric surgeon. Amended
Complaint ("AC") (Doc. 21) ¶¶ 16-17. Plaintiffs provided
medical services to individual patients enrolled in health in-
surance plans administered by United, *2 including both
plans subject to the Employee Retirement Income Security
Act of 1974 ("ERISA") and its governing regulations ("ERISA
Plans"), and plans that are not governed by ERISA
("non-ERISA Plans"). *Id.* ¶ 1. United administered all the
plans at issue here, exercising discretion in making benefit
determinations, and controlling the management and dispo-
sition of benefits under the terms of the plans. *Id.* ¶¶ 26-27.[2]

(/case/mbody-minimally-invasive-surgery-pc-v-united-
healthcare-ins-co#idm140265391178816)

> Two physicians' assistants employed at MMIS were
> originally included in this lawsuit as individual
> named plaintiffs, but they were subsequently dis-
> missed from the case voluntarily. Similarly, the
> Amended Complaint included claims arising under
> Medicare and Medicaid Plans, but Plaintiffs have
> voluntarily dismissed those claims as well. *See* No-
> tice of Dismissal (Doc. 51) (dismissing the two
> plaintiffs and benefit claims related to Medicare and
> Medicaid plans).

Plaintiffs allege that they have been out-of-network
providers during all times relevant to this lawsuit. *Id.* ¶ 32.
Unlike in-network "participating" providers who agree to
charge patients rates pre-negotiated with insurance
providers, out-of-network providers are free to charge higher
rates, leaving patients to cover the gap between those higher
rates and whatever coverage their insurance provides out-of-
pocket. *Id.* ¶¶ 33-34.

Out-of-network providers are entitled to "balance bill" their
patients for services rendered, *i.e.*, to charge patients for the
difference between what their insurance will cover for a par-
ticular procedure and what their out-of-network providers
charge for that procedure. *Id.* ¶ 50. To avoid forcing their pa-
tients to pay the full costs of services on the spot, however,

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...          https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00807-VLB  Document 130-2   Filed 10/30/17   Page 3 of 40
Case 3:16-cv-00807-VLB  Document 134-2   Filed 12/18/18   Page 3 of 40

⋮

Plaintiffs "as a matter of course" obtained assignments from patients of the benefits owed to them under their health insurance plans. *Id.* ¶ 75. The terms of the standard form used by Plaintiffs assign "all applicable health insurance benefits and all rights and obligations" that each patient has under his or her health insurance plan to Plaintiffs, and authorizes Plaintiffs to serve as an authorized representative, to file medical claims, appeals, and grievances, and to institute any necessary litigation. *Id.* ¶3

The dispute at the heart of this lawsuit is whether United wrongly treated Plaintiffs as in-network providers and, consequently, wrongly under-paid or denied benefit insurance claims submitted by Plaintiffs on behalf of their patients. Dr. Gabriel alleges that while he was an in-network provider from 2006 to 2008 during his employment at Peninsula Hospital, he became out-of-network upon his leaving that hospital in 2008. *Id.* ¶ 36. For the following three years, Dr. Gabriel submitted assigned claims to United from his private practice, and while United "often paid such claims on an out-of-network basis," United also sometimes treated Dr. Gabriel as a participating provider. *Id.* ¶ 37. Despite "repeatedly" being told by Dr. Gabriel that he was out-of-network, United's inconsistent claims determinations continued unabated. *Id.*

On December 13, 2011, Dr. Gabriel's counsel sent a letter to United that reiterated Dr. Gabriel's belief that his in-network status terminated upon his leaving Peninsula Hospital in 2008, and explicitly informed United that Dr. Gabriel was terminating any participation agreements that United believed were in effect. *Id.* ¶ 38. A United Networking Manager responded three days later that Dr. Gabriel's notice served to terminate his in-network status as of September 1, 2012, and expressly stated in an email that Dr. Gabriel was "considered a non-participating provider as of September 1, 2012 from all lines of business under United Healthcare and Oxford." *Id.* ¶

Mbody Minimally Invasive Su... * 14 Civ. 2495, 19 (ER)

39. Dr. Gabriel's counsel responded with another email sometime thereafter reiterating the position that Dr. Gabriel was out-of-network from the time he left Peninsula Hospital. *Id.* ¶ 40. Despite these communications, Plaintiffs again received correspondence from United dated October 11, 2012, in which United said it was "approving" Dr. Gabriel for continued participation in the United HealthCare network. *Id.* ¶ 41. Dr. Gabriel's counsel once again wrote to United, restating that Dr. Gabriel was no longer in-network since he left Peninsula Hospital or, at latest, September 1, 2012. *Id.* *4

From 2011 to 2014, Plaintiffs allege that United took part in a variety of actionable conduct. *First*, while United "historically" paid from 80% to 100% of the billed charges Plaintiffs submitted, United embarked on a "retaliatory campaign" following Dr. Gabriel's December 2011 communication to United, reimbursing Plaintiffs "drastically below" Plaintiffs' billed charges, below reimbursements to Plaintiffs from other insurers for the same services, and below the rates charged by comparable providers for the same services. *Id.* ¶¶ 56-57, 60.

*Second*, United "routinely" were inconsistent and arbitrary in reimbursing different amounts at different times for the same procedure codes under the same health insurance plans. *Id.* ¶¶ 58-61. For example, in response to the filing of this lawsuit, United took the position that Dr. Gabriel was still a participating provider in the Empire Plan, which is a United-administered health insurance plan for New York State employees. AC ¶ 42.[3] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390757216) But Plaintiffs allege that United's position with respect to the Empire Plan is belied by its own past conduct from 2011 to 2013, during which time United (i) "frequently adjudicated Dr. Gabriel's Empire Plan claims on an out-of-network basis," paying 100% of Dr.

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...          https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00872-VLB   Document 130-2   Filed 10/30/17   Page 5 of 40
Case 3:16-cv-00872-VLB   Document 134-2   Filed 12/18/16   Page 5 of 40

Gabriel's charges billed to Empire Plan enrollees, and (ii) submitted, "on numerous occasions," Dr. Gabriel's Empire Plan claims to an independent contractor for adjudication and re-pricing, submissions that would be unnecessary had United believed Dr. Gabriel was participating in-network. *Id.* ¶¶ 45-48.

> On July 15, 2014, Plaintiffs sent United yet another formal termination letter to make explicit to United that Dr. Gabriel was definitively not participating in the Empire Plan or any other United plan. AC ¶ 43. A United employee responded on July 22, 2014 to inform Dr. Gabriel that his last day of participation the Empire Plan would be September 13, 2014. *Id.* ¶ 44. Plaintiffs assert that any agreement under the Empire Plan was terminated upon Dr. Gabriel's leaving Peninsula Hospital or, at the latest, by September 1, 2012.

*Third*, United wrongly told some of Dr. Gabriel's patients that he was in-network and that Plaintiffs' practice of balance billing was "improper," "fraudulent," and in at least one instance, a "crime." *Id.* ¶¶ 49-54. "Numerous" patients allegedly complained about the balance-billing to 5 hospitals that Dr. Gabriel is associated with, "drastically curtail[ing]" those hospitals' referrals to Dr. Gabriel and depressing his revenues as a result. *Id.* ¶ 51.

*Fourth*, after United's payments of Plaintiffs' claims "slowed to a trickle, with no notice or explanation of any reason for the drastic reductions in payments," Plaintiffs' billing service contacted United on March 11, 2013 and was informed that Plaintiffs claims were being "audited" as of May 22, 2012. *Id.* ¶¶ 62-65. United's representative stated "that the 'audit' would remain in effect until all claims that were missing medical records had been 'cleared up,'" and the audit's imposition required blanket denial of all of Plaintiffs' claims unless and until Plaintiffs mailed copies of the claim denials and the supporting medical records to a third-party review company. *Id.* ¶¶ 63-67. Subsequently, Plaintiffs followed the

new procedure and, while United paid some previously denied claims at low rates, it continued to deny others based on a purported lack of supporting medical records and also sought to recoup some purportedly "overpaid" claims. *See id.* ¶¶ 68-72. Throughout this process, Plaintiffs allege that United failed to provide adequate notice of any audit-related information, including the audit's initiation, the fact that United at one point hired a different third-party review company, the intermittent blanket denials all of Plaintiffs' submitted claims, and claim-specific justifications for benefit denials. *See id.* ¶¶ 64-73.

*Fifth*, with respect to every denied claim litigated in this suit, Plaintiffs allege that United violated a number of ERISA's statutory and regulatory provisions and non-ERISA contractual provisions by failing to provide in a timely fashion certain required notices, disclosures, and explanations of adverse benefit determinations, plan terms, review procedures, and appeal responses. *See id.* ¶¶ 83-90. *6

Plaintiff filed this lawsuit on April 9, 2014. Complaint (Doc. 2). The Amended Complaint at issue here was filed on November 10, 2014. (Doc. 21). Plaintiffs attached to the Amended Complaint a list of claims that they "contend were improperly denied or reimbursed at improperly low rates," some of which Plaintiffs already received assignments for ("Assigned Claims"), while others concededly were not assigned prior to the filing of this lawsuit ("Unassigned Claims"). *See id.* ¶ 74, App'x A (list of Assigned Claims), App'x B (list of Unassigned Claims).

The Amended Complaint asserts eleven causes of action. The first five claims arise under ERISA: (1) breach of ERISA Plan provisions based on the wrongful underpayment or denial of benefits pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)  (/statute/29-usc-1132-civil-enforcement);  (2) appropriate equitable relief under ERISA § 502(a)(3), 29

Mbody Minimally Invasive Su... · · · 14 Civ. 2495, 19 (ER)

U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-enforcement), for violation of ERISA § 503, 29 U.S.C. § 1133 (/statute/29-usc-1133-claims-procedure), and its implementing regulation, based on United's imposition of the "audit"; (3) civil penalties pursuant to ERISA § 502(c), 29 U.S.C. § 1132(c) (/statute/29-usc-1132-civil-enforcement), based on (i) United's failure to provide a "full and fair review" as required by ERISA § 503, 29 U.S.C. § 1133 (/statute/29-usc-1133-claims-procedure), and its implementing regulation, and (ii) United's failure to provide certain plan documents upon request as required by 29 U.S.C. § 1021(a)(1) (/statute/29-usc-1021-duty-of-disclosure-and-reporting)-(2) and § 1024(b)(4); (4) violations of the fiduciary duties of due care and loyalty imposed by ERISA § 404, 29 U.S.C. § 1104 (/statute/29-usc-1104-fiduciary-duties), and ERISA § 406, 29 U.S.C. § 1106 (/statute/29-usc-1106-prohibited-transactions); and (5) declaratory relief related to United's failures to provide "full and fair" reviews of submitted claims and to supply certain plan documents upon request. *See* AC ¶¶ 91-148.

The remaining six claims arise under the non-ERISA plans and New York statutory and common law: (6) breach of non-ERISA plans based on under-reimbursing or wrongly denying insurance claims owed under those plans; (7) breach of the covenant of good faith and fair *7 dealing implied in the non-ERISA plans based on bad-faith under-reimbursements and imposition of the "audit"; (8) unjust enrichment based on accepting higher premiums from patients seeking out-of-network coverage while refusing to reimburse Plaintiffs' claims on an out-of-network basis; (9) violation of New York General Business Law § 349 (/statute/ny-gen-bus-law-349-deceptive-acts-and-practices-unlawful) based on the same conduct underlying the unjust enrichment claim and on failure to disclose the data and methodology used to under-reimburse Plaintiffs; (10) violation of New York Insurance Law § 3224-a, for failing to promptly reimburse claims

within forty-five days; and (11) tortious interference with prospective economic advantage based on falsely telling patients and hospitals that Plaintiffs were improperly, fraudulent, and criminally block billing. *See id.* ¶¶ 149-205.[4] (/case /mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390739968)

> The Court has subject matter jurisdiction over Plaintiffs' ERISA claims pursuant to 28 U.S.C. § 1331 (/statute/28-usc-1331-federal-question) and 29 U.S.C. § 1332(e)(1). As will be explained below, some of Plaintiffs federal claims under ERISA survive United's motion to dismiss. Therefore, the Court will exercise its supplemental jurisdiction over Plaintiffs' New York statutory and common law claims, at least at this stage of the litigation, because those claims are factually intertwined with the federal ERISA claims. *See* 28 U.S.C. § 1367 (/statute/28-usc-1367-supplemental-jurisdiction); *Breeze Const. Inc. v. CGU Ins. Co.*, No. 03 Civ. 2452 (VVP), 2010 WL 475107, at *4 (E.D.N.Y. Feb. 5, 2010).

United filed its motion to dismiss on December 18, 2015. (Doc. 40). Plaintiffs cross-moved for leave to file a second amended complaint on January 22, 2016. (Doc. 48).

## II. LEGAL STANDARD

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must take the allegations of the complaint to be true and "draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt*, 79 F.3d 318, 321 (/case/bernheim-v-litt#p321) (2d Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (/case/ashcroft-v-iqbal-4#p678) (2009) (citation and internal quotation marks omitted). A plaintiff must make sufficient factual allegations to show "more than a

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...        https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-01807-VLB   Document 130-2   Filed 10/30/17   Page 9 of 40
Case 3:16-cv-00872-VLB   Document 134-2   Filed 12/18/17   Page 9 of 40

sheer possibility that a defendant has acted unlawfully." *Id.*
at 678. A claim is facially plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct al-
leged." *Id.* (citation omitted).

# III. DISCUSSION

# A. Assignment Challenges

### 1. *Valid Assignments*

United contends that Plaintiffs cannot maintain a cause of
action for its first eight claims absent a valid assignment of
adequate scope from patients themselves. Defendants' Mem-
orandum of Law ("Def. Br.") (Doc. 45) at 1-2.[5] (/case/mbody-
minimally-invasive-surgery-pc-v-united-healthcare-
ins-co#idm140265390732112) United challenges the validity
and scope of the assignments alleged for both the ERISA
Plans and the non-ERISA Plans.

> United concedes that Plaintiffs can assert the ninth,
> tenth, and eleventh claims under New York statu-
> tory and common law without assignments. *See* Def.
> Br. at 1.

### (a) ERISA Plans

With respect to Plaintiffs' first five claims under ERISA, the
statute authorizes only certain parties to bring suit. "Section
502(a)(1)(B) limits the class of individuals who can sue to
recover benefits due, enforce rights, or clarify rights to fu-
ture benefits to those individuals who are 'participants' or
'beneficiaries' of a benefits plan." *Simon v. Gen. Elec. Co.*, 263
F.3d 176, 176 (/case/simon-v-general-elec-co#p176) (2d Cir.
2001) (per curiam). "Section 502(a)(3) unambiguously pro-
vides that a civil action under ERISA may be brought 'by a
participant, beneficiary, or fiduciary.'" *Am. Psychiatric Ass'n v.
Anthem Health Plans, Inc.*, 821 F.3d 352, 360 (/case/am-psychi-
atric-assn-v-anthem-health-plans-inc#p360) (2d Cir. 2016)

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-06972-VLB  Document 120-2  Filed 12/30/16  Page 10 of 40
Case 3:16-cv-06972-VLB  Document 134-2  Filed 12/16/16  Page 10 of 40

(quoting 29 U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-en-forcement)). Likewise, ERISA fiduciaries must discharge their duties "solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1) (/statute/29-usc-1104-fiduciary-duties).[6] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390726464) *9

> Under ERISA, a "beneficiary" is defined as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become enti-tled to a benefit thereunder." 29 U.S.C. § 1002(8) (/statute/29-usc-1002-definitions). A "participant" is defined as "any employee or former employee...who is or may become eligible to receive a benefit of any type from an employee benefit plan...." *Id.* § 1002(7).

As Plaintiffs seem to concede, "[h]ealthcare providers are not beneficiaries or participants under ERISA." *Mbody Mini-mally Invasive Surgery, P.C. v. Empire Healthchoice Hmo, Inc.* ("*MBody II*"), No. 13 Civ. 6551 (DLC), 2016 WL 2939164, at *3 (S.D.N.Y. May 19, 2016) (citing *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257-58 (/case/henry-l-rojas-md-mitchell-k-rosen-md-hl-rojas-md-pc-v-cigna-health-life-ins-co#p257) (2d Cir. 2015)); *see also Am. Psychiatric Ass'n*, 821 F.3d at 360. In the Second Circuit, however, physi-cians are allowed "to bring claims under § 502(a) based on a valid assignment from a patient." *Am. Psychiatric Ass'n*, 821 F.3d at 361 (citing *I.V. Servs. of Am., Inc. v. Trs. of Am. Consult-ing Eng'rs Council Ins. Tr. Fund*, 136 F.3d 114, 117 (/case/iv-serv-v-trustees-of-am-consulting-eng#p117) n.2 (2d Cir. 1998)); *see also Simon*, 263 F.3d at 177-78 (/case/simon-v-gen-eral-elec-co#p177). Thus, whether Plaintiffs can maintain their ERISA causes of action turns on whether they received valid, enforceable assignments from their patients enrolled in ERISA Plans.[7] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390714224)

> United frequently refers to this issue as whether Plaintiffs have "standing" to bring ERISA claims. As

the Second Circuit recently clarified, however, the question of whether a healthcare provider can sue under ERISA by virtue of an assignment is more properly framed as whether the provider can state a cause of action. *Am. Psychiatric Ass'n*, 821 F.3d at 359-61. There is no question that Plaintiffs have Article III standing based on their individualized financial stakes in the outcome of this litigation. *See id.* at 359.

"Assuming an ERISA plan does not dictate the form of a valid assignment or bar assignment altogether, a court may draw upon federal common law in assessing whether any purported assignment was effective." *MBody II*, 2016 WL 2939164, at *4 (citing *Rojas*, 793 F.3d at 258-59 (/case/henry-l-rojas-md-mitchell-k-rosen-md-hl-rojas-md-pc-v-cigna-health-life-ins-co#p258); *I.V. Servs. of Am.*, 136 F.3d at 117 (/case/iv-serv-v-trustees-of-am-consulting-eng#p117)    n.2). "Not all ERISA assignments convey the same rights. For example, an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty." *Rojas*, 793 F.3d at 258 (/case/henry-l-rojas-md-mitchell-k-rosen-md-hl-rojas-md-pc-v-cigna-health-life-ins-co#p258) (citation omitted). United contends that the assignments that Plaintiffs alleged to have received apply only to benefit determinations, but as alleged, the plain language of those assignments states otherwise, authorizing Plaintiffs to represent patients "in connection with *any* claim, right, or cause in action including litigation against my health plan...that I may have under such insurance [10] policy and/or benefit plan." AC ¶ 75 (emphasis added); *see also id.* ("I hereby assign all applicable health insurance benefits *and all rights and obligations that I and my dependents have under my health plan....*") (emphasis added). Plaintiffs allege that such assignments were conferred in exchange for health services for all of the claims on the list of Assigned Claims. *See id.* ¶ 76, App'x A. Leaving aside the possibility that the plans at issue prohibit assignments, which is discussed below,

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00672-VLB   Document 120-5   Filed 12/30/16   Page 12 of 40
Case 3:16-cv-00672-VLB   Document 34-5   Filed 12/16/16   Page 12 of 40

⋮

Plaintiffs' allegations are sufficient at this early pleading stage to establish an effective assignment that permits Plaintiffs to proceed on these causes of action, although to ultimately prevail Plaintiffs will have to set forth actual proof that patients in fact signed such assignments in exchange for provided health services. *See Am. Psychiatric Ass'n*, 821 F.3d at 361-62 ("[F]or purposes of conferring an ERISA cause of action upon a provider, an assignment to a provider must be made in exchange for consideration, in the form of the provision of healthcare services....[S]imply asserting that claims...have been assigned...is insufficient by itself to give [a provider]...a cause of action under the statute.").

(b) Non-ERISA Plans

The parties again agree that Plaintiffs cannot maintain their two breach of contract claims (the sixth and seventh claims) absent valid and enforceable assignments from patients.[8] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390704608)

> They disagree as to whether a valid assignment is required for the eighth claim for unjust enrichment. But since the Court is dismissing this claim on substantive grounds, *see infra* III.B.6, it need not address the necessity of an assignment.

"Under New York law, contracts are freely assignable absent language which expressly prohibits assignment." *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 494 (/case/in-re-refco-inc-securities-litigation-3#p494) (S.D.N.Y. 2011) (citation omitted). "Under New York law '[n]o particular words are necessary to effect an assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned.'" *11 MBody II*, 2016 WL 2939164, at *4 (quoting *Condren, Walker & Co. v. Portnoy*, 48 A.D.3d 331, 331 (/case/walker-v-portnoy#p331) (N.Y. App. Div. 2008)). "Once a valid assignment is made, 'an assignee steps

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00872-VLB    Document 120-2    Filed 12/30/16    Page 13 of 40
Case 3:16-cv-00872-VLB    Document 54-5    Filed 12/16/16    Page 13 of 40

into the assignor's shoes and acquires whatever rights the latter had.'" *Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, No. 07 Civ. 2514 (JS), 2013 WL 752259, at *6 (E.D.N.Y. Feb. 26, 2013) (quoting *Furlong v. Shalala*, 156 F.3d 384, 392 (/case/furlong-v-shalala#p392) (2d Cir. 1998)).

Plaintiffs allege that they received the same broad assignments for all Assigned Claims brought under non-ERISA plans. *See* AC ¶¶ 75-76, 151-52, 160. United make no challenge to the meaning or scope of these alleged assignment provisions. *Cf.* Def. Br. at 19-20. Based on these allegations, Plaintiffs are permitted to step into the shoes of their patients and maintain breach-of-contract actions arising under the non-ERISA plans. Once again, Plaintiffs will eventually have to proffer evidence that such assignments were in fact executed in order to prevail on their contract claims.

2. *Anti-Assignment Provisions*

In support of its motion to dismiss, United submitted documents that it represents to be the contractual ERISA Plans and non-ERISA Plans governing the various Assigned Claims that Plaintiffs listed in the appendix to the Amended Complaint. *See* Declaration of Ngoc Han S. Nguyen ("Nguyen Decl.") (Doc. 41). The reason is that United argues that all of these plans contain unambiguous anti-assignment clauses that nullify the assignments Plaintiffs allegedly received from patients. *See* Def. Br. at 9; *id.* at App'x (listing various anti-assignment clauses). Absent valid assignments, United argues, all of Plaintiffs' ERISA claims and New York contract claims must be dismissed for failure to state a cause of action.

Under federal common law, which governs construction of the ERISA Plans, unambiguous anti-assignment clauses serve to void patients' assignments of benefits and other *12 legal obligations under ERISA. *See Merrick v. UnitedHealth Grp. Inc.*, No. 14 Civ. 8071 (ER), 2016 WL 1229616, at *5-6

(S.D.N.Y. Mar. 25, 2016); *accord MBody II*, 2016 WL 3939164, at *4 ("Where ERISA plan language unambiguously prohibits assignment..., an attempted assignment will be ineffectual.") (citations omitted); *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351-52 (/case/neu-roaxis-neurosurgical-assocs-pc-v-costco-wholesale-co#p351) (S.D.N.Y. 2013) ("[W]here plan language unambiguously prohibits assignment, an attempted assignment will be ineffectual. Thus, a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA.") (citations omitted).

The rule is somewhat stricter under New York law, which governs the non-ERISA Plans. In New York, "an assignment is valid even where an agreement generally prohibits assignment, unless the agreement specifies that an assignment 'would be invalid or void.'" *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 226 (/case/mosdos-chofetz-chaim-inc-v-rbs-citizens-na#p226) (S.D.N.Y. 2014) (quoting *Purchase Partners, LLC v. Carver Fed. Sav. Bank*, 914 F. Supp. 2d 480, 505 (/case/purchase-partners-llc-v-carver-fed-sav-bank#p505) (S.D.N.Y. 2012)). New York thus recognizes a distinction between (i) "merely a personal covenant against assignments," the violation of which does not void the assignment itself but only gives rise to an action for damages against the assignor, and (ii) an "express provision□ that any assignment shall be void or invalid if not made in a certain specified way," the violation of which in fact serves to void the assignment. *Id.* (citations and internal quotation marks omitted). Assignments "made in contravention of a prohibition clause in a contract are void," therefore, *only if* "the contract contains clear, definite and appropriate language declaring the invalidity of such assignments." *Id.* (quoting *Sullivan v. Int'l Fid. Ins. Co.*, 96 A.D.2d 555, 556 (/case/sullivan-v-international-fidelity-ins-co#p556) (N.Y. App. Div. 1983)) (internal quotation marks omitted). *13

Plaintiffs maintain that the Court cannot rule on any purported anti-assignment clauses because it is not clear "that the documents proffered by United constitute the enforceable governing documents" for the plans at issue here. Plaintiffs' Memorandum of Law ("Pl. Br.") (Doc. 49) at 10 ("[I]t remains an open question of fact as to whether the contracts attached [by United] constitute the sole and complete governing documents for the relevant United Plans.").

A district court ruling on a Rule 12(b)(6) motion is ordinarily confined to the four corners of the complaint, any documents appended to it or incorporated by reference, and public documents amenable to judicial notice. *See, e.g., Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (/case/leonard-f-v-israel-discount-bank-of-new-york#p107) (2d Cir. 1999). "Additionally, even if not attached or incorporated by reference, a document upon which the complaint 'solely relies and which is integral to the complaint may be considered by the court in ruling on such a motion.'" *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 414 (/case/barberan-v-nation-point#p414) (S.D.N.Y. 2010) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (/case/roth-v-jennings-3#p509) (2d Cir. 2007)); *see also Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (/case/holowecki-v-federal-exp-corp-3#p565) (2d Cir. 2006), *aff'd*, 552 U.S. 389 (/case/federal-express-corp-v-holowecki-2) (2008). However, as the Second Circuit instructs, "[e]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (/case/difolco-v-msnbc-cable-llc-2#p111) (2d Cir. 2010) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (/case/faulkner-v-beer#p134) (2d Cir. 2006)).

Plaintiffs' objection to the authenticity or completeness of the plan documents submitted is charitably described as implausible.[9]    (/case/mbody-minimally-invasive-surgery-

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00872-VLB    Document 120-2    Filed 12/30/16    Page 16 of 40
Case 3:16-cv-00872-VLB    Document 34-5    Filed 12/16/16    Page 16 of 40

pc-v-united-healthcare-ins-co#idm140265390662320), None-theless, the requirement that there be "no dispute" about the authenticity of documents "integral" to the complaint "has been interpreted strictly: even implicit, conclusory, contra-dictory, or implausible objections to the authenticity or ac-curacy *14 of a document render consideration impermissi-ble." *UPS Store, Inc. v. Hagan*, 99 F. Supp. 3d 426, 435 (/case /ups-store-inc-v-hagan#p435) (S.D.N.Y. 2015) (quoting *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 221 (/case/fine-v-espn-inc-1#p221) (N.D.N.Y. 2014) (collecting cases)). Thus, though Plaintiffs may eventually face an impenetrable obsta-cle once the actual, complete plans are produced in discov-ery, their challenge to the authenticity of the documents put in by United—even if "dubious" or "questionable"—pre-cludes the Court from considering the factual existence of anti-assignment clauses on this motion to dismiss. *See id.* (declining to consider purportedly integral documents based on plaintiff's "dubious" authenticity challenge); *Barberan*, 706 F. Supp. 2d at 415-16 (/case/barberan-v-nation-point#p415) & n.4 (S.D.N.Y. 2010) (same, even where plain-tiff's authenticity objections were "less than genuine" and of "questionable viability").[10] (/case/mbody-minimally-inva-sive-surgery-pc-v-united-healthcare-ins-co#idm140265390662064)

> Though notably, Plaintiffs allege in the Amended Complaint that United repeatedly failed to provide plan documents prior to the initiation of this law-suit, so it should not come as a complete surprise that Plaintiffs are skeptical of United's sudden will-ingness to proffer plan documents solely in order to support a motion to dismiss.
>
> For the same reason, the Court cannot at this time resolve the issue of whether Plaintiffs' benefit claims are barred to the extent they arise under plans that authorize only payment of in-network services. *See* Def. Br. at 13. In addition, since the Court cannot determine whether the plans at issue contained anti-assignment clauses, it need not reach whether United has waived reliance on those

clauses by virtue of its conduct vis-à-vis Plaintiffs, at least for the time being. *See* Pl. Br. at 11-14. It should be noted, however, that United will not be found to have waived anti-assignment clauses by directly paying claims to Plaintiffs if the underlying plans expressly permitted such direct payments. *See Merrick*, 2016 WL 1229616, at *8; *Mbody Minimally Invasive Surgery, P. C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551 (TPG), 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions.") (citing *Neuroaxis*, 919 F. Supp. 2d at 355-56 (/case/neuroaxis-neurosurgical-assocs-pc-v-costco-wholesale-co#p355)), *reconsideration denied*, 2015 WL 798082 (S.D.N.Y. Feb. 25, 2015). Nor will communications from United to Plaintiffs regarding supporting documentation and reimbursements be found to waive anti-assignment provisions, if that conduct suggests United was merely dealing with Plaintiffs as providers to whom direct payments could be made at United's discretion under express terms of a given health insurance plan. *See Merrick*, 2016 WL 1229616, at *9. Finally, the Court also declines at this juncture to address Plaintiffs' alternative theory that assignments are not strictly necessary for any of the claims brought here so long as Plaintiffs were properly appointed as "authorized representatives" of their patients pursuant to 29 C.F.R. § 2560.503-1(b)(4). *See* Pl. Br. at 9; *but see MBody II*, 2016 WL 2939164, at *6 (rejecting this theory as indistinguishable from plaintiffs' assignment theory).

# B. Substantive Challenges

Beyond its objection to Plaintiffs' status as valid assignees, United asserts various substantive challenges to Plaintiffs' claims, arguing that they fail as a matter of law. As further explained, some of these challenges fail, but some are meritorious, and the corresponding claims are thus dismissed for failure to state a claim for relief. [15]

## 1. First and Sixth Claims

United's only challenge to these two claims rely on the existence of anti-assignment provisions that invalidate the alleged assignments from patients to Plaintiffs. The motion to

dismiss these two claims is therefore denied.

Mbody Minimally Invasive Su…   •   14 Civ. 2495   **19**   (ER)

### 2. *Second Claim*

Plaintiffs' second claim seeks equitable relief to redress pro-cedural violations arising from United's imposition of the "audit" and its demand of refunds for purported overpay-ments. *See* AC ¶¶ 103-06. According to Plaintiffs, United's failure to give notice explaining the specific basis for its blanket denials of all submitted claims and its refund de-mands failed to comply with ERISA § 503, the statutory re-quirement that beneficiaries receive adequate notice in writ-ing when claims are denied and a "full and fair review" of those denials. *See* 29 U.S.C. § 1133 (/statute/29-usc-1133-claims-procedure). Plaintiffs bring the claim pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-enforcement).[11] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390655264)

> ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-enforcement), states: "A civil ac-tion may be brought...by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]"

United first argues in essence that no private right of action exists under ERISA § 502(a)(3) for violations of ERISA § 503. *See* Def. Br. at 14; Defendants' Reply Memorandum of Law ("Def. Rep.") (Doc. 52) at 6. That is belied by the plain terms of § 502(a)(3), which provides that a civil action may be brought by a beneficiary to enjoin and seek equitable relief for "any act or practice which violates *any provision of this subchapter.*" 29 U.S.C. § 1132(a)(3) (/statute/29-usc-1132-civil-enforcement) (emphasis added). The argument is also non-sensical in light of the remedial provision included in the

Mbody Minimally Invasive Sur...    •    14 Civ. 2495, 19 (LR)

regulation implementing § 503. *See* 29 C.F.R. § 2560.503-1(l) (providing that, where a plan fails to provide full and fair review, a claimant "shall be entitled to pursue any available remedies under section 502(a) of the Act"). Indeed, it is well established that, to the extent \*16 Plaintiffs seek equitable relief (and not monetary relief), an ERISA § 502(a)(3) claim may lie for violations of ERISA § 503. *See, e.g., Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.* ("*MBody*"), No. 13 Civ. 6551 (TPG), 2014 WL 4058321, at \*4 (S.D.N.Y. Aug. 15, 2014) ("[C]ourts have recognized a plaintiff's right to sue under § 502(a)(3) to enforce the rights guaranteed under § 503.") (citation omitted), *reconsideration denied*, 2015 WL 798082 (S.D.N.Y. Feb. 25, 2015); *N. Cypress Med. Ctr. Operating Co. v. CIGNA Healthcare*, 782 F. Supp. 2d 294, 311-12 (/case/north-cypress-medical-center-v-cigna-healthcare#p311) (S.D. Tex. 2011) (denying motion to dismiss § 502(a)(3) claim alleging violations of § 503), *aff'd*, 781 F.3d 182 (/case/n-cypress-med-ctr-operating-co-v-cigna-health-care-1) (5th Cir. 2015); *Nahoun v. Employees' Pension Plan of Credit Suisse First Boston*, No. 04 Civ. 9221 (LAK), 2005 WL 1476453, at \*2 n.11 (S.D.N.Y. June 22, 2005) ("Section 503 of ERISA does not create a private right of action. Rather, [Plaintiff] must sue under Section 502(a)(3)...to enforce the rights guaranteed under Section 503."); *Magliulo v. Metro. Life Ins. Co.*, 208 F.R.D. 55, 58 (S.D.N.Y. 2002).[12] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390640336) The Amended Complaint purports to seek equitable relief for the second claim, and thus states a claim for relief under § 502(a)(3) for violations of § 503. *See* AC ¶ 106 (seeking "equitable relief—in this case, to avoid unjust enrichment, the return of funds recouped from the Plaintiffs"); *cf. N.Y. State Psychiatric Ass'n, Inc. v. United-Health Grp.*, 798 F.3d 125, 134 (/case/ny-state-psychiatric-assn-inc-v-unitedhealth-grp-uhc-ins-co-united-healthcare-ins-co-of-ny-united-behavioral-health#p134) (2d Cir.) (sug-

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00972-VLB   Document 120-2   Filed 12/30/16   Page 20 of 40
Case 3:16-cv-00972-VLB   Document 134-5   Filed 12/30/16   Page 20 of 40

Mbody Minimally Invasive Su...    14 Civ. 2495, **19** (ER)

gesting that an injunction coupled with a "monetary com-
pensation" to "prevent the [fiduciary's] unjust enrichment"
may constitute equitable relief under § 502(a)(3)), *cert. de-
nied sub nom. UnitedHealth Grp., Inc. v. Denbo*, 136 S. Ct. 506,
193 L. Ed. 2d 397 (2015).[13] (/case/mbody-minimally-invasive-
surgery-pc-v-united-healthcare-
ins-co#idm140265390633280) *17

> For this reason, United's reliance on *Krauss v. Ox-
> ford Health Plans, Inc.* in fact undercuts its position,
> because the case expressly contemplates the avail-
> ability of equitable relief—"typical[ly]...remand for
> further administrative review"—for violations of
> ERISA § 503's requirements. 517 F.3d 614, 630 (/case
> /krauss-v-oxford-health#p630) (2d Cir. 2008); *see
> also, e.g., Smith v. Champion Int'l Corp.*, 220 F. Supp.
> 2d 124, 129 (/case/smith-v-champion-international-
> corp#p129) (D. Conn. 2002) ("[T]he *usual* remedy
> for a violation of § 1133 would be equitable in na-
> ture, *such as* remanding plaintiffs' claims for bene-
> fits...for a 'full and fair' review.") (emphasis added).

> United tries to rely on the district court's decision
> in *New York State Psychiatric Association* to argue
> that ERISA § 502(a)(3) cannot be used to redress vi-
> olations of § 503. Def. Br. at 14. But the district court
> did not hold as such. Rather, the medical-provider
> plaintiff in that case failed to allege that the defen-
> dant was the proper "employee benefit plan" for any
> of her patients, and the district court held that the
> plaintiff could not simply couch her claim under §
> 502(a)(3) in order to avoid the fact that § 503 im-
> poses the "full and fair review" obligations only on
> the "employee benefit plan[s]" themselves. *See N.Y.
> State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 980
> F. Supp. 2d 527, 548-49 (/case/ny-state-psychiatric-
> assn-inc-v-unitedhealth-grp-uhc-ins-co-united-
> health-care-ins-co-of-ny#p548)    (S.D.N.Y.    2013)
> ("[V]iolations of her patients' procedural rights un-
> der ERISA....fall within the scope of the civil en-
> forcement mechanisms of ERISA § 502(a), and so
> are cognizable—provided, of course, they are as-
> serted against a proper party defendant."), *aff'd in
> part, vacated in part, remanded*, 798 F.3d 125 (/case
> /ny-state-psychiatric-assn-inc-v-unitedhealth-
> grp-uhc-ins-co-united-healthcare-ins-co-of-ny-
> united-behavioral-health) (2d Cir. 2015). There is no
> such issue in the Amended Complaint here. Simi-
> larly, United also tries to make much of the fact that

Mbody Minimally Invasive Su...    •    14 Civ. 2495 **19** (ER)

> the Second Circuit affirmed dismissal of the medi-
> cal provider's § 502(a)(3) claim. *See* Def. Rep. at 6.
> But that dismissal was not because § 502(a)(3) can-
> not ever be used by a medical provider with a valid
> assignment to redress her patient's procedural
> rights, as Plaintiffs imply. Rather, the Second Circuit
> dismissed because the plaintiff's allegations failed
> to provide a sufficient factual showing that made
> her claim for relief plausible. *See N.Y. State Psychi-
> atric Ass'n*, 798 F.3d at 135 (/case/ny-state-psychi-
> atric-assn-inc-v-unitedhealth-grp-uhc-ins-co-
> united-healthcare-ins-co-of-ny-united-behavioral-
> health#p135). Once again, that pleading issue is not
> present in this case. *See MBody II*, 2016 WL 2939164,
> at *7 (holding that the service date and balance
> owed for each claim is sufficient under Rule 8).

United's next argument—that Plaintiffs fail to state a claim
for relief because the audit was imposed on *their* billing prac-
tices and did not directly affect enrollees—is similarly un-
availing. *See* Def. Br. at 14. As Plaintiffs point out, there is
nothing in the regulations implementing ERISA § 503 to sug-
gest that they do not apply to benefit determinations of
claims submitted by assignee-medical providers. *See* Pl. Br. at
16 (citing 29 C.F.R. § 2560.503-1(m)(4) (defining "adverse
benefit determination")); *cf.* 29 C.F.R. § 2560.503-1(a) (apply-
ing to benefit claims submitted by "beneficiaries"). And
tellingly, United cites to no supporting authority, and makes
no specific response to Plaintiffs' argument in its reply brief.
*See* Def. Rep. at 6.[14] (/case/mbody-minimally-invasive-
surgery-pc-v-united-healthcare-
ins-co#idm140265390628432)

> Furthermore, case law outside this district strongly
> suggests that United's position is wrong. *Cf. Grasso
> Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033,
> 1039     (/case/grasso-enters-llc-v-express-scripts-
> inc#p1039) (8th Cir. 2016); *Hahnemann Univ. Hosp.
> v. All Shore, Inc.*, 514 F.3d 300, 308 (/case/hahne-
> mann-univ-v-all-shore#p308) n.5 (3d Cir. 2008);
> *Principal Mut. Life Ins. Co. v. Charter Barclay Hosp.,
> Inc.*, 81 F.3d 53, 55-56 (/case/principal-mutual-life-v-
> charter-barclay-hosp#p55) (7th Cir. 1996); *Care First
> Surgical Ctr. v. ILWU-PMA Welfare Plan*, No. 14 Civ.
> 01480 (MMM), 2014 WL 6603761, at *9-10 (C.D. Cal.

The Court also rejects United's argument that the equitable relief sought by Plaintiff is duplicative of the first claim for benefits brought under § 502(a)(1)(B), at least at this stage. Def. Br. at 15. While Plaintiffs may not ultimately have a remedy under ERISA § 503, they undoubtedly have a cause of action (assuming a valid assignment), and "it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide [Plaintiffs] a sufficient remedy." *N.Y. State Psychiatric Ass'n*, 798 F.3d at 134 (/case/ny-state-psychiatric-assn-inc-v-unitedhealth-grp-uhc-ins-co-united-healthcare-ins-co-of-ny-united-behavioral-health#p134) ("[I]t is *18 too early to tell if his claims under § 502(a)(3) are in effect repackaged claims under § 502(a)(1)(B)."); *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800 (LMM), 2002 WL 31413668, at *7 (S.D.N.Y. Oct. 23, 2002), *on reconsideration*, 2003 WL 348963 (S.D.N.Y. Feb. 7, 2003).

Since the Amended Complaint plausibly alleges violations of ERISA § 503 and its implementing regulations, United's motion to dismiss the second claim for relief is denied.

3. *Third Claim*

Plaintiffs third claim seeks statutory penalties under ERISA § 502(c), 29 U.S.C. § 1132(c) (/statute/29-usc-1132-civil-enforcement), for United's failure to comply with § 503's "full and fair review" requirements, AC ¶¶ 107-27, and for United's failure to provide certain plan documents to Plaintiffs upon written request pursuant to 29 U.S.C. § 1021(a)(1) (/statute/29-usc-1021-duty-of-disclosure-and-reporting)-(2) and § 1024(b)(4), AC ¶ 128.

The Second Circuit recently held that "a participant or beneficiary is not entitled to civil penalties for a plan's failure to comply with the claims-procedure regulation" implementing

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00072-VLB    Document 120-2    Filed 12/30/16    Page 23 of 40
Case 3:16-cv-00072-VLB    Document 134-5    Filed 12/16/16    Page 23 of 40

ERISA § 503. *See Halo v. Yale Health Plan, Dir. of Benefits &
Records Yale Univ.*, 819 F.3d 42, 58-61 (/case/halo-v-yale-
health-plan-4#p58) (2d Cir. 2016). Accordingly, the third
claim is dismissed to the extent it seeks penalties for ERISA
§ 503 violations. *See id.*; *Sullivan-Mestecky v. Verizon Commc'ns
Inc.*, No. 14 Civ. 1835 (SJF), 2016 WL 3676434, at *23 (E.D.N.Y.
July 7, 2016).

The Amended Complaint does, however, adequately plead a
claim for civil penalties based on United's failure to respond
to Plaintiffs' request for Summary Plan Descriptions and
other documents required to be furnished under 29 U.S.C. §
1024(b)(1)        (/statute/29-usc-1024-filing-with-secretary-
and-furnishing-information-to-participants-and-certain-em-
ployers) & (b)(4). *See* AC ¶ 128. "The imposition of penalties
for violating [§ 1024(b)(4)] is left to the discretion of the dis-
trict court." *LaVigna v. State Farm Mut. Auto. Ins. Co.*, 736 F.
Supp. 2d 504, 515 (/case/lavigna-v-state-farm-mutual-auto-
mobile-insurance-co#p515) (N.D.N.Y. 2010) (quoting *Mc-
Donald v. Pension Plan of NYSA-ILA Pension Tr. Fund*, 320 F.3d
151, 163 (/case/mcdonald-v-pension-plan-of-nysa-ila#p163)
(2d Cir. \*19 2003) (internal quotation marks omitted). "An
award of penalties and the amount of those penalties depend
on five factors: '(1) the administrator's bad faith or inten-
tional conduct; (2) the length of the delay; (3) the number of
requests made; (4) the extent and importance of the docu-
ments withheld; and (5) the existence of any prejudice to the
participant or beneficiary.'" *Campanella v. Mason Tenders'
Dist. Council Pension Plan*, 299 F. Supp. 2d 274, 293 (/case
/campanella-v-mason-tenders-district-council#p293)
(S.D.N.Y. 2004) (quoting *McDonald*, 320 F.3d at 163 (/case
/mcdonald-v-pension-plan-of-nysa-ila#p163)), *aff'd*, 132 F.
App'x 855 (2d Cir. 2005). These are factual questions that are
not resolvable on a motion to dismiss, but Plaintiffs' allega-
tions make it at least plausible that penalties could be appro-
priate here. *See Sullivan-Mestecky*, 2016 WL 3676434, at *22.[15]

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00972-VLB   Document 120-2   Filed 12/30/17   Page 24 of 40
Case 3:16-cv-00972-VLB   Document 134-5   Filed 12/16/16   Page 24 of 40

(/case/mbody-minimally-invasive-surgery-pc-v-united-
healthcare-ins-co#idm140265390608272) United's motion to
dismiss the third claim is thus denied as to penalties avail-
able for violations of 29 U.S.C. § 1024 (/statute/29-usc-
1024-filing-with-secretary-and-furnishing-information-
to-participants-and-certain-employers).

> The same is true of United's factual contention that
> no penalties can be levied against any of the individ-
> ual defendant-entities because none of them was a
> "Plan Administrator." *See* 29 U.S.C. § 1132(c)(1)
> (/statute/29-usc-1132-civil-enforcement) (authoriz-
> ing civil penalties only against the "administrator");
> *Curran v. Aetna Life Ins. Co.*, No. 13 Civ. 00289
> (NSR), 2013 WL 6049121, at *3 (S.D.N.Y. Nov. 15,
> 2013) ("The text of the statute makes it clear that
> sanctions under § 1332(c) may be imposed only
> against a plan *administrator....*"). Plaintiffs allege
> that United was the administrator of the plans at is-
> sue based on its control and discretion over the
> plan assets. AC ¶¶ 25-27, 121. United relies on extrin-
> sic documents to rebut this factual contention. *See*
> Def. Rep. at 7, App'x (listing plan administrators of
> submitted plans). As already explained, the Court
> cannot consider these documents or United's fac-
> tual representations on this motion.

### 4. *Fourth Claim*

Plaintiffs' fourth claim alleges that United breached its fidu-
ciary duties of loyalty and due care by using "improper pric-
ing methods to make payment determinations," underpaying
or denying Plaintiffs' submitted claims, and failing to inform
enrollees of the methodologies used for calculating reim-
bursement rates and payment reductions or denials. *See* AC
¶¶ 135-36.

In relevant part, ERISA § 404 requires ERISA fiduciaries to
discharge its duties "for the exclusive purpose" of "providing
benefits to participants and their beneficiaries," "with the
care, skill, prudence, and diligence" that a "prudent" person
would use under like circumstances, and "in accordance with
the documents and instruments governing the plan insofar
as such *20 documents and instruments are consistent with

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00872-VLB    Document 120-2    Filed 12/30/16    Page 25 of 40
Case 3:16-cv-00872-VLB    Document 134-5    Filed 12/16/16    Page 25 of 40

the provisions of this subchapter and subchapter III of this chapter." *See* 29 U.S.C. § 1104(a)(1)(A)(i) (/statute/29-usc-1104-fiduciary-duties), (B) & (D).

Plaintiffs sufficiently allege a breach of the duty of due care under ERISA § 404. Specifically, it is at least plausible that the United's allegedly inconsistent, "arbitrary," and "haphazard" methods of underpricing Plaintiffs' submitted claims, and the failure to disclose those methods when used to reduce payments, does not constitute the type of conduct a prudent fiduciary would exercise in similar circumstances. *See* AC ¶¶ 55-61, 135-36; *cf. Bilello v. JPMorgan Chase Ret. Plan*, 649 F. Supp. 2d 142, 165-66 (/case/bilello-v-jpmorgan-chase-retirement-plan#p165) (S.D.N.Y. 2009) (discussing ERISA fiduciary's disclosure obligations). To defeat this claim, United argues only that it cannot be held liable for a breach of the duty of care so long as it "complied with the express terms of the governing health benefit plans." United Br. at 18. Given Plaintiffs' allegations, however, such compliance is an open factual question not resolvable on this motion.[16] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265390599952) Thus, to the extent Plaintiffs seek equitable relief to align United's claims processing with the standard of care required by ERISA § 404, the Amended Complaint adequately states a claim for relief. Once again, however, given both the present lack of claim-specific details bolstering these allegations and the potential overlap among the first, second, and fourth claims, the Court reiterates that it is only holding that Plaintiffs have sufficiently alleged a claim for relief at this juncture, not that there will remain a unique remedy for the fourth claim at the end of the day. *See N.Y. State Psychiatric Ass'n*, 798 F.3d at 134 (/case/ny-state-psychiatric-assn-inc-v-unitedhealth-grp-uhc-ins-co-united-healthcare-ins-co-of-ny-united-behavioral-health#p134); *Bilello*, 649 F. Supp. 2d at 166 (/case/bilello-v-jpmorgan-chase-retirement-plan#p166) ("The Second Circuit...has

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...     https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00672-VLB   Document 120-2   Filed 12/30/16   Page 26 of 40
Case 3:16-cv-00672-VLB   Document 134-2   Filed 12/16/16   Page 26 of 40

Mbody Minimally Invasive Su...     •     1:14-Civ. 2495, **19** (LER)

ruled that claims for breach of fiduciary duty may be brought even when the same facts give rise *21 to other claims for relief.") (citing *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (/case/devlin-v-empire-blue-cross-and-blue-shield#p89) (2d Cir. 2001)); *Am. Med. Ass'n*, 2002 WL 31413668, at *7.

> United cites *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18 (/case/harris-trust-and-sav-bank-v-john-hancock-mut-2) (2d Cir. 2002), in an attempt to assert the principle that an insurer's compliance with an ERISA plan categorically bars breach of fiduciary duty claims. *See* Def. Br. at 18. But the Second Circuit expressly stated that nothing in the plan at issue in that case was "inconsistent with ERISA's fiduciary duty obligations." 302 F.3d at 29 (/case/harris-trust-and-sav-bank-v-john-hancock-mut-2#p29). That is an open issue here that the Court cannot yet resolve.

ERISA § 406 categorically prohibits conflicted and self-dealing transactions between the plan and statutorily defined parties-in-interest, and between the plan and its fiduciaries. *See* 29 U.S.C. § 1106 (/statute/29-usc-1106-prohibited-transactions); *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (/case/henry-v-champlain-enterprises-inc#p618) (2d Cir. 2006) ("Section 406 of ERISA supplements the general fiduciary obligations set forth in § 404 by prohibiting certain categories of transactions believed to pose a high risk of fiduciary self-dealing."); *Harris Tr. & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 26 (/case/harris-trust-and-sav-bank-v-john-hancock-mut-2#p26) (2d Cir. 2002) ("The prohibition against self-dealing provides that '[a] fiduciary with respect to a plan shall not...deal with the assets of the plan in his own interest or for his own account.'") (quoting § 1106(b)(1)).

As currently pleaded, Plaintiffs' allegations do not state a claim for relief under ERISA § 406. Plaintiffs try to argue that their claim is "premised on United's alleged diversion" of plan benefits owed to enrollees, Pl. Br. at 19, but the Court

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00672-VLB   Document 120-2   Filed 12/30/16   Page 27 of 40
Case 3:16-cv-00672-VLB   Document 34-5   Filed 12/16/16   Page 27 of 40

agrees with United that mere descriptions of adverse benefit determinations do not plausibly allege "money being diverted *to United*, when the unpaid benefits remain in the employees' self-funded trust," Def. Br. at 17 (emphasis added). Put another way, it is not clear how wrongful claim denials standing alone plausibly allege that United acted to enrich its own pockets or those of another party-in-interest. *See Bush v. Liberty Life Assurance Co. of Boston*, 130 F. Supp. 3d 1320, 1329 (/case/bush-v-liberty-life-assurance-co-of-bos-1#p1329) (N.D. Cal. 2015) ("The prohibited transactions statute is focused on misuse of plan assets or self-dealing by a fiduciary in connection with its supervisory role over the plan. A mere benefits denial determination is not the type of transaction this section was intended to address.") (citing *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100-01 (/case/wright-v-oregon-metallurgical-corp-2#p1100) (9th Cir. 2004)). Notably, Plaintiffs do not cite any case law to support such a claim. *See id.* ("[P]laintiff's interpretation —unsupported by any binding *22 authority directly on point—would transform any claim for an improper benefits denial by an insurer into a 'prohibited transaction.'").

The motion to dismiss Plaintiffs' fourth claim is denied as to the duty of due care claim brought under ERISA § 404. To the extent it seeks relief under ERISA § 406, however, the fourth claim is dismissed, with leave to replead to further clarify whether Plaintiffs intend to allege any actual prohibited transactions.

5. *Fifth Claim*

Plaintiffs' fifth claim seeks declaratory relief and remand to the relevant plan administrator of each case of under-reimbursement for essentially the same ERISA violations raised by the other claims—most notably, the failure to provide a "full and fair review" under ERISA § 503. *See* AC ¶¶ 137-48.

The motion to dismiss the fifth claim is denied, as United

Case 3:16-cv-00072-VLB   Document 120-2   Filed 10/30/17   Page 28 of 40

Mbody Minimally Invasive Su... • 14 Civ. 2495, **19** (2015)

concedes that the equitable remedy of remand is available via ERISA § 502(a)(3) for violations of ERISA § 503. *See* Def. Rep. at 6 (citing *Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 630 (/case/krauss-v-oxford-health#p630) (2d Cir. 2008)). To the extent declaratory relief would simply establish and explain the basis for the remand remedy, it too is available via ERISA § 502(a)(3). *Cf. N.Y. State Psychiatric Ass'n*, 798 F.3d at 135 (/case/ny-state-psychiatric-assn-inc-v-unitedhealth-grp-uhc-ins-co-united-healthcare-ins-co-of-ny-united-behavioral-health#p135) (noting that complementary declaratory and injunctive relief together resemble equitable relief available under § 502(a)(3)).

6. *Seventh Claim*

The seventh claim is for breach of the covenant of good faith and fair dealing that is implied in all contracts under New York law, including the non-ERISA plans. *See Kader v. Paper Software, Inc.*, 111 F.3d 337, 342 (/case/kader-v-paper-software-inc#p342) (2d Cir. 1997). "The covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of *23 the other party to receive the fruits of the contract." *Cty. of Orange v. Travelers Indem. Co.*, No. 13 Civ. 6790 (NSR), 2014 WL 1998240, at *2 (/case/cnty-of-orange-v-travelers-indem-co#p2) (S.D.N.Y. May 14, 2014) (citation and internal quotation marks omitted).

United argues that the claim should be dismissed as duplicative of Plaintiffs' sixth claim, which alleges breach of the non-ERISA plans based on United's underpayment or outright denial of claims. *See* Def. Br. at 20. The allegations constituting the seventh claim, however, sound in a broader course of conduct than basic claim denials, attacking United's procedural delays and obfuscation in processing Plaintiffs' claims via the "audit." *See* AC ¶¶ 157-67. It may end up that this seventh claim has no evidentiary basis beyond

Case 3:11-cv-01607-VLB   Document 120-2   Filed 12/30/16   Page 29 of 40

Mbody Minimally Invasive Su...   •   14 CV. 2495, 19 (JR)

violations of express terms of the non-ERISA plans, in which
case it will ultimately be dismissed as duplicative of the
breach of contract claim. *See Mbody*, 2014 WL 4058321, at *6
("[A] claim for breach of the covenant will be dismissed 'as
redundant where the conduct allegedly violating the implied
covenant is also the predicate for breach of covenant of an
express provision of the underlying contract.'") (quoting
*Usov v. Lazar*, No. 13 Civ. 818 (RWS), 2013 WL 3199652, at *6
(/case/usov-v-lazar#p6) (S.D.N.Y. June 25, 2013)). That de-
termination is premature at this stage of the proceedings,
however, and so United's motion to dismiss the seventh
claim is denied.

*7. Eighth Claim*

The eighth claim is for unjust enrichment, on the theory that
United is being enriched because it charges enrollees higher
premiums for out-of-network coverage and then intention-
ally refuses to fully reimburse claims submitted by their en-
rollees' out-of-network medical providers. *See AC* ¶¶ 168-80.

"To prevail on a claim for unjust enrichment in New York, a
plaintiff must establish 1) that the defendant benefitted; 2)
at the plaintiff's expense; and 3) that 'equity and good
conscience' require restitution." *Kaye v. Grossman*, 202 F.3d
611, 616 (/case/kaye-v-grossman#p616) (2d Cir. 2000) (quot-
ing *Dolmetta v. Uintah Nat'l Corp.*, 712 F.2d 15, 20 (/case/dol-
metta-v-uintah-nat-corp#p20) (2d Cir. 1983)). "This claim is
'not available where it simply duplicates, or replaces, a con-
ventional contract or tort claim.'" *Goldemberg v. Johnson &
Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 483 (/case
/goldemberg-v-johnson-johnson-consumer-cos#p483)
(S.D.N.Y. 2014) (quoting *Corsello v. Verizon N.Y., Inc.*, 967
N.E.2d 1177, 1185 (/case/corsello-v-verizon-ny-1#p1185) (N.Y.
2012)).

Plaintiffs' unjust enrichment claim fails for multiple reasons.
First, the connection between Plaintiffs' services and

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00872-VLB   Document 120-2   Filed 12/30/17   Page 30 of 40
Case 3:16-cv-00872-VLB   Document 34-5   Filed 12/16/16   Page 30 of 40

Mbody Minimally Invasive Su... • 14 CER. 2495, 19 (ER)

United's benefit is too tenuous, supported neither by case law on point nor sufficient factual allegations demonstrating how higher premiums and Plaintiffs' services combined to "create an equitable obligation running from the defendant to the plaintiff." *Goldemberg*, 8 F. Supp. 3d at 483 (/case /goldemberg-v-johnson-johnson-consumer-cos#p483) (citation and internal quotation marks omitted); *see also Mbody*, 2014 WL 4058321, at *7 (dismissing identical theory as "too tenuous"). Second, and more importantly, this claim is duplicative of Plaintiffs' breach of contract claim, because it would only be against "equity and good conscience" to permit United to keep the alleged benefits *if the denial of claims was wrongful under the various contracts at issue*. There is, in other words, no other way for the Court to assess United's obligations to cover out-of-network claims other than by reference to United's contractual obligations. *Cf.* AC ¶¶ 176-78 (referring to "fair[]" and "under" reimbursements and "covered" services). Plaintiffs' eighth claim is thus dismissed as duplicative. There is no way for Plaintiffs' to cure this defect, and thus dismissal of the eighth claim is with prejudice and without leave to amend.

### 8. *Ninth Claim*

Plaintiffs' ninth claim alleges deceptive business practices aimed at consumers in violation of New York General Business Law ("NY GBL") § 349, based on United's charging *25 higher premiums for out-of-network coverage and subsequent refusal to fully reimburse patients and providers for out-of-network services.

"A claim under Section 349 has three elements: (i) 'the challenged act or practice was consumer-oriented;' (ii) 'it was misleading in a material way'; and (iii) 'the plaintiff suffered injury as a result of the deceptive act.'" *Egleston v. The Valspar Corp.*, No. 15 Civ. 4130 (DLC), 2015 WL 6508329, at *6 (S.D.N.Y. Oct. 13, 2015) (quoting *Crawford v. Franklin Credit*

*Mgmt. Corp.*, 758 F.3d 473, 490 (/case/crawford-v-franklin-credit-mgmt-corp#p490) (2d Cir. 2014)). "To show that the challenged act or practice was consumer-oriented, a plaintiff must show that it had 'a broader impact on consumers at large': 'Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute....'" *Crawford*, 758 F.3d at 490 (/case/crawford-v-franklin-credit-mgmt-corp#p490) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (/case/pension-fund-v-marine-bank#p744) (N.Y. 1995)). "An insurance company's actions in settling a claim are not inherently consumer-oriented." *Greenspan v. Allstate Ins. Co.*, 937 F. Supp. 288, 294 (/case/greenspan-v-allstate-ins-co#p294) (S.D.N.Y. 1996) (citation omitted). "Therefore, to demonstrate the requisite consumer-oriented conduct in a dispute concerning coverage under an insurance policy, a plaintiff must establish facts showing injury or potential injury to the public...." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 65 (/case/wilson-v-northwestern-mut-ins-co#p65) (2d Cir. 2010).

Plaintiffs' claim fails on the first element. The allegations describe no conduct on United's part that is consumer-oriented in the sense required—Plaintiffs allege only that United wrongly classified *them* as in-network providers based on facts specific to Plaintiffs' prior contractual relationships. *See* AC ¶ 185 (alleging deceptive acts only by reference to non-ERISA plans and Plaintiffs at issue in this case). There are no factual allegations that United has a policy or practice of engaging in the same conduct vis-à-vis other medical providers or beneficiaries. The NY GBL § 349 claim is thus dismissed. *See, e.g., Euchner-USA, Inc. v.* *26 Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (/case/euchner-usa-inc-v-hartford-cas-ins-co#p143) (2d Cir. 2014) (dismissing § 349 claim because insurer did not engage in "deceptive practice raising public, consumer-oriented concerns"); *Wilson*, 625 F.3d at 65

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...          https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00072-VLB   Document 120-2   Filed 12/30/17   Page 32 of 40
Case 3:16-cv-00072-VLB   Document 124-2   Filed 12/30/17   Page 32 of 40

Mbody Minimally Invasive Su... • 14 CP-0 2895, **19** (EK) (dismissing § 349 claim based on insurance coverage dispute where plaintiff's allegations focused only on application of plans to plaintiff's individual "situation," and did not allege any systematic deceptive "policy"); *Josephson v. United Healthcare Corp.*, No. 11 Civ. 3665 (JS), 2012 WL 4511365, at *8 (E.D.N.Y. Sept. 28, 2012) (holding that "improprieties in calculating the rate" of reimbursement for medical services "are in the nature of a private dispute between Plaintiffs and Defendants that falls outside the scope of [§ 349]"), *on reconsideration in part*, 2013 WL 3863921 (E.D.N.Y. July 24, 2013). Plaintiffs are granted leave to replead because amendment may not be futile given new factual allegations describing a systematic practice or policy of wrongly treating out-of-network providers as in-network and under-reimbursing accordingly. *Cf. Binder v. Nat'l Life of Vt.*, No. 02 Civ. 6411 (GEL), 2003 WL 21180417, at *6 (S.D.N.Y. May 20, 2003) (permitting amendment of § 349 claim where plaintiff alleged insurers "not only wrongfully denied his claim, but that they have made a practice of doing so with other similar claims").

*9. Tenth Claim*

Plaintiffs next allege that United violated New York Insurance Law § 3224-a, which "requires prompt payment of any claim submitted on a standard form so long as the obligation to pay the claim is 'reasonably clear.'" *Beth Israel Med. Ctr. v. Goodman*, No. 12 Civ. 1689 (AJN), 2013 WL 1248622, at *4 (S.D.N.Y. Mar. 26, 2013). The statute generally requires prompt payment within forty-five days of claim submission. *See* § 3224-a(a). Plaintiffs allege that payments were not made within that timeframe. AC ¶ 197. *27

United first argues that Plaintiffs do not have a private right of action under § 3224-a, relying on *Med. Soc. of State of N.Y. v. Oxford Health Plans, Inc.*, 15 A.D.3d 206, 206 (/case/medical-society-of-state-v-oxford-health#p206) (N.Y. App. Div.

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-01897-VLB    Document 120-2    Filed 12/30/16    Page 33 of 40
Case 3:16-cv-00872-VLB    Document 34-5    Filed 12/16/16    Page 33 of 40

Mbody Minimally Invasive **Su**...   *...* 14 CW. 2495, **19** (LR)

2005). But as Plaintiffs rightly point out, that case held only that an association of medical providers could not bring a claim under § 3224-a where individual members were re-quired to arbitrate their claims and where there was no showing that the statute was enacted to benefit medical as-sociations—and notably, the court's language strongly sug-gested individual medical providers *did* have a cause of ac-tion. *See Med. Soc.*, 15 A.D.3d at 206 (*"Even if these statutes were enacted to benefit health care providers who contract with health insurers,* plaintiff has not shown that it—a medical as-sociation—is one of the class for whose particular benefit the statute[s] w[ere] enacted. It would be particularly incon-gruous to allow plaintiff to sue when its members, *assuming they have private rights of action,* have to arbitrate their claims against defendant.") (emphasis added) (citations and inter-nal quotation marks omitted). Contrary to United's position, health providers do have an implied private right of action under the statute. *See Mbody*, 2014 WL 4058321, at *8; *Joseph-son*, 2012 WL 4511365, at *6-7; *Maimonides Med. Ctr. v. First United Am. Life Ins. Co.*, 941 N.Y.S.2d 447, 452 (N.Y. Sup. Ct. 2012).

United next argues that Plaintiffs' own allegations show that the claims were not "reasonably clear" because there was a good faith dispute as to the amount owed to Plaintiffs. *See* Def. Br. at 24. § 3224-a(b) provides that a claim is not "rea-sonably clear" if there is a "good faith dispute regarding the eligibility of a person for coverage…, the amount of the claim, the benefits covered under a contract or agreement, or the manner in which services were accessed or provided." Whether United had a contemporaneous good-faith basis to process Plaintiffs' claims as it did is an open factual ques-tion. "Construing the complaint most favorably to the plain-tiff, the court interprets plaintiffs' allegations to state that the claims submitted were *28 'reasonably clear.'" Mbody*, 2014 WL 4058321, at *8. United's motion to dismiss the tenth

claim is denied. *Id.*

10. *Eleventh Claim*

Plaintiffs' final claim is for tortious interference with prospective economic advantage. "To state a claim for tortious interference with prospective economic advantage under New York law, the plaintiff must establish four elements: '(1) [that the plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Overseas Direct Imp. Co. v. Family Dollar Stores Inc.*, 929 F. Supp. 2d 296, 310 (/case/overseas-direct-import-co-v-family-dollar-stores-inc#p310) (S.D.N.Y. 2013) (quoting *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (/case/kirch-v-liberty-media-corp#p400) (2d Cir. 2006)).

Plaintiffs' allegations focus on United's allegedly false communications to patients that Dr. Gabriel was an in-network provider and committed fraud or a "crime" by balance billing, which Plaintiffs allege were made "to intentionally interfere with Plaintiffs' prospective business relations" with patients and hospitals. *See* AC ¶¶ 202-05. Plaintiffs allege these malicious statements have caused "serious, if not irreparable, damage to Plaintiffs' prospective business relations with their patients and the hospitals with which Plaintiffs transact," *id.* ¶ 54, such as hospitals "drastically curtail[ing] their referrals to Dr. Gabriel," *id.* ¶ 51.

These allegations are insufficiently specific to sustain the tortious interference claim. "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship.'" *16 Casa Duse, LLC v.*

*Merkin*, 791 F.3d 247, 262 (/case/16-casa-duse-llc-v-merkin#p262) (2d Cir. 2015) (quoting *McGill v. Parker*, 179 A.D.2d 98, 105 (/case/mcgill-v-parker#p105) (N.Y. App. Div. 1992)). "[A] claim for interference with advantageous business relationships must specify some *particular*, *existing* business relationship through which plaintiff would have done business but for the allegedly tortious behavior." *Emamian v. Rockefeller Univ.*, No. 07 Civ. 3919 (DAB), 2008 WL 4443824, at *7 (S.D.N.Y. Sept. 25, 2008) (citations and internal quotation marks omitted); *see also Dentsply Int'l Inc. v. Dental Brands for Less LLC*, No. 15 Civ. 8775 (LGS), 2016 WL 3676686, at *6 (S.D.N.Y. July 5, 2016) ("[A]llegations of interference with 'customers,' without more, are insufficient to state a claim for tortious interference with business relations."). As currently drafted, the Amended Complaint refers only speculatively to lost business from "patients" and "hospitals," which fall short of the required "particular allegation of interference with a specific contract or business relationship." *16 Casa Duse*, 791 F.3d at 262 (/case/16-casa-duse-llc-v-merkin#p262); *see also Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 560 (/case/mahmud-v-kaufmann#p560) (S.D.N.Y) (holding that allegations of interference with "all hospitals to which [plaintiff] may apply for admitting privileges" did not sufficiently describe "particular" or "existing" business relations), *aff'd*, 358 F. App'x 229 (2d Cir. 2009). Since this lack of specificity is potentially curable with new allegations, however, Plaintiffs' eleventh claim is dismissed without prejudice and with leave to replead.[17] (/case/mbody-minimally-invasive-surgery-pc-v-united-healthcare-ins-co#idm140265389398416)

> Because the Court dismisses on this ground, it will not address the other grounds for dismissal urged by United. *See* Def. Br. at 24-25.

# C. Leave to Replead

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...        https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:11-cv-01897-VLB   Document 120-2   Filed 12/30/16   Page 36 of 40
Case 3:16-cv-00872-VLB   Document 34-5   Filed 12/16/17   Page 36 of 40

Mbody Minimally Invasive Su...   •   14 Civ. 2495, 49   (ER)

⋮

Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiffs seek leave to file a second amended complaint in order to update its allegations concerning assignments. Specifically, Plaintiffs represent that some of the claims on the list of Unassigned Claims attached to the Amended Complaint were in fact assigned to Dr. Gabriel via agreements obtained by the hospitals at which Dr. Gabriel performed the procedures. *See* Pl. Br. at 25. Plaintiffs also *30 maintain that "additional health care claims have been put at issue" since the filing of the Amended Complaint. *Id.*

Rule 15 of the Federal Rules of Civil Procedure instructs courts to "freely give leave" to replead "when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has stated that it would be an abuse of discretion, "inconsistent with the spirit of the Federal Rules," for a district court to deny leave without some justification, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (/case/foman-v-davis#p182) (1962). Motions to seek leave to amend are ultimately within the discretion of the district courts, *Foman*, 371 U.S. at 182 (/case/foman-v-davis#p182), but they should be handled with a "strong preference for resolving disputes on the merits," *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (/case/williams-v-citigroup-inc#p212) (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (/case/new-york-v-green#p104) (2d Cir. 2005)). Indeed, upon granting a motion to dismiss, the "usual practice" in this Circuit is to permit amendment of the complaint. *See, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (/case/ronzani-v-sanofi-sa#p198) (2d Cir. 1990); *In re Bear Stearns Cos., Inc. Secs., Derivative, & ERISA Litig.*, No. 07 Civ. 10453 (RWS), 2011 WL 4357166, at *2-3 (S.D.N.Y. Sept. 13, 2011) (noting a "strong preference" in

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00672-VLB   Document 120-2   Filed 12/30/16   Page 37 of 40
Case 3:16-cv-00672-VLB   Document 34-5   Filed 12/16/16   Page 37 of 40

Mbody Minimally Invasive Su...    •    14 Civ. 2495, **19**  (E.R.)

United's main objection is that Plaintiffs should not be able to cure their lack of "standing" by adding allegations describing additional assignments, because "standing" is measured at the time of a lawsuit's initiation. *See* Def. Rep. at 2-3. United cites exclusively to cases discussing constitutional standing under Article III. As previously explained, however, whether Plaintiffs are beneficiaries-by-assignment is not a jurisdictional issue of standing, but rather an issue of whether Plaintiffs can state a cause of action under the statute. *See Am.* \*31 *Psychiatric Ass'n*, 821 F.3d at 359 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1386-87 (/case/lexmark-intl-inc-v-static-control-components-inc-2#p1386) & n.4 (2014)). Like any other issue subject to Rule 12(b)(6), Plaintiffs' status as assignees—whether it is said to go to Plaintiffs' "statutory standing," whether Plaintiffs are in ERISA's "zone of interest," or whether Plaintiffs can state a cause of action under ERISA— can be further clarified by additional allegations following initiation of suit. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 (/case/steel-co-v-citizens-for-better-environment#p97) & n.2 (1998) (holding that statutory standing "has nothing to do with whether there is case or controversy under Article III" and need not be resolved prior to addressing the merits); *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (/case/leyse-v-bank-of-am-natlassn#p320) (3d Cir. 2015) ("[A] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim, and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1).") (citation and internal quotation marks omitted); *Cty. of Cook v. Wells Fargo & Co.*, 115 F. Supp. 3d 909, 921 (/case/cnty-of-cook-v-wells-fargo-co#p921) (N.D. Ill. 2015) ("Although the court doubts that [plaintiff] could cure the zone-of-interests defect, the dismissal is without prejudice, and [plaintiff] is granted leave to file an amended com-

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:16-cv-00872-VLB    Document 120-2    Filed 12/30/16    Page 38 of 40
Case 3:16-cv-00872-VLB    Document 120-5    Filed 12/30/16    Page 38 of 40

plaint...") (citations omitted).

None of United's other arguments overcome the strong pref-
erence in favor of granting leave to amend—in fact, they
barely grapple with the specifics of Plaintiffs' proposed
amendments, arguing (wrongly) that Plaintiffs have not
identified what defects an amended complaint would seek to
cure, and baldly insisting that Plaintiffs should simply not re-
ceive another bite at the apple. *See* Def. Rep. at 11. Plaintiffs
have in fact identified proposed amendments, and there is
no viable allegation of bad faith on their part, nor would
there be any prejudice to United in allowing an amend-
ment.[18]                    (/case/mbody-minimally-invasive-surgery-
pc-v-united-healthcare-ins-co#idm140265389374368) *32

> While Plaintiffs have technically violated the
> Court's individual rules requiring a pre-motion con-
> ference prior to the filing of the motion, the Court
> accepts Plaintiffs' explanation and request that, go-
> ing forward, closer attention be paid to those rules.
> *See* Plaintiffs' Reply Memorandum of Law (Doc. 56)
> at 2-3. --------

The Court will thus grant Plaintiffs leave to file an amended
complaint to allege the existence of assignments not previ-
ously identified, and, if Plaintiffs so choose, to replead their
fourth claim (fiduciary duty-of-loyalty under ERISA § 406),
ninth claim (NY GBL § 349), and eleventh claim (tortious in-
terference with prospective economic advantage).

# IV. CONCLUSION

For the reasons set forth above, United's motion to dismiss
is GRANTED as to (i) Plaintiffs' third claim, to the extent it
seeks penalties for violations of ERISA § 503, (ii) Plaintiffs'
fourth claim, to the extent it alleges a breach of the fiduciary
duty of loyalty under ERISA § 406, (iii) Plaintiffs' eighth
claim for unjust enrichment, (iv) Plaintiffs' ninth claim un-
der NY GBL § 349, and (v) Plaintiffs' eleventh claim for tor-
tious interference with prospective economic advantage.

Mbody Minimally Invasive Surgery, P.C. v. United Healthcare Ins. Co., ...    https://casetext.com/case/mbody-minimally-invasive-surgery-pc-v-unite...

Case 3:11-cv-01807-VLB   Document 120-2   Filed 10/30/17   Page 39 of 40
Case 3:16-cv-00872-VLB   Document 34-5   Filed 12/16/16   Page 39 of 40

Mbody Minimally Invasive Su...   ·   14 Civ. 2495, 19  (EK)

Dismissal is with prejudice as to the third and eighth claims, and without prejudice as to the other three claims.

The motion to dismiss is DENIED as to all other claims.

Plaintiffs' motion to for leave to file a second amended complaint is GRANTED to the extent explained above. Plaintiffs' second amended complaint is due on or before **September 16** , **2016.**

The Clerk of the Court is respectfully directed to terminate the motions, Docs. 40 and 48.

It is SO ORDERED. Dated: August 15, 2016

New York, New York

/s/_____

Edgardo Ramos, U.S.D.J.

© 2016 Casetext, Inc.
Casetext, Inc. and Casetext are not attorneys or a law firm and do

Contact (mailto:contact@casetext.com)   Features (/features)

not provide legal advice.

Mbody Minimally Invasive Su...   •   14 Civ. 2495, **19**  (ER)