UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HALEY SPEARS, | : | |
|     PLAINTIFF, | : | |
| | : | CIVIL ACTION NO.: |
| | : | 3:11-cv-1807 (VLB) |
|     v. | : | |
| | : | |
| LIBERTY LIFE ASSURANCE COMPANY | : | |
| OF BOSTON; | : | |
| THE GROUP LIFE | : | |
| INSURANCE AND DISABILITY PLAN | : | |
| OF UNITED TECHNOLOGIES | : | May 25, 2018 |
| CORPORATION, aka THE UTC CHOICE | : | |
| INTEGRATED DISABILITY BENEFIT | : | |
| PROGRAM, | : | |
|     DEFENDANTS. | : | |

## Memorandum of Decision Granting Motion to Dismiss

Before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint. For the reasons set forth below, Defendants' Motion is GRANTED.

## I. Procedural Background

On November 21, 2011, Plaintiff Haley Spears initiated an ERISA action under 29 U.S.C. § 1132(a)(3), contesting the denial of her disability benefits under her employer's long term disability ("LTD") benefit plan. [Dkt. 1 (Compl.)] Plaintiff brought suit against her former employer, United Technologies Corporation ("UTC"); her employer's sponsored plan, the Group Life Insurance and Disability Plan of UTC aka the UTC Choice Integrated Disability Benefit Program (the "Plan"); and the Plan insurer, Liberty Life Assurance Company ("Liberty"). Id. ¶¶ 5-7. The Complaint alleged that Defendants denied Plaintiff LTD benefits in November 2010. Id. ¶ 23. Plaintiff claimed that Defendants

1

breached the terms of the Plan and ERISA "by failing to provide adequate notice in writing setting forth the specific reasons for such denial and by failing to afford a reasonable opportunity to Spears for a full and fair review by the appropriate named fiduciary of the decision her claim for benefits." *Id.* ¶ 37. She sought enforcement of the plan terms under § 502(a)(1)(B) of ERISA, equitable remedies under § 502(a)(3) of ERISA, and attorney's fees and costs. *See id.* ¶¶ 33-45.

Defendants filed a Motion to Dismiss the initial Complaint on February 6, 2012, [Dkt. 14] which the Court granted in part on August 3, 2012. [Dkt. 22 (Mem. Decision on Mot. Dismiss) at 12-13]. In that decision, the Court dismissed Plaintiff's claims for equitable remedies, finding that the Summary Plan Description ("SPD") was not "false or misleading" in violation of § 502(a)(3). [Dkt. 22 (Mem. Decision on Mot. Dismiss) at 12-13]. In addition, the Court dismissed UTC as a party because the Complaint alleged, and the Policy confirmed, that Liberty was the LTD plan administrator and made all claim determinations. *Id.* at 15; [Dkt. 14-1 (Policy) at DEF000034.]

After the close of discovery, Plaintiff filed a Motion for Summary Judgment on April 28, 2014, and Defendant filed a Motion for Judgment, which the Court construed as a Motion for Summary Judgment. [Dkt. 82 (Mot. Summ. J.); Dkt. 85 (Mot. J.)]. The Court determined that Liberty was vested with "the authority, in its sole discretion, to construe the terms of th[e] policy and to determine benefit eligibility [t]hereunder. . . ." [Dkt. 103 (Mem. Decision on Mot. Summ. J.) at 41]. The Court found that Liberty failed to support its LTD determination with substantial evidence and procedurally erred in the review process. *Id.* at 76.

Accordingly, the Court remanded the matter back to Liberty "with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting a denial of the claim or remand would otherwise be a useless formality." *Id.* at 76. On remand, the Court instructed Defendants to: (1) consider whether medical evidence rendered Plaintiff disabled within the meaning of the LTD plan; (2) take greater care in posing questions to peer reviewers, order an independent medical examination ("IME"), or have medical consultants communicate with Plaintiff's treating physicians; (3) perform a full and fair review in compliance with the ERISA claims regulations; and (4) consider post-elimination period medical records or dismiss such records with a reasonable explanation. *Id.* at 79-81. The Court elected not to award attorney's fees and civil penalties as premature, but instructed that "[s]hould Spears seek an award of civil penalties in the future, she should address these issues in her memorandum of law in support of her motion." *Id.* at 82. The Court ordered the Clerk to close the case file.

Liberty advised Plaintiff's counsel on July 24, 2015 that it would initiate review on remand and requested additional information from Plaintiff. [Dkt. 106 at 4]. From August 2015 until March 2016, the parties exchanged medical records and other documentation, renewed medical analyses, and obtained an IME. *See generally id.* at 4-17. At the end of this period, due to the length of time that had passed, Plaintiff filed a Motion to Reinstate Summary Judgment. [Dkt. 105 (Mot. Reinstate Summ. J.) (filed Feb. 27, 2016). The Court found on April 1, 2016 that

the motion was procedurally improper, as "final judgment was entered in this case and the matter was closed over a year ago."  *See* [Dkt. 108 (Order)].

Plaintiff filed a new action on April 11, 2016.  [16-cv-572 ("*Spears II*")].  The pleadings in *Spears II* contained many of the same allegations as those raised in the above-captioned case ("*Spears I*"), in addition to new issues arising from the remand.  On August 21, 2017, the Court *sua sponte* dismissed *Spears II* and instructed that the parties could move to reopen *Spears I* to proceed with litigation.  [*Spears II* at Dkt. 75].  On August 30, 2017, Plaintiff filed an Amended Complaint in *Spears I*, the Court reopened the case, and Defendants filed the instant motion to dismiss.

### a. Allegations of the Amended Complaint

Plaintiff's Amended Complaint, like the initial Complaint, alleges that Defendants improperly denied her LTD benefits in violation of ERISA.  [Dkt. 110-2 (Amended Compl.).]  As in her initial Complaint, Plaintiff seeks (1) a declaration that she is entitled to Plan benefits under ERISA § 502(a)(1)(B) and an award of unpaid Plan benefits; (2) a declaration that Defendants breached their fiduciary duty under § 502(a)(3) of ERISA and an award of equitable remedies; and (3) attorney's fees.  *Id.* at 16.  As in the initial Complaint, Plaintiff names Liberty, UTC, and the Plan as Defendants.  *Id.* at 1.

Plaintiff's Amended Complaint was filed as an "Amended/Supplemental Complaint, in order to bring this Court up to date on proceedings following the 2015 judgment" closing the case.  [Dkt. 110 at 1.]  The Amended Complaint repeats the majority of the allegations in the initial Complaint, as follows:

The Plaintiff, Haley Spears, is a former employee of UTC.  [Amended Compl. at ¶ 4].  She was employed as an Executive Administrative Assistant immediately prior to being disabled and was allegedly covered by UTC's employee benefits plan.  *Id.*  Plaintiff alleges that UTC is the Plan Administrator.  *Id.* at ¶ 6.  The UTC Plan included both short-term and long-term disability ("STD" and "LTD" respectively) sections.  *Id.* at ¶ 7. The LTD[1] plan is fully insured by Liberty.  *Id.* at ¶ 5.  All LTD premiums are paid to Liberty, which in turn pays covered claims for qualifying disabilities.  *Id.*  Plaintiff alleges that both Liberty and UTC make LTD claim determinations.  *Id.* ¶ 5.  The STD plan is self-insured by UTC.  *Id.* at ¶ 8.  UTC contracts with Liberty to process STD claims, and pays for these claims and services out of a designated trust.  *Id.* at ¶ 8.  Plaintiff alleges STD claim determinations are made by Liberty and UTC, and that UTC is the Plan Administrator for STD benefits*.  Id.*

Plaintiff acknowledges that the definition of disabled is different under the STD than it is under the LTD.  She alleges that the policy defines being disabled, for purposes of STD coverage, as being "unable to perform the material and substantial duties of your current or a similar job for more than 5 consecutive scheduled workdays" and having physician-provided medical evidence supporting that assessment of your condition.  *Id.* at ¶13.  On the other hand, the policy defines being disabled for purposes of LTD coverage as being unable to perform your "own occupation" for the first 24 months, after which you are only disabled for purposes of the LTD plan if you are unable to perform the duties of "Any Occupation" as defined by the plan.  *Id.* at ¶ 28.

---

[1] The LTD policy number is GF3-810-258966-016. [Amended Compl. at ¶ 5].

In her capacity as an Executive Administrative Assistant at UTC, Plaintiff alleges that the material duties of her job were as follows:

> [S]end and edit letters, order supplies for two departments, do internet research, organize executive desks and papers, keep a reference guide book updated, change computer settings and fix office equipment on a basic level. She was responsible for communication with the maintenance department. She communicated verbally and by e-mail. Accuracy was essential. She processed expense reports by entering data into the computer, filed documents, and made travel arrangements. She processed invoices and followed through to ensure that they were paid. She generated briefing material for senior level meetings. She completed internal and external training to better understand United Technologies Corporation business practices and company objectives.

*Id.* ¶ 10.  Plaintiff also alleges that her position was a desk job, although it did require her to be on her feet, walking around the department, and occasionally lifting packages, printer paper, files, or supplies.  *Id.* at ¶ 11. Reportedly, "[t]he job was fast paced. She needed to be alert. There was no room for error." *Id.*

Plaintiff allegedly began feeling sick around 2008 and began taking sick days.  *Id*. at ¶ 12.  Her symptoms allegedly included fevers, night sweats, respiratory problems, and coughing.  *Id.*  Her boss told her to see a doctor.  *Id.* She was treated first for "asthma symptoms" and then later for migraines at the St. Francis Hospital emergency room.  *Id.*

Her symptoms "became debilitating in the summer of 2008."  *Id.*  At that point, Ms. Spears alleges that she "could not do her job." *Id.* at ¶ 13. She reports migraines, blurry vision, an inability to focus or think straight, memory problems, difficulties understanding what her boss wanted, and a general daze. *Id.*  Plaintiff allegedly stopped working and applied for STD benefits in September 2008.  *Id.* Those benefits were granted on September 27, 2008.  *Id.* at ¶¶ 13, 16.  Plaintiff

alleges that the Defendants first denied her LTD benefits on January 30, 2009 because the "LTD elimination period was not met." *Id.* at ¶ 17.

Plaintiff has reportedly received a large number of varying diagnoses from various doctors, for which she does not provide specific dates for her diagnoses. *Id.* ¶ 16. However, Plaintiff does specifically allege that she tested positive for Borrelia burdorferi IgM antibodies (associated with Lyme disease) on February 2, 2009, and that at that time her "pain was constant." *Id.* at 15.

On February 9, 2009, Plaintiff's treating physician reported that Plaintiff could work up to four hours per day, mornings only, and UTC's medical department cleared her to return to work for four hours per day with exertional restrictions. *Id.* at ¶ 15. Plaintiff worked part time, with restrictions, through March 23, 2009 and then stopped working due to her health (Plaintiff does not elaborate on what about her health caused to stop working on that date). *Id.*

In May 2009, Liberty denied STD benefits beyond February 8, 2009 on the ground that "available records [did] not support any restrictions and limitations or impairment precluding [Spears] from performing the duties of [her] job . . . during the period of February 9, 2009 through the present date." *Id.* at ¶ 17.

Plaintiff claims that several doctors – Doctors Bernard Raxlen, Sam Donta, Barbara Kage, and Dario Zagar – all noted symptoms associated with her Borreliosis (Lyme disease) from June to October 2009 and stated that she "was unable to work because of her symptoms." *Id.* at ¶¶ 18-22.

In October 2009, Plaintiff appealed the denial of LTD benefits and provided reports form Doctors Zagar, Raxlen, Gouin, and Kage reporting that she was

unable to work because of her symptoms.  *Id.* at ¶. 22.  Defendants denied her appeal in January 2010, again saying there was no evidence of impairment, restrictions, or limitations from February 8, 2009 onwards.  *Id.* at ¶ 22. Defendants reiterated the denial in May 2010.  *Id.*  In June 2010, Defendants allegedly requested and Plaintiff provided additional evidence on her condition. *Id.*

In October 2010, UTC requested that Liberty override its short term disability decision and issue Plaintiff additional STD benefits through the remainder of the STD eligibility period, which Liberty did.  *Id.* ¶ 23.  In addition, UTC requested that Liberty reopen Plaintiff's LTD claim, make an LTD determination, and notify UTC of its decision, which Liberty did.  *Id.*

Defendants again denied LTD benefits in November 2010, and referred to their February 2, 2009 denial in their written decision.  *Id.* at ¶ 24.  Defendants stated that medical documentation did not support Plaintiff's alleged impairment past February 8, 2009, and that Plaintiff failed to satisfy the elimination period.  *Id.* The denial referenced a "September 27, 2010 peer review report" which she was allegedly not provided. *Id.*

Plaintiff alleges that the Social Security Administration ("SSA") granted her request for disability benefits two years later, on February 25, 2011, citing an August 31, 2008 as the "onset date."  *Id.* ¶ 25.  Following that, in May 2011, Plaintiff appealed the termination of her LTD benefits, submitting the Social Security Administration decision, medical journal articles, and "numerous medical records and reports" in support of her appeal.  *Id.* at ¶ 26.  She also

requested a copy of the September 27, 2010 peer review report described in Liberty's November 2010 letter. *Id.* Defendants sent her a copy of the report but denied her appeal in June 2011, once again stating that she "has not provided medical evidence to support Disability throughout the Elimination Period." *Id.* at ¶ 27.

Plaintiff returned to other work in 2014 and has worked sporadically since then. *Id.* at ¶ 15.

Plaintiff repeats her assertions from her initial Complaint that Defendants breached a fiduciary duty owed to her in multiple ways, including by failing to perform a physical examination of her until 2016 and never performing a functional capacity examination or vocational test to determine whether she could perform her job. *Id.* at ¶ 29. In addition, Plaintiff asserts Defendants failed to abide by their fiduciary duty by failing to consider Plaintiff's argument in her appeals, conducting only a selective review of the evidence, and failing to properly investigate her claim. *Id.* at ¶ 30. Finally, Plaintiff asserts Defendants breached their fiduciary duty because they have an inherent conflict of interest, in that Liberty both evaluates claims for LTD benefits and pays LTD benefits claims. *Id.* at ¶ 31. Plaintiff asserts Defendants' failure to timely provide her with a copy of the September 2010 peer review report, and failure to allow her to respond to the report, evidences their bias. *Id.*

Plaintiff also adds allegations concerning events after the Court remanded Plaintiff's claim to the Plan Administrator for a new decision on March 31, 2015. *Id.* at ¶ 32. Plaintiff asserts Defendants did not make a timely decision on

Plaintiff's claim, but rather rendered their decision on June 16, 2016, 156 days after she requested a decision on January 12, 2016. *Id.* at ¶ 32. Plaintiff asserts Liberty breached its fiduciary duty to Plaintiff by not deciding the claim within 45 days as required under ERISA, and UTC breached its fiduciary duty as Plan Administrator by failing to ensure that Liberty made a timely decision. *Id.* In addition, Plaintiff appealed the denial of her claim on July 13, 2016, and Defendants did not deny that appeal until May 4, 2017, after the timeframe allowed by ERISA had passed and the claim was deemed denied. *Id.* at ¶ 33. In addition, Plaintiff asserts that as Plan Administrator, UTC was required to establish a formal review of Liberty's actions at reasonable intervals, and that UTC is liable for the actions of Liberty as a "co-fiduciary." *Id.*

## II. Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'well-pleaded factual

allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

III. <u>Analysis</u>

Defendants move to dismiss Plaintiff's Second Amended Complaint to the extent it alleges a claim for breach of fiduciary duty under § 502(a)(3) and alleges claims against UTC. [Dkt. 114 (Mot. Dismiss) at 1]. Defendants contend that the Court's dismissal of Plaintiff's breach of fiduciary duty claim under § 502(a)(3) and UTC as a party in response to Defendants' 2012 Motion to Dismiss should be barred by the law of the case doctrine. [*See* Dkt. 22].

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case . . . This doctrine is admittedly discretionary and does

not limit a court's power to reconsider its own decisions prior to final judgment." *DiLaura v. Power Auth. of State of N.Y.,* 982 F.2d 73, 76 (2d Cir. 1992). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* The Court addresses the application of the law of the case doctrine to Plaintiff's § 502(a)(3) claim and claim against Defendant UTC in turn below.

      a. <u>Plaintiff's § 502(a)(3) Claim</u>

      Defendant asserts Plaintiff's ERISA § 502(a)(3) claim for equitable relief for breach of Defendants' fiduciary duty should be dismissed under the law of the case doctrine, because the Court dismissed Plaintiff's claim under § 502(a)(3) in its 2012 Memorandum of Decision on Motion to Dismiss. Plaintiff asserts the law of the case doctrine should not apply in this case because there has been an intervening change in law since the Court's dismissal of her § 502(a)(3) claim in 2012.

      In count one of her initial Complaint, Plaintiff sought enforcement of the Plan's terms and asserted Defendants' "actions constitute an unlawful and/or arbitrary and capricious and/or unreasonable and erroneous denial of benefits due under ERISA, as provided in ERISA § 502(A)(1)(B)." [Dkt 1 at ¶ 36.] In count two of her initial Complaint, Plaintiff sought "equitable remedies under ERISA § 502(a)(3)," and asserted Defendants "should be enjoined from acts which violate ERISA." *Id.* at ¶ 40. Plaintiff's prayer for relief named restitution, prejudgment interest, reformation, and estoppel as equitable relief sought, as well as "such

other relief as the Court deems just." *Id*. at 12-13 (Prayer for Relief). Plaintiff clarified in her Opposition to the Motion to Dismiss the 2011 Complaint that her § 502(a)(3) claim for reformation was predicated on a statement in the Summary Plan Description ("SPD") that the Plan's goal is "to facilitate a seamless transition between Sick pay, STD and LTD payments," which she claims was a false and misleading representation. [Dkt. 20 Pl. Obj. at 10.] Plaintiff also offered that the Court "may wish to enter an injunction, requiring defendants to provide documents to the plaintiff if it relies on them to deny a future claim." *Id*. at 12.

While Plaintiff's Amended Complaint does not include enumerated counts, Plaintiff again seeks for this Court to "declare, adjudge, and decree that Spears is entitled to Plan benefits as calculated under the terms of the Plan under ERISA § 502(a)(1)(B)" and also seeks declaration that "defendants breached their fiduciary duty as to Spears under ERISA § 502(a)(3)." [Amended Compl. at 16 (Prayer for Relief).] Equitable relief sought in the Amended Complaint's Prayer for Relief includes restitution, disgorgement of profits made by withholding benefits, surcharge, reformation, and injunction, as well as "such other relief as the Court deems just." *Id*. Plaintiff repeats her allegation that that SPD's stated goal to "facilitate a seamless transition between Sick pay, STD, and LTD payments" is "false and misleading." [Amended Complaint at ¶ 7.]

In its 2012 Order on Defendant's Motion to Dismiss the initial Complaint, the Court dismissed Plaintiff's claim for equitable relief under § 502(a)(3). In coming to that decision, the Court described the law and its analysis as follows.

Section 502(a)(3) provides in relevant part that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violated any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce the provisions of this subchapter or the terms of the plan." § 502(a)(3), 29 U.S.C. § 1132(a)(3). By comparison, § 502(a)(1)(B) provides that a civil action may be brought by a participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

"Section 502(a)(3) has been characterized as a 'catch-all' provision which normally is invoked only when relief is not available under § 502(a)(1)(B). . . . The provision authorizes solely *equitable* relief, and under the Supreme Court's decision in *Great–West* [*Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002)], this means that money awards are available in suits brought under § 502(a)(3) only in very limited circumstances." *Wilkins v. Mason Tenders Dist. Council Pension Fund*, 445 F.3d 572, 578-79 (2d Cir. 2006).

The Court noted that the Supreme Court in *Cigna Corp. v. Amara*, 131 S. Ct. 1866 (2011) held that a district court has the authority under Section 502(a)(3) to reform the terms of an ERISA plan in order to remedy "false or misleading" information. *Amara*, 131 S. Ct. at 1879. The Supreme Court explained that a district court has the authority under § 502(a)(3) to enter equitable relief where appropriate, such as reformation, estoppel and surcharge, because the term

"appropriate equitable relief" in § 502(a)(3) refers to "those categories of relief that traditionally speaking (i.e., prior to the merger of law and equity) were *typically* available in equity." *Id.* at 1878. In addition, the Court considered Second Circuit precedent permitting a plaintiff to seek relief simultaneously under §§ 502(a)(1)(B) and 502(a)(3). *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001) (holding that the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) did not eliminate the possibility of a plaintiff successfully asserting a claim under both § 502(a)(1)(B), to enforce the terms of a plan, and § 502(a)(3) for breach of fiduciary duty.").

This Court ultimately dismissed the initial Complaint's claim under § 502(a)(3) because it found the stated goal to "facilitate a seamless transition between Sick Pay, STD and LTD payments" was not false or misleading. The Court found that the statement was not a guarantee, but rather was an aspirational statement that provided no assurance, promise or otherwise enforceable agreement that a seamless transition would actually occur. *See Olivieri v. McDonald's Corp.*, 678 F.Supp. 996, 1000 (E.D.N.Y. 1988) (concluding that a prospectus's representations concerning a training program were not false or misleading because the representations indicate that the training program is a "fluid program" and there "is no promise that an applicant will participate in any particular course"). The Court accordingly found no facts sufficient to support a claim for equitable relief such as reformation under *Amara*, and dismissed Plaintiff's claim under § 502(a)(3).

This Court also found no sufficiently pled claim for other equitable relief such as estoppel or detrimental reliance. This Court explained that to the extent the Plaintiff sought to allege that she was misled into believing that she qualified for STD benefits and therefore met the criteria for qualification for LTD benefits, such a claim was both unsupported and refuted by the facts alleged in the Complaint. The Complaint averred that Plaintiff was told she did not qualify for STD multiple times, including in October of 2010 when Liberty's denial of STD benefits was upheld on appeal. It also established that the Plaintiff attempted repeatedly to overturn that decision and was given an opportunity to present additional information, which proved unavailing. Further, when UTC overrode Liberty's denial of STD, the Plaintiff was informed by letter dated November 16, 2010 that STD benefits would be restored only to March 27, 2009 and only on the basis of UTC's override, notwithstanding her failure to prove she was disabled. Thus, Plaintiff failed to plead facts sufficient to support a discernable equitable claim. Based on this analysis, the Court dismissed Plaintiff's § 502(a)(3) claim.

Plaintiff now asserts the Court should revisit that holding because of the Second Circuit's decision in *New York State Psychiatric Association v. United Health Group*, 798 F.3d 125 (2d Cir. 2015). Plaintiff asserts *New York State Psychiatric Association* stands for the proposition that claims brought under § 502(a)(3) for equitable relief should not be dismissed as duplicative of claims for monetary relief under § 502(a)(1)(B) at the motion to dismiss stage, because it may later become clear that monetary relief is insufficient and that some measure of both forms of relief are appropriate.

In *New York State Psychiatric Association*, the Second Circuit considered a claim that an insurer breached its insurance plan and violated its fiduciary duty to the insured by applying more stringent review and a more restrictive standard to mental health claims than medical claims. There was "no serious dispute that [plaintiff's] claims [were] both adequately and plausibly alleged." *Id.* at 131. The Second Circuit explained that § 502(a)(3) is a "catchall" provision which offers equitable relief where monetary relief under § 502(a)(1)(B) would not provide an adequate remedy. *Id.* at 134. However, the fact that equitable relief under § 502(a)(3) is rare when monetary relief under § 502(a)(1)(B) is also available does not mean the availability of monetary relief eliminates the possibility of a viable cause of action for breach of fiduciary duty under § 502(a)(3). *Id.* The Second Circuit explained that where it is not clear at the motion to dismiss stage whether a plaintiff's § 502(a)(3) claim is "in effect [a] repackaged claim[] under § 502(a)(1)(B)" for which monetary relief could provide a full remedy, dismissing the § 502(a)(3) claim because of the availability of monetary relief would be premature. *Id.*

*New York State Psychiatric Association* does not compel the Court to reconsider its 2012 dismissal of Plaintiff's § 502(a)(3) claim because the Court did not dismiss it as duplicative of her § 502(a)(1)(B) claim. Rather, the Court specifically noted that Second Circuit precedent at the time permitted a plaintiff to seek relief under both statutes. Instead, the Court dismissed for failure to allege facts which might warrant equitable relief. Accordingly, *New York Psychiatric Association* does not require the Court to reconsider its prior decision.

The Court next considers whether it should allow Plaintiff's § 502(a)(3) claims to go forward in light of newly available evidence. *See DiLaura*, 982 F.2d at 76 (stating the court may, in its discretion, decline to enforce the law of the case doctrine to consider newly discovered evidence). Plaintiff asserts in her Opposition to the Motion to Dismiss that the Court should allow her to reassert claims under § 502(a)(3) because the "Court may want the option of considering an equitable remedy for Spears based on Liberty's actions of not deciding the claim [on remand] until suit was brought [in *Spears II*]." [Opp. at 18.]

Defendants assert that the relief Plaintiff seeks is legal in nature, and that the Amended Complaint states no new facts warranting equitable relief. In support, Defendants cite *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150 (2d Cir. 2014) and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002), which explain the distinction between equitable and legal remedies in the ERISA context. Historically, a plaintiff could seek restitution in equity if the money or property identified as belonging to the plaintiff could clearly be "traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co.*, 534 U.S. at 213. If the money or property could be clearly traced to the defendant, the Court could then order the defendant to transfer title or to give a security interest to the plaintiff who was the property's true owner. *Id*. In the ERISA context, if the money the plaintiff seeks cannot be "traced to particular funds or property in the defendant's possession," but instead the plaintiff seeks only to "recover money to pay for some benefit the defendant had received from [the

plaintiff]," the "tracing requirement" is not met, and the relief sought is not equitable in nature. *Id.*; *Central States*, 771 F.3d at 153-54.

Here, Plaintiff asserts the Court should allow her to reassert her claim under § 502(a)(3) because it **"may want the option of considering an equitable remedy"** to address Liberty's failure to timely decide her claim on remand. [Opp. at 18.] Plaintiff cites no cases suggesting that her allegation meets the tracing requirement to be classified as a claim for equitable relief under § 502(a)(3). *Great-West*, 534 U.S. at 214; *Central States*, 771 F.3d at 154. Rather, she repeats her citation to *New York State Psychiatric Association*, and reiterates that claims under § 502(a)(3) and § 502(a)(1)(B) are not mutually exclusive.[2]

Plaintiff has not raised any new facts which compel this court not to apply the law of the case doctrine to her § 502(a)(3) claim. Plaintiff seeks restitution, disgorgement of profits made by withholding benefits, surcharge, and an

---

[2] **Plaintiff also cites five cases which do not compel the Court to find that she has sufficiently asserted a claim for equitable remedies here. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 375 (6th Cir. 2015) (rejecting plaintiff's argument that the defendant's continued withholding of benefits constituted a separate injury from their denial and warranted equitable relief, finding the "denial is the injury and the withholding is simply ancillary thereto"); *CIGNA Corp. v. Amara*, 563 U.S. 421, 428-29, 441 (finding, unlike this case, that the published description of the plan was significantly incomplete and misleading, and affirming the lower court's reformation of the terms of the plan as equitable relief); *Fairbaugh v. Life Ins. Co. of N. Am.*, 872 F. Supp. 2d 174 (D. Conn. 2012) (awarding interest where defendant was found in contempt for failing to pay a judgment ordered by the court); *Smith v. Champion Int'l Corp.*, 220 F. Supp. 2d 124, 129 (D. Conn. 2002) (noting that "the usual remedy" for failure to afford a beneficiary full and fair review of the denial of benefits is "remanding plaintiffs' claims for benefits to the LTD Plans administrator or fiduciary for a 'full and fair' review," a remedy this Court had discretion to provide, and did provide, to Ms. Spears in 2015, after her initial § 502(a)(3) claim had been dismissed); *Dobson v. Hartford Fin. Serv.*, 518 F. Supp. 2d 365 (D. Conn. 2007) (not addressing whether interest could be classified as an equitable remedy, as the issue was not placed before the Court on appeal).**

injunction requiring Defendants to pay benefits allegedly owed. Those claims are of the type which the Supreme Court has held "almost invariably" seek monetary rather than equitable relief. *Great-West*, 534 U.S. at 210, 218 (claims seeking "the imposition of personal liability for the benefits" allegedly owed are not equitable in nature). In addition, the Court will not revisit its dismissal of Plaintiff's claim for reformation, as Plaintiff offers no new allegations in support of that claim but simply repeats that the SPD's language is false and misleading. The law of the case doctrine precludes Plaintiff from reasserting claims under § 502(a)(3); Defendant's Motion to Dismiss Plaintiff's § 502(a)(3) claims is GRANTED.

### b. Plaintiff's Claim Against UTC

Defendants assert that the Court's 2012 Order dismissing UTC as a party is the law of the case, and the Court should not allow Plaintiff to reassert claims against it now. The Court considered whether UTC, Liberty, or both were Plan Administrators on both the Motion to Dismiss and Motion for Summary Judgment. In both decisions, the Court considered the terms of the SPD and the Policy, which the parties again reference in their briefing on the instant Motion to Dismiss. As the Court found in addressing the 2012 Motion to Dismiss, because Plaintiff relied on the terms of the Policy and the SPD in the Amended Complaint, it is appropriate for the Court to consider those documents here.

In the 2012 Memorandum of Decision on Defendant's Motion to Dismiss, the Court noted that the LTD Plan expressly provides that the "LTD plan is fully insured by Liberty. . . All premiums are paid to Liberty, who in turn agrees to pay covered claims[.] Claim determinations are made by Liberty. Liberty is the Plan

Administrator for LTD benefits." [Dkt. 114-1 (Policy) at DEF000034 ("Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.").] The Court read that language to clearly indicate that UTC did not have the power to control or prevent Liberty's denial of Plaintiff's long term disability benefits, and therefore was not a fiduciary under the LTD Plan. *See, e.g., Crocco v. Xerox Corp.*, 137 F.3d 105, 107 (2d Cir. 1998) (dismissing employer from §502(a)(1)(B) suit based on conclusion that employer was not proper party "[b]ecause it is clear from the Plan documents that [the employer] was neither the designated Plan administrator nor a Plan trustee…it cannot be held liable for benefits due to" the plaintiff); *Walsh v. Eastman Kodak Co.*, 53 F.Supp.2d 569, 574 (W.D.N.Y. 1999) (holding that employer was not a proper party  because only the plan and the administrators and trustees of the plan in their capacity as such may be held liable under §502(a)(1)(B)); *Brannon v. Tarlov*, 986 F.Supp. 146, 162 (E.D.N.Y. 1997) (holding that employer was not a proper defendant to former employee's claim to recover disability benefits because only the plan or its administrators or trustees of the plan are proper defendants).  The Court found it was patent from the terms of the LTD Plan that Liberty had sole discretion to make LTD claim determinations, and that UTC is not a proper party to this claim.

At the Summary Judgment stage, the Court again addressed the relevant contractual language identifying the Plan Administrator.  [Summ. J. Mem. Of Decision at 40-41.]  The Court found that UTC was the Plan Administrator of the STD Plan, and in that role UTC and had the:

**full discretionary authority and power to control and manage all aspects of the [STD Plan], to determine eligibility for plan benefits, to interpret and construe the terms and provisions of the plan, to determine questions of fact and law, to direct disbursements, and to adopt rules for the administration of the plan as it may deem appropriate, in accordance with the terms of the plan and all applicable laws.**

**[Summ. J. Mem. Of Decision at 32 (citing Policy at AR 2235; Dkt. #85-7, D's Local Rule 56(a)(1) Statement at ¶ 6; Dkt. #91-1, P's Local Rule 56(a)(2) Statement at ¶ 6)].  UTC was also given the authority to "allocate or delegate its responsibilities for the administration of the plan to others to carry out."  [*Id.*].  Accordingly, UTC contracted with Liberty to act as claims administrator for the STD Plan, and expressly delegated to Liberty its "discretionary authority to interpret and construe the terms and provisions of the [STD] plan."  [*Id.*].**

**With respect to LTD benefits, the Court found that Liberty was the Plan Administrator, and that LTD benefits under the LTD Plan were provided by a group insurance policy underwritten by Liberty.  [Summ. J. Mem. Of Decision at 33-34, 41 (citing AR 2235; Dkt. #85-7, D's Local Rule 56(a)(1) Statement at ¶ 7; Dkt. #91-1, P's Local Rule 56(a)(2) Statement at ¶ 7)].  In addition to making payments of LTD benefits, the LTD Plan bestowed upon Liberty "the authority, in its sole discretion, to construe the terms of th[e] policy and to determine benefit eligibility [t]hereunder."  [AR 34; Dkt. #85-7, D's Local Rule 56(a)(1) Statement at ¶ 15; Dkt. #91-1, P's Local Rule 56(a)(2) Statement at ¶ 15].  The discretionary authority provision further provided that "Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding."  [*Id.*].  The Court also noted that the parties agreed that both the STD and LTD Plans**

were subject to the statutory and regulatory requirements of ERISA and as Plan Administrator, Liberty was an ERISA fiduciary. [Summ. J. Mem. Of Decision (citing Dkt. #82-5, P's Local Rule 56(a)(1) Statement at ¶ 34; Dkt. #90, D's Local Rule 56(a)(2) Statement at ¶ 37; AR 273)].

Plaintiff seeks reconsideration of the Court's multiple findings that Liberty was the Plan Administrator for the LTD Plan and had sole discretion to determine LTD benefits. Plaintiff's allegation that UTC is the Plan Administrator does not negate this Court's prior examination of the governing contractual language and finding – twice – that UTC is not the Plan Administrator for LTD benefits and does not have discretion to award or deny LTD benefits. Plaintiff does not assert that contractual language does not apply or differs from what the Court has already examined and interpreted. Accordingly, the Court sees no reason to disturb its prior holding dismissing UTC as a party. Defendants' Motion to Dismiss UTC as a party is GRANTED.

IV. <u>Conclusion</u>

For the foregoing reasons, the law of the case doctrine bars Plaintiff's claims against UTC and under ERISA § 502(a)(3). Defendants' Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

Vanessa Bryant
*Vanessa Lynne Bryant*  2018.05.25 10:58:25
-04'00'

**Hon. Vanessa L. Bryant**
**United States District Judge**

Dated at Hartford, Connecticut: May 25,, 2018