UNITED STATES DISTRICT COURT
for the
DISTRICT OF CONNECTICUT

HALEY SPEARS
Plaintiff,

v.

LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON, UNITED
TECHNOLOGIES CORPORATION,
AND THE GROUP LIFE INSURANCE
AND DISABILITY PLAN OF UNITED
TECHNOLOGIES CORPORATION a/k/a
THE UTC CHOICE INTEGRATED
DISABILITY BENEFIT PROGRAM
Defendants.

Civil No. 3:16-cv-00572 (VLB)

MARCH 16, 2017

**DEFENDANT'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND PRODUCTION REQUESTS TO DEFENDANT, LIBERTY LIFE ASSURANCE COMPANY OF BOSTON**

**INTERROGATORIES**

1.  Identify the person providing answers to these interrogatories.

RESPONSE:

Paula McGee, Litigation Manager, Liberty Life Assurance Company of Boston

2.  Identify the person or persons who decided, after the court remand, plaintiff's claims for benefits, or decided any appeals.

RESPONSE:

Nancy Winterer, Appeal Review Consultant, Liberty Life Assurance Company of Boston, made the remand determination dated June 16, 2016. No appeal determination has been

1

A

made.

3. State whether there were any rules, guidelines, protocols, standards, and criteria, whether published or internal, which were utilized in whole or in part in rendering any decision, after the court remand, relating to plaintiff's claims for benefits, or in the administrative appeal.

RESPONSE:

Defendant responds that any such consulted document would be contained or referenced in the Administrative Record.

4. Identify the person who, at Liberty on or about 2010, was directed by UTC to reopen Spears' LTD claim, make an LTD determination, and notify UTC of its decision and the reason why Liberty complied with this request.

RESPONSE:

No person at Liberty was directed by UTC to reopen Spears' LTD claim.

5. State whether Liberty notified UTC that it denied Spears' claim on remand and if so, the reason why Liberty notified UTC of this denial, and identify the person who was notified at UTC and identify the person at Liberty who provided said notification.

RESPONSE:

Liberty did not notify UTC regarding the remand decision.

6. State the reason why Liberty has not made a decision on Spears' 2016 appeal of Liberty's denial of her claim on remand and state whether UTC has requested that Liberty make a decision and if so, identify the person at UTC who made said request and identify the person at Liberty who received said request.

RESPONSE:

Liberty has not made a decision on Plaintiff's 2016 appeal of Liberty's denial of her claim on remand, because Plaintiff's counsel has been unresponsive to Liberty's inquiries as to whether Plaintiff has submitted all documents she wished to be considered for the appeal. UTC has not requested that Liberty make a decision on the remand appeal.

7. State whether Liberty has any knowledge of whether UTC has established a formal review of Liberty's actions in the Spears' claim at reasonable intervals and if so, identify the person at Liberty who was informed of UTC's review of Liberty's actions.

RESPONSE:

Defendant is not aware of any formal review of Liberty's actions in the Spears' claim established by UTC.

8. State whether Liberty changed or revised any of its claim review procedures after receiving the court's remand order and if so, identify which procedures were changed, how they were made, and who at Liberty made the decision to change or revise procedures.

RESPONSE:

Liberty has not revised any of its Policies and Procedures in response to the court's remand order.

9. State the amount of money UTC paid to Liberty to administer this LTD Plan, for each year 2009 to the present, and further state the methodology used to compute said payment, and whether there is a written agreement between UTC and Liberty regarding administering this LTD Plan.

OBJECTIONS:

Defendant objects to this Interrogatory on the grounds that it seeks information beyond the scope of discovery established by Rule 26(b), as such information is not relevant to any party's claim or defense.

RESPONSE:

Subject to, without waiving and in light of, the above objection, Liberty responds that UTC has not paid Liberty to "administer" the LTD Plan. The only payments UTC made to Liberty are the premiums payable under the terms of the Policy. There is no written agreement between UTC and Liberty regarding administration of the applicable LTD Plan other than the Policy issued by Liberty to insure the LTD Plan.

10. State whether there is an identifiable specific sum of money, or *res* set aside by defendant from which Spears may have equitable relief, including but not limited to, an insurance or other reserve, and if so, state the amount of said specific sum, and identify the person who has control of said specific sum, and the location of said specific sum.

OBJECTIONS:

Defendant objects to this Interrogatory on the grounds that the terms "identifiable specific sum of money, or *res* set aside by defendant from which Spears may have equitable relief" are vague and ambiguous and subject to legal interpretation. Defendant further objects to this Interrogatory on the ground that it seeks information beyond the scope of discovery established by Rule 26(b), as such information is not relevant to any party's claim or defense. *See Pankiw v. Fed. Ins. Co.*, 2006 U.S. Dist. LEXIS 35400 at *28-32 (N.D. Ohio May 31, 2006) (in an ERISA benefits matter, denying plaintiff's discovery requests for "information as to the amount of reserves that were set aside to potentially

pay the [plaintiff's ERISA claim]," observing the plaintiff "points to no case involving a first party claim where reserve information is discoverable or admissible, nor does [the plaintiff] provide a cogent argument why such information would be admissible or probative at trial"). Defendant further objects on the basis of the work product doctrine to the extent Plaintiff's request extends to information regarding insurance reserves set in anticipation of litigation. *See Schreib v. Am. Family Mut. Ins. Co.*, 304 F.R.D. 282, 285 (W.D. Wash. 2014) ("reserve information that was created in anticipation of litigation is protected by the work product doctrine"); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987) ("Although the risk management documents were not themselves prepared in anticipation of litigation, they may be protected from discovery to the extent that they disclose the individual case reserves calculated by [the insurer's] attorneys. The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim."); *United States v. Adlman*, 134 F.3d 1194, 1203-1204 (2d Cir. 1998) (the work-product doctrine applies if "the document can fairly be said to have been prepared because of the prospect of litigation"). Accordingly, all information relating to insurance reserves is being withheld subject to the foregoing objections.

RESPONSE:

Subject to, without waiving and in light of, the above objections, Liberty responds that there is no specific sum of money or "res" as understood by Defendant that has been set aside by Defendant against which Plaintiff could attach an equitable lien.

11. If the response to the previous interrogatory is in the affirmative, state whether Liberty has earned a profit on the amount of money set aside and, if so, state the amount

of said profit for each year from 2009 to the present.

OBJECTIONS:

Defendant objects to this Interrogatory on the ground that it seeks information beyond the scope of discovery established by Rule 26(b), as such information is not relevant to any party's claim or defense. See Pankiw v. Fed. Ins. Co., 2006 U.S. Dist. LEXIS 35400 at *28-32 (N.D. Ohio May 31, 2006) (in an ERISA benefits matter, denying plaintiff's discovery requests for "information as to the amount of reserves that were set aside to potentially pay the [plaintiff's ERISA claim]," observing the plaintiff "points to no case involving a first party claim where reserve information is discoverable or admissible, nor does [the plaintiff] provide a cogent argument why such information would be admissible or probative at trial"). Defendant further objects on the basis of the work product doctrine to the extent Plaintiff's request extends to information regarding insurance reserves set in anticipation of litigation. See Schreib v. Am. Family Mut. Ins. Co., 304 F.R.D. 282, 285 (W.D. Wash. 2014) ("reserve information that was created in anticipation of litigation is protected by the work product doctrine"); Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) ("Although the risk management documents were not themselves prepared in anticipation of litigation, they may be protected from discovery to the extent that they disclose the individual case reserves calculated by [the insurer's] attorneys. The individual case reserve figures reveal the mental impressions, thoughts, and conclusions of an attorney in evaluating a legal claim."); United States v. Adlman, 134 F.3d 1194, 1203-1204 (2d Cir. 1998) (the work-product doctrine applies if "the document can fairly be said to have been prepared because of the prospect of litigation"). Accordingly, all information relating to insurance reserves is being withheld subject to the foregoing

objections.

RESPONSE:

Subject to, without waiving and in light of, the above objections, Liberty responds that there is no specific sum of money or "res" as understood by Defendant that has been set aside by Defendant against which Plaintiff could attach an equitable lien. Accordingly, there is no such sum of money or "res" upon which Liberty has earned profit.

12. State whether UTC took any action to ensure the independence and impartiality of the persons at Liberty involved in making the benefit determination on Spears' claim on remand, and if so, describe said action.

RESPONSE:

UTC did not take any such action with respect to the remand determination. UTC is not the claim administrator under the Policy and has no discretionary authority or fiduciary duties with respect to individual claim determinations.

13. State the amount of money paid by Liberty to:

    a) Behavioral Medical Interventions, 6600 France Ave. Edina, MN

    b) Dr. Robert Cooper at Behavioral Medical Interventions

    c) Dr. Kent Crossley at Behavioral Medical Interventions

    d) Dr. Daniel Kitei at Behavioral Medical Interventions

    e) Dr. Michael Raymond at Behavioral Medical Interventions

    f) Dr. Jeness Courtney at Medical Consultants Network, LLC

    g) Medical Consultants Network, 901 Boren Ave. Seattle, WA.

for each year from 2009 to the present, for services for medical examination, peer reviews, or other costs associated with Liberty's defense of disability claims.

OBJECTIONS:

Defendant objects to this Interrogatory on the ground that the requested information is not relevant to any party's claim or defense and is not proportional to the needs of the case, considering the importance of the issues at stake in this litigation, the amount in controversy, and the importance of the discovery in resolving the issues. The request is not relevant because, although Liberty Life's alleged conflict of interest may be considered by the Court as a factor in its review, the relevant inquiry is whether the decision-maker was financially conflicted when making the benefit decision in this case. Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105 (2008). The conflict inquiry does not concern or involve potential conflicts of extraneous third parties. The information sought concerning such third parties also is irrelevant because such parties are not vested with the authority to make determinations regarding Plaintiff's claim for benefits, and the requested information is thus not probative evidence of Liberty Life's alleged conflict in this case. The request is disproportionately burdensome in light of the lack of relevance and because it seeks information that is not specific to this action or even to similar claims. Further, the eight-year review period specified by this Interrogatory is, itself, unduly burdensome and arbitrarily long. Moreover, Defendant does not maintain records organized by the names of individual physicians performing independent medical examinations or peer reviewers provided by independent services, as was the case with each of the individuals listed in Interrogatory 13.

RESPONSE:

Subject to, without waiving and in light of, the above objections, and construing this request as relating solely to information in the context of Plaintiff's claims, Defendant

states that it did not make any payments directly to the above-listed individual physicians performing independent medical examinations or peer reviews. Instead, payments were made to the third-party vendors who assigned them. Defendant made the following payments in the context of Plaintiff's disability claim and appeals:

    a) Behavioral Medical Interventions, 6600 France Ave. Edina, MN - $38,670.61,

    b) Medical Consultants Network, 901 Boren Ave. Seattle, WA - $3,850.00.

14. State the number of times, for each year from 2009 to the present, that reviews or medical examinations by the individuals identified in interrogatory # 13 supported denial of a claim for disability benefits; and also state the number of times, for each year from 2009 to the present, that said reviews or medical examinations supported the grant of a claim for disability benefits.

OBJECTIONS:

Defendant objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and seeks information that is not relevant to any party's claims or defenses, and because the burden imposed by providing an accurate response is vastly disproportional to the needs of the case. First, Defendant objects that the eight-year review period specified by this Interrogatory is, itself, unduly burdensome and arbitrarily long. Second, Defendant does not maintain records organized by the names of individual physicians performing independent medical examinations or peer reviewers provided by independent services, as was the case with each of the individuals listed in Interrogatory 13. Accordingly, to provide a properly relevant response, Defendant would be required to manually review each independent medical review and peer report provided by each of

the above-listed individual physicians over a period of eight years in the context of the relevant administrative record as a whole to make a judgment as to which decisions "supported denial [or grant] of a claim for disability benefits." The Court would then be required to analyze all the same documents to determine whether each of these decisions was justified in light of the relevant administrative records as a whole, and then attempt to draw some (currently unidentified) inference relevant to the determinative question in this matter – whether the benefits determination in this matter was an abuse of discretion. Such a burden is patently disproportionate to the needs of this case in light of the meager and speculative benefit, if any, of the requested information and the absence of any clear need for this information given the immense size of the Administrative Record, the amount of benefits at issue, and the fact that the determinative issue is not whether the physicians' opinions were subject to bias, but whether the final decisionmaker's opinion was influenced by a conflict of interest. See Parente v. Aetna Life Ins. Co., No. 99-5478, 2001 U.S. Dist. LEXIS 1919, at *18-19 (E.D. Pa. 2001) (denying discovery into decisions regarding similar claims by other claimants); Sheehan v. Metropolitan Life Ins. Co., No. 01 Civ. 9182 (CSH), 2002 U.S. Dist. LEXIS 11789 (S.D.N.Y. June 28, 2002) (same); see also Abromitis v. Continental Casualty Co./CNA Ins. Cos., 261 F. Supp. 2d 388, 390 (WDNC 2003) ("It is not the conflict of interest of a consultant employed by a fiduciary that the Fourth Circuit has held is relevant. Rather, the Fourth Circuit has made clear that it is the conflict of interest of the fiduciary, charged with rendering decisions in the best interest of the beneficiaries in the face of undeniable financial incentive to deny benefits in order to increase profits, that is relevant to this Court's decision."); Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 26 (1st Cir. 2003) ("[C]omparison of the files

of others who received or were denied benefits invites an open-ended and probably hopeless attempt to compare disparate situations--whether impressionistically or by drawing up formulas purporting to explain the outcomes. The search through other records would have to be exhaustive; it would be only the predicate to further dispute about the significance of the information; and probably it would not be conclusive. Every administrative denial would be an occasion for a vast and expensive inquiry into what judges sometimes call 'collateral issues.'").

15. State whether Liberty has any administrative processes in place designed to check the accuracy of the opinions of the individuals identified in interrogatory #13 and, if so, describe those processes and identify the person responsible for implementing those processes.

OBJECTIONS:

Defendant objects to this request on the ground that the phrase "check the accuracy of the opinions" is unreasonably vague and ambiguous.

RESPONSE:

Subject to, without waiving and in light of, the above objection, Defendant responds that it does not have any Policies and Procedures specifically designed to "check the accuracy of the opinions rendered by individual physicians" who perform independent medical examinations or peer reviews. The only possible way to ensure the accuracy of such reports would be to request a duplicate examination or peer review with another provider, a pointless and potentially endless process. If Defendant has any questions about the scope or completeness of a particular independent medical examination or peer review, Defendant requests an addendum.

## VERIFICATION

I, Paula McGee, Litigation Manager for Liberty Life Assurance Company of Boston, having read the foregoing Objections and Responses to Plaintiff's First Set of Interrogatories, verify that the information contained therein was gathered from a variety of sources and that they are true and accurate to the best of my knowledge, information and belief at this time.