UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HALEY SPEARS,<br>    PLAINTIFF, | :<br>:<br>: |
| | :   CIVIL ACTION NO.:<br>:   3:11-cv-1807 (VLB) |
| v. | :<br>: |
| LIBERTY LIFE ASSURANCE COMPANY<br>OF BOSTON;<br>THE GROUP LIFE INSURANCE<br>AND DISABILITY PLAN OF UNITED<br>TECHNOLOGIES CORPORATION, aka<br>THE UTC CHOICE INTEGRATED<br>DISABILITY BENEFIT PROGRAM,<br>    DEFENDANTS. | :<br>:<br>:<br>:<br>:   May 12, 2020<br>:<br>:<br>: |

**MEMORANDUM OF DECISION GRANTING-IN-PART
PLAINTIFF'S MOTION FOR DAMAGES ORDER, [ECF NO. 198],
AND PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, [ECF NO. 199]**

This action is an appeal of a denial of long-term disability benefits brought by the Plaintiff, Haley Spears ("Spears"), against the United Technologies Choice Integrated Disability Benefit Program (the "Plan"), sponsored by her former employer, United Technologies Corporation (UTC), and the plan administrator, Liberty Life Assurance Company of Boston ("Liberty"), acting pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").[1]

Spears alleged that the Defendants improperly denied her claim for Long Term Disability ("LTD") benefits under the Plan, in violation of the provisions of 29

---

[1] Spears also named her former employer, UTC, as a defendant in this action, but all claims against UTC were dismissed on August 3, 2012. [ECF No. 22, Order, at 14-17].

C.F.R. § 2560.503-1, which governs processing and handling of claims for ERISA plan benefits.

On April 28, 2014, Spears and the Defendants, respectively, filed motions for summary judgment and for judgment on the administrative record. [ECF Nos. 82, 85].

In a Memorandum of Decision dated March 31, 2015, [ECF No. 103] (the "Remand Order"), the Court granted, in part, Spears' Motion for Summary Judgment, denied Defendants' Motion for Judgment on the Administrative Record, and remanded the case to the plan administrator for further proceedings in accordance with the Court's Order and the instructions contained therein. The Court entered Judgment for Spears the same day. [ECF No. 104].

On September 20, 2018, the case was reassigned to the Honorable Kari A. Dooley, District Judge, for all further proceedings. [ECF No. 134]. The transfer was incident to the random assignment of cases to newly appointed district judges.

More than two and one half years after this Court's remand and after the transfer, on November 16, 2018, the Parties filed cross-motions for summary judgment, [ECF Nos. 137, 138], with Liberty arguing that it was "entitled to judgment as a matter of law on all claims asserted by Plaintiff, because Liberty's remand determinations are reasonable and supported by substantial evidence," [ECF No. 142 at 5], and with Spears arguing that she was entitled to judgment "as a matter of law" because Liberty's denial on remand violated the Court's Remand Order and ERISA's requirements in improperly denying her request for LTD benefits. [ECF Nos. 138 at 1, 138-1 at 26-34].

Case 3:11-cv-01807-VLB   Document 212   Filed 05/12/20   Page 3 of 19

On July 15, 2019, the case was reassigned back to this Court for all further proceedings. [ECF No. 181]. The Court, recognizing the complexity of the issues involved, scheduled and heard oral argument on the Parties' cross-motions for summary judgment on September 19, 2019. [ECF Nos. 188, 191].

On September 30, 2019, the Court granted Spears' Motion for Summary Judgment and denied Liberty's motion for the same. [ECF No. 195]. In its Memorandum of Decision, the Court set a schedule for briefing on damages and attorneys' fees associated with the Court's grant of summary judgment to Spears. *Id.* at 117-18. The Parties completed briefing same on December 16, 2019. [ECF No. 211].

The Parties largely agree on the amount of damages awardable to Spears: "Defendants have adopted Plaintiff's method of calculation . . . [and] agree with the amount of unadjusted benefits due each month . . . Plaintiff's argument[s] . . . may justify an award of prejudgment interest . . . Defendants agree with Plaintiff's position regarding annual compounding of prejudgment interest")," [ECF No. 201 at 1, 11, 17]. As Liberty aptly puts it, "the only disagreement the parties have for calculation of damages is regarding the prejudgment interest rate, and enforcement of the Policy's offset requirement associated with Plaintiff's receipt of Social Security Disability ("SSD") benefits." *Id.* at 1-2.

As a result of the Parties' two areas of disagreement regarding damages, the Court addresses each dispute in turn, starting with the dispute over whether Spears' LTD benefit amount should be reduced by the amount she received in SSD benefits, the Plan's so-called "offset."

3

**The Parties also agree that attorneys' fees are awardable to Spears but disagree as to the amount of the fee award. [ECF Nos. 199, 202]. The Court will address the attorneys' fees awardable to Spears following its discussion of damages.**

<u>Damages</u>

**I.   SSD Benefit Offset**

**The Parties, as mentioned, "agree with the amount of unadjusted benefits [Spears is] due." [ECF No. 201 at 1]. However, the Parties dispute whether Spears' LTD benefits amount should be reduced, or "offset," by the amount she received in Social Security Disability ("SSD") benefits.**

**Spears concedes that the Plan requires a reduction in LTD benefits for amounts paid to her in the form of SSD benefits. "The policy provides for an offset for social security benefits. . . . The policy provides that disability payments under the Social Security Act are 'other income benefits' and are deducted from the monthly amount." [ECF No. 198-1 at 4, 7]. But Spears makes three arguments as to why the Court should not enforce that offset.**

**First, Spears argues that the offset part of the Plan is "void under Connecticut law" because the type of notice the Plan provides regarding the offset, *e.g.* the font type used in the Plan section discussing the offset, "does not comply with th[e] statute." *Id.* at 4-5. Spears quotes Connecticut General Statutes Section 38a-519(b):**

> **Connecticut General Statutes Title 38A.  Insurance § 38a-519.  Offset proviso prohibited in certain policies.  Required disclosures for group long-term disability policies**

**4**

> **(b) For each group long-term disability income protection coverage policy delivered, issued for delivery, renewed, amended or continued in this state that contains an offset, the insurer shall disclose to a policyholder in a separate document and in a conspicuous manner in not less than fourteen-point boldface type:**
>
> **(1) That the policy contains an offset;**
>
> **(2) that such offset will function to limit payments to an insured under the policy, taking into account Social Security disability benefits and other benefits the insured may receive;**
>
> **(3) for what other categories of benefits the policy will offset;**
>
> **(4) the percentage of income the policy covers and the maximum dollar limit of the policy, if applicable; and**
>
> **(5) at least one example showing how such offset will operate.  Such disclosure shall include a statement that, if an eligible individual wants a policy that does not contain an offset, the individual may contact an insurance agent or company for an individual policy.**

[ECF No. 198-1 at 4-5 (quoting Conn. Gen. Stat. § 38a-519(b))].  Spears argues that the offset notice in the Plan does not comply with the statute because (i) "[t]he offset provision is not in 14 point boldface type," (ii) "[t]here is no statement that, if an eligible individual wants a policy that does not contain an offset, the individual may contact an insurance agent or company for an individual policy," and (iii) "[t]here is no separate document which makes this disclosure in a conspicuous manner."  *Id.* at 5.

Apparently anticipating an argument in defense by Liberty, Spears argues that this Connecticut statute is not preempted by ERISA, and therefore applies with full force.  This is so, according to Spears, because it "is directed toward entities engaged in insurance" and it "substantially affects the risk pooling arrangement between the insurer and the insured," thus satisfying the two prongs of *Kentucky*

*Association of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003), and because the statute does not provide "an additional remedy beyond that provided under ERISA," which might cause it to be preempted. [ECF No. 198-1 at 5-6 (citing *Wurtz v. The Rawlings Co.*, 761 F.3d 232 (2d Cir. 2014), which "held that a New York statute regarding reimbursement of tort settlements was not preempted by ERISA," and distinguishing *Barber v. Unum Life Ins. Co. of America*, 383 F.3d 134 (3d Cir. 2004), "where the Third Circuit held that a state statute that provided that a participant could recover punitive damages for bad faith conduct by insurers added to judicial remedies in addition to those offered by ERISA, and so was preempted.")].

Second, Spears argues that "[c]ourts have also exercised equitable power to deny offsets." [ECF No. 198-1 at 6 (citing *Godfrey v. BellSouth Telecomms., Inc.*, 89 F.3d 755, 757-59 (11th Cir. 1996), which held that the "[o]ffset provision for wages [was] invalid because the plan denial was arbitrary and capricious.")].

Third and finally, Spears argues that "[i]f the court reduces the LTD amount by Social Security, then Spears must be given credit for the $6,000 attorney fee she paid for the Social Security case." *Id.* at 7 (citing *US Airways, Inc. v. McCutchen*, 569 U.S. 88 (2013) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))].

Liberty argues that Conn. Gen. Stat. § 38a-519 does not apply to the Plan because its notice must be provided "in a separate document"; i.e. not the Plan document, which is at issue here. [ECF No. 201 at 3]. Liberty also argues that Conn. Gen. Stat. § 38a-519 is inapplicable because the specific notice requirements at issue in Subsection (b) that Spears cites were made effective on January 1, 2011, but Liberty's "initial denial of Plaintiff's disability claim was February 2, 2009," and

"[t]he Policy in effect at the time of the denial, and thus the version applicable to Plaintiff's claim, was effective date 10/1/2006 and thus was note [sic] required to be incompliance [sic]." [ECF No. 201 at 3-4].

Liberty next argues, as Spears anticipated, that Conn. Gen. Stat. § 38a-519(b) is, to the extent Spears argues that violation of it can act to increase her damages award, preempted by ERISA because the statute is being used to provide a remedy "not provided by 29 U.S.C. § 1132(a)(1)(B) of ERISA." [ECF No. 201 at 4-5 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 217-18 (2004)].

Liberty argues further that Spears' arguments regarding equitable relief under *Godfrey*, 89 F.3d at 757-59, are "misplaced" because there the employer forced the employee to return to work while disabled without paying any disability benefits under a self-administered Plan and because the plaintiff there had adequately pled a claim for equitable relief citing those facts, unlike here. [ECF No. 201 at 5-7]. Moreover, according to Liberty, the United States Supreme Court has cautioned that "[t]he plan, in short, is at the center of ERISA. And precluding McCutchen's equitable defenses from overriding plain contract terms helps it to remain there." [ECF No. 201 at 7 (citing *McCutchen*, 569 U.S. at 101 (emphasis added by Liberty)]. In other words, Liberty argues that "[a]s Plaintiff failed to plead a valid claim for equitable relief under 29 U.S.C. § 1132(a)(3), she has failed to demonstrate entitlement to an order of this Court refusing to enforce the Policy's offset provisions on some general theory of judicial equitable power." *Id.*

Finally, Liberty argues that Spears should not be awarded, should the Court find that the SSD benefit offset is enforceable, the $6,000 in attorneys' fees she

7

expended to successfully adjudicate her Social Security case. [ECF No. 201 at 7-8]. This is because "[t]here is no Policy provision that permits any credit for attorneys' fees against offsets," and because Spears' cited *McCutchen* case, 569 U.S. 88, is inapposite because "[t]hat decision involved a health benefit plan's subrogation provision requiring plan reimbursement for benefits paid from a participant's third-party tort recovery," which is missing here. [ECF No. 201 at 7-8].

The Court finds the Plan's SSD benefits offset applicable. First, such offsets are common in disability insurance plans governed by ERISA. "[O]nce the participant is determined to be eligible for ERISA-governed LTD benefits, the participant's benefits will commonly be reduced or subject to offset by the amount of Social Security disability benefits that are payable." 4 *ERISA Practice and Litigation* § 13:20 (2019). And, Spears does not argue that the Plan at issue lacked an SSD benefits offset notice provision, that she failed to review it, or that she lacked actual notice of it because of its innocuous location in the Plan document. Rather, her only argument is that the notice provision in her Plan did not comply with the specific font type and size, and other, requirements of Conn. Gen. Stat. § 38a-519(b). But those requirements did not exist when her Plan issued or when her benefits denial occurred.

As Liberty correctly notes, Conn. Gen. Stat. § 38a-519 Subsection (b), at issue here, which first required detailed SSD benefit offset notice provisions, became effective on January 1, 2011, [ECF No. 201 at 3]; *see also* 2010 Conn. Pub. Acts 10-65 (designating existing provisions as Subsection (a) and adding

8

Subsection (b) to provide disclosure requirements, effective January 1, 2011), but Liberty denied Spears LTD benefits February 2, 2009, nearly two years before Subsection (b)'s notice requirements became effective.  The problem for Spears is that an "ERISA cause of action based on the denial of benefits accrues at the time benefits are denied, and <u>the plan in effect when the decision to deny benefits is controlling</u>."  *Klecher v. Metro. Life Ins. Co.*, No. 01 Civ. 9566 (PKL), 2003 U.S. Dist. LEXIS 9572, at *13-14 (S.D.N.Y June 6, 2003) (emphasis added) (quoting *Randazzo v. Federal Express Corp. Long Term Disability Plan,* No. 99 Civ. 2895 (SAS), 2000 U.S. Dist. LEXIS 159, at *12 (S.D.N.Y. Jan. 11, 2000).  Here, whether a Connecticut statute changed the notice provision requirements for long-term disability plans written in Connecticut after the statute became effective and whether or not Liberty should have amended one or more policies to conform to that statute are irrelevant questions in light of the controlling effect of the Plan when Spears was denied LTD benefits in February 2009.

In sum, because the notice provisions of Conn. Gen. Stat. § 38a-519 Subsection (b) that Spears claims were violated, thereby potentially obviating the SSD benefits offset, did not go into effect until two years after Liberty denied Spears LTD benefits, Ms. Spears was not entitled to the 14-font bold print notice on a separate sheet, the SSD benefits offset is enforceable, and Spears damages must be reduced by the amount she received in SSD benefits, as expressly required by the Plan.[2]

---

[2] **Because the Court finds the SSD benefits offset enforceable, it does not reach the question of whether Conn. Gen. Stat. § 38a-519 is preempted by ERISA, as the**

The Court also declines to exercise its equitable power, the use of which was affirmed by the Eleventh Circuit in *Godfrey v. BellSouth Telecommunications, Inc*., 89 F.3d 755 (11th Cir. 1996), to find the Plan's SDD benefits offset unenforceable. *Godfrey* is obviously non-binding on this court, and the facts in that case, from the Plan administrator there being self-insured to the bad-faith nature of the actions taken by the administrator, are absent here. It is telling that Spears cites no in-Circuit cases since *Godfrey* issued in 1996 mirroring its findings or even citing it.

Finally, the Court holds that Spears is not entitled to the $6,000 she allegedly spent on attorneys' fees prosecuting her SSD benefits case. Spears' cited *McCutchen* case is inapposite, as that was an action by a plan administrator for equitable enforcement of a plan's reimbursement provision, which required a plan participant to reimburse the plan if the participant successfully obtained a favorable judgment in tort from a third-party tortfeasor. As Liberty argues: "This case involves a plan provision that requires reduction of the amount of long-term disability benefits otherwise payable in the first instance. This is not a situation where Defendants seek to recover benefits already paid from a fund created after the fact by Plaintiff: they are simply enforcing a provision that applies to the calculation of each monthly benefit as it becomes payable. *McCutchen* simply does not control in this situation." [ECF No. 201 at 8]. The Court agrees and notes that, despite the ubiquity of SSD offset provisions, 4 *ERISA Practice and Litigation* § 13:20, Spears has not cited one case, in- or out-of-Circuit, where a court reduced

---

answer to that question would have no bearing on the Court's finding that the Plan's SSD Benefits offset is enforceable.

10

a damages award by the amount a plan participant paid an attorney to obtain SSD benefits, and the Court has found none.

In sum, the Court will enforce the express plan provision requiring reduction of LTD benefits by the amount Spears obtained in SSD benefits.

## II.     Pre-Judgment Interest

The Parties agree that the award to Spears of pre-judgment interest is appropriate, [ECF No. 201 at 11 ("Plaintiff's argument[s] . . . may justify an award of prejudgment interest")], that the use of compound interest is appropriate as well, *id.* at 17 ("Defendants agree with Plaintiff's position regarding annual compounding of prejudgment interest"), and even that the Court enjoys broad discretion in setting the pre-judgment interest rate, [ECF Nos. 201 at 10; 198-1 at 8], and that the proper factors the Court should use to determine the rate of awardable pre-judgment interest are those enumerated in the four-factor test of *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000).  [ECF Nos. 201 at 8-9; 198-1 at 8-9].  These factors are:

(i)     the need to fully compensate the wronged party for actual damages suffered,
(ii)    considerations of fairness and the relative equities of the award,
(iii)   the remedial purpose of the statute involved, and/or
(iv)    such other general principles as are deemed relevant by the court.

*Jones*, 223 F.3d at 139.

The Parties' sole area of disagreement is over the interest rate to be utilized by the Court, with Spears advocating for the 10% pre-judgment interest rate called for by Connecticut General Statute Section 37-3a(a), and with Liberty arguing that the average prime interest rate during the time from its initial LTD benefits denial

until the Court granted Spears summary judgment in September 2019, which it calculates at 4.27%, is most appropriate.  For the reasons that follow, the Court agrees with Liberty.

Although the Court enjoys broad discretion to set the pre-judgment interest rate, *SEC v. First Jersey Sec., Inc*., 101 F.3d 1450, 1476 (2d Cir. 1996) ("The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion"), the Court is cognizant that "prejudgment interest awards under ERISA serve as compensation to a plaintiff for the lost use of money wrongly withheld; such awards may not penalize the defendant."  *Fairbaugh v. Life Ins. Co. of N. Am*., 737 F. Supp. 2d 68, 89-90 (D. Conn. 2010) (noting that plaintiff's requested 10% requested prejudgment interest rate pursuant to Conn. Gen. Stat. § 37-3a "may not be appropriate, in light of recent interest rates,"[3] because "federal courts need not incorporate state law as the federal common law rule for the applicable prejudgment interest rate," which may be more appropriately governed by "the statutory postjudgment framework set forth in 28 U.S.C. § 1961," which "is a reasonable method for calculating prejudgment interest awards."); *see also Diduck v. Kascyski & Sons Contractors Inc*., 974 F.2d 270, 286 (2d. Cir. 1992) ("[p]rejudgment interest is not intended to penalize the trustee but serves as compensation for the use of money withheld"); *Lijoi v. Cont'l Cas. Co*., No. CV 01-4536 (ILG) (VVP), 2007 U.S. Dist. LEXIS 101361,

---

[3] Liberty correctly notes that "the 10% Connecticut statutory rate was enacted in 1983," which courts in this Circuit have found "likely to over-compensate ERISA plaintiffs, given the considerable difference in economic circumstances when the decades-old state statutes were adopted as compared to more recent economic realities."  [ECF No. 201 at 11-12 n.4 (citing cases)].

**12**

at *7 (E.D.N.Y. Feb. 6, 2007) ("prejudgment interest 'is not awarded as a penalty,' a potential albeit unintended outcome when weighing equitable considerations, 'but as compensation for the use of funds.'") (quoting *Whitfield v. Lindemann*, 853 F.2d 1298, 1306 (5th Cir. 1988)).

Keeping the above principles in mind, the Court finds Liberty's prime rate to be far closer to the mark than Spears' 10% state statutory rate.  First, Spears has made no argument as to the <u>actual damages she has suffered</u>.  Her only argument in this regard is that "[p]resumably, if she had been paid her benefits when they were due, she could have invested them and earned more than the prime rate." [ECF No. 198-1 at 9].  This is wholly speculative, but more importantly indicates that Spears did not have to borrow money at a high rate, which the *Jones* court found important to setting the pre-judgment interest rate.  223 F.3d at 139.

Second, Spears cites financial information concerning Liberty Mutual Holding Company ("LMHC") to support its argument that Liberty "can make far more than the prime rate through its investments," and that therefore the Court should award Spears the 10% statutory pre-judgment interest rate.  But LMHC is a parent company of Liberty and a non-party to this case, and the data Spears cites is therefore irrelevant, especially in light of a lack of data concerning LMHC's rate of return for money invested, which might shed some light on Liberty's rate of investment return.  In addition, the rate of return of a holding company includes a variety of revenue sources, intercompany transactions, and tax consequences, and is not reflective of the benefit Liberty derived due to the delayed payment or

otherwise representative of the time value of money or Spear's likely investment return as an individual investor.

In sum, the Court finds that assessing a pre-judgment interest rate at the prime rate level will adequately and objectively serve as compensation to Spears for "the lost use of money wrongly withheld" without "penaliz[ing] the defendant," *Fairbaugh*, 737 F. Supp. at 89-90, as numerous courts in this Circuit have found. *See Cohen v. Life Ins. Co. of N. Am.*, No. 17-CV-9270, 2019 U.S. Dist. LEXIS 69682, at *11-12 (S.D.N.Y. Apr. 24, 2019) ("[t]he Court therefore applies a prejudgment interest rate of 5%, which reflects the federal prime interest rate"); *Montefiore Med. Ctr. v. Local 272 Welfare Fund*, Nos. 09-CV-3096 (RA) (SN); 14-CV-10229 (RA) (SN), 2019 U.S. Dist. LEXIS 13385, at *27 (S.D.N.Y. Jan. 25, 2019) ("the court would be well within its discretion to use the rate at which the plaintiff would have to *borrow* the money . . . [t]his is necessary to avoid giving the Fund a windfall, and it supports the decision to use the federal prime rate.") (emphasis in original); *Frommert v. Becker*, 216 F. Supp. 3d 309, 317 (W.D.N.Y. 2016) ("[t]he award should be calculated using the prime interest rate, as published by the Federal Reserve"); *Barrett v. Hartford Life & Accident Ins. Co.*, No. 10 CV 4600 (AKH), 2012 U.S. Dist. LEXIS 176362, at *7 (S.D.N.Y. Nov. 9, 2012) ("[t]'he federal prime rate, which has held steady at 3.25 percent for the time period in question, is adequate to compensate Plaintiff"); *Rasile v. Liberty Life Assurance Co.*, No. 03 Civ. 4316 (NRB), 2004 U.S. Dist. LEXIS 11754, at *2 (S.D.N.Y. June 28, 2004) (calculating prejudgment interest at the prime rate, observing that rate "has frequently been applied by courts in ERISA cases").

In sum, the Court finds Liberty's calculation of damages, including the SSD benefit offset and the use of the prime rate, reasonable, and enters damages for Spears in the amount of $124,343.50.

### Attorneys' Fees and Costs

Spears moves for attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) ("In any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). [ECF No. 199 at 1 (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) and *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112 (2d Cir. 2002))]. Spears notes that she "secured two summary judgments in her favor on September 30, 2019 and on March 31, 2015" and therefore seeks fees "for the time spent on the federal court case and for the post remand administrative work," "in the amount of $435,551.15 and costs in the amount of $2,410.19 for a total of $437,961.34." *Id.*

Liberty does not contest that Spears should be awarded attorneys' fees and costs, nor the hourly rate claimed by each of Spears' legal timekeepers. [ECF No. 202 at 1 ("Defendants do not challenge the hourly rates for any of the timekeepers identified in Plaintiff's motion.")]. However, Liberty asserts that Spears' fee amount should be reduced on three grounds. First, Liberty argues that Spears was not as successful as it may at first appear, noting that Spears "repeatedly asserted claims under 29 U.S.C. § 1132(a)(3) [breach of fiduciary duty] that were repeatedly dismissed by this Court" and "[t]he same is true regarding Plaintiff's repeated efforts to main [sic: maintain] United Technologies Corporation ("UTC") as a defendant, and to obtain statutory penalties under § 1132(c) of ERISA." [ECF No.

202 at 1]. Second, Liberty argues that Spears seeks "$430,000.00 in fees, which amounts to three and a half times the amount of damages likely to be awarded. This disproportionate ratio, itself, militates in favor of a reduction as well, as does the fact that Plaintiff filed a separate lawsuit that the Court ultimately concluded was improperly filed, dismissing it *sua sponte*." *Id.* at 1-2. Finally, Liberty takes issue with many of Spears' billing entries, calling them "cryptic" and "uninformative," noting that they make it difficult to identify which were associated with Spears' unsuccessful litigation efforts, and noting that many entries were for non-compensable "clerical work." [ECF No. 202 at 2].

The Court agrees-in-part with Liberty's first suggestion that Plaintiff was not quite as successful as it first appears, finding that Spears' repeated attempts to assert breach of fiduciary duty claims and to name UTC a party, which were ultimately dismissed by the Court on Law of the Case grounds, warrant a modest reduction in attorneys' fees claimed.

As well-documented in Liberty's Opposition, Spears repeatedly attempted to assert breach of fiduciary duty claims and to name UTC a party after the Court dismissed it. The Court originally dismissed these claims on August 3, 2012, [ECF No. 22], in response to Liberty's Motion to Dismiss. Yet Spears attempted to resurrect these claims five separate times, in an original Complaint in the separate *Spears v. Liberty Life* case, 3:16-cv-00572-VLB, in three motions to amend the Complaint in that case, [ECF Nos. 1, 8, 33, and 62], and in a follow-on Amended Complaint in the instant case. 3:11-cv-1807-VLB, [ECF No. 110]. The Court, finally, on April 25, 2018, dismissed these two asserted claims on Law of the Case

16

grounds. [ECF No. 127]. Spears should not have attorneys' fees reimbursed by Liberty for her quixotic pursuit of these two claims for almost six years *after* they were dismissed by the Court. In addition, as Liberty points out, it is difficult to discern which time entries pertain to these claims and which were to legitimate legal tasks. [ECF No. 202 at 13-14]. As a result, the Court reduces Spears' attorneys' fee award by 10 percent. *See Schuman v. Aetna Life Ins. Co.*, No. 3:15-cv-01006-SRU, 2017 U.S. Dist. LEXIS 94557, at *26-27 (D. Conn. June 20, 2017) ("Because those vague and overbroad time entries do not carry Schuman's burden to demonstrate that the hours were 'necessary,' … I will apply an across-the-board reduction to the claimed hours to account for Schuman's 'partial victory.'" (citations to Supreme Court authority omitted)). Of note, the Court does not reduce Spears' attorneys' fee award based on her pursuit of a separate case against Liberty, which was prompted by, as discussed in the Court's Order of August 27, 2017, a "poorly worded order entered by this Court" in the original Spears case, and by unreasonable delays by Liberty in adjudicating Spears' case on remand. [ECF No. 75]. The Court also does not reduce Spears' fee award based on her assertion of statutory penalties, as those damages were not foreclosed until the Second Circuit's 2016 decision in *Halo v. Yale Health Plan*, 819 F.3d 42, 58 (2d Cir. 2016). *See* [ECF No. 109].

The Court also declines to reduce Spears' attorneys' fee award simply on the basis of the disparity between Spears' damages award and the attorneys' fee award, as Liberty cites no case in- or out-of Circuit so holding, and Spears persuasively cites cases holding that attorneys' fee awards are meant, in part, to

encourage representation of plaintiffs in difficult cases where the likelihood of a large damages award is low. [ECF No. 199-1 at 12-13]. The Court also notes that this case is unusual, in that it has entailed protracted litigation spanning almost an entire decade, during which time Spears' counsel, Attorney Winona Zimberlin, has doggedly advocated for her client without remuneration to date.

However, the Court does agree with Liberty, as mentioned, that many of Spears' timekeeper entries are vague, making it quite difficult to determine if the entries were for legitimate legal work or for more clerical, non-compensable work. [ECF No. 202 at 14-15 (citing numerous examples)]. Because of this the Court will reduce Spears' attorneys' fee award by an additional 15%. *Schuman*, 2017 U.S. Dist. LEXIS 94557, at *26-27.

Applying the 25% attorneys' fee reduction the Court finds appropriate (10% for extended pursuit of non-viable claims, and 15% for vague timekeeper entries), the Court awards Spears $435,551.15 x .75 or $326,663.36 in attorneys' fees. That amount, plus the $2,410.19 Spears claims for costs, and which Liberty does not contest, and which appear reasonable to the Court, results in the Court finding Spears' total attorneys' fees and costs award to be $329,073.55.

## Conclusion

For the foregoing reasons, the Court awards Spears damages in the amount of $124,343.50 and attorneys' fees and costs in the amount of $329,073.55, for a grand total of $453,417.05. The Clerk is directed to close this case.

**IT IS SO ORDERED**

*/s/*
─────────────────────
**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: May 12, 2020**